CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Counsel for Joseph Klaynberg

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                              :
In re:                                        :  Chapter 11
                                              :
JOSEPH KLAYNBERG,                             :  Case No. 22-10165 (MG)
                                              :
                                              :
                    Debtor.                   :
                                              :
------------------------------------------------------------------x

## <u>CHAPTER 11 PLAN OF LIQUIDATION</u>

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND GOVERNING LAW** ................................1
   A.   Defined Terms ................................................................................1
   B.   Rules of Interpretation .....................................................................8
   C.   Computation of Time .......................................................................9
   D.   Governing Law ...............................................................................9
   E.   Reference to Monetary Figures..........................................................9
   F.   Controlling Document .....................................................................9

**ARTICLE II. ADMINISTRATIVE CLAIMS, U.S. TRUSTEE FEES,
PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS**.......................9
   A.   Administrative Claims .....................................................................9
   B.   U.S. Trustee Fees ...........................................................................10
   C.   Professional Fee Claims...................................................................10
   D.   Priority Tax Claims.........................................................................11

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS** ...............11
   A.   Summary of Classification................................................................11
   B.   Treatment of Claims .......................................................................12
   C.   Special Provision Governing Unimpaired Claims.................................14
   D.   Elimination of Vacant Classes ..........................................................14
   E.   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code................14

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN**....................15
   A.   Overview......................................................................................15
   B.   Sale of Interest in Sands Point Property ..............................................15
   C.   Sale of Connecticut Interests ............................................................15
   D.   Sale of Equity Interests ...................................................................16
   E.   Appeals .......................................................................................17
   F.   Plan Administrator .........................................................................17
   G.   Release of Liens.............................................................................18
   H.   Exemption from Certain Taxes and Fees..............................................18
   I.   Preservation of Rights of Action........................................................19

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES** ...................................................................19

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** .........................20
   A.   Timing and Calculation of Amounts to Be Distributed...........................20
   B.   Rights and Powers of the Plan Administrator as Disbursing Agent ..................20
   C.   Distributions on Account of Claims Allowed After the Effective Date .............21
   D.   Delivery of Distributions and Undeliverable or Unclaimed Distributions ........22
   E.   Compliance with Tax Requirements/Allocations ...................................23

F.    Claims Paid or Payable by Third Parties ..........................................................23

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ...............................................**23**
    A.    Resolution of Claims Against the Debtor ...............................................23
    B.    Disallowance of Claims .........................................................................25
    C.    Amendments to Claims ...........................................................................25

**ARTICLE VIII. SETTLEMENT, EXCULPATIONS, INJUNCTIONS, AND RELATED PROVISIONS** ...........................................................................**26**
    A.    Compromise and Settlement of Claims and Controversies ....................26
    B.    Discharge ...............................................................................................26
    C.    Exculpations ...........................................................................................26
    D.    Indemnification ......................................................................................27
    E.    Injunction ...............................................................................................27
    F.    Setoffs and Recoupments .......................................................................28
    G.    Provisions as to Governmental Units .....................................................28

**ARTICLE IX. CONDITIONS PRECEDENT** ...........................................................**29**
    A.    Condition Precedent to Confirmation of the Plan .................................29
    B.    Conditions Precedent to the Effective Date of the Plan ........................30

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** .............................................................................................................**30**
    A.    Modification of Plan ..............................................................................30
    B.    Effect of Confirmation on Modifications ..............................................30
    C.    Revocation or Withdrawal of the Plan ...................................................30

**ARTICLE XI. RETENTION OF JURISDICTION** ................................................**31**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ..............................................**33**
    A.    Immediate Binding Effect ......................................................................33
    B.    Additional Documents ............................................................................33
    C.    Post-Confirmation Reports .....................................................................33
    D.    Reservation of Rights .............................................................................33
    E.    Successors and Assigns ..........................................................................34
    F.    Service of Documents ............................................................................34
    G.    Term of Injunctions or Stays .................................................................34
    H.    Entire Agreement ...................................................................................34
    I.    Nonseverability of Plan Provisions ........................................................35

20315309v3

## INTRODUCTION

Joseph Klaynberg (the "Debtor") proposes the following Chapter 11 Plan of Liquidation. The Plan provides for the resolution of all Claims against the Debtor in the Chapter 11 Case.

# ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.      Defined Terms

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtor's Estate pursuant to Sections 503(b) or 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estate incurred after the Petition Date and through the Effective Date excluding Professional Fee Claims.

2.      "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days following the Effective Date of the Plan.

3.      "*Allowed*" means with reference to any Claim, (a) any Claim against the Debtor that has been listed on its Schedules (as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not Disputed or contingent and for which (1) no contrary Proof of Claim has been Filed, (2) no objection to allowance, request for estimation, or other challenge has been interposed, or (3) no motion to deem the Schedules amended has been Filed, (b)(1) any Proof of Claim that is timely Filed by the applicable Claims Bar Date, as to which no litigation (whether stayed or unstayed) is pending and to which no objection or other challenge has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, if any, and (2) any Claim that is not subject to any applicable Claims Bar Date, as to which no objection or other challenge has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if any, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to a Final Order or under the Plan, but only to the extent provided therein, (e) any Claim that is not otherwise subject to disallowance under Section 502 of the Bankruptcy Code or that has not been Disallowed, (f) any Claim arising from the recovery of property in accordance with Sections 550 and 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code (unless such Claim is otherwise Disputed), or (g) any Claim allowed by stipulation approved by the Bankruptcy Court. Except as otherwise provided in the Plan, for purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any Cause of Action that the Debtor may hold against the Holder thereof, to the extent such Cause of Action may be offset pursuant to applicable non-bankruptcy law or subject to recoupment. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise

specified herein or by a Final Order of the Bankruptcy Court. For any purpose under the Plan, unless specifically provided for herein, a Claim that has been Allowed shall not include amounts constituting interest, penalties, or late charges arising from or relating to the period from and after the Petition Date. Any Claim that has been or is hereafter listed in the Schedules as Disputed, contingent, or unliquidated for which no Proof of Claim has been timely Filed and which is not included in subparts (a)-(g) herein, is not considered an Allowed Claim and shall be expunged and Disallowed without further action by the Debtor and without any further notice to or action, order, or approval of the Bankruptcy Court.

