# EXHIBIT A

# LIQUIDATION ANALSIS

EXHIBIT A

Assets (Liquidation Value)[1]

| | |
|---|---|
| Cash (as of Effective Date) | $50,000 |
| Sands Point Property Interest | $1,900,000 |

Connecticut Interests

| | |
|---|---|
| 5CP LLC (5 Constitution Plaza) | $282,752 |
| (ownership through Debtor, JEDR, KS Equities) | |
| Spectra TOP (100 Trumbull) | $130,617 |
| (ownership through WW Spectra, JEDR (through HSK Mulberry), JKIG) | |
| Spectra 111 (111 Trumbull) | $0 |
| (ownership through Klaynberg Family Group, JKIG, KS Equities) | |
| Spectra 101 (101 Trumbull) | $0 |
| (ownership through Klaynberg Family Group, JKIG, KS Equities) | |

Equity Interests

| | |
|---|---|
| 318 Investors | $223,720 |
| 114 MS Member LLC | $554,190 |
| (ownership through Debtor, JEDR, AM Club, KS Equities) | |
| Wonder Works | $0 |
| WWIG III (Greenpoint Partners) | $47,420 |
| WW1834 | $247,328 |
| Mark Paragon | $4,664 |
| International Design Direct | $81,487 |
| WW Eastern | $47,170 |
| Durdom | $0 |

| | |
|---|---|
| Matrimonial Litigation | $unknown |

---

[1] The Debtor believes that his ESOP, IRA and Life Insurance Policy are exempt from payment to creditors. Nahla's time to object to such exemptions has been extended to August 26, 2022. In the event any of such assets are found not to be exempt, they shall be included for distribution to creditors under the Plan.

Recoveries of Monies Owed $unknown[2]

    Chabad of Grammercy Park ($650,000)
    Wonder Works Corp. ($357,161)
    Valentina Petchorina ($33,470)

---

[2] Collectability of these debts owed to Debtor is questionable if not unlikely.

# EXHIBIT B

# DISPOSABLE INCOME PROJECTIONS

22420.2000 20319893v2

Joseph Klaynberg
Projected Income

| Entity | Type | Note | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | |
|---|---|---|---|---|---|---|---|---|---|
| Spectra 111 LLC* | Distributions | 10% of amount paid to Klaynberg Family Group | $ 13,241.17 | $ 13,903.23 | $ 7,299.19 | | | | Increasing by 5% each year through Q2 2023 |
| Spectra TOP LLC* | Distributions | 10% of amount paid to Klaynberg Family Group | $ 1,065.70 | $ 1,118.99 | $ 587.47 | | | | Increasing by 5% each year through Q2 2023 |
| 114 MS Member LLC* | Distributions | | $ 10,817.31 | $ 11,358.18 | $ 5,963.04 | | | | Increasing by 5% each year through Q2 2023 |
| KS Equities LLC* | Distributions | Interest in various other entities | $ 8,232.09 | $ 8,643.69 | $ 4,537.94 | | | | Increasing by 5% each year through Q2 2023 |
| JKG LLC* | Distributions | | $ 80.17 | $ 84.18 | $ 44.19 | | | | Increasing by 5% each year through Q2 2023 |
| WW Eastern LLC* | Distributions | | $ 1,067.00 | $ 1,120.35 | $ 588.18 | | | | Increasing by 5% each year through Q2 2023 |
| Social Security Income | | | $ 35,245.20 | $ 37,007.46 | $ 38,857.83 | $ 40,800.72 | $ 42,840.76 | | Increasing by 5% each year |
| | | Total | $ 34,503.44 | $ 71,473.81 | $ 56,027.48 | $ 38,857.83 | $ 40,800.72 | $ 42,840.76 | |
| | | Monthly Income | | $ 5,956.15 | $ 4,668.96 | $ 3,238.15 | $ 3,400.06 | $ 3,570.06 | |
| | | Monthly expenses | | | | | | | Source |
| | | Food, Clothing and Other Items | | $ (785.00) | $ (785.00) | $ (785.00) | $ (785.00) | $ (785.00) | https://www.irs.gov/businesses/small-businesses-self-employed/national-standards-food-clothing-and-other-items |
| | | Housing and Utilities | | $ (3,282.00) | $ (3,282.00) | $ (3,282.00) | $ (3,282.00) | $ (3,282.00) | https://www.irs.gov/businesses/small-businesses-self-employed/new-york-local-standards-housing-and-utilities |
| | | Out of Pocket Health Care | | $ (153.00) | $ (153.00) | $ (153.00) | $ (153.00) | $ (153.00) | https://www.irs.gov/businesses/small-businesses-self-employed/national-standards-out-of-pocket-health-care |
| | | Transportation: Ownership Costs | | $ (588.00) | $ (588.00) | $ (588.00) | $ (588.00) | $ (588.00) | https://www.irs.gov/businesses/small-businesses-self-employed/local-standards-transportation |
| | | Transportation: Operating Costs | | $ (406.00) | $ (406.00) | $ (406.00) | $ (406.00) | $ (406.00) | https://www.irs.gov/businesses/small-businesses-self-employed/local-standards-transportation |
| | | Net disposable per month | | $ 742.15 | $ (139.04) | $ (1,569.85) | $ (1,407.94) | $ (1,237.94) | |
| | | Disposable income total | | $ 8,905.81 | | | | | |

