**UNITED STATES BANRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Joseph Klaynberg, | : | Case No. 22-10165 (MG) |
| | : | |
| Debtor. | : | Related Dkt. Nos.: 130, 160 |

# OBJECTION OF SERIES 2020A OF NAHLA CAPITAL LLC TO DEBTOR'S MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§105 AND 363, AUTHORIZING PRIVATE SALE OF INTEREST IN SANDS POINT PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES

Patrick L. Robson
Robert A. Rich
Silvia N. Ostrower
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
probson@huntonak.com
rrich2@huntonak.com
sostrower@huntonak.com

*Attorneys for Series 2020A of Nahla Capital LLC*

## TABLE OF CONTENTS

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
|     I.    The Bankruptcy Case | 2 |
|     II.    Nahla's Claim | 2 |
|     III.    The Debtor's Asset Protection Scheme | 3 |
|     IV.    The Plan and Proposed Sale | 3 |
| ARGUMENT | 4 |
|     I.    The Proposed Sale Must be Evaluated Under an Entire Fairness Standard | 4 |
|     II.    The Proposed Sale Should Be Denied Under Any Standard | 7 |
|     III.    No Basis Exists for the "Good Faith" Findings Contained in the Proposed Sales Order | 8 |
| CONCLUSION | 8 |

# TABLE OF AUTHORITIES

Page(s)

Cases

*Chorches v. Chen (In re Xiao),*
 608 B.R. 126 (Bankr. D. Conn. 2019) ............................................................................... 7

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),*
 722 F.2d 1063 (2d Cir. 1983) .......................................................................................... 4

*In re Borders Grp., Inc.,*
 453 B.R. 477 (Bankr. S.D.N.Y. 2011) .............................................................................. 8

*In re Chira*,
 353 B.R. 693 (Bankr. S.D. Fla. 2006) .............................................................................. 5

*In re Dupuis*,
 265 B.R. 878 (Bankr. N.D. Ohio 2001) ........................................................................... 6

*In re Gen. Motors Corp.*,
 407 B.R. 463 (Bankr. S.D.N.Y. 2009) ......................................................................... 4, 7

*In re Innkeepers USA Tr.*,
 442 B.R. 227 (Bankr. S.D.N.Y. 2010) .............................................................................. 5

*In re Latam Airlines Grp. S.*A.,
 620 B.R. 722 (Bankr. S.D.N.Y. 2020) ......................................................................... 4, 5

*In re LSC Commc'ns, Inc.,*
 631 B.R. 818 (S.D.N.Y. 2021) ......................................................................................... 5

*In re MF Glob. Ltd.*,
 535 B.R. 596 (Bankr. S.D.N.Y. 2015) .............................................................................. 4

*In re MSR Hotels & Resorts, Inc.*,
 Case No. 13-11512, 2013 WL 5716897 (Bankr. S.D.N.Y. Oct. 1, 2013) ........................ 5

Statutes

11 U.S.C. § 101(31)(A)(i) ....................................................................................................... 5
11 U.S.C. § 363 ............................................................................................................... 3, 4, 8
11 U.S.C. § 1107 and 1108 ..................................................................................................... 2

Series 2020A of Nahla Capital LLC ("Nahla"), by and through its undersigned counsel, hereby objects to the Debtor's motion (DN 130) (the "Motion") for entry of an order authorizing the private sale of the Debtor's interests in property located at 5 Lillian Court, Sands Point, New York (the "Sands Point Residence") to Emily Klaynberg ("Emily"), and respectfully states as follows.

## Preliminary Statement

1. The Debtor's proposed private sale of his interest in the Sands Point Residence to his former spouse, Emily, in exchange for cash he fraudulently transferred to her, should be denied.

2. Emily is an insider and a litigation target for the estate. As part of the Debtor's scheme to place his assets beyond the reach of Nahla, Emily received the majority of the Debtor's assets, and nearly all of the Debtor's cash and securities, under a separation agreement entered at the same time Nahla was pursuing its claim against the Debtor. A fiduciary acting in the interests of the estate would be pursuing avoidance claims against Emily for return of millions of dollars in cash, securities and real estate transferred to her both pre- and post-petition, not offering her an opportunity to convert attachable assets into an illiquid residential real estate interest, which will be more difficult to collect upon.

