| | |
|---|---|
| **KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP** <br> 200 West 41st Street, 17th Floor <br> New York, New York 10036 <br> Telephone: (212) 972-3000 <br> Facsimile: (212) 972-2245 <br> Fred Stevens <br> Lauren C. Kiss <br><br> *Counsel to Emily Klaynberg, Proposed Purchaser* | **Hearing Date: August 17, 2022** <br> **Hearing Time: 10:00 a.m. (EST)** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                                                    :
                                                                              :  Chapter 11
JOSEPH KLAYNBERG,                                      :
                                                                              :  Case No. 22-10165 (MG)
                                           Debtor.        :
------------------------------------------------------------------x

**STATEMENT OF PROPOSED PURCHASER EMILY KLAYNBERG TO OBJECTION OF SERIES 2020A OF NAHLA CAPITAL LLC TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363, AUTHORIZING THE PRIVATE SALE OF INTEREST IN SANDS POINT PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

**TO THE HONORABLE MARTIN GLENN,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Emily Klaynberg ("Emily"), the proposed purchaser of Joseph Klaynberg's (the "Debtor") interest in the real property located at 5 Lillian Court, Sands Point, New York (the "Sands Point Residence"), by her undersigned counsel, hereby submits this statement (the "Statement") to the objection (the "Objection") [Docket No. 172] of Series 2020A of Nahla Capital LLC ("Nahla") to the Debtor's motion (the "Sale Motion") [Docket No. 130] for entry of an order authorizing the private sale of the Debtor's interest in the Sands Point Residence, respectfully represents and alleges as follows:

# PRELIMINARY STATEMENT

1.      Emily is the Debtor's ex-spouse. Emily and the Debtor separated in 2017 after over thirty years of marriage, and then finalized their property settlement and divorce from November 2020 to February 2021. Nahla is a creditor of the Debtor and has taken significant issue with the Debtor and Emily's property settlement and divorce. Nahla summarily concluded months ago that the "divorce was a sham" and that the Debtor and Emily "put into motion a scheme to put the majority of the Debtor's assets beyond the reach of Nahla and other creditors."[1] Nahla is wrong in its conclusions and application of the law. This will be borne out in future proceedings if these matters cannot be resolved consensually.

2.      Emily is not a creditor of the Debtor, or otherwise a direct stakeholder in the Debtor's case. Accordingly, Emily has had to sit patiently and quietly as Nahla makes one scurrilous allegation after another against Emily on the record of this proceeding.[2] While this situation is incredibly frustrating to Emily, she understands the process and is patiently waiting for her opportunity to address these issues.

3.      To date, there have been at least four different concepts and proposals for who will control the claims that Nahla believes exist against Emily as follows: (i) Nahla standing in the shoes of the Debtor pursuant to *In re STN Enterprises*, 779 F.2d 901 (2d Cir. 1985) [Motion, Docket No. 38]; (ii) a Plan Administrator selected by the Debtor [Plan, Docket No. 131]; (iii) a

---

[1] Nahla Motion for Authority to Pursue Certain Claims, March 8, 2022, Docket No. 38, ¶¶2 & 35.

[2] Among other things, Nahla includes in the "Background" of nearly every pleading that it files a section conclusively titled "The Debtor's Sham Separation and Divorce." See e.g., (i) Id. at Background § III; (ii) Nahla's Application for FRBP 2004 Examination, June 3, 2022, Docket No. 91, Background § III; (iii) Nahla's Objection to Debtor's Motion to Extend Exclusivity, June 9, 2022, Docket No. 100, Background § III; (iv) Nahla's Objection to Approval of Debtor's Disclosure Statement, Aug. 10, 2022, Docket No. 171, Background, § III(A); and (v) Nahla's Objection to the Motion, Aug. 10, 2022, Docket No. 172, ¶18 (eliminating the heading but stating definitively that "the estate holds at least colorable claims against Emily based on her and the Debtor's 'sham' separation and divorce arrangement."

trustee appointed by the United States Trustee under 11 U.S.C. § 1104;[3] and finally (iv) a Plan Administrator selected by an Oversight Committee comprised of Nahla, Wilmington Trust, and another creditor of the Debtor [Amended Plan, Docket No. 167]. Importantly, nobody has even suggested that any alleged claims against Emily be released, or that the Debtor ultimately retain prosecutorial control over them following confirmation of a plan. As stated by Emily's counsel at the July 20, 2022 hearing, Emily just needs to know who to talk to. Emily is ready, willing, and able to have a rational discussion regarding the alleged claims, her defenses, and a productive resolution.

4. For Emily's part, she has cooperated and responded positively to every request made by any parties in this case. First, Emily agreed to participate in mediation, to the terms of the parties' mediation agreement, to paying for an equal part of the mediation, and to the parties' selection of a mediator. Emily then invested significant time, energy, and resources in preparing for, attending, and participating in good faith in that unsuccessful mediation process. Second, Emily immediately agreed to Nahla's request for a deposition.[4] Third, Emily agreed to the transaction contemplated by the Sale Motion which is at issue here.

## STATEMENT REGARDING SALE TRANSACTION

5. Given that Emily is a party to the transaction, she believes that it is finally appropriate and necessary to provide this Court with her perspective. Emily will address here only issues regarding the transaction. As stated above, Emily will reserve her comments on the claims asserted by Nahla, and her responses to the numerous provocative and largely unnecessary

---

[3] This concept was raised by Nahla at the hearing on July 20, 2022, but no party has sought such relief by motion.

