CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Counsel for the Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                        :  Chapter 11
                                                              :
JOSEPH KLAYNBERG,                                             :  Case No. 22-10165 (MG)
                                                              :
                                                              :
                     Debtor.                                  :
                                                              :
------------------------------------------------------------x

## NOTICE OF MOTION FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT OF A&G REALTY PARTNERS, LLC AS BROKER FOR THE DEBTOR

**PLEASE TAKE NOTICE** that a hearing will be held before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), One Bowling Green, New York, New York 10004, on the 3rd day of October, 2022 at 10:00 a.m. (EST), or as soon thereafter as counsel can be heard, to consider the motion ("Motion") for entry of an order pursuant to sections 327(a) and 328 of the Bankruptcy Code, authorizing the employment and retention of A&G Realty Partners, LLC ("A & G") as broker for the Debtor.

**PLEASE TAK FURTHER NOTICE** that this hearing will be conducted via Zoom for Government. If you wish to participate, you must register your appearance by eCourt Appearances by 4:00 p.m. on September 30, 2022, using the following link: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the Motion must be (a) in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, (c) filed with the Bankruptcy Court in accordance

with General Order M-242 (as amended) by registered users of the Bankruptcy Court's case filing system must file electronically and all other parties in interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows' based word-processing format), (d) submitted in hard-copy form directly to the chambers of the Honorable Martin Glenn, Chief United States Bankruptcy Judge, and (e) served upon (i) the attorneys for the Debtor, Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York, 11530, Attn: Matthew G. Roseman and Bonnie L. Pollack; and (ii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Tara Tiantian, Esq.), so as to be received no later than September 26, 2022 at 4:00 p.m. (EST).

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion may be adjourned without further notice except as announced in open court on the Hearing Date, or at any adjourned hearing.

Dated: Garden City, New York
      September 2, 2022

                 CULLEN AND DYKMAN LLP

                 By:   s/ Bonnie Pollack
                    Matthew G. Roseman, Esq.
                    Bonnie L. Pollack, Esq.
                 100 Quentin Roosevelt Boulevard
                 Garden City, NY 11530
                 (516) 357-3700

                 Counsel for the Debtor

CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Counsel for Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                                              :
In re:                                                        : Chapter 11
                                                              :
JOSEPH KLAYNBERG,                                             : Case No. 22-10165 (MG)
                                                              :
                                                              :
                          Debtor.                             :
                                                              :
------------------------------------------------------------- x

**DEBTOR'S APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND
328 OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT OF A&G
REALTY PARTNERS, LLC AS BROKER FOR THE DEBTOR**

TO THE HONORABLE MARTIN GLENN, CHIEF UNITED STATES BANKRUPTCY
JUDGE:

Joseph Klaynberg, debtor and debtor-in-possession in the above-captioned case ( the

"Debtor"), respectfully submits this application (the "Application") for an order, pursuant to

Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2014-

1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"),

and sections 327(a) and 328 of title 11, United States Code (the "Bankruptcy Code"), for entry

of an order authorizing the employment and retention of A&G Realty Partners, LLC ("A & G")

as broker for the Debtor, and respectfully states as follows:

1

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On February 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

3.      The Debtor continues to manage and operate his property as a debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

4.      Simultaneously with the filing of his petition, the Debtor filed an Affidavit of pursuant to Local Bankruptcy Rule 1007-2 (the "1007 Affidavit").  A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the 1007 Affidavit, the contents of which are incorporated herein by reference.

5.      The Debtor holds membership interests (the "Equity Interests") in numerous entities (the "Entities").  Pursuant to the Debtor's Second Amended Chapter 11 Plan, the Debtor intends to market and sell the Equity Interests and distribute the proceeds of the sale to his creditors.

6.      In furtherance thereof, the Debtor has determined to engage A&G as his broker and advisor to assist him in selling the Equity Interests pursuant to a certain Services Agreement dated September 2, 2022 (the "Agreement").  A copy of the Agreement is annexed hereto as Exhibit "A".  Pursuant to the Agreement, A&G will provide advice and guidance in relation to the sale of the Equity Interests, create, prepare and implement a marketing plan for the sale of the Equity Interests, including preparing marketing materials, negotiating with third parties on behalf of the Debtor to assist him in the sale of the Equity Interests, summarizing purchase proposals,

20332170

meeting with representatives of the Entities or other persons whose consents are needed for the transfer of the Equity Interests and providing regular update reports to the Debtor.

## RELIEF REQUESTED

7. The Debtor seeks approval, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1 to employ and retain A&G as his broker and advisor in connection with this Chapter 11 case.

8. A&G is a diversified real estate consulting and advisory firm that specializes in the evaluation, restructuring, acquisition and disposition of a wide variety of assets. A&G has a wealth of experience in providing services regarding the review, analysis, restructuring, disposition, and negotiation of property. Additionally, A&G has significant experience representing and assisting debtors with the disposition of assets in bankruptcy proceedings.