4.      *"Appeals"* means the (a) the Debtor's appeal of entry of the Nahla Judgment pending in the Appellate Division, First Department; and (b) the appeal of the UCC Sale conducted by Nahla on December 8, 2020 of certain ownership interests in WWML96 DE MEZZ, LLC pending in the Appellate Division, First Department.

5.      *"Ballot"* means the ballot distributed to each eligible Holder of a Claim in the Voting Classes by the Balloting Agent, on which ballot such Holder of a Claim may, *inter alia*, vote for or against the Plan.

6.      *"Ballot Deadline"* means the date and time set forth by the Bankruptcy Court by which the Balloting Agent must receive all Ballots.

7.      *"Balloting Agent"* means Cullen and Dykman LLP.

8.      *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as applicable to the Chapter 11 Case, as may be amended from time to time.

9.      *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York, having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to Section 151 of title 28 of the United States Code, the United States District Court for Southern District of New York.

10.      *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under Section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, as may be amended from time to time.

11.      *"Business Day"* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.      *"Cash"* means the legal tender of the United States of America or the equivalent thereof.

13.      *"Causes of Action"* means any Claim, cause of action (including avoidance actions), controversy, right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, debt, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege,

license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, Secured or unsecured, assertible directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort (including fraud), in law or in equity, or pursuant to any other theory of law, including violations of state or federal securities laws. Causes of Actions shall specifically include all Causes of Action described in the Disclosure Statement including without limitation the Marital Litigation and the Nahla Preference Action.

14.     "*Chapter 11 Case*" means the chapter 11 case commenced by the Debtor, which is currently pending before the Bankruptcy Court.

15.     *"Chase Secured Claim"* means the Claim of JP Morgan Chase Bank in the filed amount of $1,222,407.10 secured by the Sands Point Property.

16.     "*Claim*" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

17.     *"Claims Bar Date"* means April 20, 2022, the deadline by which a Proof of Claim must be or must have been Filed, as established by order of the Bankruptcy Court entered on  March 8, 2022 (or August 10, 2022 for Governmental Units).

18.     *"Claims Objection Bar Date"* means the date that is 120 days after the Effective Date of the Plan or such later date as may be fixed by order of the Bankruptcy Court.

19.     *"Claims Register"* means the official register of Claims.

20.     "*Class*" means a category of Holders of Claims as set forth in Article III of the Plan in accordance with Section 1122(a) of the Bankruptcy Code.

21.     "*Confirmation*" means the entry on the docket of the Confirmation Order.

22.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order (within the meaning of Bankruptcy Rules 5003 and 9021).

23.     *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

24.     "*Confirmation Objection Deadline*" means the deadline for Filing objections to Confirmation of the Plan.

25.     "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

26.     "*Connecticut Interests*" means all equity interests held by the Debtor, directly or indirectly, in the projects or properties located at 5 Constitution Plaza, 100 Trumbull Street, 101 Pearl Street and 111 Pearl Street, each in Hartford, Connecticut including the Debtor's personally owned interests and his interests in KS Equities, LLC, JEDR Groups, Inc., WW Spectra Corp., JKIG LLC, and Klaynberg Family Group LLC.  For the avoidance of doubt,

although JEDR Group, Inc. and KS Equities, LLC each also own interests in properties located outside of Connecticut (specifically 114 MS Member LLC), the Debtor's interest in such entities are included within the definition of, and shall be treated as, Connecticut Interests.

27.     "*Cure Obligations*" means all (a) amounts required to cure any monetary defaults and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults  (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed and assigned by the Debtor pursuant to Sections 365 or 1123 of the Bankruptcy Code.

28.     "*Debtor*" is defined in the Introduction.

29.     "*Disallowed*" means any Claim that is not or that is no longer Allowed.

30.     "*Disclosure Statement*" means the disclosure statement relating to the Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

31.     "*Disclosure Statement Approval Order*" means the Order approving the Disclosure Statement relating to the Plan and approving certain procedures for solicitation of votes on such Plan and granting related relief.

32.     "*Disputed*" means, with respect to any Claim, any Claim that is not yet Allowed, and shall include any Claim that is designated as disputed pursuant to the Plan.

33.     "*Disputed Claims Reserve*" means the reserve to be created by the Debtor for the benefit of Holders of subsequently Allowed Claims for Distribution according to the procedures set forth in Article VI and Article VII.

34.     "*Distribution*" means each distribution made to the Holders of Allowed Claims on a Distribution Date from the Distribution Fund.

35.     "*Distribution Date*" means the date that is six (6) months from the Effective Date, and each date that is every six (6) months thereafter except more frequent Distributions may be made in the sole discretion of the Debtor.

36.     "*Distribution Fund*" means (a) the net proceeds of the sale or liquidation of Debtor's interest in the Sands Point Property, the Connecticut Interests, the Equity Interests; and (b) the net proceeds of any Causes of Action.

37.     "*Effective Date*" means the date that the first Business Day after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in Article IX.B of the Plan have been satisfied or waived.

38.     "*Emily*" means Emily Klaynberg, the Debtor's former spouse.

39.     "*Entity*" shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

40.     "*Equity Interests*" means the equity interests held by the Debtor, directly or indirectly, in any companies, projects or properties including Wonder Works Construction Corp., Durdom, Inc., Mark Paragon, LP, Lighthouse Real Estate Management, International Design Direct, Ltd., 318 Investors A LLC, 114 MS Member LLC, AM Club, Inc., WWIG III, LLC, WW1834, LLC and WW Eastern, LLP but specifically excluding the Connecticut Interests.

41.     "*Estate*" means the estate created for the Debtor on the Petition Date pursuant to Sections 301 and 541 of the Bankruptcy Code, which shall include the estate on and after the Confirmation Date.

42.     "*Exculpation*" means the exculpation provision set forth in Article VIII.C of the Plan.

43.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

44.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

45.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court.

46.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

47.     "*General Unsecured Claim*" means any Claim against any Debtor that is not: (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) the Chase Secured Claim; (f) the Nahla Claim; (g) the Guaranty Claims; (h) the Investors Claim; or (i) an Allowed Penalty Claim.

48.     "*Governmental Unit*" shall have the meaning set forth in Section 101(*27*) of the Bankruptcy Code.

49.     *"Guaranty Claims"* means the Claims of any lenders based upon the Debtor's guaranties of debt owed to such lenders by the respective borrowers under loans made by such lenders.

50.     "*Holder*" means any Entity holding a Claim.

51.     "*Impaired*" means a Class of Claims that is not Unimpaired.