*Assuming interest will be sold by Q2 2023 and thus no distributions beyond that date

# EXHIBIT C

## PROPOSED FORM OF PLAN ADMINISTRATOR AGREEMENT

22420.2000 20326753v1

# PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the *"Agreement")*, dated as of _____, 2022, by and between Joseph Klaynberg, as debtor and debtor-in-possession (the *"Debtor"),* and _____, as Plan Administrator (the *"Plan Administrator"),* is executed in connection with the Debtor's Amended Chapter 11 Plan filed on August \_\_, 2022 (as may be amended from time to time, the *"Plan")* and confirmed by the United States Bankruptcy Court for the Southern District of New York (the *"Bankruptcy Court")* by order dated _____ (the *"Confirmation Order").* Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to such terms in the Plan.

## RECITALS

WHEREAS, the Plan provides for the appointment of a Plan Administrator, who will administer for the Debtor's Estate all Causes of Action except the Nahla Preference Action and the Appeals (as used in this Agreement, the term "Causes of Action specifically excludes such actions);

WHEREAS, this Agreement is executed to facilitate and implement the Plan;

WHEREAS, the Plan Administrator has been selected by the Oversight Committee, and has agreed to serve as Plan Administrator in accordance with this Agreement, the Plan and the Confirmation Order;

**NOW, THEREFORE** in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Debtor and the Plan Administrator agree as follows:

## ARTICLE I

## APPOINTMENT OF PLAN ADMINSITRATOR

1.1

(a) Appointment of Plan Administrator. The Plan Administrator is hereby appointed as Plan Administrator as of the Effective Date, to have all the rights, powers and duties set forth herein.

(b) Acceptance of Appointment. The Plan Administrator agrees to accept the appointment as Plan Administrator and agrees to observe and perform all duties imposed under this Agreement, the Plan and the Confirmation Order.

# ARTICLE II

## AUTHORITY, LIMITATIONS, AND DUTIES

2.1 <u>Authority of Plan Administrator</u>.