3. While the Motion certainly fails to justify a private sale to an insider under the heightened scrutiny applicable to such a transaction, it would fail under any standard. The Debtor provides no rationale for conducting this sale outside of the chapter 11 plan. The proposed "good faith" findings are particularly improper given Emily's cooperation in the Debtor's transparently fraudulent asset protection scheme. For these reasons, and the reasons set forth below, the Motion should be denied.

## BACKGROUND

### I. The Bankruptcy Case

4. On February 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned proceeding (the "Bankruptcy Case"). The Debtor remains in possession of his property and continues to manage his affairs as a debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Bankruptcy Case, and no official committee of unsecured creditors has been appointed.

### II. Nahla's Claim

5. Nahla holds a claim against the Debtor of over $13 million, for which a prepetition judgment was awarded, on account of guaranties executed by the Debtor in connection with the mezzanine loan financing of a residential construction project. Nahla timely filed a proof of claim designated as Claim No. 6-1.

6. Nahla's claim is secured by judgment liens on the Sands Point Residence. The Debtor filed an adversary proceeding seeking to avoid the attachment of Nahla's judgment liens as an allegedly preferential transfer, which adversary proceeding remains pending before this Court.[1]

7. A more complete description of events giving rise to Nahla's claim is set forth in Nahla's objection to the Debtor's disclosure statement (the "DS Objection"), filed contemporaneously herewith and incorporated herein by reference.

---

[1] *See Klaynberg v. Series 2020A of Naha Capital LLC*, Adv. Pro. No. 22-01014-MG.

2

## III. The Debtor's Asset Protection Scheme

8. Beginning around the time that the underlying borrower defaulted on Nahla's loan, thereby exposing the Debtor to liability on the guaranty, the Debtor began implementing a scheme to hinder, delay and defraud Nahla by transferring assets out of his name and into the hands of family members and other insiders.

9. The cornerstone of this asset protection scheme involved a sham separation and divorce with his then-wife Emily. In connection with that separation, the Debtor transferred to Emily the vast majority of his cash and securities (among other assets). The separation agreement, dated November 17, 2020 (the "Separation Agreement"), provided that Emily and the Debtor would retain ownership of the Sands Point Residence as tenants in common, but with Emily entitled to sole and exclusive occupancy unless and until certain conditions occur.[2]

10. A more complete description of the Debtor's asset protection scheme is set forth in the DS Objection, and incorporated herein by reference.

## IV. The Plan and Proposed Sale

11. On July 15, 2022, the Debtor filed the Motion, attached to which is an agreement (the "Purchase Agreement") for the private sale of the Debtor's 50% interest in the Sands Point Residence to Emily in exchange for $1.9 million, pursuant to sections 363(b) and (f) of the Bankruptcy Code (the "Proposed Sale").

12. Also on July 15, 2022, the Debtor filed a chapter 11 plan (as amended, the "Plan") and disclosure statement, each of which was amended on August 8, 2022 (DN 165, 166).

---

[2] Separation Agreement, § 7.3. A copy of the Separation Agreement is annexed to the DS Objection as Exhibit 8, and also has been filed at DN 116.

13. The Plan provides, among other things, that the Sales Point Residence will be sold pursuant to the Motion. However approval of the Motion is not a condition to confirmation or effectiveness of the Plan.