[4] Emily's counsel was first asked if she would agree to sit for a deposition on July 18, 2022. By the end of the day on July 20, 2022, Emily had agreed to sit for a deposition on August 4, 2022, in order to accommodate Nahla's litigation schedule. Emily then attended and fully cooperated at the scheduled deposition.

and argumentative statements made by Nahla in its pleadings.

6. Emily agreed to the sale transaction because it neatly, quickly, and fairly addressed two outstanding desires and needs: (i) Emily's desire to own and remain in her home; and (ii) the Debtor's estate's need to liquidate its assets and distribute the proceeds to creditors. These are important goals that are not mutually exclusive and can be fulfilled neatly and quickly with the proposed transaction.

7. Once the concept for the transaction was agreed to, the issue was price. In order to determine the most appropriate price, Emily obtained an appraisal from a neutral, third-party professional appraiser – East Coast Appraisal Service. East Coast Appraisal Service was referred by Emily's counsel and is used by bankruptcy trustees for situations just like this one.[5] After inspection and review of the sales of comparable properties, East Coast Appraisal Service arrived at a fair market value for the property of $4 million. This appears to be entirely in line with expectations and less reliable information available online.[6]

8. Once the value was established at $4 million, Emily agreed to purchase the Debtor's one-half interest for $1.9 million, which is $100,000 less than an even split. This amount seemed eminently reasonable in light of at least the following considerations:

    a) The consensual transaction obviates the need for brokerage commissions, which would total $200,000 assuming a commission of five percent (5%);

    b) The transaction obviates the need for litigation over the right to liquidate non-debtor Emily's interest in the property under 11 U.S.C. § 363(h),

---

[5] See, e.g., In re Gregory Yakubov, Case No. 18-44553 (NHL), Docket No. 54 (Bankr. E.D.N.Y. Dec. 6, 2019) (East Coast Appraisal Service retained by trustee David J. Doyaga, Sr. to value a home owned by the debtor and his ex-wife).

[6] The Debtor and Emily purchased the property in 2015 for $2.1 million. As of the date of this reply, the three leading online real estate sites value that property at between $3.682 and $3.951 million (Zillow and Trulia estimate the value at $3.682 million and Realtor.com estimates the value at $3.951 million).

where Emily believes that she has good defenses including the Debtor's contractual obligation to allow her to occupy the property under the separation agreement;

c) Assuming the estate succeeded in a claim to liquidate Emily's interest in the property under 11 U.S.C. § 363(h), the transaction recognizes Emily's right of first refusal under § 363(i) as a co-owner of the property; and

d) The transaction provides immediate liquidity to the Debtor's estate without any additional investment of time, effort, or professional fees.

9. Under these circumstances, whether evaluated under the business judgment rule, or the entire fairness standard, the proposed transaction should be approved. Emily thought the proposed transaction was a win-win scenario for both her and the Debtor's bankruptcy estate and was willing to proceed on that basis.

10. Nahla's first complaint about the proposed transaction is that Nahla believes that Emily is a litigation target of the estate and should not be permitted to convert liquid cash to less liquid real estate. Objection, ¶21. This argument is flawed for at least the following reasons:

(i) Emily is not ridding herself of any assets – the cash she is giving up is going to the Debtor's estate, and the real estate that she is gaining is staying with her;

(ii) Emily is a litigation target and not a judgment debtor, and there is a long road between the two. Prospective plaintiffs do not get to control the assets of prospective defendants. There is absolutely nothing preventing non-debtor Emily from using her assets in the manner that she deems to be responsible and appropriate until a judge or jury say otherwise, especially when all that she is doing is preserving her assets and maintaining her residence in a prudent manner;

and

(iii) As a co-owner of the property since its acquisition in 2015, Emily has a right of first refusal with respect to the Debtor's interest under 11 U.S.C. § 363(i). Thus, she has a statutory right to commit to this transaction, subject to any reasonable dispute on price.

11. Second, Nahla complains that the transaction should not occur outside of a plan. This argument and the timing of confirmation of any plan proposed by the Debtor is not within Emily's purview, so Emily will refrain from addressing this argument.

12. Third, Nahla argues that the property should be market tested. In response, Emily notes the following: (i) market tests take time and this transaction provides immediate liquidity; (ii) market tests cost money in the form of brokerage commissions while this transactions avoids that expense entirely; (iii) a market test presumes a right to sell which the estate only has after success in litigation against Emily under 11 U.S.C. § 363(h), which could be lengthy and costly; and (iv) it is difficult to obtain a reliable market test when prospective purchasers are made necessarily aware that the co-owner has, and absolutely intends to exercise, her statutory right of first refusal. All of these problems are resolved very neatly, fairly, and quickly by the proposed transaction.

13. Fourth, Nahla refutes the Debtor's contention that Emily's right to remain in the property pursuant to the separation agreement would deter prospective purchasers, since, as Nahla's claims, Emily's grant of such right is an avoidable fraudulent transfer. It is unclear whether the thing that may deter third party bidders is (i) Emily's right of occupancy under the separation agreement, or (ii) Emily's statutory right of first refusal, which is unavoidable under any theory advanced by Nahla. Regardless, there is really no need to argue the point as the

proposed transaction resolves it.

14. Emily has been, is, and fully intends to continue to be ready, willing, and able to work towards reasonable solutions to problems in this case. In Emily's view, the proposed transaction is a fair and reasonable solution to a number of problems and competing interests as outlined above. Emily is ready to close on the transaction should it be approved.

Dated: New York, New York
August 13, 2022

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
Fred Stevens
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
lkiss@klestadt.com

*Counsel to Emily Klaynberg, Proposed Purchaser*