9. As such, the Debtor believes that A&G has the requisite knowledge and background to address many issues that may arise in this chapter 11 case related to the sale of the Equity Interests, almost all of which relate to real estate projects, and that A&G is qualified and well positioned to performing these services and assist the Debtor in this chapter 11 case. In addition, the Debtor has determined that the services provided by A&G are necessary for the Debtor to maximize the value of his estate.

10. Section 327(a) of the Bankruptcy Code provides that the Debtor is permitted to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. §327(a). Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including... on a contingent fee basis." 11 U.S.C. § 328.

11. Bankruptcy Rule 2014 provides that an application for retention of a professional person is to include:

20332170

[S]pecific facts showing the necessity for the employment, the names of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, and any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

12.     By this Application, the Debtor requests that the Court approve the employment and compensation arrangements described in the Agreement and herein, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. The employment arrangement with A&G will be beneficial to the Debtor's estate because it will provide the Debtor with much needed assistance in selling the Equity Interests.

13.     Further, the Debtor believes that the compensation arrangement detailed in the Agreement and described below provides both certainty and the proper inducement for A&G to act expeditiously and prudently with respect to the matters for which it will be employed.

## SERVICES TO BE PROVIDED

14.     Pursuant to the Agreement, A&G will perform services for the Debtor, including, but not limited to, the following:

a.     Consult with the Debtor to discuss the Debtor's goals, objectives and parameters in relation to the sale of the Equity Interests;

b.     Provide ongoing advice and guidance based upon the Debtor's goals and objectives;

c.     Prepare and implement a marketing plan for the sale of the Equity Interests;

d.     Summarize proposals received and assist in the evaluation and comparison of proposals received from potential purchasers of the Equity Interests;

e.     Conduct a sale process for the Equity Interests;

f.     Act as liaison between prospective bidders and all entities and persons whose consents are needed for the Debtor to sell his Equity Interests;

g.     Negotiate with third parties on behalf of the Debtor in order to assist the Debtor in selling the Equity Interests;

h.     Assist the Debtor and his professionals in documenting and effectuating

4

sale transactions involving the Equity Interests; and

i.    Report periodically to the Debtor regarding the status of the services.

## SUMMARY OF THE TERMS OF THE AGREEMENT

15.    The Agreement envisions paying A&G (i) a fee at closing of the sale(s) of the Equity Interests out of the sale proceeds equal to 5% of the Gross Proceeds[1] and (ii) a marketing fee of $10,000 payable upon Bankruptcy Court approved by the Agreement (the "Fee Structure").

16.    The Debtor believes that the Fee Structure described above and set forth in the Agreement is comparable to compensation generally charged for similar engagements, both in and out of bankruptcy. Furthermore, the Debtor believes that the Fee Structure is consistent with A&G's normal and customary billing practices for matters of comparable size and complexity that require the level and scope of services to be provided in this case.

17.    Moreover, the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of A&G and their professionals, and in light of the fact that such commitment may foreclose other opportunities for A&G.

18.    A&G's expertise and experience in the realm of the type of services that the Debtor requires were important factors in determining the Fee Structure. The Debtor believes that the ultimate benefit of the services cannot be measured by reference to the number of hours to be expended by A&G's professionals in the performance of such services. The Debtor also believes that by using a transactional Fee Structure, A&G's compensation is directly tied to and contingent upon the amount of proceeds from sales of the Equity Interests and aligns the

---

[1] Gross Proceeds means the total consideration paid or payable to the Debtor in any form to purchase the Equity Interests.

interests of A&G with those of the Debtor and his estate.

19.     The Debtor respectfully submits that the Fee Structure set forth above is reasonable and should be approved under section 328(a) of the Bankruptcy Code, which specifically authorizes compensation of a professional person on a "percentage fee" or "contingent fee" basis. 11 U.S.C. § 328(a). The compensation terms negotiated with A&G were the result of arm's-length negotiations, and the Debtor believes such terms are fair and reasonable.

20.     Furthermore, the Debtor respectfully submits that, inasmuch as A&G's compensation is results-oriented and directly related to benefits received by the Debtor's estate, requiring A&G to file periodic fee applications pursuant to Sections 330 and 331 of the Bankruptcy Code and in compliance with Bankruptcy Rule 2016 and Local Rule 2016-1 is unnecessary. A&G will be employed by the Debtor to perform a highly specialized task. It is A&G's general practice and the general practice of other similar type professionals who provide similar services, to be paid on a contingency fee basis, rather than keeping detailed time records similar to those customarily kept by attorneys. Therefore, the Debtor submits that requiring A&G to file periodic fee applications pursuant to sections 330 and 331 of the Bankruptcy Code is unnecessary because A&G will not be paid unless and until it sells the Equity Interests for the Debtor.

21.     As noted above, A&G's compensation will not be calculated and paid based on the number of hours that they expend providing the services to the Debtor. Therefore, the Debtor requests that A&G be excused from filing time records in accordance with United States Trustee Guidelines for the Southern District of New York and Local Rule 2016-1. A&G will, however, file a final fee application in accordance with applicable Bankruptcy Rules, Local Rules and any orders entered by the Court.