52.     "*Investors Claims*" means the Claim of Investors Bank in the filed amount of $317,419.50, secured against non-Debtor property, but unsecured as against the Debtor.

53.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

54.     "*Lien*" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

55.     *"Marital Action"* means the matrimonial action in the Supreme Court of the State of New York, County of Nassau between the Debtor and Emily, in which the Separation Agreement was entered.

56.     *"Marital Litigation"* means the action to be investigated and/or commenced by the Plan Administrator to avoid the Separation Agreement or any transfers thereunder based on fraudulent conveyance or fraud.

57.     "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Bankruptcy Court, as applicable to the Chapter 11 Case, as may be amended, modified, or supplemented from time to time.

58.     "*Nahla*" means Series 2020A of Nahla Capital LLC.

59.     *"Nahla Claim"* means the Claim filed by Nahla in the Chapter 11 Case on April 17, 2020 in the amount of $13,816,466.19.

60.     *"Nahla Judgment"* means the judgment entered in favor of Nahla and against the Debtor on November 14, 2021 in the amount of $13,085,707.65.

61.     *"Nahla Preference Action"* means the action commenced by the Debtor on March 8, 2022 seeking, inter alia, to avoid the Nahla Judgment as a preference under Section 547 of the Bankruptcy Code.

62.     "*Other Priority Claim*" means any Claim against the Debtor entitled to priority in right of payment under Section 507 of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

63.     *"Penalty"* means any Claim against the Debtor including without limitation Claims of Taxing Authorities, whether Secured or unsecured, for any fine, penalty, forfeiture, or for multiple, exemplary or punitive damages, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim.

64.     "*Petition Date*" means February 11, 2022.

65.     "*Plan*" means this Chapter 11 Plan of Liquidation, as may be amended, supplemented, or modified from time to time.

66.     "*Plan Administrator*" means Allen Kadish, Esq., or such other replacement selected in accordance with the provisions of Article IV hereof.

67.     "*Priority Tax Claim*" means any unsecured Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

68.     "*Pro Rata*" means (a) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class or (b) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

69.     "*Professional*" means an Entity:  (a) retained in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to Sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

70.     "*Professional Fee Claim*" means all Claims for accrued fees and expenses for services rendered by a Professional through and including the Effective Date, to the extent such fees and expenses have not been paid pursuant to any order of the Bankruptcy Court or the Local Bankruptcy Rules and regardless of whether a fee application has been Filed for such fees and expenses.

71.     "*Professional Fee Claim Bar Date*" means the first Business Day that is thirty (30) days following the Effective Date of the Plan, except as specifically set forth in the Plan or a Final Order.

72.     "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

73.     "*Sands Point Property*" means the real property located at 5 Lillian Court, Sands Point, New York owned equally by the Debtor and Emily.

74.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

75.     "*Secured*" means when referring to a Claim:  (a) Secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to

applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

76.    *"Separation Agreement"* means the agreement entered into between the Debtor and Emily dated November 17, 2020 providing for, among other things, a distribution of their marital assets in the Marital Action.

77.    *"U.S. Trustee"* means the Office of the United States Trustee.

78.    *"U.S. Trustee Fees"* means all quarterly fees arising under 28 U.S.C. §1930(a)(6) including accrued interest thereon arising under 31 U.S.C. § 3717.

79.    *"Unexpired Lease"* means a lease to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

80.    *"Unimpaired"* means, with respect to a Class of Claims, a Claim that is not *impaired* within the meaning of Section 1124 of the Bankruptcy Code.

81.    *"Voting Classes"* means all Classes of the Plan.

82.    *"Voting Deadline"* means _____, 2022 at 5:00 p.m. Eastern Time.

83.    *"Voting Record Date"* means the close of business on the date that the Disclosure Statement Approval Order is entered by the Court.

B.    Rules of Interpretation

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the

Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.     Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.     Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

F.     Controlling Document

In the event of an inconsistency between the Plan or the Disclosure Statement, the terms of the Plan shall control in all respects.  The provisions of the Plan, and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that if there is determined to be any inconsistency between any provision in the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS, U.S. TRUSTEE FEES, PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

A.     Administrative Claims

1.     Payment of Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, each Holder of an Allowed Administrative Claim will receive in exchange for full and final satisfaction, settlement, release, and compromise of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim from the Distribution Fund either:  (1) except as otherwise provided in the Confirmation Order, on the Effective Date or as

soon as practicable thereafter; (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than five (5) business days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of his business after the Petition Date, such Allowed Administrative Claims shall be paid pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims and without any further notice to or action, order, or approval of the Bankruptcy Court.

2.      Requests for Payment of Administrative Claims

Except for Professional Fee Claims, requests for payment of Administrative Claims must be Filed and served on the Debtor no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor and the Estate, or any of the property of any of the foregoing, and such Administrative Claims shall be deemed discharged as of the Effective Date.

B.      U.S. Trustee Fees

The Debtor shall pay all U.S. Trustee Fees by the Effective Date.  Thereafter, U.S. Trustee Fees shall be paid by the Debtor from the Distribution Fund until entry of a final decree closing the Chapter 11 Case, or order of dismissal or conversion of the Chapter 11 Case.

C.      Professional Fee Claims

1.      Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims shall be Filed no later than thirty (30) days after the Effective Date of the Plan.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Local Bankruptcy Rules and any prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.  The Allowed amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from the Distribution Fund when and to the extent such Claims are Allowed by a Final Order.

2.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtor or the Plan Administrator, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court but subject to the terms of the Plan, pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Debtor or the Plan Administrator on behalf of the Debtor or the Estate from the Distribution Fund.

D.     Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim shall receive, in exchange for full and final satisfaction, settlement, release, and compromise of such Claim, Cash up to the full amount of such Claim from the Distribution Fund.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, U.S. Trustee Fees, Professional Fee Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims set forth in this Article III.