Except as set forth in this Agreement, the Plan Administrator is authorized to perform any and all acts necessary or desirable to administer the Causes of Action for the benefit of the Estate. Without limiting, but subject to, the foregoing and to Section 2.3 hereof, the Plan Administrator shall be expressly authorized, but shall not be required to:

(a) manage and monetize the Causes of Action, including prosecuting and resolving Causes of Action as provided herein;

(b) with respect to the Causes of Action, engage in, intervene in, join, compromise, object to, adjust, release, arbitrate, sue on or defend, counterclaim, setoff, recoup, pursue, prosecute, abandon, or otherwise deal with and settle any actions, suits, proceedings, dispute, claims, controversies, demands, causes of action or other litigation in favor of the Debtor or any counterclaims asserted therein, to enter into agreements relating to the foregoing, whether or not any suit is commenced or claim accrued or asserted and, in advance of any controversy to enter into agreements regarding arbitration, adjudication or settlement thereof all in the name of the Estate if necessary or appropriate, and institute or continue actions which were or otherwise could have been brought by the Debtor that constitute Causes of Action and prosecute or defend all Causes of Action on behalf of the Debtor and when appropriate, settle such actions and claims, in each case as the Plan Administrator shall deem advisable;

(c) assert or waive any privilege or defense on behalf of the Estate relating solely to the Causes of Action;

(d) retain and pay such law firms and other professionals to assist in its duties as Plan Administrator on such terms as the Plan Administrator deems appropriate without Bankruptcy Court approval, <u>provided, however</u>, that the Plan Administrator may not retain counsel to any of the members of the Oversight Committee;

(e) seek any relief from, or resolution of, any disputes by the Bankruptcy Court;

(f) appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Causes of Action; and

(g) without limitation, to do any and all things necessary to accomplish the purposes of the Plan and this Agreement.

2.2     Limitations on Plan Administrator's Authority.

Notwithstanding anything to the contrary herein, the Plan Administrator must consult with, and obtain approval of, the Oversight Committee (which approval shall not be unreasonably withheld or denied) or, in the absence of such approval, an Order of the Bankruptcy Court, concerning any compromise or settlement of a Cause of Action proposed by the Plan Administrator, provided that the Oversight Committee shall be conclusively presumed to have approved any such compromise or settlement if it fails to object thereto in a writing received by the Plan Administrator within ten (10) Business Days following written notification to the Oversight Committee from the Plan Administrator of the intended compromise or settlement.

2.3     Additional Powers.

Except as otherwise set forth in this Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, without prior or further authorization the Plan Administrator may control and exercise authority over the Causes of Action. No person dealing with the Plan Administrator shall be obligated to inquire into the authority of the Plan Administrator in connection with the Causes of Action.

2.4     Distributions.

(a)     Upon resolution of any Cause of Action, the Plan Administrator shall pay to the Disbursing Agent all proceeds of such Cause of Action for Distribution under the provisions of the Plan. The Plan Administrator shall not have the authority to make Distributions under the Plan.

### ARTICLE III

### THE PLAN ADMINISTRATOR

3.1     Generally.

The Plan Administrator will initially be _____. The Plan Administrator shall serve as Plan Administrator until its successor shall have been appointed in accordance with Article V or until resignation, death or removal. The Plan Administrator's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Agreement and not otherwise.

3.2     Responsibilities of Plan Administrator.

Except as expressly set forth herein, the Plan Administrator shall have absolute discretion to pursue or not to pursue any and all Causes of Action as it determines are in the best interests of the Estate and consistent with the purposes of this Agreement and shall have no liability for the outcome of their decision. The Plan Administrator shall have authority to bind the Estate and for all purposes of this Agreement, shall be acting as Plan Administrator,

3

and not in its individual capacity.

### 3.3 Expense Reimbursement and Compensation.

The Plan Administrator shall prepare and submit to the Oversight Committee for approval a semi-annual plan and budget setting forth in reasonable detail (i) the Plan Administrator's anticipated actions to administer the Causes of Action and (ii) the anticipated expenses (including expenses of professionals retained by the Plan Administrator) associated with doing so. Any such plan and budget as approved by the Oversight Committee is referred to herein as the "***Budget***". All actions by the Plan Administrator must be consistent with the Budget.