**ARGUMENT**

I. **The Proposed Sale Must Be Evaluated Under an Entire Fairness Standard.**

14. After notice and a hearing, a debtor in possession may "use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

15. A debtor's decision to sell assets outside of the ordinary course of business must be based upon "sound business judgment." *In re MF Glob. Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015). Courts have considered several non-exclusive factors in determining whether a sale under section 363(b) of the Bankruptcy Code, outside of a plan, represents an exercise of sound business judgment, including, for example: (i) whether the sale opportunity still will exist as of the time of plan confirmation; (ii) whether there is a material risk that by deferring the sale, the "patient will die on the operating table"; (iii) whether the estate has sufficient liquidity to survive until plan confirmation; (iv) the likelihood that a plan will be proposed and confirmed in the near future; and (v) whether the asset is increasing or decreasing in value. *See In re Gen. Motors Corp.*, 407 B.R. 463, 490 (Bankr. S.D.N.Y. 2009). The Second Circuit has suggested that "whether the asset is increasing or decreasing in value" is the most important consideration. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

16. In the case of transactions between insiders, there is no presumption that the debtor acted with sound business judgment. *In re Latam Airlines Grp. S.*A., 620 B.R. 722, 769 (Bankr. S.D.N.Y. 2020) ("By definition, the business judgment rule is not applicable to transactions among a debtor and an insider of the debtor. Those kinds of transactions are inherently suspect because they are rife with the possibility of abuse.") (citation omitted). Instead, courts apply a "heightened

scrutiny" test in assessing the bona fides of a transaction among a debtor and an insider of the debtor. *Id.* (citing *In re MSR Hotels & Resorts, Inc.*, Case No. 13-11512, 2013 WL 5716897, at *1 (Bankr. S.D.N.Y. Oct. 1, 2013) ("[C]ourts in this jurisdiction have generally applied a heightened standard of scrutiny when the transaction [in] question is with an insider of the debtor.") (citing *In re Innkeepers USA Tr.*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010))). "In applying heightened scrutiny, courts are concerned with the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration." *Innkeepers*, 442 B.R. at 231.

17. The Debtor mistakenly contends that the business judgment rule applies to the Proposed Sale (Motion ¶ 14). Entire fairness applies because Emily is an insider of the Debtor. Section 101(31) of the Bankruptcy Code provides a non-exhaustive list of individuals and entities that are considered "insiders" of a debtor, which includes a debtor's relatives. *See* 11 U.S.C. § 101(31)(A)(i); *In re LSC Commc'ns, Inc.,* 631 B.R. 818, 823 (S.D.N.Y. 2021) ("That list is non-exhaustive"). Although a former spouse is no longer a "relative" following divorce, courts that have considered the issue often hold that a former spouse remains an "insider" as that term is used for purposes of bankruptcy law. *See*, *e.g., In re Chira*, 353 B.R. 693, 725 (Bankr. S.D. Fla. 2006) (holding that ex-wife and mother of the debtor's children with the power to withhold visitation rights, was an insider for bankruptcy purposes), aff'd, 378 B.R. 698 (S.D. Fla. 2007), aff'd, 567 F.3d 1307 (11th Cir. 2009). The factors that courts consider in determining whether a former spouse is an "insider" include, without limitation (i) the "the length of the parties' marriage"; (ii) whether the parties, after termination of their marriage, "maintain any sort of business relationship together"; (iii) the extent to which the parties' divorce was "adversarial in nature"; (iv) whether

the parties live together or share living expenses; (v) the time between the parties' physical separation and divorce; and (vi) the extent to which "the parties' marital assets and liabilities continue to be intertwined." *In re Dupuis*, 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001).

18. The Court already has found, in connection with Nahla's motion for derivative standing (DN 38), that the estate holds at least colorable claims against Emily based on her and the Debtor's "sham" separation and divorce arrangement. Emily may be found to be an insider on that basis alone.

19. But even had the Debtor and Emily entered into a bona fide separation and divorce, the relevant factors overwhelmingly support treatment of Emily as an insider. The Debtor and Emily had been married for over 37 years, since January 9, 1983, before the Separation Agreement was entered on November 17, 2020 and judgment of divorce entered on February 5, 2021. Emily continued to be employed by Wonder Works Construction Corp. ("Wonder Works"), a company founded by the Debtor and of which the Debtor is President, following the divorce and until earlier this year. Emily and the Debtor were "amicably divorcing,"[3] and Emily did not retain matrimonial counsel. Although the Debtor and Emily each testified that they no longer live together, they continued to pay living expenses out of joint accounts following the divorce. The Debtor from time to time assists with maintenance work at the Sands Point Residence, where Emily lives, and the Debtor even paid for Emily's vacation (with his corporate credit card) post-petition. The Debtor and Emily continue to own the Sands Point Property as tenants in common. Accordingly, she is an insider, and the entire fairness standard applies to the Proposed Sale.