22.     This Court has recognized in other cases that professionals need not file detailed

time records in connection with providing services to a debtor on a contingency fee, or commission, basis. *See e.g.*, *In re The College of New Rochelle*, No. 19-23694 (RDD) (Bankr. Oct. 17, 2019), ECF 98 (authorizing the retention of a real estate advisor under section 328 and expressly providing that the real estate advisor is not required to maintain time records ); *In re The Great Atlantic & Pacific Tea Co., Inc.*, No. 15-23007 (LGB) (Bankr. S.D.N.Y. Sept. 14, 2015), ECF 926 (same); *In re Old Carco LLC (f/k/a Chrysler LLC)*, No. 09-50002 (AJG) (Bankr. S.D.N.Y. Feb. 18, 2010), ECF No. 6416 (authorizing retention of real estate broker without requiring detailed time entries to be submitted with fee application); *In re St. Vincent's Catholic Medical Centers of New York*, No. 10-11962 (CGM) (Bankr. S.D.N.Y. May 18, 2010), ECF No. 304 (same).

23.     The Debtor proposes that A&G be paid its agreed commission at each sale closing, subject to the filing and approval of a final fee application for review by the Court and parties in interest pursuant to section 328(a) of the Bankruptcy Code.

24.     The Debtor believes that applications submitted in the manner set forth in herein will provide the Court and other parties in interest with sufficient information to monitor the amount and types of services rendered to the Debtor by A&G.  Accordingly, the Debtor requests that the Court modify the requirements set forth in Local Bankruptcy Rules and permit A&G to receive compensation and submit a final fee application in the manner set forth herein.

25.     Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, is in the best interests of his estate and creditors, and should be granted in all respects.

## A&G'S DISINTERESTEDNESS

26.     A&G has reviewed the list of parties in interest provided by the Debtor. To the best of the Debtor's knowledge, information, and belief, and except to the extent disclosed herein and in the Declaration of Emilio Amendola (the "Declaration"), a copy of which is

20332170

annexed as Exhibit "B", A&G (a) does not hold any interest adverse to the Debtor's estate; (b) has no connection with the Debtor, his creditors, related parties herein; and (c) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code. The Debtor's knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance, upon the Declaration.

27.     As set forth in the Declaration, A&G has not shared or agreed to share any of its compensation from the Debtor with any other person, other than other principals and employees of A&G, as permitted by section 504 of the Bankruptcy Code.

28.     Except as described herein, no commitments have been made or received by A&G, nor any member thereof, as to compensation or payment in connection with this chapter 11 case.

29.     A&G represented to the Debtor that they have not provided and will not provide services to any parties other than the Debtor in this case or in conjunction with any matters that would be adverse to the Debtor arising from, or related to, this Chapter 11 case. A&G has further represented to the Debtor that neither it, nor its employees, have any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in the Southern District of New York.

30.     Based on the Declaration, the Debtor believe that A&G is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. The Debtor has been informed that A&G will conduct ongoing reviews of their files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, it will supplement its disclosure to this Court.

31.     The Debtor's retention of A&G pursuant to the terms and conditions set forth herein is necessary and in the best interests of the Debtor, his creditors and his estate.

20332170

## NOTICE

32.     Notice of this Application has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) all parties who filed Notices of Appearances in this case; and (iii) any other parties required to be served under any applicable Bankruptcy Rule or Local Rule. The Debtor submits that, under the circumstances, no other or further notice is necessary.

## NO PRIOR REQUEST

33.     No previous application for the relief sought herein has been made to this or any other Court.

## CONCLUSION

34.     WHEREFORE, the Debtor respectfully requests entry of the order substantially in the form annexed as Exhibit "C", authorizing the retention of A&G as broker and advisor to the Debtor, together with such other and further relief as is just and proper.

Dated: Garden City, New York
          September 2, 2022

                              CULLEN AND DYKMAN LLP


                              BY: Bonnie L. Pollack
                              Matthew G. Roseman, Esq.
                              Bonnie L. Pollack, Esq.
                              100 Quentin Roosevelt Boulevard
                              Garden City, New York 11530
                              (516) 357-3700

                              Attorneys for Joseph Klaynberg

20332170

# EXHIBIT "A"

## Agreement

20332170



# SERVICES AGREEMENT
# WITH JOSEPH KLAYNBERG

This Services Agreement including the Schedules attached hereto (collectively the "Agreement") is made as of September ___, 2022 (the "Agreement Date"), by and between **A&G REALTY PARTNERS**, **LLC**, a New York limited liability Client, with its principal place of business at 445 Broadhollow Road, Suite 410, Melville, New York 11797 ("A&G"), and **JOSEPH KLAYNBERG**, an individual having an address of _____ (the "Client" and, together with A&G, collectively, the "Parties" and, individually, a "Party").