A.     Summary of Classification

All Claims other than Administrative Claims, U.S. Trustee Fees, Professional Fee Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Distributions pursuant hereto and in connection with Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  Each Class shall be a Class of Claims in the Chapter 11 Case of the Debtor.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim qualifies within the description of such other Classes.  A Claim is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.     Class Identification for the Debtor

The classification of Claims against the Debtor pursuant to the Plan is as follows:

| Class | Claims | Status | Voting Rights |
|-------|--------|--------|---------------|
| Class 1 | Allowed Other Priority Claims | Unimpaired | Not entitled to Vote |
| Class 2 | Allowed Chase Secured Claim | Impaired | Entitled to Vote |
| Class 3 | Allowed Investors Claim | May Be Impaired | Entitled to Vote |
| Class 4 | Allowed Nahla Claim | May Be Impaired | Entitled to Vote |
| Class 5 | Allowed Guaranty Claims | May Be Impaired | Entitled to Vote |
| Class 6 | Allowed General Unsecured Claims | May Be Impaired | Entitled to Vote |
| Class 7 | Allowed Penalty Claims | May Be Impaired | Entitled to Vote |

| Class | Claims | Status | Voting Rights |
|-------|--------|--------|---------------|
| Class 8 | Debtor | May Be Impaired | Entitled to Vote |

B.    Treatment of Claims

1.    The treatment provided to each Class relating to the Debtor for Distribution purposes and voting rights are specified below:

## Class 1 – Allowed Other Priority Claims

(a)    *Classification*:  Class 1 consists of all Allowed Other Priority Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Class 1 Other Priority Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each and every Allowed Other Priority Claim against the Debtor, each Holder of an Allowed Other Priority Claim shall be paid 100% of their Allowed Claim on the Effective Date.

(c)    *Voting*:  Class 1 is Unimpaired, and each Holder of an Allowed Other Priority Claim is not entitled to vote to accept or reject the Plan.

## Class 2 – Allowed Chase Secured Claim

(a)    *Classification*:  Class 2 consists of the Allowed Chase Secured Claim.

(b)    *Treatment*:  In accordance with the Separation Agreement, the Chase Secured Claim shall be paid solely from Emily's interest in the Sands Point Property and shall not be entitled to a Distribution from the Debtor or his estate.

(c)    Voting:  Class 2 is Impaired and the Holder of Claims in such Class is entitled to vote to accept or reject the Plan.

## Class 3 – Allowed Investors Claim

(a)    *Classification*:  Class 3 consists of the Allowed Investors Claim.

(b)    *Treatment*:    The Allowed Investors Claim shall be paid its *Pro Rata* share of the Distribution Fund on each Distribution Date, *pari passu* with holders of Allowed Claims in Classes 4, 5 and 6 hereunder.

(c)    *Voting*:  Class 3 may be Impaired, and the Holder of the Allowed Investors  Claim is entitled to vote to accept or reject the Plan.

## Class 4 – Allowed Nahla Claim

(a)     *Classification*:  Class 4 consists of the Nahla Claim, when, if and to the extent Allowed.

(b)     *Treatment*:  Nahla Filed it Claim as a Secured Claim. Through the Appeals, the Debtor is seeking to reverse the entry of the Nahla Judgment entirely. Also, the Debtor has sought, through the Nahla Preference Action, to avoid any Liens asserted by Nahla even if the Appeals are unsuccessful, thereby treating its Claim as wholly Unsecured. In the event that the Debtor is not successful in the Appeals or the Nahla Preference Action, Nahla shall have a Secured Claim as to the Net Proceeds of the sale of the Debtor's interest in the Sands Point Property. The Debtor does not believe that Nahla would have a Secured Claim in the Cash, Connecticut Interests, the Equity Interests or the proceeds of any Causes of Action even if Nahla is successful in the Preference Action. To whatever extent the Court finds Nahla to be Secured, Nahla shall be paid out of the assets in which it has a Lien prior to any other creditors receiving a distribution from such assets. The remaining unpaid portion of the Nahla Claim (or the entire Nahla Claim if the Debtor is successful in the Appeals and/or the Nahla Preference Action) shall be paid its *Pro Rata* share of the Distribution Fund on each Distribution Date, *pari passu* with holders of Allowed Claims in Classes 3, 5 and 6 hereunder.

(c)     *Voting*:  Class 4 may be Impaired, and the Holder of such Claim is entitled to vote to accept or reject the Plan.

## Class 5 – Allowed Guaranty Claims

(a)     *Classification*:  Class 5 consists of Allowed Guaranty Claims against the Debtor.

(b)     *Treatment*:  Allowed Guaranty Claims shall be paid their *Pro Rata* share of the Distribution Fund on each Distribution Date, *pari passu* with holders of Allowed Claims in Classes 3, 4 and 6 hereunder.

(c)     *Voting*:  Class 5 may be Impaired, and Holders of such Claims are entitled to vote to accept or reject the Plan.

## Class 6  – Allowed General Unsecured Claims

(a)     *Classification*:  Class 6 consists of all Allowed General Unsecured Claims against the Debtor.

(b) *Treatment*:  Allowed General Unsecured Claims shall be paid their *Pro Rata* share of the Distribution Fund on each Distribution Date, *pari passu* with holders of Allowed Claims in Classes 3, 4 and 5 hereunder.

(c) *Voting*:  Class 6 may be Impaired, and the Holders of such Claims are entitled to vote to accept or reject the Plan.

**<u>Class 7 – Allowed Penalty Claims</u>**

(a) *Classification*:  Class 7 consists of all Allowed Penalty Claims.

(b) *Treatment*:  Holders of Allowed Penalty Claims shall be paid their *Pro Rata* share of any funds remaining in the Distribution Fund after payment in full of all other Claims in Classes 1, 3, 4, 5 and 6 against the Debtor.

(c) *Voting*:  Class 7 may be Impaired, and each Holder of an Allowed Penalty Claim is entitled to vote to accept or reject the Plan.

**<u>Class 8 – Debtor Claims</u>**

(a) *Classification*:  Class 8 consists of the Debtor.

(b) *Treatment*:  The Debtor shall retain any assets and property remaining after payment of all other Claims against the Debtor in full.

(c) *Voting*:  Class 8 is Impaired, and the Debtor is entitled to vote to accept or reject the Plan.

C.  Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing shall affect the rights of the Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.  Elimination of Vacant Classes

Any Class of Claims that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement and Disclosure Statement Approval Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies Section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

E.  Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtor shall seek Confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.  The Debtor reserves the right

to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     Overview

The Plan is Liquidating Plan as all non-exempt assets of the Debtor will be liquidated to pay Allowed Claims against the Debtor.  This will be accomplished by both the sale of various assets, and the litigation and monetization of Causes of Action. The Debtor believes that his ESOP, IRA and Life Insurance Policy are exempt from payment to creditors. Nahla's time to object to such exemptions has been extended to August 26, 2022. In the event any such assets are found not to be exempt, they shall be included for Distribution to creditors under the Plan.