### 3.4 No Bond.

The Plan Administrator shall serve without bond.

### 3.5 Confidentiality.

The Plan Administrator shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Causes of Action relates or of which it has become aware in its capacity as Plan Administrator, except as otherwise required by law.

## ARTICLE IV

## SUCCESSOR PLAN ADMINISTRATOR

### 4.1 Removal.

The Plan Administrator may be removed by the affirmative vote of a majority of the members of the Oversight Committee. Such removal shall become effective on the date action is taken.

### 4.2 Resignation.

The Plan Administrator may resign by giving not less than thirty (30) days' prior written notice thereof to the Oversight Committee. Such resignation shall become effective on the later to occur of: (a) the day specified in such notice; and (b) the appointment of a successor Plan Administrator by the majority of the Oversight Committee and the acceptance by such successor of such appointment. If a successor Plan Administrator is not appointed or does not accept its appointment within thirty (30) days following delivery of notice of resignation, the Plan Administrator may petition the Bankruptcy Court for appropriate relief.

### 4.3 Appointment of Successor Plan Administrator.

In the event of the death or incompetency of the Plan Administrator, or removal of the Plan Administrator pursuant to Section 4.1 hereof, the Oversight Committee shall appoint a successor Plan Administrator. Every successor Plan Administrator appointed hereunder shall

execute, acknowledge, and deliver to the Bankruptcy Court an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Plan Administrator, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Plan Administrator.

4.4 Continuity.

Unless otherwise ordered by the Bankruptcy Court (or another court of competent jurisdiction), the death, resignation, incompetence or removal of the Plan Administrator shall terminate or remove any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Plan Administrator. In the event of the resignation or removal of the Plan Administrator, the Plan Administrator shall promptly execute and deliver such documents instruments, final reports, and other writings as may be reasonably requested from time to time by the Bankruptcy Court (or another court of competent jurisdiction).

## ARTICLE V

## REPORTS TO OVERSIGHT COMMITTEE

5.1 The Plan Administrator shall provide reporting to the Oversight Committee in such time intervals as is agreed with the Oversight Committee. Such reporting shall advise the Oversight Committee of the status of the investigation, litigation or settlement discussions respecting any Causes of Action. Such reporting shall also be provided to the Debtor upon reasonable request.

## ARTICLE VI

## TERMINATION OF AGREEMENT

6.1 Termination of Agreement.

This Agreement shall be terminated, and the Plan Administrator shall be discharged, at such time as (i) the Plan Administrator determines that the prosecution or other resolution of any Causes of Action remaining is not likely to yield sufficient additional proceeds to justify further pursuit and (ii) all funds received by the Plan Administrator in connection with all other the Causes of Action have been paid over to the Disbursing Agent for Distribution under the Plan. The Plan Administrator shall not unduly prolong the termination of this Agreement and shall at all times endeavor to resolve, settle, or otherwise dispose of all Causes of Action as soon as practicable.

6.2 Upon termination of this Agreement, the Plan Administrator shall turn over to the Estate all books, records, pleadings and any other documents relating to the Causes of Action in the possession, custody or control of the Plan Administrator.

# ARTICLE VII

## LIMITATIONS ON LIABILITY; INDEMNIFICATION

7.1  <u>Liability of Plan Administrator; Indemnification</u>.

The Plan Administrator and his partners, affiliates, employees, attorneys or professionals, or any of their duly designated agents or representatives (the ***"Covered Persons")*** shall not be personally liable for any claim asserted against any of them or the Estate for any actions taken or omitted in their capacity as Plan Administrator in furtherance of their responsibilities hereunder except to the extent that their conduct is determined by a Final Order to be due to their own willful misconduct, gross negligence, fraud, self-dealing, or *ultra vires* acts. The Estate shall indemnify and hold harmless the Covered Persons from and against and in respect of all liabilities, losses damages, claims costs, and expenses, including, but not limited to, attorneys fees and costs payable monthly in arrears arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the Causes of Action or the implementation or administration of this Agreement and the Plan; *provided, however,* that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence, fraud, self-dealing, or *ultra vires* acts as determined by a Final Order. Any indemnification claim of a Covered Person shall be satisfied solely from the Distribution Fund.