---

[3] Debtor's Objection to Standing Motion (DN 116) at ¶ 18 ("Since he and Emily were amicably divorcing and splitting their assets, their financial consultants were participating in the discussions regarding the distribution of assets, and to keep legal fees to a minimum, Emily did not feel the need to hire her own counsel.")

## II. The Proposed Sale Should Be Denied Under Any Standard.

20. Although the entire fairness standard applies, the Proposed Sale should be denied under any standard.

21. First, the Proposed Sale represents a bad faith attempt by the Debtor to perpetuate the asset protection scheme which began prepetition. Prior to the Petition Date, when Nahla was pursuing its guaranty claims against the Debtor, the Debtor transferred substantially all of his cash and other liquid assets to Emily, but retained a 50% interest in the Sands Point Residence. Now that the Debtor has the benefit of the automatic stay, and Emily is the litigation target with respect to fraudulent transfer claims, the Debtor and Emily are attempting to reverse the strategy by having Emily transfer cash to the Debtor's estate in exchange for an interest in her residence, which will be more difficult to collect upon. *See Chorches v. Chen (In re Xiao)*, 608 B.R. 126, 163 (Bankr. D. Conn. 2019)("[T]he relevant inquiry is not simply whether [the debtor] received consideration, but whether that consideration was in a form available for execution by creditors, i.e, an assessment of the extent to which such creditors were deprived of the value of the diverted property.") (citation and internal punctuation omitted).

22. Second, the Motion is completely devoid of any justification for why the Proposed Sale should be approved outside of a chapter 11 plan. The property being sold is residential real property in Long Island, New York, for which there is no evidence of declining value. The Debtor argues that the sale price is fair, but fails to explain why the same sale opportunity would not "still exist as of the time of plan confirmation," particularly given that the Debtor already filed the Plan and moved for approval of the related disclosure statement, which is set to be heard at the same time as the Motion. *Gen. Motors*, 407 B.R. at 490.

23. Third, the sale price should be market-tested, rather than relying on an appraisal, particularly given that statements prepared by the Debtor's accountant reflect a substantially higher value ($4.85 million) for the Sands Point Residence as of the beginning of 2020.

24. Fourth, the Debtor's contention that Emily's exclusive right to reside in the Sands Point Residence would deter third party bidders lacks merit. That right was conveyed as part of the Separation Agreement and should be avoided in the coming fraudulent conveyance action against Emily.

### III. No Basis Exists for the "Good Faith" Findings Contained in the Proposed Sale Order.

25. Given Emily's participation in the Debtor's fraudulent protection scheme, the Debtor cannot establish that Emily is a "good faith" purchaser, and the findings in Recital G and paragraph 11 of the proposed form of sale order (DN 160-1) (the "Proposed Sale Order") are not justified. This is particularly true given Emily's status as an insider. *See In re Borders Grp., Inc.,* 453 B.R. 477, 484 (Bankr. S.D.N.Y. 2011) ("The proponent of good faith carries the burden to show good faith … In considering whether a sale is in 'good faith' under section 363(m), courts may consider whether a potential purchaser is an insider of the debtor.").

26. Moreover, the Proposed Sale Order should contain an express carve-out with respect to identified estate causes of action against Emily, making clear that nothing in the Proposed Sale Order would prejudice such claims.

### CONCLUSION

WHEREFORE, Nahla respectfully requests that the Court (i) deny the Motion, and (ii) grant such other and further relief in favor of Nahla as the Court deems just or proper.

Dated: August 10, 2022
      New York, New York

*/s/ Robert A. Rich*
Patrick L. Robson
Robert A. Rich

Silvia N. Ostrower
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
probson@huntonak.com
rrich2@huntonak.com
sostrower@huntonak.com

*Attorneys for Series 2020A of Nahla Capital LLC*