WITNESSETH:

**WHEREAS**, on February 11, 2022, Client filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") bearing Case No. 22-10165 (MEG) (the "Bankruptcy Case");

**WHEREAS**, the Client owns, directly or indirectly, certain equity interests in the companies, projects or properties identified on Schedule A hereto (collectively, the "Equity Interests" and, individually, an "Equity Interest"); and

**WHEREAS**, under the terms and conditions contained in this Agreement, and subject to Bankruptcy Court approval, the Client desires to retain A&G and A&G is willing to provide the Services (as defined below).

**NOW THEREFORE**, in consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    In accordance with the terms and conditions of this Agreement, A&G will provide the Client with the following services (collectively, the "Services"):

    a.    Ascertain the Client's goals, objectives and financial parameters with respect to the sale of the Equity Interests;

    b.    Prepare and implement a marketing plan to sell the Equity Interests;

    c.    Conduct a sale process for the Equity Interests;

    d.    Represent the Client in, and negotiate, the sale of the Equity Interests;

    e.    Assist the Client and his counsel in the documentation of sale transactions involving one or more of the Equity Interests; and

    f.    Report periodically to the Client regarding the status of the project.

2.    Term of Agreement. Subject to Section 14 herein, this Agreement shall be for a term of one (1) year following the Agreement Date (the "Term") or until the

Services are completed. The Term may be extended or renewed by written agreement of the Parties.

3. <u>Compensation</u>. Upon the sale of an Equity Interest, A&G shall be deemed to have earned, and shall be paid, a fee equal to five percent (5%) of the Gross Sales Price of such Equity Interest (the "<u>Fee</u>"). The Fee shall be paid at the closing on the sale of each Equity Interest. "<u>Gross Sales Price</u>" shall mean the amount of consideration paid or payable, or otherwise to be received by the Client in connection with the sale of any Equity Interest including all (i) cash, securities or other property, (ii) Client debt assumed, satisfied or paid by a purchase or which remains outstanding at closing (including, without limitation, the amount of any indebtedness "credit bid" at any sale), and (iii) amounts placed in escrow and deferred, contingent payments and installment payments.

4. <u>Additional Services.</u> A&G may provide additional services requested by the Client that are not otherwise specifically provided for in this Agreement. Any additional services will be mutually agreed upon by the Parties and documented in a separate written agreement.

5. <u>Recordkeeping</u>. The Services to be provided by A&G pursuant to this Agreement are, in general, transactional in nature. Accordingly, A&G will not bill the Client by the hour or maintain time records.

6. <u>Expenses and Disbursements</u>. Upon Bankruptcy Court approval of this Agreement, the Client shall pay A&G a marketing fee of $10,000.00. Additionally, any legal fees and expenses incurred by A&G as a result of responding to any litigation or other type of inquiry, deposition or otherwise relating to the Services or this Agreement shall be reimbursed by the Client to A&G. Any such reimbursable expenses shall be paid to A&G within five (5) business days of receipt of an invoice therefor.

7. <u>Exclusive</u>. During the Term of this Agreement, A&G shall have the sole and exclusive authority to perform the Services and earn the Compensation. All relevant inquiries regarding any of the Equity Interests made to the Client, its representatives or related parties promptly shall be directed to A&G.

8. <u>Client Cooperation</u>. The Client shall provide A&G with all information concerning the Equity Interests reasonably necessary for the performance of A&G's obligations hereunder (collectively, the "<u>Client Information</u>"). It is understood and agreed by the Parties that A&G shall have no obligation to verify the accuracy of such information and that A&G shall have no liability whatsoever resulting from, whether directly or indirectly, the inaccuracy or incompleteness of the Client Information. Both Parties understand and agree that A&G shall base its Services on the Client Information and any material inaccuracies, discrepancies or omissions in the information may delay or impede A&G's ability to render the Services. In the event the Client Information turns out to be inaccurate, the Client shall provide such personnel and administrative support as necessary

to correct the information. Furthermore, both Parties understand and agree that the commencement of this Agreement and the continuation of its Services are contingent upon A&G's receipt of the Client Information.

9. <u>Use of Client Name</u>. A&G may use the Client's name and logo to identify the Client as one of A&G's clients.

10. <u>No Authority to Execute Agreements.</u> A&G shall have no right or power to enter into any agreement in the name of or on behalf of the Client or to otherwise obligate the Client in any manner without the prior written consent or approval of Client, which approval may be withheld in Client's sole discretion.

11. <u>Meetings and Written Reports</u>. After the commencement of the Agreement, A&G shall meet with, in a manner agreed to by the Parties, to review the Client's goals, objectives and financial parameters. Thereafter, A&G will meet with or participate in telephone conferences with the Client regarding the status of the Services as mutually agreed to by the Parties.