B.     Sale of Interest in Sands Point Property

The Debtor shall file or will have already filed a motion to sell his 50% interest in the Sands Point Property to Emily under Section 363(b) and (f) of the Bankruptcy Code for the sum of $1,900,000 (the "Sands Point Sale"). The Sands Point Sale shall be free and clear of all Liens, claims and encumbrances with such Liens, claims and encumbrances to attach only to the net proceeds of the Sands Point Sale, except that the mortgage against the Sands Point Property held by Chase shall remain a lien against such Property and shall be paid solely by Emily. "Net Proceeds" shall mean the gross sales price less traditional closing costs, title charges and taxes resulting from the sale, if any.

There will be no transfer or similar taxes owed on any transaction in connection with or in contemplation of the Plan, including the Sands Point Sale, to the fullest extent permitted by Section 1146 of the Bankruptcy Code.  For the avoidance of doubt, the sale of the Debtor's interest in the Sands Point Property shall be deemed a transfer under, pursuant to, in connection with and in furtherance of this Plan, and such sale, transfer and delivery of any and all instruments of transfer, including without limitation, the deed for his interest in such Property in connection therewith shall not be taxed under any transfer tax provisions of law as permitted by Section 1146(a) of the Bankruptcy Code as interpreted by the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008).  The Debtor shall, however, be liable for any capital gains tax due in connection with the sale of his interest in the Sands Point Property.

The Net Proceeds of the Sands Point Sale shall be deposited by the Debtor into the Distribution Fund and shall be used for payments under this Plan.

C.     Sale of Connecticut Interests

The Debtor shall retain [TBD] (the "Connecticut Broker") to market the Connecticut Interests for sale in accordance with bid procedures to be approved by the Bankruptcy Court pursuant to an appropriate motion under Section 363(b) and (f) of the Bankruptcy Code (the

"Connecticut Interest Sale Motion"). The retention of the Connecticut Broker may, at the Debtor's election, be sought in the Connecticut Interest Sale Motion or in a separate retention application. The Connecticut Interests may be sold in lots or in their entirety and may be with or without a stalking horse bidder. The sale shall be free and clear of Liens, claims and encumbrances, with such Liens, claims and encumbrances to attach only to the net proceeds of the sale. "Net Proceeds" shall mean the gross sales price less traditional closing costs, title charges and taxes resulting from the sale, if any.

**As will be set forth in the Connecticut Interest Sale Motion, the sale or sales thereunder shall be subject to any restrictions or approvals required under the respective entities' operating or shareholder agreements, or any lending agreements to which such entities may be a party.**

There will be no transfer or similar taxes owed on any transaction in connection with or in contemplation of the Plan, including the sale of the Connecticut Interests, to the fullest extent permitted by Section 1146 of the Bankruptcy Code. For the avoidance of doubt, the sale of the Connecticut Interests shall be deemed a transfer under, pursuant to, in connection with and in furtherance of this Plan, and such sale, transfer and delivery of any and all instruments of transfer shall not be taxed under any transfer tax provisions of law as permitted by Section 1146(a) of the Bankruptcy Code as interpreted by the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008). The Debtor shall, however, be liable for any capital gains tax due in connection with the sale of the Connecticut Interests.

The Net Proceeds of the sale of the Connecticut Interests shall be deposited into the Distribution Fund and shall be used for payments under this Plan.

D.      Sale of Equity Interests

The Debtor shall retain [TBD] (the "Equity Interest Broker") to market the Equity Interests for sale in accordance with bid procedures to be approved by the Bankruptcy Court pursuant to an appropriate motion under Section 363(b) and (f) of the Bankruptcy Code (the "Equity Interest Sale Motion"). The retention of the Equity Interest Broker may, at the Debtor's election, be sought in the Equity Interest Sale Motion or in a separate retention application. The Equity Interests may be sold in lots or in their entirety and may be with or without a stalking horse bidder. The sale shall be free and clear of Liens, claims and encumbrances, with such Liens, claims and encumbrances to attach only to the net proceeds of the sale. "Net Proceeds" shall mean the gross sales price less traditional closing costs, title charges and taxes resulting from the sale, if any.

**As will be set forth in the Equity Interest Sale Motion, the sale or sales thereunder shall be subject to any restrictions or approvals required under the respective entities' operating or shareholder agreements, or any lending agreements to which such entities may be a party.**

There will be no transfer or similar taxes owed on any transaction in connection with or in contemplation of the Plan, including the sale of the Equity Interests, to the fullest extent

permitted by Section 1146 of the Bankruptcy Code. For the avoidance of doubt, the sale of the Equity Interests shall be deemed a transfer under, pursuant to, in connection with and in furtherance of this Plan, and such sale, transfer and delivery of any and all instruments of transfer shall not be taxed under any transfer tax provisions of law as permitted by Section 1146(a) of the Bankruptcy Code as interpreted by the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008). The Debtor shall, however, be liable for any capital gains tax due in connection with the sale of the Equity Interests.

The Net Proceeds of the sale of the Equity Interests shall be deposited into the Distribution Fund and shall be used for payments under this Plan.

E.    Appeals

On and after the Confirmation Date, the Debtor shall have the option to either continue the Appeals or dismiss same. If the Debtor determines to continue the Appeals, the Appeals shall be perfected by no later than thirty (30) days after the Effective Date. The Nahla Claims shall be considered Disputed Claims until either dismissal of the Appeals by the Debtor or, in the event that the Appeals shall continue, entry of a Final Order in each of the Appeals, or in any ensuing appeal or motion to reconsider or reargue made with respect to the subject matter of the Appeals. Notwithstanding this, the Debtor agrees that Nahla shall **not** be prohibited from voting on the Plan by virtue of the objection to its Claim through the Appeals.

The costs and legal fees associated with the Appeals shall be paid from the Distribution Fund. Although the Debtor is not a party to the Appeal with respect to the UCC Sale, the Debtor's Appeal of the Nahla Judgment is contingent in large part on the outcome of that Appeal, and the prosecution of the UCC Sale Appeal by the Debtor therefore benefits the estate and shall be borne by the Debtor.