7.2  <u>Liability of Oversight Committee; Indemnification</u>.

The members of the Oversight and their Covered Persons shall not be personally liable for any claim asserted against any of them or the Estate for any actions taken or omitted in their capacity as members of the Oversight Committee in furtherance of their responsibilities hereunder except to the extent that their conduct is determined by a Final Order to be due to their own willful misconduct, gross negligence, fraud, self-dealing, or *ultra vires* acts. The Estate shall indemnify and hold harmless the Covered Persons from and against and in respect of all liabilities, losses damages, claims costs, and expenses, including, but not limited to, attorneys fees and costs payable monthly in arrears arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the Causes of Action or the implementation or administration of this Agreement and the Plan; *provided, however,* that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence, fraud, self-dealing, or *ultra vires* acts as determined by a Final Order. Any indemnification claim of a Covered Person shall be satisfied solely from the Distribution Fund.

7.3  <u>Reliance by Plan Administrator.</u> The Plan Administrator may absolutely and unconditionally rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database believed by him to be genuine and to have been signed or presented by the proper party or parties, and may consult with legal counsel, financial or accounting advisors, and other professionals to be selected by the Plan Administrator and may

rely, in good-faith, on the advice thereof, and shall not be liable for any action taken or omitted to be taken in accordance with the advice thereof.

    7.4    <u>Recourse Limited to Distribution Fund.</u>

Any liability incurred by the Covered Persons in carrying out the terms of this Agreement shall only be satisfied from the Distribution Fund, and neither the Plan Administrator, members of the Oversight Committee nor any of the other Covered Persons shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability. Nothing contained in this Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by the Plan Administrator or Oversight Committee of any of the liabilities, obligations or duties of the Debtor and shall not be deemed to be or contain a covenant or agreement by the Plan Administrator or Oversight Committee to assume or accept any such liability, obligation or duty.

    7.5    <u>Non-Liability for Acts of Others</u>.

The Plan Administrator may, in connection with the performance of his functions, and in his sole and absolute discretion, consult with his attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith reliance upon the advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and his determination not to do so shall not result in the imposition of liability on the Plan Administrator or his agents, unless such determination is based on willful misconduct, gross negligence, fraud, self-dealing, or *ultra vires* acts as determined by a Final Order. Nothing contained in this Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Plan Administrator of any of the liabilities, obligations, or duties of the Debtor or a covenant or agreement by the Plan Administrator to assume or accept any such liability, obligation or duty. Any successor Plan Administrator may accept and rely upon any statement or representation made by a predecessor Plan Administrator or its agents as to the Causes of Action or as to any other fact bearing upon the prior administration of the Causes of Action, so long as it has a good faith basis to do so. A successor Plan Administrator shall not be liable for having accepted and relied in good faith upon any such statement or representation if it is later proved to be incomplete, inaccurate, or untrue. A successor Plan Administrator shall not be liable for any act or omission of any predecessor Plan Administrator, nor have a duty to enforce any claims against any predecessor Plan Administrator on account of any such act or omission.

    7.6    <u>Confirmation of Survival of Provisions</u>.

Without limitation in any way of any provision of this Agreement, the provisions of this Article VII shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Plan Administrator, or the termination of this Agreement, and shall inure to the benefit of the Plan Administrator's respective heirs, successors, and assigns.