12. <u>Disclosures/Reports</u>. All information, advice, recommendations (whether written or oral) or any reports, presentations or other communications that A&G provides under the terms of this Agreement are solely for the benefit of the Client and no such opinion, advice, recommendations or reports shall be used for any other purpose, or reproduced, disseminated, quoted or referred to at any time, in any manner, other than as provided herein, without the prior written consent of A&G. Notwithstanding the foregoing, the Client may provide such information, advice and recommendations to its representatives, consultants, Board of Directors and attorneys as required to effectuate the Services, provided however that both Parties understand and agree that A&G shall have no liability to such parties and such parties are not intended to be third-party beneficiaries to this Agreement.

If the Client receives a subpoena, summons or court order by any federal, state or other regulatory agency having jurisdiction over the Client relating in any respect to A&G or its Services, the Client shall promptly notify A&G, if legally permissible, so that A&G may obtain, at its sole cost, a protective order for such information. If A&G is unable to obtain a protective order and the Client is required to provide information regarding A&G and/or the Services, the Client agrees to provide only that information which is legally required and to use reasonable efforts to ensure the confidentiality of such information and documentation.

13. <u>Independent Contractor</u>. Each Party acknowledges and agrees that the arrangements contemplated herein are and will be for the provision of the Services and that nothing contained herein shall create or be construed as creating a contract or other arrangement of employment between the Client and A&G. A&G shall provide the Services as an independent contractor and not as an employee, agent, partner or joint venture of the Client.

14. <u>Early Termination</u>.  Either Party may terminate this Agreement upon thirty (30) days' prior written notice in accordance with the notice provision below.  Any rights or obligations incurred or accrued by either Party prior to termination shall survive termination of this Agreement.

15. <u>Assignment</u>.  Neither Party may delegate or assign its rights and obligations under this Agreement in whole or in part to an unaffiliated third party without the prior written consent of the other Party.

16. <u>Notices.</u>  Unless otherwise expressly provided herein or waived in writing by the Party to whom notice is given, any notice or other communication required or permitted hereunder will be effective if given in writing (i) when delivered by hand; (ii) three days after sent by certified mail, return receipt requested; (iii) when delivered by electronic email communication to the email address set forth below and verified by confirmed receipt; or (iv) one day after delivery to a commercial overnight courier, and addressed to the Parties as follows:

   To the Client:              Joseph Klaynberg


                               Tel:
                               Email:

   To A&G:                     A&G Realty Partners, LLC
                               445 Broadhollow Road, Suite 410
                               Melville, New York 11747
                               Attn:  Andy Graiser
                               Tel: (631) 465-9506
                               Email:  andy@agrep.com

17. <u>Representations, Warranties and Covenants</u>.

   a. Each Party represents that it has all requisite power and authority to enter into this Agreement. This Agreement has been validly authorized by all necessary corporate action and constitutes a legal, valid and binding agreement of the Client (subject to Bankruptcy Court approval) and A&G.

   b. Each Party represents that this Agreement does not and will not violate any applicable law or conflict with any agreement, instrument, judgment, order or decree to which it is a party or by which it is bound.  Furthermore, each Party represents and agrees that it will comply with all applicable laws, rules, regulations, orders or decrees during the term of this Agreement in performing its obligations hereunder.

c.  Each Party agrees to deal with the other fairly and in good faith so as to allow each Party to perform their duties and earn the benefit of this Agreement.

d.  A&G agrees to utilize commercially reasonable efforts and diligence to achieve the purpose of this Agreement.

18. Bankruptcy.  Client shall apply promptly to the Bankruptcy Court for an order, in a form acceptable to A&G, authorizing him to retain and compensate A&G in accordance with the terms of this Agreement and to use its best efforts to obtain such order. Client also shall file any applications necessary and otherwise assist A&G in obtaining Bankruptcy Court approval of the payment of its fees and costs hereunder. Client shall provide A&G with a copy of the pleadings requesting retention of A&G prior to submission to the Bankruptcy Court for A&G's review and comments and advise A&G of any objection or hearings pertaining to A&G's retention. The order authorizing A&G's retention must be reasonably acceptable to A&G and A&G's obligations hereunder are conditioned upon the grant of such order. Furthermore, if such order is not obtained within sixty days from the date that it is filed, A&G shall have the right to terminate this Agreement at any time thereafter. If a reasonably acceptable order is not obtained authorizing A&G's services and fees as set forth herein, the Client shall amend the application in conjunction with and the approval of A&G and request a hearing to review the application. In the event the Client is unable to obtain a reasonably acceptable order authorizing the hiring and retention of A&G under the terms of this Agreement and the Agreement is terminated, A&G reserves the right to seek a substantial contribution claim for any rights or obligations incurred or accrued prior to such termination.

19. Survival of Fee.  In the event that following the expiration or earlier termination of this Agreement, the Client or its successors or assigns, enters into a transaction for the sale of any of the Equity Interests and A&G has substantially performed the Services which are the proximate cause of such transaction being entered into the result of which would have entitled A&G to a fee pursuant to this Agreement, then in that event, A&G shall be entitled to and paid its fee pursuant to the terms of this Agreement notwithstanding the fact that the Agreement has expired or been terminated.  Such Survival of Fee will terminate 120 days after the expiration or earlier termination of this Agreement.