F.    Plan Administrator

The Plan Administrator shall be appointed as of the Confirmation Date to investigate and litigate or monetize all Causes of Action delineated in the Disclosure Statement, except the Nahla Preference Action which will be continued to be pursued by Debtor's special adversary proceeding counsel and the Appeals which will continue to be pursued by Debtor's special appellate counsel. The Plan Administrator shall also act as Disbursing Agent under the Plan. The Plan Administrator shall have the right to retain and pay such law firms and professionals to assist in his duties under the Plan without Bankruptcy Court approval. The Plan Administrator shall not be required to post a bond.

1.    Prosecution of the Causes of Action

The Plan Administrator shall take such action as is reasonably necessary to maximize the value of and liquidate the Causes of Action (excluding the Nahla Preference Action and the Appeals), including the commencement and prosecution of any adversary proceedings, contested matters, lawsuits, arbitrations or other proceedings (including the prosecution or defense of any appeals, writs of mandamus, writs of certiorari, discovery in aid of collecting or

executing any judgment and the execution of any judgment, and the posting of any bond required by a court in connection therewith), either in the Bankruptcy Court or in such other appropriate venue having jurisdiction of such Causes of Action. In connection with the foregoing, the Plan Administrator shall defend and, if appropriate, settle, any counterclaims asserted or raised by a defendant to a Cause of Action. The Plan Administrator may, if appropriate, settle any Cause of Action; provided that if such compromise involves Claims in excess of $25,000, the Plan Administrator shall obtain the approval of the Bankruptcy Court.

  2.  Assistance with Asset Sales

  To the extent requested by the Debtor, the Plan Administrator shall assist the Debtor with the sales of the Connecticut Interests and Equity Interests.

  3.  Disbursing Agent

  The Plan Administrator shall also act as Disbursing Agent under the Plan, in accordance with Article VI(B) of the Plan.

  4.  Replacement of Plan Administrator

  In the event that it is necessary to replace the Plan Administrator, the replacement shall be selected by the Debtor. The Plan Administrator may resign his position by providing the Debtor at least thirty (30) days' notice and may not step down until the successor Plan Administrator is appointed by the Debtor or upon sooner order of the Bankruptcy Court.

  5.  Funding of Compensation and Expenses of Plan Administrator

  The compensation and expenses of the Plan Administrator shall be funded from the Distribution Fund. Before any Distribution is made by the Plan Administrator as Disbursing Agent, the Debtor shall obtain the Plan Administrator's budget for the next ensuing six (6) month period, and shall maintain such amount reasonably necessary to satisfy such expenses in the Distribution Fund prior to making any Distributions.

G.  Release of Liens

  Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Estate.

H.  Exemption from Certain Taxes and Fees

  Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, including the recording of any mortgages or liens or amendments thereto, shall not

be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

I.      Preservation of Rights of Action

The Debtor shall have the right to reduce and/or disallow any Claim based upon the existence of a Cause of Action against the Holder of such Claim.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Administrator will not pursue any and all available Causes of Action against them.  All rights to prosecute any and all Cause of Actions against any Entity, except as otherwise expressly provided in the Plan, are and shall be expressly reserved. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, all Cause of Actions are expressly reserved for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Cause of Actions upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      As of the Confirmation Date, but subject to the occurrence of the Effective Date, any prepetition Executory Contracts or Unexpired Leases not previously assumed or rejected shall be deemed rejected under sections 365 and 1123 of the Bankruptcy Code, except (a) the Debtor's lease of his residence at 114 Mulberry Street, New York, New York shall be deemed assumed as of the Confirmation Date (but subject to the occurrence of the Effective Date); (b) any Executory Contract or Unexpired Lease that is the subject of a separate motion to assume, assume and assign or reject filed pursuant to section 365 of the Bankruptcy Code before the entry of the Confirmation Order; or (c) any Executory Contract or Unexpired Lease which shall have expired or terminated pursuant to its terms; provided, however, that rejection pursuant hereto shall not constitute an admission that any such Executory Contracts or Unexpired Leases are in fact Executory Contracts or Unexpired Leases or that the Debtor had any liability thereunder.

B.      The Confirmation Order shall constitute an order of the Court approving the rejections or assumptions described herein, pursuant to section 365 of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence of the Effective Date.  Notwithstanding anything in this Plan to the contrary, no executory contract or unexpired lease shall be deemed assumed or rejected pursuant to the terms of this Article V if the Effective Date fails to occur for any reason.

C.    **Any Claim for damages arising by reason of the rejection of any pre-petition Executory Contract or Unexpired Lease hereunder must be filed on or before thirty (30) days following the Confirmation Date, and upon the failure of any entity to file such claim on or before such date, such entity shall be forever barred from asserting a claim on account of the rejection of such Executory Contract or Unexpired Lease, but shall nevertheless be bound by the provisions of the Plan.  Nothing in this Article V(C) will extend any prior Bar Date set by prior order of the Court.**

There shall be no restriction on the rights of the Debtor to object to any Claims relating to the rejection of Executory Contracts or Unexpired Leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in the Plan, Disclosure Statement or otherwise.

There are no Executory Contracts or Unexpired Leases except for the Debtor's lease of his residence which is being assumed.  In the event, however, any Claims arising from the rejection of an Executory Contract or Unexpired Lease are filed and Allowed, the same will constitute a Class 6 General Unsecured Claim.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the Plan, on each Distribution Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the Distribution to which such Claimant is entitled under the Plan.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

B.    Rights and Powers of the Plan Administrator as Disbursing Agent

1.    Powers of the Plan Administrator as Disbursing Agent

The Plan Administrator in his capacity as disbursing agent shall be empowered to, as applicable:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform his duties under the Plan; (b) make all Distributions contemplated under the Plan; (c)  employ one or more professionals to represent him with respect to his

responsibilities; and (d) exercise such other powers as may be vested by order of the Bankruptcy Court, pursuant to the Plan, or as deemed to be necessary and proper to implement the provisions hereof.

> 2. Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Debtor, Plan Administrator (including legal fees, in pursuing Causes of Action, Distributions, and other administration of the Plan) after the Effective Date and any reasonable compensation and expense reimbursement Claims (including reasonable attorneys' fees and expenses) made by the Debtor and Plan Administrator shall be paid from the Distribution Fund, without any further notice to or action, order, or approval of the Bankruptcy Court.