## ARTICLE VIII

## AMENDMENT AND WAIVER

8.1 Amendment and Waiver.

Any substantive provision of this Agreement may be amended or waived by the Plan Administrator and either (a) the Oversight Committee (notice of which shall be filed within twenty (20) days thereof on the Bankruptcy Court's electronic docket in the Debtor's case), or (b) an Order of the Bankruptcy Court. Technical or immaterial amendments to this Agreement may be made, as necessary, to clarify this Agreement or enable the Plan Administrator to effectuate the terms of this Agreement by the Plan Administrator without Bankruptcy Court approval but with the consent of the Oversight Committee. Notwithstanding this Section 8.1, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Plan.

## ARTICLE IX

## OVERSIGHT COMMITTEE

9.1 Oversight Committee.

The Oversight Committee shall be comprised of Series 2020A of Nahla Capital LLC, Wilmington Trust[1], and any other creditors who elect to sit on the Oversight Committee on the Ballot with respect to the Plan. The Oversight Committee shall supervise the Plan Administrator in accordance with this Agreement and the Plan. Except as otherwise set forth herein, approval of a simple majority of the members of such Oversight Committee shall be required for the Oversight Committee to act on any matter. In the event of only two members of the Oversight Committee, unanimous approval of such members is required. If unanimous approval cannot be obtained, either member of the Oversight Committee or the Plan Administrator may seek an order of the Bankruptcy Court with respect to the act upon which they are unable to agree.

9.2 Resignation/Replacement/Removal of Member of Oversight Committee.

A member of the Oversight Committee may resign following written notice to the Plan Administrator and the other members of the Oversight Committee. Such resignation shall become effective on the later to occur of (i) the day specified in such written notice and (ii) the date that is thirty (30) days after the date such notice is delivered. A member of the Oversight Committee may only be removed by entry of a Bankruptcy Court order finding that cause exists to remove such member. In the event that a member of the Oversight Committee is removed in accordance with the immediately proceeding sentence, dies, becomes incapacitated, resigns or otherwise becomes unavailable for any reason, such member's replacement shall be appointed by the unanimous vote of the remaining members of the Oversight Committee. The appointment of a successor member of the Oversight Committee shall be evidenced by the filing with the

---

[1] The Debtor is in discussions with Wilmington Trust to serve on the Oversight Committee.

Bankruptcy Court of a notice of appointment, which shall include the name, address and telephone number of the successor member of the Oversight Committee.

9.3  Compensation.

Each member of the Oversight Committee shall serve without compensation but shall be entitled to reimbursement from the Distribution Fund of all actual, reasonable and documented out-of-pocket costs and expenses incurred in connection with their service on the Oversight Committee.

9.4  Confidentiality.

Each member of the Oversight Committee shall, while serving as a member of the Oversight Committee under this Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any of the Causes of Action or of which he or she has become aware in his or her capacity as a member of the Oversight Committee.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1  Preservation of Privilege and Defenses.

Any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to the Causes of Action shall vest in the Plan Administrator and its representatives, and the Debtor and the Plan Administrator are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses. Any and all work-product created by on or behalf of the Plan Administrator, its retained professionals (including, but not limited to, its counsel), agents, representatives, and employees shall be deemed confidential to the extent that such work-product is not protected by any applicable attorney work-product privilege.

10.2  Laws as to Construction.

This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

10.3  Severability.

If any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or

unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

10.4  Notices.

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this Section 10.4):

*If to the Plan Administrator:*

[insert]

*If to the Debtor:*

Bonnie L. Pollack, Esq.
Matthew G. Roseman, Esq.
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Fax: (516) 357-3792
Email: bpollack@cullenllp.com
        mroseman@cullenllp.com

*If to the Oversight Committee:*

[insert]

10.5  Headings.

The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

10.6  Relationship to the Plan.

The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates the provisions of the Plan. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Agreement. If any provisions of this

Agreement are found to be inconsistent with the provisions of the Plan, the provisions of this Agreement shall control.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**DEBTOR:**

By: _____
Joseph Klaynberg

**PLAN ADMINISTRATOR:**

By: _____