20. Intellectual Property.  A&G may use data, software, designs, utilities, tools, models, systems and other methodologies that it owns or licenses in performing the Services hereunder. Notwithstanding the delivery of any reports by A&G to the Client, A&G shall retain all intellectual property rights in such materials (including any improvements or knowledge developed while performing the Services) and in any working papers compiled in connection with the Services.

21. Indemnification.  The Client shall indemnify A&G and its respective affiliates, officers, directors, employees, agents and independent contractors, and hold each of them harmless from and against all third party claims, demands, penalties, losses,

liability or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted against, resulting from (directly or indirectly), or related to the Services or actions or omissions of A&G or the Client taken pursuant to this Agreement, (including, but not limited to, any covenants, representations or warranties contained herein) or in any written agreement entered into in connection herewith except to the extent that such claims or liabilities arise as a direct result of A&G's fraud, gross negligence, or willful misconduct.

22. <u>Limitation on Liability</u>.  Neither Party shall be responsible for any indirect, incidental, consequential, exemplary, punitive or other special damages (including, but not limited to, loss of profits and damage to reputation or business) arising under or by reason of this Agreement, the Services or any act or omission hereunder except to the extent of actual fraud, gross negligence, or willful misconduct.  Neither Party shall be liable if it is unable to perform its responsibilities hereunder as a result of events beyond its control.  Furthermore, in no event shall A&G's liability for a default or breach of this Agreement exceed the amount of fees paid to A&G hereunder.

23. <u>Binding Effect. No Third-Party Beneficiaries</u>.  This Agreement binds and inures to the benefit of the Parties hereto and their respective successors and permitted assigns and except as expressly provided herein, is not intended to confer any rights or remedies upon any person not a party to this Agreement.

24. <u>Waivers and Amendments</u>.  Waiver by either Party of any default by the other Party shall not be deemed a waiver of any other default. This Agreement (including the Schedule (s) attached hereto) may not be waived, amended, or modified by either Party unless in writing and signed by the Parties hereto.

25. <u>Severability</u>.  If any provision, or any portion of any provision, contained in this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, then it is the intent of the Parties to modify or limit such provision or portion thereof so as to be valid and enforceable to the extent permitted under applicable law. In the event that such provision or portion thereof cannot be modified, then such provision or portion thereof shall be deemed omitted and this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

26. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof. All prior agreements, representations, statements, negotiations, understandings, and undertakings are superseded by this Agreement.

27. <u>Counterpart Execution/Facsimile and Electronic Signatures</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.  Facsimile and electronic signatures on this Agreement and any document contemplated hereby shall be deemed to be original signatures.

28. <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of New York without reference to its conflict of laws rules. Any dispute resulting from this Agreement shall be resolved exclusively by the Bankruptcy Court.

29. <u>Waiver of Jury Trial</u>.  Each of the Parties unconditionally waives, to the extent legally permissible, the right to a jury trial in connection with any claim arising out of or related to this Agreement.

30. <u>Headings</u>.  The section headings and use of defined terms in the singular or plural tenses in this Agreement are solely for the convenience of the Parties.

31. <u>No Presumptions</u>.  This Agreement by shall be deemed drafted by both Parties and there shall be no presumption for or against either Party in the interpretation of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of the Agreement Date.

JOSEPH KLAYNBERG

_____

A&G REALTY PARTNERS, LLC

By: _____
Name:
Title:

# SHEDULE A

## Equity Interests

|  | Interest | Property Owned by Entity |
| --- | --- | --- |
| Mark Paragon LP | 2.53% | Entity owns a strip mall in upstate NY |
| Durdom, Inc. | 70% | Entity owns a 45% interest in 2 partnerships which own 2 commercial condominiums in New Rochelle |
| 5CP, LLC | 28.03% | Entity owns property at 5 Constitution Plaza, Hartford, CT |
| JEDR Group, LLC | 50% | Owns interests in 5CP, HSK Mulberry (which owns interest in Spectra Top, which owns property at 100 Trumbull St, Hartford, CT), 114 MS Member (which owns property at 114 Mulberry St., NY, NY) |
| KS Equities | 50% | Owns interests in 5CP, Spectra 111 (which owns property at 111 Pearl St, Hartford, CT), Spectra 101 (which owns property at 101 Peral St, Hartford, CT), 114 MS Member |
| JKIG LLC | .5% | Owns interest in Spectra TOP, Spectra 111, Spectra 101 |
| WW Spectra Corp. | 50% | Owns interest in Spectra TOP |
| Klaynberg Family Group | 10% | Owns interest in Spectra 111, Spectra 101 |
| 318 Investors A | 9.52% | Entity owns 50% of entity which owns property at 318 E. 3rd St., NY, NY |
| WW1834 Members, LLC | 1.92% | Entity owns a project under construction in Harlem, NY |
| 114 MS Member, LLC | 3.61% | Entity owns property located at 114 Mulberry Street, NY, NY |
| AM Club, LLC | 50% | Entity owns interest in 114 MS Member |
| WWIG III LLC | 5.56% | Entity owns interest in Greenpoint Partners (which owns a building under construction in Brooklyn, NY) |
| WW Eastern LLC | 3.56% | Owns apartment unit at 302 East 96th St, NY. NY |
| Wonder Works Construction Corp. | 42% | Construction company |
| International Design Direct, Ltd. | 100% | Importer of goods used in construction projects |