C. Distributions on Account of Claims Allowed After the Effective Date

> 1. Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

> 2. Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtor, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3.    Disputed Claims Reserve

On each Distribution Date (or as soon thereafter as is reasonably practicable), the Debtor shall deposit in the Disputed Claims Reserve the amount of Cash that would have been Distributed to the Holders of all Disputed Claims against the Debtor as if such Disputed Claims had been Allowed on each Distribution Date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves and for maximum Distribution purposes, to be the lesser of (a) the asserted amount of the Disputed Claim filed with the Bankruptcy Court, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, or (c) amount otherwise agreed by the Debtor and the Holder of such Disputed Claim for reserve purposes.  To the extent the amount of Cash deposited in the Disputed Claims Reserve on account of Disputed Claims against the Debtor exceeds the amount of Disputed Claims against the Debtor (as of the funding of the Disputed Claims Reserve) that later become Allowed, the excess shall be Distributed in accordance with the Plan.

D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.    Delivery of Distributions in General

Except as otherwise provided herein, the Plan Administrator shall make Distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's books and records as of the date of any such Distribution; provided that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.  If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one Distribution will be made with respect to the aggregated Claim.

2.    Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Plan Administrator has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of three months from the date the Distribution is mailed.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Estate, and shall be Distributed in accordance with the Plan, and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

3.    Manner of Payment Pursuant to the Plan

Any payment to be made pursuant to the Plan shall be made at the election of the Debtor by check or by wire transfer.

E.       Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Debtor and Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtor and Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

F.       Claims Paid or Payable by Third Parties

The Debtor shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not the Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the Distribution to the Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.       Resolution of Claims Against the Debtor

1.       Allowance of Claims Against the Debtor

On or after the Effective Date, the Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed

Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

2.      Prosecution of Objections to Claims Against the Debtor

After the Effective Date, the Debtor shall have the exclusive authority to File objections to Claims against the Debtor, and to settle, compromise, withdraw or litigate to judgment objections to any and all Claims against the Debtor, regardless of whether such Claims are in a Class or otherwise.  From and after the Effective Date, the Debtor may settle or compromise any Disputed Claim against the Debtor without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that settlement of Disputed Claims against the Debtor which will amount to a Claim of $25,000 or more shall require an Order of the Bankruptcy Court.  From and after the Effective Date, the Debtor shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises of Claims against the Debtor without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Time to File Objections to Claims Against the Debtor

Any objections to Claims against the Debtor shall be Filed on or before the Claims Objection Bar Date. For the avoidance of doubt, the Debtor's continuation of the Appeals shall be deemed an objection to the Nahla Claim without the need for the Debtor to file a separate motion or Claim objection. Notwithstanding this, the Debtor agrees that Nahla shall **not** be prohibited from voting on the Plan by virtue of the objection to its Claim through the Appeals.

4.      Estimation of Claims Against the Debtor

The Debtor may, at any time, and shall have the exclusive authority to, request that the Bankruptcy Court estimate (a) any Disputed Claim against the Debtor pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim against the Debtor, contingent Claim against the Debtor or unliquidated Claim against the Debtor, including during the litigation concerning any objection to any Claim against the Debtor or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim against the Debtor that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim against the Debtor, contingent Claim against the Debtor, or unliquidated Claim against the Debtor, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Debtor may elect to pursue additional objections to the ultimate Distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate

Distribution on account of such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim against the Debtor that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

5.      Expungement or Adjustment to Claims Against the Debtor Without Objection

Any Claim against the Debtor that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Debtor and any Claim that has been amended may be adjusted thereon by the Debtor in all cases without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

B.      Disallowance of Claims

All Claims against the Debtor held by any Entity from which property is sought by the Debtor or the Plan Administrator under Section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or the Plan Administrator alleges is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Debtor or the Plan Administrator on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned Sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

EXCEPT AS PROVIDED FOR UNDER THE PLAN OR OTHERWISE AGREED TO BY THE DEBTOR ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE (THAT DO NOT AMEND TIMELY FILED CLAIMS) SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE OF THE PLAN WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

C.      Amendments to Claims

On or after the Effective Date, except as otherwise specifically provided in the Plan, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Debtor, and any such unauthorized new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court.

# ARTICLE VIII.
## SETTLEMENT, EXCULPATIONS, INJUNCTIONS, AND RELATED PROVISIONS

A.    Compromise and Settlement of Claims and Controversies

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, Distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan or relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and is fair, equitable, and reasonable.  Except as otherwise provided in the Plan, a vote by a Holder of a Claim for or against this Plan does not constitute a waiver or release of any rights of the Debtor or the Estate, as applicable, to object to that Holder's Claim on any basis, including pursuant to Section 502(d) of the Bankruptcy Code on the basis that such Holder has received or was the beneficiary of a preferential, fraudulent, or other voidable transfer of assets, regardless of whether any Claims, Causes of Action, or other rights of the Debtor or the Estate are specifically or generally identified herein.

B.    Discharge

Pursuant to Section 1141(d) of the Bankruptcy Code, Confirmation of the Plan discharges the Debtor from any debt that arose before the Confirmation Date and any debt of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code whether or not a proof of Claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, such Claim is Allowed or the Holder of such Claim has accepted the Plan, except to the extent that the Debtor is denied a discharge under Section 727(a) of the Bankruptcy Code by Final Order.

C.    Exculpations

**To the extent permitted under Section 1125(e) of the Bankruptcy Code, the Debtor, the Plan Administrator and their professionals, consultants, representatives, employees, officers, directors, managers and agents, and their successors and assigns, shall neither have, nor incur, any liability to any person or entity for any postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of the Plan, including but not limited to the marketing of and sales process relating to any sale of assets, the Disclosure Statement, the Causes of Action, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; <u>provided</u> that the foregoing "Exculpation" shall have no effect on the liability of any of the parties that results from**

**any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct or limit the liability of any professional to its client pursuant to DR 6-102 of the Code of Professional Responsibility; <u>provided</u>, <u>further</u>, that each of the foregoing Entities shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement. Notwithstanding the foregoing, nothing set forth above shall operate to limit or excuse compliance by any Entity with any of their respective obligations under the Plan or otherwise or to modify the effect or consequence of any such failure to comply with such obligations.**

D.      Indemnification

Debtor's professionals, the Plan Administrator, and their professionals, consultants, representatives, employees, principals, officers, directors, managers and agents, and their successors and assigns shall be indemnified and held harmless by Debtor and the Estate, to the fullest extent permitted by law, solely from the Estate and the assets of the Estate, and any proceeds thereof, for any losses, claims, damages, liabilities, and expenses, including, without limitation, reasonable attorneys' fees, disbursements, and related expenses which such indemnified parties may incur or to which such indemnified parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of such indemnified parties on account of the acts or omissions in connection with any Exculpated matter; <u>provided</u>, <u>however</u>, that the Debtor and the Estate shall not be liable to indemnify any such indemnified party for any act or omission that has been determined by a Final Order as constituting gross negligence or willful misconduct. Notwithstanding any provision herein to the contrary, such indemnified parties shall be entitled to obtain advances from the Estate to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of any such indemnified party in its capacity as such; <u>provided</u>, <u>however</u>, that the Entities indemnified pursuant to this Article receiving such advances shall repay the amounts so advanced upon the entry of a Final Order finding that such indemnified parties were not entitled to any indemnity under the provisions of this Article.