# EXHIBIT "B"

## Declaration of Emilio Amendola

20332170

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

In re:                                                       :     Chapter 11
                                                             :
JOSEPH KLAYNBERG,                                            :     Case No. 22-10165 (MG)
                                                             :
                                                             :
                      Debtor.                                :
------------------------------------------------------------- x

### DECLARATION OF EMILIO AMENDOLA IN SUPPORT OF THE APPLICATION OF THE DEBTOR FOR AN ORDER AUTHORIZING THE EMPLOYMENT OF A&G REALTY PARTNERS, LLC AS BROKER FOR THE DEBTOR

STATE OF NEW YORK    )
                            )ss:
COUNTY OF NASSAU    )

      Emilio Amendola, declares the following under the penalty of perjury:

      1.      I am Co-President of A&G Realty Partners, LLC ("A&G") which maintains an office at 445 Broadhollow Road, Suite 410, Melville, New York 11797.

      2.      I submit this Affidavit pursuant to section 327(a) of title 11 of the United State Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of the application (the "Application")[1] of the above-captioned Debtor to employ and retain A&G to serve as the Debtor's broker as set forth in the Application and the Agreement. Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[2]

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

[2] Certain of the disclosures herein may relate to matters within the knowledge of other professionals at A&G and are based on information provided by them.

20332170

**A.**     <u>Scope of Services</u>

      3.      A&G will perform services for the Debtor, upon the request of the Debtor, as set forth in the Agreement, including, but not limited to the following:

      a.      Consult with the Debtor to discuss the Debtor's goals, objectives and parameters in relation to the sale of the Equity Interests;

      b.      Provide ongoing advice and guidance based upon the Debtor's goals and objectives;

      c.      Prepare and implement a marketing plan for the sale of the Equity Interests;

      d.      Summarize proposals received and assist in the evaluation and comparison of proposals received from potential purchasers of the Equity Interests;

      e.      Conduct a sale process for the Equity Interests;

      f.      Act as liaison between prospective bidders and all entities and persons whose consents are needed for the Debtor to sell his Equity Interests;

      g.      Negotiate with third parties on behalf of the Debtor in order to assist the Debtor in selling the Equity Interests;

      h.      Assist the Debtor and his professionals in documenting and effectuating sale transactions involving the Equity Interests; and

      i.      Report periodically to the Debtor regarding the status of the services.

**B.**     <u>Professional Compensation</u>

      4.      The Agreement envisions paying A&G (i) a fee at closing of the sale(s) of the Equity Interests out of the sale proceeds equal to 5% of the Gross Proceeds[3], and (ii) a marketing fee of $10,000 payable upon Bankruptcy Court approval of the Agreement.

      5.      A&G will be employed by the Debtor to perform a highly specialized task. It is A&G's general practice and the general practice of other similar professionals who provide similar services, to be paid on a contingency fee basis, rather than keep detailed time records

---

[3] Gross Proceeds means the total consideration paid or payable to the Debtor in any form to purchase the Equity Interests.

similar to those customarily kept by attorneys.

## C.  **Disinterestedness and Eligibility**

6.  In connection with the Debtor's proposed retention of A&G in this chapter 11 case, A&G has reviewed the list of parties in interest provided by the Debtor, and A&G undertook to determine whether it had any conflicts or other relationship that might cause it to not be disinterested or to hold or represent an interest adverse to the Debtor.

7.  To the best of my knowledge and belief, A&G (i) does not hold or represent any interest adverse to the Debtor's estate, (ii) has no connection with the Debtor, his creditors, or related parties herein, and (iii) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

8.  To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, A&G has not been retained to assist any entity or person other than the Debtor on matters relating to, or in direct connection with, this chapter 11 case, except as otherwise disclosed herein. If A&G's proposed retention by the Debtor is approved by the Court, A&G will not accept any engagement or perform any services for any entity or person other than the Debtor in this chapter 11 case. A&G will, however, continue to provide professional services to entities or persons that may be creditors of the Debtor or parties in interest in this chapter 11 case, provided that such services do not relate to, or have any direct connection with, this chapter 11 case or the Debtor.

9.  I am not related or connected to and, to the best of my knowledge after reasonable inquiry, no other professional of A&G who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Southern District of New York, any of the District Judges for the Southern District of New York, the United States Trustee for the Southern District

4

of New York, or any employee in the Office of the United States Trustee for the Southern District of New York.