E.      Injunction

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.C; OR (3) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM, OR**

**ENCUMBRANCE OF ANY KIND; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER. ALL PARTIES ARE ENJOINED FROM INTERFERRING IN ANY MANNER WITH ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

F.     Setoffs and Recoupments

Except as otherwise provided herein, the Debtor and the Plan Administrator, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off or recoup against any Allowed Claim or the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor of any such Claims, rights, and Causes of Action that the Debtor may possess against such Holder.

G.     Provisions as to Governmental Units

As to any Governmental Unit (as defined in Section 101(27) of the Bankruptcy Code), nothing in the Plan or Confirmation Order shall limit or expand the scope of release or injunction to which the Debtor or the Plan Administrator is entitled to under the Bankruptcy Code, if any. Nothing in the Plan or Confirmation Order provides a discharge to the Debtor or the Plan Administrator from any liability to a Governmental Unit. The injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, subsequent to the Confirmation Order, pursuing any police or regulatory action.

Notwithstanding anything contained in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall release, impair or otherwise preclude: (1) any liability to any Governmental Unit that is not a "claim" within the meaning of Section 101(5) of the Bankruptcy Code; (2) any Claim of any Governmental Unit arising on or after the Effective Date; (3) any valid right of setoff or recoupment of any Governmental Unit against the Debtor; or (4) any liability of the Debtor or Plan Administrator under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the Confirmation Date. Nor shall anything in the Confirmation Order or the Plan: (i) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether

any liabilities asserted by any Governmental Unit are discharged or otherwise barred by the Confirmation Order, the Plan, or the Bankruptcy Code.

Moreover, nothing in the Confirmation Order or the Plan shall exculpate any non-debtor, including any exculpated party, from any liability to any Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the exculpated parties, nor shall anything in the Confirmation Order or the Plan enjoin any Governmental Unit from bringing any claim, suit, action or other proceeding against any non-debtor for any liability whatsoever.

Nothing contained in the Plan or Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtor, nor shall the Plan or Confirmation Order be deemed to have determined the federal tax treatment of any item, Distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

Nothing herein shall constitute a waiver of the necessity of a Governmental Unit to file a Claim by the Claims Bar Date or Administrative Claims Bar Date, or the rights of any party as a result of failure of a Governmental Unit to do so.

## ARTICLE IX.
### CONDITIONS PRECEDENT

A.     Condition Precedent to Confirmation of the Plan

It shall be a condition precedent to Confirmation of the Plan that the following conditions shall have been satisfied or waived:

1.     The Bankruptcy Court shall have entered the Disclosure Statement Approval Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Disclosure Statement Approval Order shall not be stayed and shall be effective immediately upon their respective entry; and

2.     The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry.

B.    Conditions Precedent to the Effective Date of the Plan

It shall be a condition precedent to the occurrence of the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

1.    The Confirmation Date shall have occurred; and

2.    The Confirmation Order shall not be subject to any stay.


# ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    Modification of Plan

Subject to the limitations contained herein, the Debtor reserve the right to modify the Plan as to immaterial terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserve the right to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

B.    Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date or the Effective Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Effective Date does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption and assignment or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims; (b) prejudice in any manner the rights of the

Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.      Except as otherwise provided in the Plan, Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Obligations pursuant to Section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action or any conflicting claims or demands made or asserted with respect to an Allowed Claim;

7.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.     Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.     Resolve any case, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation or enforcement of the Plan;

11.    Resolve any case, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, injunctions, exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such injunctions and other provisions;

12.    Resolve any case, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI;

13.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.    Adjudicate any and all disputes arising from or relating to Distributions under the Plan or any transactions contemplated therein;

16.    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.    Determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

18.    Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.    Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

20.    Hear and determine matters concerning Section 1145 of the Bankruptcy Code;

21.    Hear and determine all disputes involving the existence, nature, or scope of the Exculpations, the Indemnifications and the Injunctions;

22.     Enforce all orders previously entered by the Bankruptcy Court;

23.     Enter an order concluding or closing the Chapter 11 Case; and

24.     Enforce the Exculpations, the Indemnifications and the Injunctions, as set forth in Article VIII.

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.      Immediate Binding Effect

Subject to Article IX.B and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Estate, the Plan Administrator, and any and all Holders of Claims against or in the Debtor, regardless of whether such Claims are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in such plan, each Entity acquiring property under such plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.  All Claims shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim has voted on the Plan.

B.      Additional Documents

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All Holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      Post-Confirmation Reports

The Debtor shall file reports on his disbursements with the Bankruptcy Court on a quarterly basis, within fifteen (15) days after the conclusion of each such period until the entry of a final decree closing the Chapter 11 Case.  Any such reports shall be prepared consistent with (both in terms in content and format) the applicable Bankruptcy Court and United States Trustee Guidelines for such matters.

D.      Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order with respect to the Plan.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Confirmation Order shall be or

shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims prior to the Effective Date.

E.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.     Service of Documents

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor shall be served on:

> Joseph Klaynberg
> 114 Mulberry Street
> New York, NY 10013
> Email:  klaynbergj@gmail.com
>
> with copies to:
>
> Cullen and Dykman LLP
> Attn: Matthew G. Roseman, Esq.
> Bonnie L. Pollack, Esq.
> 100 Quentin Roosevelt Boulevard
> Suite 402
> Garden City, New York 11530
> Telephone:  (515) 296-9143
> Email: mroseman@cullenllp.com
>              bpollack@cullenllp.com

G.     Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.     Entire Agreement

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. Respectfully submitted, as of the date first set forth above.

Dated: July 15, 2022

/s/ Joseph Klaynberg
Joseph Klaynberg

20315309v3