10.     As part of its diverse practice, A&G appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties in interest in the Debtor's chapter 11 case. Also, A&G has performed in the past, and may perform in the future, real estate consulting and advisory services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, A&G may have in the past, may currently, and may in the future work with or against other professionals involved in these cases in matters unrelated to the Debtor and this chapter 11 case. Based on my current knowledge of the professionals involved in this chapter 11 case, and to the best of my knowledge, none of these relationships create interests adverse to the Debtor in matters upon which A&G is to be employed, and none are in connection with this chapter 11 case.

11.     A&G has informed the Debtor that A&G will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, A&G will promptly file a supplemental declaration with the Court as required by Local Bankruptcy Rules.

12.     I do not believe that A&G is a "creditor" with respect to fees and expenses of any of the Debtor within the meaning of section 101(10) of the Bankruptcy Code.  Further, neither I nor any other member of the A&G engagement team serving the Debtor, to the best of my knowledge, is a holder of any outstanding debt instruments or other equity interests or securities of the Debtor.

20332170

13. As such, to the best of my knowledge, A&G is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that A&G:

(a) is not a creditor, equity security holder or insider of the Debtor;

(b) is not and was not an investment banker for any outstanding security of the Debtor;

(c) has not been, within three years before the date of the filing of the Debtor's Chapter 11 petitions, (i) an investment banker for a security of the Debtor or (ii) an attorney for such an investment banker in, connection with the offer; sale, or issuance of a security of the Debtor; and

(d) was not, within two years before the date of filing of the Debtor's Chapter 11 petition, a director, officer, or employee of the Debtor or any investment banker as specified in subparagraph (b) or (c) of this paragraph.

14. In addition, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, A&G neither holds nor represents an interest adverse to the Debtor within the meaning of Section 327(a) of the Bankruptcy Code.

15. It is A&G's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant facts or relationships are discovered or arise, A&G will promptly file a Bankruptcy Rule 2014(a) Supplemental Affidavit.

16. In accordance with section 504 of the Bankruptcy Code, I hereby state that there is no agreement or understanding between A&G and any other entity, other than a partner or associate of A&G for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

20332170

17.     This Affidavit is provided in accordance with Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

18.     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: Melville, New York
       September 2, 2022

                                        s/ Emilio Amendola
                                        Emilio Amendola

20332170

# EXHIBIT "C"

## Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
                                            :
In re:                                      :    Chapter 11
                                            :
JOSEPH KLAYNBERG,                           :    Case No. 22-10165 (MG)
                                            :
                                            :
                 Debtor.                    :
                                            :
------------------------------------------------------------- x
```

### ORDER PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF A&G REALTY PARTNERS, LLC AS BROKER

Upon the considering of the application (the "Application")[1] of the debtor in the above-captioned case (collectively, the "Debtor"), for entry of an order pursuant to sections 327(a) and 328 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the Bankruptcy Rules") and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") approving the retention of A&G Realty Partners, LLC ("A&G") as the Debtor's broker to assist the Debtor in selling the Debtor's Equity Interests upon the terms of the Agreement annexed to the Application as Exhibit "A"; and upon the Declaration of Emilio Amendola (the "Declaration"), annexed to the Application as Exhibit "B"; and it appearing that the Court has jurisdiction to consider the Application; and it appearing that the relief requested in the Application is in the best interests of the estate; and the Court being satisfied, based on the representations made in the Application and the Declaration, that A&G represents or holds no

---

[1] Capitalize terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Application.

1

20332170

interest adverse to the Debtor's estate and is a "disinterested person" under section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and it appearing that due and appropriate notice of the Application has been given; and it appearing that no other or further notice be provided; and good and sufficient cause appearing therefore, it is

ORDERED, that the Application is GRANTED as provided herein; and it is further

ORDERED, that in accordance with sections 327(a) and 328 of the Bankruptcy Code, the Debtor is hereby authorized to retain A&G as his broker upon the terms of the Agreement including the fee arrangement detailed therein which is hereby approved; and it is further

ORDERED, that given the percentage-based fee structure and that A&G does not earn their fee until sale(s) are approved by this Court and title passes to a buyer, A&G is excused from filing time records and interim fee applications in accordance with United States Trustee Guidelines for the Southern District of New York and Local Rule 2016-1, provided that A&G shall file a final fee application for review by the Court and parties in interest pursuant to section 328(a) of the Bankruptcy Code for all of the services and a detailed list of expenses sought to be paid; and it is further

ORDERED, that subject to the filing of a final fee application and approval by the Bankruptcy Court, A&G shall be paid the marketing fee upon entry of this Order and the commissions earned at the closing of each sale; and it is further

ORDERED, that such other services as may be requested by the Debtor and agreed to by A&G shall be subject to separate approval by Court order; and it is further

ORDERED, that all requests by A&G for the payment of indemnification as set forth in the Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the

2

Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided however, that in no event shall A&G be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

ORDERED, that in the event that A&G seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the A&G's own applications and these invoices and time records shall be subject to the Amended  Guidelines for Professional Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases and the approval of the Bankruptcy Court pursuant to Sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under Section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy Section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED, that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
_____, 2022

_____
MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY
JUDGE

3