CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Counsel for the Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
|  | : |  |
| In re: | : | Chapter 11 |
|  | : |  |
| JOSEPH KLAYNBERG, | : | Case No. 22-10165 (MG) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |
-------------------------------------------------------------x

## NOTICE OF MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF EQUITY INTERESTS; (B) APPROVING THE FORM OF PURCHASE AGREEMENT; (C) APPROVING BID PROTECTIONS IN FAVOR OF ANY STALKING HORSE PURCHASER; (D) APPROVING THE FORM AND MANNER OF SERVICE OF THE AUCTION NOTICE; AND (E) SCHEDULING AN AUCTION; (II) APPROVING SALE OF EQUITY INTERESTS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (III) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing will be held before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), One Bowling Green, New York, New York 10004, on the 3rd day of October, 2022 at 10:00 a.m. (EST), or as soon thereafter as counsel can be heard, to consider the motion ("Motion") for entry of an order (a) approving bidding procedures related to the sale and proposed auction of the Equity Interests (as defined in the Motion) pursuant to sections 363(b), (d) (f), and (m) and 1146 of the Bankruptcy Code; (b) approving the proposed asset purchase agreement; (c) approving proposed bid protections in favor of a stalking horse purchaser, if one is selected; (d) scheduling an auction and a hearing to approve the sale of the Equity Interests; and (e) approving the form and manner of notice of the Auction and Sale Hearing.

**PLEASE TAK FURTHER NOTICE** that this hearing will be conducted via Zoom for Government. If you wish to participate, you must register your appearance by eCourt Appearances by 4:00 p.m. on September 30, 2022, using the following link: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the Motion must be (a) in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, (c) filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) by registered users of the Bankruptcy Court's case filing system must file electronically and all other parties in interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows' based word-processing format), (d) submitted in hard-copy form directly to the chambers of the Honorable Martin Glenn, Chief United States Bankruptcy Judge, and (e) served upon (i) the attorneys for the Debtor, Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York, 11530, Attn: Matthew G. Roseman and Bonnie L. Pollack; and (ii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Tara Tiantian, Esq.), so as to be received no later than September 26, 2022 at 4:00 p.m. (EST).

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion may be adjourned without further notice except as announced in open court on the Hearing Date, or at any adjourned hearing.

Dated: Garden City, New York
      September 2, 2022

                        CULLEN AND DYKMAN LLP


                        By:   s/ Bonnie Pollack
                            Matthew G. Roseman, Esq.
                            Bonnie L. Pollack, Esq.
                        100 Quentin Roosevelt Boulevard
                        Garden City, NY 11530
                        (516) 357-3700

                        Counsel for the Debtor

CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Counsel for Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                       :
In re:                                : Chapter 11
                                       :
JOSEPH KLAYNBERG,         : Case No. 22-10165 (MG)
                                       :
                                       :
                     Debtor.              :
                                       :
-------------------------------------------------------------- x

**DEBTOR'S MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING
BIDDING PROCEDURES FOR THE SALE OF EQUITY INTERESTS;
(B) APPROVING THE FORM OF PURCHASE AGREEMENT; (C) APPROVING BID
PROTECTIONS IN FAVOR OF ANY STALKING HORSE PURCHASER;
(D) APPROVING THE FORM AND MANNER OF SERVICE OF THE AUCTION
NOTICE; AND (E) SCHEDULING AN AUCTION; (II) APPROVING SALE
OF EQUITY INTERESTS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
<u>AND OTHER INTERESTS, AND (III) GRANTING RELATED RELIEF</u>**

Joseph Klaynberg, as debtor and debtor-in-possession (the "Debtor"), hereby submits this

motion (the "Motion"), pursuant to sections 105, 363, and 1146 of chapter 11 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1532, <u>et seq.</u> (the "Bankruptcy Code"), and Rules 2002,

6004, 9006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for

entry of an order (the "Bidding Procedures Order"), substantially in the form annexed hereto as

<u>Exhibit "A"</u>: (a) approving bidding procedures ("Bidding Procedures"), substantially in the form

annexed to the Bidding Procedures Order as <u>Exhibit "1"</u>, related to the sale and proposed auction

of the Equity Interests (as defined herein) pursuant to sections 363(b), (d) (f), and (m) and 1146 of

the Bankruptcy Code; (b) approving the proposed asset purchase agreement (the "Purchase Agreement"), a copy of which is annexed hereto as Exhibit "B", solely to the extent of its use as a form which all bidders for the Equity Interests must follow; (c) approving proposed bid protections in favor of a stalking horse purchaser (a "Stalking Horse Purchaser"), if one is selected; (d) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to approve the sale of the Equity Interests; (e) approving the form and manner of notice (the "Auction Notice") of the Auction and Sale Hearing substantially in the form annexed hereto as Exhibit "C".

The Debtor further requests that at the Sale Hearing, subject to the results of the Auction and the Bidding Procedures set forth herein, this Court enter an order (the "Sale Order"), substantially in the form annexed hereto as Exhibit "D", approving and authorizing the sale (the "Sale") of Equity Interests, free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon, pursuant to the Purchase Agreement, as modified to incorporate the terms of any Successful Bid (as defined herein). In support of the Motion, the Debtor respectfully represents as follows:

## INTRODUCTION

1.      On February 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      The Debtor has remained in possession of his property and continues in the operation and management of his business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No official committee of unsecured creditors ("Committee") has been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in this chapter 11 case.

22420.2000 20318350v4

4.     Simultaneously with the filing of his petition, the Debtor filed an *Affidavit Pursuant to Local Bankruptcy Rule 1007-2* (the "1007 Affidavit").  A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the 1007 Affidavit, the terms of which are incorporated herein by reference.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.     The statutory predicates for the relief requested herein are sections 105, 363, and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006 and 9007.

## FACTUAL BACKGROUND

### A.    General Background

7.     Prior to emigrating to the United States, the Debtor earned a degree in Civil Engineering.  He came to this country in 1979 from Belarus (never having gone back) and was able to find work as a carpenter in the New York City.  The Debtor continued to work in this trade for approximately 7 years.  During this period he advanced from a laborer to a supervisor and was able to save enough money to start a small general contracting company,  Wonder Works Construction Corp. ("Wonder Works") in 1987.   Wonder Works grew from a small carpentry contractor to a successful design and development builder that has completed 388 projects, developed 25 building and constructed thousands of residential units in New York City and the surrounding areas. It has since reduced its workforce to approximately 5 employees and has less than $1 million of work in the pipeline with no development projects on the horizon.

3

8. During the period of Wonder Works' growth, the Debtor started to look for larger development opportunities. As part of this strategy, he would finance individual development projects by finding investors to take equity interests in a project. Additional funds needed to complete a project would be borrowed from conventional lenders, both as secured debt and mezzanine financing. As part of these transactions, the Debtor would often manage the project, earning fees for asset management and as managing member of the special purpose entity formed for the project. Thus, the Debtor owned interests in these various entities, predominantly real estate based, as set forth below.

9. Because it has been determined that the Debtor is unable to restructure his obligations, a Second Amended Chapter 11 Plan dated August 8, 2022 (the "Plan") has been filed by the Debtor, which relies for the distributions thereunder on the liquidation of the Debtor's assets, including the Equity Interests. This motion is filed pursuant to the Plan and in furtherance of that liquidation.

**B.    *Summary of Equity Interests***

10. The Debtor owns member interests or shares (the "Equity Interests") in sixteen (16) active entities.[1] The identity and the percentage of the Debtor's ownership interest is as follows:

|  | Interest | Property Owned by Entity |
|---|---|---|
| Mark Paragon LP | 2.53% | Entity owns a strip mall in upstate NY |
| Durdom, Inc. | 70% | Entity owns a 45% interest in 2 partnerships which own 2 commercial condominiums in New Rochelle |
| 5CP, LLC | 28.03% | Entity owns property at 5 Constitution Plaza, Hartford, CT |

---

[1] As of the Petition Date, the Debtor also owned interests in certain entities which have either sold their real property, no longer managing properties, or filed final tax returns and are no longer viable. Thus, the Equity Interests in those entities are not being sold hereunder. They consist of Lighthouse Real Estate Management, WW Greenpoint Partners LLC, WWIG LLC, WWIG II LLC, 5CP Development LLC and Spectra Development LLC.

| JEDR Group, LLC | 50% | Owns interests in 5CP, HSK Mulberry (which owns interest in Spectra Top, which owns property at 100 Trumbull St, Hartford, CT), 114 MS Member (which owns property at 114 Mulberry St., NY, NY) |
|---|---|---|
| KS Equities | 50% | Owns interests in 5CP, Spectra 111 (which owns property at 111 Pearl St, Hartford, CT), Spectra 101 (which owns property at 101 Peral St, Hartford, CT), 114 MS Member |
| JKIG LLC | .5% | Owns interest in Spectra TOP, Spectra 111, Spectra 101 |
| WW Spectra Corp. | 50% | Owns interest in Spectra TOP |
| Klaynberg Family Group | 10% | Owns interest in Spectra 111, Spectra 101 |
| 318 Investors A | 9.52% | Entity owns 50% of entity which owns property at 318 E. 3rd St., NY, NY |
| WW1834 Members, LLC | 1.92% | Entity owns a project under construction in Harlem, NY |
| 114 MS Member, LLC | 3.61% | Entity owns property located at 114 Mulberry Street, NY, NY |
| AM Club, LLC | 50% | Entity owns interest in 114 MS Member |
| WWIG III LLC | 5.56% | Entity owns interest in Greenpoint Partners (which owns a building under construction in Brooklyn, NY) |
| WW Eastern LLC | 3.56% | Owns apartment unit at 302 East 96th St, NY. NY |
| Wonder Works Construction Corp. | 42% | Construction company |
| International Design Direct, Ltd. | 100% | Importer of goods used in construction projects |

11.    The foregoing Equity Interests represent the Debtor's interest as a member of the entities. In some cases, the Debtor is also a managing member. To the extent permissible, the managing interest will also be sold hereunder. The Debtor proposes to sell the foregoing Equity Interests through this Motion, either in whole or in one or more individual lots, in accordance with the terms set forth herein.

C.    ***Summary of Transfer Restrictions/Consent***

12.    The majority of the Debtor's Equity Interests are governed by Operating Agreements, some of which contain provisions restricting the transfer of the Equity Interests or

requiring certain approvals for the transfer (the "Consents"). A spreadsheet summarizing the Consents in the Operating Agreements is annexed hereto as Exhibit "E". Bidders should review the Operating Agreements which will be included in the Data Room (as defined below) for all details regarding Consents. In addition to the Consents on the attached, loan documents relating to loans made to the entities in which the Debtor owns Equity Interests (the "Entity Loan Documents") may also contain restrictions on the transfer of the Equity Interests. The Entity Loan Documents will also be included in the Data Room and should be reviewed in detail for any additional Consents that are required for a particular transfer.

13.     A&G shall act as liaison between all Bidders and the entities from whom Consents are needed so that Consents can be obtained as expeditiously as possible.

### D.     *Proposed Marketing of Equity Interests*

14.     Contemporaneously with the filing of the instant Motion, the Debtor is filing an application seeking to retain A&G Realty Partners ("A&G") to market and sell the Equity Interests.

15.     A&G is a diversified real estate consulting and advisory firm that specializes in the evaluation, restructuring, acquisition and disposition of a wide variety of assets. A&G has a wealth of experience in providing services regarding the review, analysis, restructuring, disposition, and negotiation of property. Additionally, A&G has significant experience representing and assisting debtors with the disposition of assets in bankruptcy proceedings.

16.     A&G intends to market the Equity Interests for sale by, among other things:

   a. Produce marketing materials for the Equity Interests to be sold;
   b. Place Print and digital ads in publications such as: Wall Street Journal, Journal News, Hartford Courant;
   c. Conduct a digital marketing program with email blasts and listings on Loopnet other listing services;
   d. Promote the offering with a public relations campaign targeting publications nationwide;

6

e.  Direct email campaign to over 10,000 investors and 100,000 brokers and third party intermediaries;

f.  Assemble a due diligence room online for buyers to evaluate the offering and materials (the "Data Room");

g.  Conduct call program to educate interested parties on the process and answer any questions;

h.  Summarize proposals received and assist in the evaluation and comparison of proposals received from potential purchasers of the Equity Interests;

i.  Conduct a sale process for the Equity Interests;

j.  Act as liaison between prospective bidders and all entities and persons whose consents are needed for the Debtor to sell his Equity Interests;

k.  Negotiate with third parties on behalf of the Debtor in order to assist the Debtor in selling the Equity Interests; and

l.  Assist the Debtor and his professionals in documenting and effectuating sale transactions involving the Equity Interests.

### E.  *The Purchase Agreement*

17.  The Successful Bidder(s) for the Equity Interests will be party to the proposed Purchase Agreement with the Debtor, as modified to incorporate the terms of the Successful Bid(s). If the Debtor enters into a Purchase Agreements with a proposed Stalking Horse Purchaser (a "Stalking Horse Agreement"), at least ten (10) days prior to the Bid Deadline (as defined herein), the Debtor will file a notice with the Bankruptcy Court, the Notice Parties (as defined herein), and all Potential Bidders (as defined in the Bidding Procedures), and shall include the Stalking Horse Agreement with such notice. The Stalking Horse Bidder shall obtain any Consents needed with respect to its Bid prior to the Debtor accepting any Stalking Horse Bid. A&G shall act as liaison between any Stalking Horse Bidders and the entities from whom Consents are needed.

18.  The principal terms of the Purchase Agreement are summarized and highlighted as follows:[2]

---

[2] To the extent there is any inconsistency between the description of the Purchase Agreement in this Motion and the terms of the Purchase Agreement itself, the Purchase Agreement shall control. The principal terms set forth herein are highlighted in accordance with Bankruptcy Rule 6004.

| Summary of Purchase Agreement | |
|---|---|
| Parties | Seller: Joseph Klaynberg<br>Purchaser: TBD |
| Asset | [Itemize Interests] |
| Purchase Price | TBD |
| Conditions to Closing | Entry of Sale Order and other criteria set forth in Section 7 of the Purchase Agreement, including all Consents needed for transfer of Equity Interest |
| Closing Date | On or about thirty (30) days following the entry of Sale Order |
| Termination Fee | Two (2%) percent of the Purchase Price in the event a non-insider Stalking Horse Purchaser is selected and is not the Successful Bidder for the Equity Interests or the Expense Reimbursement in the event of an Insider Purchaser. |

The full terms and conditions of the proposed transaction are set forth in the Purchase Agreement annexed as Exhibit "B" hereto and reference should be made to the Purchase Agreement for additional terms.

### F.      Bidding Procedures

19.      To ensure that the Debtor receives the maximum value for the sale of the Equity Interests, either in whole or in one or more individual purchases, A&G will actively market the Equity Interests and solicit bids, and intends to conduct an Auction.  In connection with the Sale of the Equity Interests, the Debtor seeks the approval of the Bidding Procedures and certain bid protections, as further described below, for any Stalking Horse Purchaser which the Debtor believes are necessary to induce a Stalking Horse Purchaser to enter into a Stalking Horse Agreement.

20.    The proposed Bidding Procedures are attached as <u>Exhibit 1</u> to the Bidding Procedures Order (<u>Exhibit A</u> hereto), and below is a summary of the proposed procedures:[3]

(a)    **<u>Provisions Governing Qualification of Bids and Bidders:</u>** To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "<u>Bid</u>"), and each party submitting such a Bid (other than any party designated as a Stalking Horse Purchaser) (each, a "<u>Bidder</u>"), must be reasonably determined by the Seller to satisfy each of the following conditions:

- <u>Bid Deadline</u>: Each Bid must be delivered to the Bid Notice Parties in writing on or before [45 days after entry of Bidding Procedures Order], 2022 at 5:00 p.m. (EST).

- <u>Good Faith Deposit</u>: Each Bid must be accompanied by a cash deposit, paid by wire transfer of immediately available funds or a certified check, in the amount of five percent (5%) of the purchase price contained in the Purchase Agreement, which deposit shall be held in an escrow account to be identified and established by the Seller (the "<u>Good Faith Deposit</u>").

- <u>Higher and Better Terms</u>: In connection with any Bid for the Equity Interests, either in whole or in part, such Bid must be on terms that the Seller, in his business judgment, determines is higher and better for the Estate on a cash (or cash equivalent) basis than the terms of any Stalking Horse Agreement. In the absence of a Stalking Horse Agreement for the Equity Interests, the Seller, shall determine which Bid(s) are the highest and best Bids for the Equity Interests, either in whole or in part.

- <u>Executed Agreement</u>: Each Bid must be based on the Purchase Agreement or, if applicable, any Stalking Horse Agreement for the Equity Interests. A Bid must also include a copy of the Purchase Agreement (including all exhibits thereto) marked against the Form Purchase Agreement or, if applicable, Stalking Horse Agreement, to show any changes requested by the Bidder (including those related to purchase price and to remove any Bid Protections that apply only to a Stalking Horse Purchaser, such as the break-up fee provisions contained in any Stalking Horse Agreement, which terms shall not be in any Purchase Agreement). Both the Purchase Agreement and the marked copy thereof must be provided in both Microsoft Word and PDF format.

- <u>Scope of Bid/Lots</u>: A Bid may be for all of the Equity Interests or any one or more of the individual Equity Interests.

- <u>Minimum Bid</u>: In the event that there is a Stalking Horse Purchaser for all or any particular Equity Interests, a Bid must have a purchase price that exceeds the

---

[3] In the event of any inconsistency between this summary and Bidding Procedures, the latter will govern and control.

purchase price in any Stalking Horse Purchase Agreement by at least the amount of the Bid Protections and Minimum Overbid Amount (each as hereinafter defined).

- <u>Corporate Authority</u>: A Bid must include written evidence reasonably acceptable to the Seller demonstrating appropriate corporate authorization to consummate the proposed transaction; <u>provided</u> that, if the Bidder is an entity specially formed for the purpose of effectuating the transaction then the Bidder must furnish written evidence reasonably acceptable to the Seller of the approval of the transaction by the equity holder(s) of such Bidder.

- <u>Disclosure of Identity of Bidder:</u> A Bid must fully disclose the identity of each entity and principal that will be bidding for or purchasing the Equity Interests, including any equity holders in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation. A Bid must also fully disclose any connections or agreements with the Seller, any Stalking Horse Purchaser or any other known, potential, prospective Bidder or Qualified Bidder.

- <u>Proof of Financial Ability to Perform:</u> A Bid must include detailed, written evidence that the Seller and his advisors may conclude demonstrates that the Bidder has and will continue to have the necessary financial ability to close the transaction. Such information must include, *inter alia,* the following:

  (a)  contact names and numbers for verification of financing sources;

  (b)  evidence of the Bidder's internal resources and proof of funding commitments in an aggregate amount equal to the cash portion of such Bid as are needed to close the transaction;

  (c)  the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Seller;

  (d)  a description of the Bidder's pro forma capital structure; and

  (e)  any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller demonstrating that such Bidder has the ability to close the transaction.

- <u>Contact Information and Affiliates</u>: A Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

22420.2000 20318350v4

- <u>Contingencies</u>: Each Bid (a) may not contain representations and warranties, covenants, or termination rights of any kind except and solely to the extent expressly set forth in any Stalking Horse Agreement, and (b) may not be conditioned on (i) obtaining financing, (ii) any internal approvals or credit committee approvals, or (iii) the outcome or review of due diligence.

- <u>Irrevocable</u>: Each Bid must be irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, (ii) closing of the Sale with the Successful Bidder(s), or (iii) the date the Bid is otherwise rejected under these Bidding Procedures.

- <u>Compliance with Diligence Requests</u>: The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Seller to the reasonable satisfaction of the Seller.

- <u>As-Is, Where-Is</u>: Each Bid must include a written acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Equity Interests prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents relating to the Equity Interests in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Equity Interests or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in any applicable Stalking Horse Agreement.

- <u>Termination Fees</u>: The Bid (other than a Bid pursuant to a Stalking Horse Agreement) must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the Bid, the Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

- <u>Adherence to Bid Procedures</u>: By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

- <u>No Late Bids</u>: Unless otherwise ordered by the Court, the Seller shall not consider any Bids submitted after the conclusion of the Auction, and any and all such bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

- <u>Approvals</u>: In order to be a Qualified Bidder, any Consents needed as set forth in paragraph 12 above for any Equity Interest which is the subject of the Bid must have been received by the Bidder. A&G shall act as liaison between all Bidders and the entities from whom Consents are needed so that Consents can be obtained as expeditiously as possible.

22420.2000 20318350v4

(b)  **Auction, Auction Procedures and Overbids**: If multiple Qualified Bids (including any Stalking Horse Agreement) with respect to any or all Equity Interests are submitted by the Bid Deadline, the Seller will conduct the Auction to determine the highest and otherwise best Qualified Bid with respect to such Equity Interests.

- Participation: Only the Seller, any Stalking Horse Purchaser and any other Qualified Bidder, in each case, along with their respective representatives and counsel, may attend the Auction (such attendance to be in person) and only the Stalking Horse Purchaser and any such other Qualified Bidders will be entitled to make any Bids at the Auction. Notwithstanding this provision, the Seller shall permit counsel for Nahla to attend, but not participate in, the Auction in the event Nahla is not otherwise a Qualified Bidder.

- The Seller Shall Conduct the Auction. The Seller and his advisors shall direct and preside over the Auction, and the Auction shall be transcribed. The Seller may conduct the Auction and may augment or modify the procedures described herein in any manner it reasonably determines will result in the highest and otherwise best Qualified Bid(s), including, without limitation, by establishing rules at any Auction that include, without limitation, a single or multiple rounds of bulk and/or individual bidding, the combination of Equity Interests for purposes of bidding, the use of sealed bidding, open outcry, or any other form of Bid submission (including in connection with any bulk or individual bidding). Any rules developed by the Seller will provide that each Qualified Bidder will be permitted what the Seller determines to be an appropriate amount of time to respond to the previous bid at the Auction.

- Auction Baseline Bids. Prior to commencement of the Auction, the Seller shall determine the highest and otherwise best Qualified Bid for all or part of the Equity Interests (such highest and otherwise best Qualified Bid(s), the "Auction Baseline Bid"). In addition, at the start of the Auction, the Seller may describe the terms of the Auction Baseline Bids.

- Anti-Collusion Representations. Each Qualified Bidder participating in the Auction must confirm that it (1) has not engaged in any collusion with respect to the bidding or Sale, (2) has reviewed, understands and accepts the Bidding Procedures and (3) has consented to the core jurisdiction of the Court with respect to the Sale.

- Terms of Overbids. The Seller will accept Overbids, as further described below. An "Overbid" is any bid made at the Auction subsequent to the Seller's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)  Initial Overbid: The initial Overbid after and above the Auction Baseline Bid (the "Initial Overbid") shall be in an

amount of not less than $25,000 in excess of the Auction Baseline Bid plus the amount of any Bid Protections.

(b) <u>Minimum Overbid Increments</u>: Any Overbid after and above the Initial Overbid shall be made in increments (the "<u>Minimum Overbid Increment</u>") valued at not less than $10,000, in cash or in cash equivalents. The Seller reserves the right to modify the Minimum Overbid Increment during the Auction.

(c) <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, <u>provided</u>, <u>however</u>, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder as provided herein.

At the Seller's discretion, to the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller), reasonably demonstrating such Bidder's ability to close the transaction proposed by such Overbid.

• <u>Jurisdiction of the Court</u>: All Qualified Bidders (including any Stalking Horse Purchaser) at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the marketing process, the determination of what constitutes a Qualified Bid and the procedures used to make that determination, the Auction, and the construction and enforcement of the Qualified Bidder's fully executed sale and transaction documents, as applicable.

• <u>Additional Bids; Modifications</u>: All Qualified Bidders, including any Stalking Horse Purchaser, shall have the right to submit additional Bids and make additional modifications to any Stalking Horse Agreement or Purchase Agreement at the Auction, as applicable, provided that any such modifications to such Stalking Horse Agreement or Purchase Agreement on an aggregate basis and viewed in whole, shall not, in the Seller's business judgment, be less favorable to the Seller than the terms of such original agreement.

• <u>Subsequent Bids</u>: Each Qualified Bidder must submit a subsequent Bid that satisfies the Minimum Overbid Increment in each round of bidding in order to continue participating in the Auction.

• <u>Continuance/Adjournment of Auction</u>: Subject to the deadlines set forth herein, the Seller reserves the right, in his reasonable business judgment to make one or more continuances of the Auction to, among other things: facilitate discussions between the Seller and individual Qualified Bidders, allow individual

Qualified Bidders to consider how they wish to proceed, modify or supplement any or all of the Auction procedures or rules, or give Qualified Bidders the opportunity to provide the Seller with such additional evidence as the Seller, in his reasonable business judgment may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

- <u>Additional Procedures</u>. The Seller may announce at the Auction other or additional procedural rules for conducting the Auction or may modify the rules specified in these Bidding Procedures in any manner the Seller reasonably determines will result in the highest and otherwise best Qualified Bid(s).

- <u>Sale Is As Is/Where Is</u>. Except as otherwise may be provided in any Stalking Horse Agreement, any Purchase Agreement, or any order by the Court approving any Sale as contemplated hereunder, the property sold pursuant to the Bidding Procedures, whether for all or less than all Equity Interests shall be conveyed at the closing of the purchase and sale in its then-present condition, **"AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED."**

(c)     **Closing the Auction**: The Auction will continue until the Seller selects the Bid(s) that represent the highest and otherwise best offer(s) for all or less than all of the Equity Interests (each a "<u>Successful Bid</u>," and the Bidder(s) submitting such Successful Bid(s), a "<u>Successful Bidder</u>"). The Successful Bidder(s) shall have the rights and responsibilities of the purchaser as set forth in the Stalking Horse Agreement or Purchase Agreement.

Within one (1) business day after the conclusion of the Auction, each Successful Bidder(s) shall supplement its Good Faith Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such Good Faith Deposit equals five (5%) percent of the Successful Bid(s) plus the amount required for the payment of Bid Protections, if any. The Seller shall not consider any Bids submitted after the conclusion of the Auction.

(d)     **Backup Bidder:** Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest and otherwise best Bid at the Auction with respect to all or each individual Equity Interests, as applicable, as determined by the Seller, in the exercise of its business judgment will be designated as a backup bidder (each a "<u>Backup Bidder</u>"). A Backup Bidder shall be required to keep its last submitted Bid (each a "<u>Backup Bid</u>") open and irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, and (ii) closing of the Sale.

Following the Sale Hearing, if a Successful Bidder fails to consummate the purchase of all or individual Equity Interests, as applicable, the Seller, may deem the Backup Bidder for such Equity Interest(s) to have the new Successful Bid, and the Seller will be authorized to consummate the transaction with such Backup

Bidder at the price of his last bid. Such Backup Bidder will be deemed to be the Successful Bidder and the Seller will be authorized, but not directed, to effectuate a sale to such Backup Bidder subject to the terms of the Backup Bid without further order of the Court. All Qualified Bids (other than the Successful Bid and the Backup Bid) shall be deemed rejected by the Seller on and as of the date that the Court approves the Successful Bid. The Seller, on his behalf and on behalf of each of his estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

For the avoidance of doubt, in the event that there is a Successful Bidder (other than a Stalking Horse Purchaser) with respect to all or individual Equity Interests, as applicable, and the Stalking Horse Purchaser is the Backup Bidder, the Stalking Horse Purchaser will be deemed to be the Backup Bidder at the price of its last overbid with respect to such property and will be subject to the terms contained in the immediately preceding paragraph.

(e) **Hearing to Confirm Sale(s)**: As soon as practicable after the conclusion of the Auction, a hearing shall be conducted in the Bankruptcy Court to confirm the terms of the Auction and authorize the Sale(s) of the Equity Interests.

21.     Subject to the execution of an acceptable confidentiality agreement, the Debtor will permit potential parties to receive access to due diligence materials with respect to the sale of all or a portion of the Equity Interests and will assist them in connection with such efforts.

### G.     *The Proposed Bid Protections*

22.     To provide an incentive and to compensate a Stalking Horse Purchaser for negotiating a Stalking Horse Agreement, the Debtor has agreed to a breakup fee in an amount equal to two (2%) percent of the purchase price set forth in any Stalking Horse Agreement (the "Termination Fee") executed by a non-insider Stalking Horse Purchaser. The Termination Fee shall only be payable to a Stalking Horse Purchaser who is not an insider of the Debtor as defined in the Bankruptcy Code or who is an existing member of the entity to which the Stalking Horse Agreement relates (the "Insider Purchaser"). In lieu of a Termination Fee, an Insider Purchaser

shall be entitled to an expense reimbursement of up to $25,000.00 in actual out-of-pocket expenses incurred in connection with its Stalking Horse Bid (the "Expense Reimbursement").

23.     By this Motion, the Debtor is seeking approval to provide the Termination Fee (or Expense Reimbursement, as applicable) to any Stalking Horse Purchaser, if one is identified prior to the Bid Deadline, in accordance with the Stalking Horse Agreement. The Debtor believes that offering the Termination Fee (or Expense Reimbursement, as applicable) to any Stalking Horse Purchaser will benefit the Debtor's estate by establishing a floor and promoting more competitive bidding. Without such a fee, bidding on the Equity Interests would likely be reduced. The availability of the Termination Fee (or Expense Reimbursement, as applicable) is necessary in order to provide any Stalking Horse Purchaser with some assurance of compensation for the time and expense spent in putting together an offer for the Equity Interests.

### H.     *Proposed Notices*

24.     To ensure that all parties-in-interest receive adequate notice of the Sale, not later than three (3) days after the entry of the Bidding Procedures Order, the Debtor will cause the Bidding Procedures Order, the Bidding Procedures and the Auction Notice, substantially in the form attached to this Motion as Exhibit "C", to be sent by first-class mail postage prepaid or, if no mailing address is available, via electronic mail, to (i) the U.S. Trustee, (ii) all known creditors of the Debtor, (iii) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (iv) the following taxing and regulatory authorities: (a) the Attorney General of the States of New York and Connecticut, (b) the IRS, (c) the NYS Tax Dept., and (d) the State of Connecticut Tax Department; (v) any entity in which the Debtor holds an Equity Interest which is proposed to be sold hereunder; (vi) to the extent possible, any existing members of the entity in which the Debtor holds an Equity Interest which is proposed to be sold hereunder, (vii) any entity whose approval

or Consent is necessary for the Sale of each of the Equity Interests; (viii) all parties who are known to assert a lien, claim, encumbrance or other interest on any portion of the Equity Interests; and (ix) all parties identified by the Debtor as potentially having an interest in acquiring some or all of the Equity Interests (collectively, the "Notice Parties"). Accordingly, the Debtor submits that all parties in interest will have adequate notice of the Auction and Sale.

### I. *Request to Set Dates for the Auction and Bid Deadline*

25.     As set forth below, the Debtor has formulated the following timeline to effectuate the Sale(s) contemplated herein, and seek hearings and deadlines to be set as follows:

| Date | Activity/Deadline |
|------|-------------------|
| September 26, 2022 | • Objections due to bid procedures |
| October 3, 2022 | • Hearing on bid procedures |
| Seven (7) days prior to the Sale Hearing | • Last day to object to sale |
| 45 days after entry of Bidding Procedures Order | • Bid Deadline |
| 3 business days after Bid Deadline | • Auction |
| As soon as possible thereafter subject to the Court's calendar | • Sale Hearing |
| Thirty (30) days following entry of the Sale Order | • Last day to close Sale(s) |

26.     The Debtor proposes that objections, if any: (i) to the Bidding Procedures shall be filed with this Court, so as to be received no later than 4:00 p.m. (prevailing Eastern Time) seven (7) days prior to the hearing to consider approval of the Bidding Procedures (the "Bidding Objection Deadline"), and (ii) to the Sale shall be filed with this Court, so as to be received no later than 4:00 p.m. (prevailing Eastern Time) seven (7) days prior to the Sale Hearing (the "Sale Objection Deadline"), provided any party that files a timely objection may supplement such objection not later than 2:00 p.m. (prevailing Eastern Time) one (1) day prior to the Sale Hearing to address matters determined at the Auction, if any, by the following parties: (a) United States Trustee for Region 2, 201 Varick Street, Room 1006, New York, New York 10014, Attn: Tara Tiantian, Esq.; and (b) counsel to the Debtor, Cullen and Dykman LLP, 100 Quentin Roosevelt

Blvd., Garden City, New York 11530, Attn: Matthew G. Roseman, Esq. and Bonnie L. Pollack, Esq.

## **RELIEF REQUESTED**

27. By this Motion, the Debtor requests the entry of orders: (a) approving the Bidding Procedures related to the Sale and proposed Auction of the Equity Interests pursuant to sections 363(b), (d) (f), and (m) of the Bankruptcy Code; (b) approving the Purchase Agreement as a form to be followed by Potential Bidders; (c) approving proposed bid protections in favor of any Stalking Horse Purchaser, if one is identified; (d) scheduling an Auction, if necessary, and the Sale Hearing to approve the Sale of the Equity Interests; and (e) approving the form and manner of Auction Notice.

28. The Debtor further requests that at the Sale Hearing, subject to the results of the Auction and the Bidding Procedures set forth herein, this Court enter the Sale Order approving and authorizing the Sale, free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon, pursuant to the Purchase Agreement, as modified to incorporate the terms of any Successful Bid.

## **BASIS FOR RELIEF REQUESTED**

### I. The Bidding Procedures Are Consistent and Appropriate in the Context of Bankruptcy Sales and Should be Approved

29. The Bidding Procedures, which are standard for the sale of assets in chapter 11 cases, will ensure that the Debtor's estate receives the greatest benefit available from the sale of the Equity Interests. The Bidding Procedures have been structured to attract the maximum number of Qualified Bids for the Equity Interests while allowing the Debtor the flexibility to select the bid or bids that provide the greatest overall value to the Debtor's estate. Finally, the Bidding Procedures set out a time frame that will allow potential purchasers sufficient time to construct

and submit informed Qualified Bids, while still providing for the expeditious sale of the Equity Interests. The Debtor believes that the time frame proposed herein and in the Bidding Procedures is appropriate to facilitate interest in the assets being sold.

30.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R, 650, 656-57 (Bankr. S.D.N.Y. 1992). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 (same); *Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.)*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988) (same).

31.     In furtherance of maximizing the value of the assets sold, bidding procedures, such as those proposed here, may be used in court-supervised sales because they streamline the acquisition process and "help to provide an adequate basis by which to compare offers." *Integrated Res.*, 147 B.R. at 659 (bidding procedures and bid protections "are important tools to encourage bidding and to maximize the value of the debtor's assets"). In overseeing a  sale subject to an auction process, a bankruptcy court must weigh "on the one hand, providing for an orderly bidding process, recognizing the danger that absent such a fixed and fair process bidders may decline to participate in the auction; and, on the other hand, retaining the liberty to respond to differing circumstances so as to obtain the greatest return for the bankrupt estate." *In re Fin. News Network, Inc.*, 980 F.2d 165, 166 (2d Cir. 1992).

22420.2000 20318350v4

32. The Debtor submits that the Bidding Procedures are reasonably designed to ensure that the Debtor's estate receives the maximum benefit available from the sale of the Equity Interests, and therefore warrant Court approval.

## II. The Termination Fee or Expense Reimbursement is Appropriate

33. In this Motion, the Debtor seeks approval of payment, in certain circumstances set forth in any Stalking Horse Agreement, of a Termination Fee or Expense Reimbursement, as applicable. The Debtor submits that, under the circumstances of this case, a Termination Fee to a Stalking Horse Purchaser that is not an Insider Purchaser equal to two (2%) percent of the purchase price in any Stalking Horse Agreement is appropriate.

34. To compensate the Stalking Horse Purchaser, if one is identified, for serving as a "stalking horse" whose bid will be subject to higher or better offers, the Debtor seeks authority to pay any Stalking Horse Purchaser a Termination Fee in the event that such Stalking Horse Purchaser is not the Successful Bidder at the Auction. As noted above, approval of the Termination Fee is an integral part of obtaining a quality Stalking Horse Purchaser. The Debtor submits that the Termination Fee is reasonable in relation to any potential Stalking Horse Purchaser's efforts and to the magnitude of the transaction. Further, if a Stalking Horse Purchaser is selected, the Stalking Horse Purchaser's bid will establish an appropriate floor value for the Equity Interests. Furthermore, any Consents shall have been obtained with respect to any Stalking Horse Purchaser prior to acceptance of a Stalking Horse Bid.

35. Bid incentives such as the Termination Fee encourage a potential purchaser to invest the time, money and effort required to negotiate with a debtor, and perform the necessary due diligence attendant to the acquisition of an asset, despite the inherent risks and uncertainties of the chapter 11 process. Historically, bankruptcy courts in this Circuit have approved bidding incentives similar to the Termination Fee under the "business judgment rule," which, as set forth

22420.2000 20318350v4

above, proscribes judicial second-guessing of the actions of a corporation's board of directors (or in this case, the individual Debtor), provided that such actions are taken in good faith and in the exercise of honest judgment. *See, e.g.*, *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking"; *see also Integrated Res., Inc.*, 147 B.R. at 657-58 (addressing the validity of break-up fees pursuant to a sale under section 363 of the Bankruptcy Code by considering the following three factors: (i) whether the relationship of the parties who negotiated the break-up fee was tainted by self-dealing or manipulation; (ii) whether the fee hampers, rather than encourages bidding; and (iii) whether the amount of the fee is unreasonable relative to the proposed purchase price).

36.     In the instant case, the Termination Fee is believed to be a necessary bid protection in order to attract a quality Stalking Horse Purchaser. The Termination Fee will provide a material benefit to the estate by enabling the Debtor to obtain a commitment from any Stalking Horse Purchaser which will expend money, time and effort formulating and negotiating an offer for the Equity Interests, notwithstanding the fact that any Stalking Horse Agreement will be subject to higher or better offers. In the Debtor's business judgment, the proposed Termination Fee is fair and reasonable when considering the potential amount of time, effort, cost, and expense that any Stalking Horse Purchaser will likely incur in negotiating a Stalking Horse Agreement, and necessary to compensate the Stalking Horse Purchaser for its time in the event a transaction with a different Bidder is thereafter consummated.

37.     Moreover, the Termination Fee does not hamper any other party's ability to offer a higher or better bid for the Equity Interests. Given the size of the Termination Fee relative to the expected range of purchase prices and the "overbid" requirements set forth in the Bidding

Procedures, the Debtor submits that the fee is not so large as to have a "chilling effect" on other prospective bidders' interest in the Equity Interests. Because any Stalking Horse Agreement will create a floor for any additional bids, the Stalking Horse Purchaser will have provided significant value to the Debtor's estate.

38.  Finally, given that these Equity Interests are minority interests, it is likely that the most probable Bidders, Stalking Horse or otherwise, will be existing members of the entities, especially given the required Consents and restrictions set forth above.  The Debtor and his professionals have determined that in lieu of a Termination Fee in the event an Insider Purchaser enters into a Stalking Horse Agreement and is ultimately not the Successful Bidder, such bidder should be reimbursed for their actual out-of-pocket expenses incurred up to the amount of $25,000.00.  This will incentivize Insider Purchasers to participate in the process to the benefit of the estate, by providing a floor for bidding on an Equity Interest. The Debtor submits that such Expense Reimbursement is minimal in cost, but of great benefit to the estate.

39.  The Debtor therefore submits that the approval of the Termination Fee or the Expense Reimbursement, as applicable, is in the best interest of the Debtor's estate and his creditors and is the exercise of independent and prudent business judgment.

**III.   The Sale of the Equity Interests Pursuant to the Purchase Agreement is Authorized by Section 363(b) of the Bankruptcy Code**

40.  Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(l). The terms of such sale are generally within the sound discretion of the Debtor. *See In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 679 (Bankr. S.D.N.Y. 1989).

41.  Courts have uniformly held that approval of a proposed use of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents

a reasonable business judgment on the part of the debtor. *See e.g., In re Chrysler LLC*, 405 B.R. 84, 97–100 (Bankr. S.D.N.Y. 2009), *aff'd*, 576 F.3d 108 (2d Cir. 2009); *In re General Motors Corp.*, 407 B.R. 463 (S.D.N.Y. 2009); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *Ionosphere Clubs, Inc.*, 100 B.R. at 675; *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

42.     Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *Integrated Resources, Inc.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

43.     Furthermore, courts have authorized chapter 11 debtors, in some circumstances, to sell all or substantially all of their assets pursuant to section 363(b) prior to confirmation of a plan. *Lionel Corp.*, 722 F.2d at 1065, 1071. Such a sale can even be made prior to filing a plan of reorganization. *In re Naron & Wagner, Chartered*, 88 B.R. 85, 87 (Bankr. D. Md. 1988). However, in approving such a sale, a court must be able, based on the evidence, "to articulate sound business justifications for [its] decisions." *Lionel Corp.*, 722 F.2d at 1066. A court should consider all of the salient factors and act to further the diverse interests of the debtors, creditors and equity holders alike. *Id.* at 1071; *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Ionosphere Clubs, Inc.*, 100 B.R. at 675.

44.     The Second Circuit has indicated that the following factors should be considered during the sale approval process: (i) the proportionate value of the asset to the estate as a whole; (ii) the amount of elapsed time since the filing; (iii) the likelihood that a plan of reorganization will be proposed and confirmed in the near future; (iv) the effect of the proposed disposition on

future plans of reorganization; (v) the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property; (vi) which of the alternatives of use, sale or lease the proposal envisions; and (vii) whether the asset is increasing or decreasing in value. *See Lionel Corp.*, 722 F.2d at 1071. The factors highlighted by the *Lionel* decision are often cited and applied by other courts when determining requests to approve a sale of all or substantially all of the assets of a debtor's estate. *See, e.g., In re GSC, Inc.*, 453 B.R. 132, 156 (Bankr. S.D.N.Y. 2011); *In re CPJFK, LLC*, 496 B.R. 290, 303-04 (Bankr. E.D.N.Y. 2011); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *In re Thomson McKinnon Sec., Inc.*, 120 B.R. 301, 307-08 (Bankr. S.D.N.Y. 1990).

45.     As indicated above, the decision to sell the Equity Interests was one of necessity and resulted from a lack of remaining viable alternatives. Since the Debtor is liquidating, it is necessary that his Equity Interests be sold for distribution to creditors. A plan has been proposed by the Debtor, which relies for the distributions thereunder the sale of the Equity Interests. There simply is no alternative other than a Sale.

46.     Based on the foregoing, the Sale of the Equity Interests is justified by sound business reasons and in the best interests of the Debtor and his estate. Accordingly, pursuant to section 363(b) of the Bankruptcy Code, the Debtor requests approval of the Sale to one or more Successful Bidders as set forth herein.

## IV.     The Sale of the Equity Interests Free and Clear of Liens, Claims, and Interests is Authorized Under Section 363(f) of the Bankruptcy Code

47.     Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in a bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

48.     As quoted above, section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Sale of the Equity Interests free and clear of all interests. *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Mich. Employment Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) written in disjunctive; holding that court may approve sale "free and clear" provided at least one of subsections of Bankruptcy Code section 363(f) is met).

49.     In accordance with the provisions of the Purchase Agreement and section 363(f) of the Bankruptcy Code, the Debtor requests that he be authorized to conduct the Sale free and clear of all Liens, other than the Permitted Exceptions (as set forth in the Purchase Agreement).

50.     The Debtor believes that there are no liens against the Equity Interests but to the extent that there are, such liens will attach to the proceeds of the Sale to the same extent and priority of such liens as they presently exist, thereby satisfying section 363(f) of the Bankruptcy Code.

## V. The Purchaser is a Good Faith Purchaser and is Entitled to the Full Protections of Section 363(m) of the Bankruptcy Code

51.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

52.     The Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See In re Colony Hill Assocs.,* 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders").

53.     The Debtor intends to make an appropriate showing at the Sale Hearing that the Purchase Agreement with the Successful Bidder is the result of a negotiated, arm's-length transaction, in which such Successful Bidder at all times acted in good faith. The Debtor will thus request in the Sale Order that the Court find that the Successful Bidder will be purchasing the Equity Interests in good faith within the meaning of section 363(m) of the Bankruptcy Code.

## VI. The Sale Should Be Exempt from Transfer and Similar Taxes

54.     The Debtor requests that the Court find that there will be no transfer or similar taxes owed on any transaction in connection with the Sale of the Equity Interests, as such is in contemplation and furtherance of the Debtor's Plan, pursuant to Section 1146 of the Bankruptcy

Code. This result is consistent with the ruling of the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008).

**VII.  The Proposed Notice Procedures With Respect to the Auction and Sale Hearing Should be Approved**

55.     Pursuant to Bankruptcy Rules 2002(c) and 6004, the Debtor is required to give 21 days' notice of any proposed sale of property not in the ordinary course of business. Bankruptcy Rule 2002(c) further provides that such notice must include the time and place of any auction, a sale hearing, and the time fixed for objections to the sale. The Auction Notice sets forth all the information a Potential Bidder and any other party in interest should require about the bidding process for the Equity Interests, including: notice of the Bidding Procedures and information on how to obtain a copy of the Bidding Procedures; the Bid Deadline; the time, date, and location of the Auction; and the time, date and location of the Sale Hearing.

56.     Not later than three (3) days after the entry of the Bidding Procedures Order, the Debtor will cause the Bidding Procedures Order, the Bidding Procedures and the Auction Notice, to be sent by first-class mail postage prepaid to the Notice Parties.  The Debtor submits that the foregoing notice is reasonably calculated to provide timely and adequate notice to the Debtor's creditors and those persons potentially interested in bidding on the Equity Interests and, thus, that such notice is sufficient for entry of the Bidding Procedures Order and the Sale Order.

**NO PRIOR REQUEST**

57.     No prior request for the relief sought in this Motion has been made to this or any other Court.

**CONCLUSION**

58.     The Debtor's proposed Sale of the Equity Interests as described in this Motion and the Purchase Agreement is supported by sound business reasons, as set forth herein.  The proposed

22420.2000 20318350v4

Sale is proper and necessary, and serves the best interests of the Debtor, his estate, and his creditors. The Debtor thus requests that the Court approve the proposed Sale of the Equity Interests free and clear of all liens, claims, encumbrances, and interests, as requested.

## NOTICE

59.    Notice of this Motion has been provided to (i) the U.S. Trustee, (ii) all known creditors of the Debtor, (iii) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (iv) the following taxing and regulatory authorities: (a) the Attorney General of the States of New York and Connecticut, (b) the IRS, (c) the NYS Tax Dept., and (d) the State of Connecticut Tax Department; (v) any entity in which the Debtor holds an Equity Interest which is proposed to be sold hereunder; and (vi) all parties who are known to assert a lien, claim, encumbrance or other interest on any portion of the Equity Interests the Notice Parties. The Debtor submits that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and grant the Debtor such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
      September 2, 2022

<div style="margin-left:3em">

CULLEN AND DYKMAN LLP

BY:  Bonnie L. Pollack           
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700

Attorneys for the Debtor

</div>

22420.2000 20318350v4

**Exhibit A**

**Bidding Procedures Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                   :

In re:                           : Chapter 11

                                     :

JOSEPH KLAYNBERG,             : Case No. 22-10165 (MG)

                                     :

                                     :

                    Debtor.         :

                                     :
---------------------------------------------------------------x

## ORDER (I) (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S EQUITY INTERESTS; (B) APPROVING THE FORM OF PURCHASE AGREEMENT; (C) APPROVING BID PROTECTIONS IN FAVOR OF ANY STALKING HORSE PURCHASER; (D) APPROVING THE FORM AND MANNER OF SERVICE OF THE AUCTION NOTICE; AND (E) SCHEDULING AN AUCTION; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] filed by the Joseph Klaynberg, the above captioned debtor and debtor-in-possession (the "Debtor"), by and through his attorneys, Cullen and Dykman LLP, for entry of an order (this "Bidding Procedures Order"), pursuant to sections 105, 363, 365, and 503 of chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code"), and Rules 2002, 6004, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) approving bidding procedures ("Bidding Procedures"), substantially in the form annexed hereto as Exhibit "1", related to the sale and proposed auction of the Equity Interests pursuant to sections 363(b), (d) (f), and (m) of the Bankruptcy Code; (b) approving the proposed asset purchase agreement (the "Purchase Agreement"), a copy of which is annexed to the Motion as Exhibit "B", solely to the extent of its use as a form which all bidders for the Equity Interests must follow; (c) approving proposed bid protections in favor of a stalking horse purchaser (a "Stalking Horse Purchaser"), if one is

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

selected; (d) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to approve the sale of the Equity Interests; (e) approving the form and manner of notice (the "Auction Notice") of the Auction and Sale Hearing substantially in the form annexed to the Motion as Exhibit "C"; and due and sufficient notice of the hearing on the Motion (the "Bidding Procedures Hearing") and the relief sought therein having been given; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, his estate, his creditors and other parties in interest; and after due deliberation thereon and good cause appearing therefore, it is hereby:

**FOUND, CONCLUDED AND DETERMINED THAT:**[2]

    A.    This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

    B.    The relief granted herein is in the best interests of the Debtor, his estate and creditors, and other parties in interest.

    C.    Due, sufficient and adequate notice of the Motion and the Bidding Procedures Hearing and the relief granted in this Bidding Procedures Order has been given and such notice is appropriate in light of the circumstances and the nature of the relief requested, and no other or further notice thereof is required.

    D.    The proposed Auction Notice is reasonably calculated to provide timely and adequate notice to the Debtor's creditors and those persons potentially interested in bidding on the Equity Interests, and no further notice is necessary or required upon service of the Auction

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate. See FED. R. BANKR. P. 7052.

Notice by first-class mail postage prepaid or, if no mailing address is available, via electronic mail, upon (i) the U.S. Trustee, (ii) all known creditors of the Debtor, (iii) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (iv) the following taxing and regulatory authorities: (a) the Attorney General of the States of New York and Connecticut, (b) the IRS, (c) the NYS Tax Dept., and (d) the State of Connecticut Tax Department; (v) any entity in which the Debtor holds an Equity Interest which is proposed to be sold hereunder; (vi) to the extent possible, any existing members of the entity in which the Debtor holds an Equity Interest which is proposed to be sold hereunder, (vii) any entity whose approval or Consent is necessary for the Sale of each of the Equity Interests; (viii) all parties who are known to assert a lien, claim, encumbrance or other interest on any portion of the Equity Interests; and (ix) all parties identified by the Debtor as potentially having an interest in acquiring some or all of the Equity Interests (collectively, the "Notice Parties"). Accordingly, the Debtor submits that all parties in interest will have adequate notice of the Auction and Sale.

  E. The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, including this Court's (i) approval of the Bidding Procedures, attached hereto as Exhibit 1, (ii) approval of the form of Purchase Agreement, (iii) approval to pay any Stalking Horse Purchaser, if one is selected, a Termination Fee or Expense Reimbursement, as applicable, in the event that such Stalking Horse Purchaser is not the Successful Bidder at an Auction, and (iv) approval of the form and manner of service of the Auction Notice.

  F. The Debtor has articulated good and sufficient reasons for, and the best interests of the Debtor's estate will be served by, this Court scheduling a Sale Hearing to consider whether to grant the remainder of the relief requested in the Motion, including approving and

authorizing the proposed Sale of the Equity Interests, free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon, pursuant to the Purchase Agreement, as modified to incorporate the terms of any Successful Bid.

G.     The Termination Fee or the Expense Reimbursement, as applicable, to the extent payable under certain circumstances set forth in any Stalking Horse Agreement, is (i) an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of section 503(b) of the Bankruptcy Code, (ii) providing a material benefit to the estate by enabling the Debtor to obtain a commitment from any Stalking Horse Purchaser which will expend money, time and effort formulating and negotiating an offer for the Equity Interests, (iii) fair and reasonable when considering the potential amount of time, effort, cost, and expense that any Stalking Horse Purchaser will likely incur in negotiating a Stalking Horse Agreement, and (iv) necessary to induce the Stalking Horse Bidder to pursue the Sale.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is GRANTED, to the extent set forth herein.

2.     All objections to entry of this Bidding Procedures Order or to the relief provided herein and requested in the Motion that have been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

3.     The form of Purchase Agreement attached to the Motion as <u>Exhibit B</u> is hereby approved as the Purchase Agreement for purposes of serving as the form which all bidders for the Equity Interests must follow.

4.     The Debtor is authorized to enter into a Stalking Horse Agreement with a Stalking Horse Purchaser, if one is identified prior to the Bid Deadline, and shall file notice of such

Stalking Horse Agreement with the Bankruptcy Court with notice to the Notice Parties and all Potential Bidders at least ten (10) days before the Bid Deadline.

### **The Bidding Procedures**

5.      The Bidding Procedures, as set forth in Exhibit 1 hereto and incorporated herein by reference, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Equity Interests, and the Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include or reference any particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

6.      As further described in the Bidding Procedures, each Bid must be delivered on or before _____, **2022 at 5:00 p.m. (EST)** (the "Bid Deadline").

7.      The Debtor is authorized to extend the deadlines set forth in this Bidding Procedures Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing as he may reasonably determine to be in the best interest of his estate.

### **The Auction**

8.      The Auction, if necessary, shall commence at 10:00 a.m. (prevailing Eastern Time) _____, **2022** at [LOCATION TBD], or such other place and time as the Debtor shall notify all Qualified Bidders; provided, however, in the event that no Qualified Bids are received by the Bid Deadline, then the Auction shall be cancelled, or if the only Qualified Bid(s) is the Bid of any Stalking Horse Purchaser, then the Stalking Horse Agreement shall be the Successful Bid for the Equity Interests and the Debtor shall not be required to conduct an

Auction, and in such event the Debtor shall proceed with the approval of the Stalking Horse Agreement with the Stalking Horse Purchaser as the Successful Bidder.

## Bid Protections

9. The Debtor is authorized and directed to pay the Termination Fee or Expense Reimbursement, as applicable, to the extent incurred and solely in the event of the consummation of a transaction with a higher Successful Bidder for the Equity Interests, from the first proceeds of such transaction or as otherwise set forth in the Purchase Agreement, without further order of the Court.

## Auction Notice

10. The Auction Notice substantially in the form attached to the Motion as Exhibit C is hereby approved.

11. Not later than three (3) days after the entry of this Bidding Procedures Order, the Debtor will cause a copy of this Bidding Procedures Order, the Bidding Procedures and the Auction Notice, to be sent by first-class mail postage prepaid to the Notice Parties or, if no mailing address is available, via electronic mail.

## Objections to Motion

12. Objections, if any, to the Sale Motion must be made in writing, must state with particularity the reasons for the objection or response, and must be filed with the Clerk of the Bankruptcy Court, with copies delivered to the Bankruptcy Court and received by the Chambers of the Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10024, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and basis of the objection and the

22420.2000 20318351v1

specific grounds therefore and must be served upon: (a) United States Trustee for Region 2, 201 Varick Street, Room 1006, New York, New York 10014, Attn: Tara Tiantian, Esq.; (b) counsel to the Debtor: Cullen and Dykman LLP, 100 Quentin Roosevelt Blvd., Garden City, New York 11530, Attn: Matthew G. Roseman, Esq. and Bonnie L. Pollack, Esq.; so as to be received no later than 4:00 p.m. (prevailing Eastern Time) seven (7) days prior to the Sale Hearing (the "Sale Objection Deadline"), provided any party that files a timely objection may supplement such objection not later than 2:00 p.m. (prevailing Eastern Time) one (1) day prior to the Sale Hearing to address matters determined at the Auction, if any.

### The Sale Hearing

13.    The Sale Hearing shall be held before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, on _____, 2022 at __:00 _.m. (EST) at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, at which time this Court shall consider (i) approval of the Sale of the Equity Interests to the Successful Bidder(s); (ii) the entry of the proposed Sale Order, substantially in the form attached to the Motion as Exhibit D; (iii) any issues or objections that are timely interposed by any parties; and (iv) such other or further relief as this Court may deem just or proper.

14.    The Sale Hearing may be adjourned by the Court upon request of the Debtor without further order of this Court, in which event a notice of adjournment will be filed with this Court and served on all Qualified Bidders or by announcing such adjournment on the record of the Sale Hearing.

22420.2000 20318351v1

## **Additional Provisions**

15.     The Debtor is authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the requirements established by this Bidding Procedures Order.

16.     Nothing contained in this Bidding Procedures Order precludes any party in interest from objecting to the Sale in accordance with the objection procedures set forth herein and no party shall be deemed to have consented to the Sale by virtue of not having objected to the Motion.

17.     The Debtor is hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established by this Bidding Procedures Order.

18.     This Bidding Procedures Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

19.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7052, 9014 or otherwise, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

20.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order.

Dated:_____, 2022
     New York, New York

                                   _____
                                   HONORABLE MARTIN GLENN
                                   CHIEF UNITED STATES BANKRUPTCY
                                   JUDGE

22420.2000 20318351v1

# Exhibit 1

# Bidding Procedures

## BIDDING PROCEDURES AND TERMS AND CONDITIONS OF SALE

These bidding procedures (the "Bidding Procedures") set forth the process by which Joseph Klaynberg, the debtor and debtor-in-possession herein (the "Debtor" or the "Seller") shall conduct a sale (the "Sale") by auction (the "Auction") of certain equity interests in entities, described below (the "Equity Interests"), in whole or individually, free and clear of liens, claims and encumbrances.

The United States Bankruptcy Court for the Southern District of New York (the "Court") presides over the Seller's chapter 11 bankruptcy case (the "Chapter 11 Case") captioned *In re Joseph Klaynberg*, Ch. 11 Case No. 22-10165 (MG) (Bankr. S.D.N.Y.).

On [●], 2022, the Court entered an order (the "Bidding Procedures Order") granting the Seller's motion (the "Bidding Procedures Motion")[1] insofar as it sought approval of the Bidding Procedures and the availability of Bid Protections (as hereinafter defined) to be offered in connection with a potential Stalking Horse Purchaser (as hereinafter defined). The Bidding Procedures Order and the order approving the Sale are referred to herein, collectively, as the "Sale Orders."

All Bidders should be advised that the Seller may negotiate with prospective buyers that may submit, or already have submitted, letters of intent and/or indications of interest to become a stalking horse purchaser (a "Stalking Horse Purchaser") for some or all of the Equity Interests (collectively, the "Prospective Purchasers").

## I.   PROPERTY TO BE SOLD

The Bidding Procedures Motion contemplates one or a combination of multiple offers to purchase the Equity Interests, in whole or individually. The Equity Interests consist of:

|  | Interest | Property Owned by Entity |
|---|---|---|
| Mark Paragon LP | 2.53% | Entity owns a strip mall in upstate NY |
| Durdom, Inc. | 70% | Entity owns a 45% interest in 2 partnerships which own 2 commercial condominiums in New Rochelle |
| 5CP, LLC | 28.03% | Entity owns property at 5 Constitution Plaza, Hartford, CT |
| JEDR Group, LLC | 50% | Owns interests in 5CP, HSK Mulberry (which owns interest in Spectra Top, which owns property at 100 Trumbull St, Hartford, CT), 114 MS Member (which owns property at 114 Mulberry St., NY, NY) |
| KS Equities | 50% | Owns interests in 5CP, Spectra 111 (which owns property at 111 Pearl St, Hartford, CT), Spectra 101 (which owns property at 101 Peral St, Hartford, CT), 114 MS Member |

---

[1]  Capitalized terms used but not defined herein have the meaning ascribed to them in the Bidding Procedures Motion.

| | | |
|---|---|---|
| JKIG LLC | .5% | Owns interest in Spectra TOP, Spectra 111, Spectra 101 |
| WW Spectra Corp. | 50% | Owns interest in Spectra TOP |
| Klaynberg Family Group | 10% | Owns interest in Spectra 111, Spectra 101 |
| 318 Investors A | 9.52% | Entity owns 50% of entity which owns property at 318 E. 3rd St., NY, NY |
| WW1834, LLC | 1.92% | Entity owns a project under construction in Harlem, NY |
| 114 MS Member, LLC | 3.61% | Entity owns property located at 114 Mulberry Street, NY, NY |
| AM Club, LLC | 50% | Entity owns interest in 114 MS Member |
| WWIG III LLC | 5.56% | Entity owns interest in Greenpoint Partners (which owns a building under construction in Brooklyn, NY) |
| WW Eastern LLC | 3.56% | Owns apartment unit at 302 East 96th St, NY. NY |
| Wonder Works Construction Corp. | 42% | Construction company |
| International Design Direct, Ltd. | 100% | Importer of goods used in construction projects |

A party may participate in the bidding process by submitting a Bid (as defined below) for all of the Equity Interests or for one or more individual Equity Interests (the "Lots").

Subject to the terms of the Sale Orders, all of the Seller's right, title and interest in and to the Equity Interests shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Liens"), with such Liens to attach to the proceeds of the Sale(s) with the same validity and priority as such Liens applied against the Equity Interests or the Lots.

## II.   BIDDING PROCESS

A.   Overview

The Seller and his advisors will, subject to the other provisions of these Bidding Procedures:

   1.   coordinate the efforts of Potential Bidders (as defined below) in conducting their due diligence investigations;

   2.   receive offers from Bidders;

   3.   determine whether any person is a Qualified Bidder (as defined below); and

   4.   conduct the Auction and further negotiate any offers made to purchase the Equity Interests, either as a whole or in Lots.

2

B.  Key Dates For Potential Bidders

The Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Seller and to submit competing bids for the Equity Interests, either as a whole or in Lots. The Seller will assist Potential Bidders in conducting their respective due diligence investigations and may accept Bids until _____, **2022 at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

The key dates for the Sale process are as follows:[2]

|  | **Bid Deadline**: Due to submit a Qualified Bid and Good Faith Deposit (each as defined below) |
|---|---|
|  | **Auction**: To be held at [LOCATION TBD] |
| As soon thereafter as is convenient for the Court | **Sale Hearing**: To be held at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004 |

C.  Access to Diligence Materials

To participate in the bidding process either as a Stalking Horse Purchaser or to effectuate a sale transaction for all or a portion of the Equity Interests (a "Transaction") and to receive access to due diligence materials (the "Diligence Materials"), a party must submit to the Seller an executed confidentiality agreement in form and substance satisfactory to the Seller (a "Confidentiality Agreement").

A party who executes such a Confidentiality Agreement for access to Diligence Materials shall be a "Potential Bidder." The Seller will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence in accordance with a diligence protocol determined by the Seller and his advisors; provided, however, that the Seller shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid (as defined below) on or before the Bid Deadline.

Neither the Seller nor his representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

---

[2] These dates are subject to extension or adjournment as provided for herein. The schedule set forth above may be delayed and the qualification of bids may be relaxed in the event that the Seller determines that additional time or adjustment to qualifications will likely result in greater overall value for the Seller's estate based on an expression(s) of interest or bid(s) received from an identified party which the Seller believes could be a Qualified Bid (as hereinafter defined).

3

All due diligence requests must be directed to the Seller's real estate advisors, A&G Realty Partners ("A&G").

D.    Due Diligence from Bidders

Each Potential Bidder and each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Seller or his advisors regarding such Potential Bidder or Bidder, as applicable, and his contemplated transaction. Failure by a Potential Bidder or Bidder (other than any Stalking Horse Purchaser) to comply with requests for additional information and due diligence access may be a basis for the Seller to determine that such Bidder is not a Qualified Bidder.

## III.    AUCTION QUALIFICATION PROCESS

A.    Qualifying Bids

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (other than any party designated as a Stalking Horse Purchaser) (each, a "Bidder"), must be reasonably determined by the Seller, in consultation with the Consultation Parties, to satisfy each of the following conditions:

1.    Good Faith Deposit: Each Bid must be accompanied by a cash deposit, paid by wire transfer of immediately available funds or a certified check, in the amount of five percent (5%) of the purchase price contained in the Purchase Agreement (as defined below), which deposit shall be held in an escrow account to be identified and established by the Seller (the "Good Faith Deposit").

2.    Higher and Better Terms:  In connection with any Bid for the Equity Interests, either in whole or for Lots, such Bid must be on terms that the Seller, in his business judgment, determines is higher and better for the Seller on a cash (or cash equivalent) basis than the terms of any stalking horse asset purchase agreement (including all exhibits, schedules and ancillary agreements related thereto, and as amended and in effect, a "Stalking Horse Agreement").  In the absence of a Stalking Horse Agreement for the Equity Interests, the Seller shall determine which Bid(s) are the highest and best Bids for the Equity Interests, either in whole or for Lots.

3.    Executed Agreement: Each Bid must be based on the form asset purchase agreement attached hereto (the "Purchase Agreement") or, if applicable, any Stalking Horse Agreement for the Equity Interests. A Bid must also include a copy of the Purchase Agreement (including all exhibits thereto) marked against the form Purchase Agreement or, if applicable, Stalking Horse Agreement, to show all changes requested by the Bidder (including those related to purchase price and to remove any Bid Protections that apply only to a Stalking Horse Purchaser, such as the Termination Fee provisions contained in any Stalking Horse Agreement, which terms shall not be in any

Purchase Agreement). Both the Purchase Agreement and the marked copy thereof must be provided in both Microsoft Word and PDF format.

4. <u>Scope of Bid / Lots</u>: A Bid must be for all Equity Interests or for one or more of the Lots.

5. <u>Minimum Bid</u>: A Bid must have a purchase price that exceeds the purchase price in any Stalking Horse Purchase Agreement by at least the amount of the Bid Protections and Minimum Overbid Amount (each as hereinafter defined).

6. <u>Corporate Authority</u>: A Bid must include written evidence reasonably acceptable to the Seller demonstrating appropriate corporate authorization to consummate the proposed Transaction; <u>provided</u> that, if the Bidder is an entity specially formed for the purpose of effectuating the Transaction then the Bidder must furnish written evidence reasonably acceptable to the Seller of the approval of the Transaction by the equity holder(s) of such Bidder.

7. <u>Disclosure of Identity of Bidder:</u> A Bid must fully disclose the identity of each entity and principal that will be bidding for or purchasing the Equity Interests or any Lot(s), including any equity holders in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation. A Bid must also fully disclose any connections or agreements with the Seller, any Stalking Horse Purchaser or any other known, potential, prospective Bidder or Qualified Bidder.

8. <u>Proof of Financial Ability to Perform:</u> A Bid must include detailed, written evidence that the Seller and his advisors may conclude demonstrates that the Bidder has and will continue to have the necessary financial ability to close the Transaction. Such information must include, *inter alia,* the following:

    (a)    contact names and numbers for verification of financing sources;

    (b)    evidence of the Bidder's internal resources and proof of funding commitments in an aggregate amount equal to the cash portion of such Bid as are needed to close the Transaction;

    (c)    the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Seller;

    (d)    a description of the Bidder's pro forma capital structure; and

(e)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller demonstrating that such Bidder has the ability to close the Transaction.

9.    <u>Contact Information and Affiliates</u>:  A Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

10.    <u>Contingencies</u>:  Each Bid (a) may not contain representations and warranties, covenants, or termination rights of any kind except and solely to the extent expressly set forth in any Stalking Horse Agreement, and (b) may not be conditioned on (i) obtaining financing, (ii) any internal approvals or credit committee approvals, or (iii) the outcome or review of due diligence.

11.    <u>Irrevocable</u>:  Each Bid must be irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, (ii) closing of the Sale with the Successful Bidder(s), or (iii) the date the Bid is otherwise rejected under these Bidding Procedures.

12.    <u>Compliance with Diligence Requests</u>:  The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Seller to the reasonable satisfaction of the Seller.

13.    <u>As-Is, Where-Is</u>:  Each Bid must include a written acknowledgement and representation that the Bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Equity Interests or applicable Lot(s) prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents or the Equity Interests or applicable Lot(s) in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Equity Interests or applicable Lot(s) or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in any applicable Stalking Horse Agreement.

14.    <u>Termination Fees</u>:  The Bid (other than a Bid pursuant to a Stalking Horse Agreement) must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the Bid, the Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

15.    <u>Adherence to Bid Procedures</u>:  By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and

agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

16. No Late Bids:  Unless otherwise ordered by the Court, the Seller shall not consider any Bids submitted after the conclusion of the Auction, and any and all such bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

17. Approvals:  In order to be a Qualified Bidder, any Consents needed as set forth in paragraph 12 of the Bidding Procedures Motion for any Equity Interests which is the subject of the Bid must have been received. A&G shall act as liaison between all Bidders and the entities from whom Consents are needed so that Consents can be obtained as expeditiously as possible.

18. Bid Notice:  The following parties (the "Bid Notice Parties") must receive a Bid in writing, on or before the Bid Deadline:

| Debtor | Counsel to the Debtor |
|---|---|
| Joseph Klaynberg<br>114 Mulberry Street, Apt. 703<br>New York, NY 10013 | Cullen and Dykman LLP<br>100 Quentin Roosevelt Blvd.<br>Garden City, NY 11530<br>Attn:  Matthew G. Roseman Esq.<br>      Bonnie L. Pollack, Esq.<br>mroseman@cullenllp.com<br>bpollack@cullenllp.com |
| **Proposed Real Estate Advisor to Debtor** | |
| A&G Realty Partners<br>445 Broadhollow Road<br>Melville, NY 11747<br>Attn: Emilio Amendola<br>      Jeffrey Hubbard<br>emilio@agrealtypartners.com<br>jhubbard@agrealtypartners.com | |

A Bid received from a Bidder before the Bid Deadline that meets all of the above requirements for the Equity Interests and/or applicable Lot(s) shall constitute a "Qualified Bid" and such Bidder shall constitute a "Qualified Bidder"; provided that if the Seller receives a Bid prior to the Bid Deadline that is not a Qualified Bid, the Seller may provide the Bidder with the opportunity to remedy any deficiencies prior to the Auction; provided, further, that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Seller to his satisfaction, the Seller may disqualify

22420.2000 20318527v3

any Qualified Bidder and Qualified Bid, in the Seller's discretion, and such Bidder shall not be entitled to attend or participate in the Auction.

Any amendments, supplements or other modifications to any Bids (including pursuant to this paragraph) shall be delivered to the Bid Notice Parties. All Qualified Bids will be considered. However, Bids that are unconditional and contemplate sales that may be consummated on or soon after the Sale Hearing are preferred. Additionally, notwithstanding anything herein to the contrary, any Stalking Horse Agreement submitted by a Stalking Horse Purchaser shall be deemed a Qualified Bid, and any Stalking Horse Purchaser shall be deemed a Qualified Bidder. The Seller will inform counsel to the Stalking Horse Purchaser and any Qualified Bidders whether the Seller considers any Bid to be a Qualified Bid as soon as practicable but in no event later than one (1) day before the Auction.

Each Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party, including the Seller and his agents and representatives (other than as may be set forth in a definitive agreement executed by the Seller), regarding the Seller, any of the Equity Interests, the Auction, these Bidding Procedures or any information provided in connection therewith.

A Qualified Bidder may not amend, modify or withdraw its Bid, except for proposed amendments to increase the amount or otherwise improve the terms of the Bid, during the period that such Bid is required to remain irrevocable and binding.

## IV.    AUCTION

### A.    Auction

If multiple Qualified Bids (including any Stalking Horse Agreement) with respect to the Equity Interests and/or the Lot(s) are submitted by the Bid Deadline, the Seller will conduct the Auction to determine the highest and otherwise best Qualified Bid with respect to such Equity Interests, either as a whole or in Lots.

### B.    Assessment Criteria

The Seller's determination of the highest and otherwise best Qualified Bid with respect to the Equity Interests and/or the Lot(s) will take into account any factors the Seller reasonably deems relevant to the value of the Qualified Bid to the estate and may include, but are not limited to, the following:

1. the amount and nature of the consideration;

2. the type and nature of any modifications to the form Purchase Agreement or Stalking Horse Agreement, as applicable, requested by each Bidder in such Bidder's Asset Purchase Agreement;

3.    the extent to which such modifications are likely to delay closing of the sale of the Equity Interests and/or Lot(s) and the cost to the Seller of such modifications or delay;

4.    whether the Bid may involve payment of consideration over time;

5.    the likelihood of the Bidder's ability to close a transaction and the timing thereof, including the ability to obtain, or waive, as applicable, Consents and Court approvals;

6.    the net benefit to the Seller's estate (collectively, the "Bid Assessment Criteria").

C.    Cancellation of the Auction

If multiple Qualified Bids for the Equity Interests and/or Qualified Bids for Lot(s) have not been timely received, then the Auction will be cancelled. If the only Qualified Bid is the Bid of the Stalking Horse Purchaser, then the Stalking Horse Agreement shall be the Successful Bid for those portions of the Equity Interests described in its Bid, and the Stalking Horse Purchaser shall be the Successful Bidder.

V.    **PROCEDURES FOR THE AUCTION**

If multiple Qualified Bids for the Equity Interests and/or Lot(s) have been timely received by the Bid Deadline, the Seller shall commence the Auction on _____, 2022 **at 10:00 a.m.** (prevailing Eastern Time) at [LOCATION TBD], or such other place and time as the Seller shall notify all Qualified Bidders.

The Auction will be conducted according to the following procedures:

A.    Participation

Only the Seller, any Stalking Horse Purchaser and any other Qualified Bidder, in each case, along with their respective representatives and counsel, may attend the Auction (such attendance to be in person) and only the Stalking Horse Purchaser and any such other Qualified Bidders will be entitled to make any Bids at the Auction. Notwithstanding this provision, the Seller shall permit counsel for Nahla to attend, but not participate in, the Auction in the event Nahla is not otherwise a Qualified Bidder.

B.    The Seller Shall Conduct the Auction

The Seller and his advisors shall direct and preside over the Auction, and the Auction shall be transcribed. The Seller may conduct the Auction and may augment or modify the procedures described herein in any manner he reasonably determines will result in the highest and otherwise best Qualified Bid(s), including, without limitation, by establishing rules at any Auction that include, without limitation, a single or multiple rounds of bulk and/or Lot bidding, the combination of Lots for purposes of bidding, the use of sealed bidding, open outcry, or any other form of Bid submission (including in connection with any bulk or Lot bidding). Any rules developed by the

Seller will provide that each Qualified Bidder will be permitted what the Seller determines to be an appropriate amount of time to respond to the previous bid at the Auction.

    C.      Auction Baseline Bids

Prior to commencement of the Auction, the Seller shall determine the highest and otherwise best Qualified Bid for the Equity Interests and/or applicable Lot(s) (such highest and otherwise best Qualified Bid(s), the "Auction Baseline Bid"). In addition, at the start of the Auction, the Seller may describe the terms of the Auction Baseline Bids.

    D.      Anti-Collusion Representations

Each Qualified Bidder participating in the Auction must confirm that it (1) has not engaged in any collusion with respect to the bidding or Sale, (2) has reviewed, understands and accepts the Bidding Procedures and (3) has consented to the core jurisdiction of the Court with respect to the Sale.

    E.      Terms of Overbids

The Seller will accept Overbids, as further described below. An "Overbid" is any bid made at the Auction subsequent to the Seller's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

    1.    Initial Overbid: The initial Overbid after and above the Auction Baseline Bid (the "Initial Overbid") shall be in an amount of not less than $25,000 in excess of the Auction Baseline Bid plus the amount of any Bid Protections.

    2.    Minimum Overbid Increments: Any Overbid after and above the Initial Overbid shall be made in increments (the "Minimum Overbid Increment") valued at not less than $10,000, in cash or in cash equivalents. The Seller reserves the right to modify the Minimum Overbid Increment during the Auction.

    3.    Remaining Terms Are the Same as for Qualified Bids: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder as provided herein.

At the Seller's discretion, to the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller), reasonably demonstrating such Bidder's ability to close the Transaction proposed by such Overbid.

22420.2000 20318527v3

F.    Other Procedures

    1.    Jurisdiction of the Court: All Qualified Bidders (including the Stalking Horse Purchaser) at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the marketing process, the determination of what constitutes a Qualified Bid and the procedures used to make that determination, the Auction, and the construction and enforcement of the Qualified Bidder's fully executed sale and transaction documents, as applicable.

    2.    Additional Bids; Modifications: All Qualified Bidders, including any Stalking Horse Purchaser, shall have the right to submit additional Bids and make additional modifications to any Stalking Horse Agreement or Purchase Agreement at the Auction, as applicable, provided that any such modifications to such Stalking Horse Agreement or Purchase Agreement on an aggregate basis and viewed in whole, shall not, in the Seller's business judgment be less favorable to the Seller than the terms of such original agreement.

    3.    Subsequent Bids: Each Qualified Bidder must submit a subsequent Bid that satisfies the Minimum Overbid Increment in each round of bidding in order to continue participating in the Auction.

    4.    Continuance/Adjournment of Auction: Subject to the deadlines set forth herein, the Seller reserves the right, in his reasonable business judgment to make one or more continuances of the Auction to, among other things: facilitate discussions between the Seller and individual Qualified Bidders, allow individual Qualified Bidders to consider how they wish to proceed, modify or supplement any or all of the Auction procedures or rules, or give Qualified Bidders the opportunity to provide the Seller with such additional evidence as the Seller, in his reasonable business judgment may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient funding commitments, to consummate the proposed Transaction at the prevailing Overbid amount.

G.    Additional Procedures

The Seller may announce at the Auction other or additional procedural rules for conducting the Auction or may modify the rules specified in these Bidding Procedures in any manner the Seller reasonably determines will result in the highest and otherwise best Qualified Bid(s).

H.    Sale Is As Is/Where Is

Except as otherwise may be provided in any Stalking Horse Agreement, any Purchase Agreement, or any order by the Court approving any Sale as contemplated hereunder, the property sold pursuant to the Bidding Procedures, whether all Equity Interests or one or more Lots, shall be conveyed at the closing in its then-present condition, "**AS IS, WHERE IS, WITH ALL**

11

**FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED."**

    I.    <u>Closing the Auction</u>

The Auction will continue until the Seller selects the Bid(s) that represent the highest and otherwise best offer(s) for the Equity Interests and/or Lot(s) (each a "<u>Successful Bid</u>," and the Bidder(s) submitting such Successful Bid(s), each a "<u>Successful Bidder</u>"). The Successful Bidder(s) shall have the rights and responsibilities of the purchaser as set forth in the Stalking Horse Agreement or Purchase Agreement. In selecting each Successful Bid, the Seller will consider the Bid Assessment Criteria.

Within one (1) business day after the conclusion of the Auction, each Successful Bidder(s) shall supplement its Good Faith Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such Good Faith Deposit equals five (5%) percent of the Successful Bid(s) plus the amount required for the payment of Bid Protections, if any.

The Seller shall not consider any Bids submitted after the conclusion of the Auction.

    J.    <u>Backup Bidder</u>

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest and otherwise best Bid at the Auction with respect to the Equity Interests and/or one or more Lot(s), as applicable, as determined by the Seller, in the exercise of its business judgment will be designated as a backup bidder (each a "<u>Backup Bidder</u>"). A Backup Bidder shall be required to keep its last submitted Bid (each the "<u>Backup Bid</u>") open and irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, and (ii) closing of the Sale.

Following the Sale Hearing, if a Successful Bidder fails to consummate the purchase of the Equity Interests and/or one or more Lot(s), as applicable, the Seller may deem the Backup Bidder for such property to have the new Successful Bid, and the Seller will be authorized, without further order of the Court, to consummate the transaction with such Backup Bidder at the price of its last bid. Such Backup Bidder will be deemed to be the Successful Bidder and the Seller will be authorized, but not directed, to effectuate a sale to such Backup Bidder subject to the terms of the Backup Bid without further order of the Court. All Qualified Bids (other than the Successful Bid and the Backup Bid) shall be deemed rejected by the Seller on and as of the date that the Court approves the Successful Bid. The Seller, on his behalf and on behalf of each of his estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

For the avoidance of doubt, in the event that there is a Successful Bidder (other than a Stalking Horse Purchaser) with respect to the Equity Interests and/or one or more Lot(s), as applicable, and the Stalking Horse Purchaser is the Backup Bidder, the Stalking Horse Purchaser will be deemed to be the Backup Bidder at the price of its last overbid with respect to such property and will be subject to the terms contained in the immediately preceding paragraph.

<div align="center">12</div>

## VI. BID PROTECTIONS

Pursuant to the Bidding Procedures Order, each Stalking Horse Purchaser that is not an Insider Purchaser is entitled to a breakup fee in an amount equal to two (2%) percent of the purchase price set forth in any Stalking Horse Purchase Agreement; and any Insider Purchaser shall be entitled to reimbursement of up to $25,000.00 in actual out-of-pocket expenses (the "Bid Protections") as further set forth in, and in accordance with the terms of, any Stalking Horse Agreement and the Bidding Procedures Order. In the event that there is more than one Successful Bid, the Bid Protections will be calculated and allocated on a pro rata basis.

Pursuant to the Bidding Procedures Order, except for any Stalking Horse Purchaser, no other party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

## VII. SALE HEARING

The Successful Bid and Backup Bid (or, if no Qualified Bid other than that of the Stalking Horse Purchasers is received, then the Stalking Horse Agreement) will be subject to approval by the Court. The sale hearing to approve the Successful Bids and any Backup Bids shall take place on _____, 2022 at __:00 _.m. (EDT) before the Court (the "Sale Hearing").

Nothing herein or contemplated hereby constitutes, or will be deemed to constitute or otherwise result in, the consent or approval of any party in interest to the Sale, any Sale Order, or any Bid, or to any agreement or motion or other pleading relating thereto, or the waiver or modification of any of the terms of, or any rights under, any existing agreement, instrument or document, or any default arising thereunder or relating thereto. Any and all rights of such parties and parties in interest to object or otherwise oppose any Sale, Sale Order, or Bid, or any agreement or pleading related thereto are hereby expressly preserved and reserved.

## VIII. RETURN OF GOOD FAITH DEPOSITS

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Seller, but shall not become property of the Seller's estate absent further order of the Court or as expressly provided below. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after entry of the Sale Order. The Good Faith Deposit of a Backup Bidder, if any, shall be returned to such Backup Bidder no later than five (5) business days after the closing of the transaction with the Successful Bidder or as otherwise provided in these Bidding Procedures. If the Successful Bidder (or Backup Bidder, if applicable) timely closes on the winning transaction, its Good Faith Deposit shall be credited towards the applicable purchase price. If the Successful Bidder (or Backup Bidder, if applicable) fails to consummate a Transaction because of a breach or failure to perform on the part of such Successful Bidder (or Backup Bidder, if applicable), the Successful Bidder (or Backup Bidder, if applicable), shall forfeit the Good Faith Deposit as liquidated damages, Seller will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder (or Backup Bidder, if applicable), and such Good Faith Deposit shall irrevocably become property of the Seller. The Good Faith Deposit of any Stalking

Horse Purchasers shall be held as provided in the Stalking Horse Agreement and shall be returned to the Stalking Horse Purchaser in accordance with any such Stalking Horse Agreement.

## IX.  RESERVATION OF RIGHTS OF THE SELLER

The Seller further reserves the right as it may reasonably determine to be in the best interest of his estate, to:

A.  determine which Bidder(s) is a Qualified Bidder(s);

B.  determine which Bid(s) is a Qualified Bid(s);

C.  determine which Qualified Bid is the highest or best proposal for the Equity Interests and/or Lot(s) and which is the next highest or best proposal for the Equity Interests and/or Lot(s);

D.  reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Seller and his estate;

E.  impose additional terms and conditions with respect to all potential Bidders;

F.  extend the deadlines set forth herein; and

G.  modify the Bidding Procedures and implement additional procedural rules that the Seller determines, in his business judgment, will better promote the goals of the bidding process and discharge the Seller's fiduciary duties.

22420.2000 20318527v3

# Exhibit B

## Purchase Agreement

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") made this _____ day of _____, 2022 by and between Joseph Klaynberg (the "Seller") and _____ (the "Buyer").

### RECITALS

A.  On February 11, 2022 (the "Petition Date"), the Seller filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtor continues in possession of his assets as a debtor in possession.

B.  Upon the terms and subject to the conditions set forth herein, the Buyer desires to purchase and acquire from the Seller and subject to the Approval Order (as hereinafter defined), the Seller desires to sell, assign, transfer and deliver to the Buyer, certain of the assets of the Seller in accordance with the terms and conditions of this Agreement.

**NOW, THEREFORE**, for and in consideration of the premises and the mutual covenants and agreements contained herein, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Purchase and Sale of Assets.**

    1.1    Acquired Assets. Upon the terms and subject to the conditions contained in this Agreement, at the Closing (as defined in Section 8.1), the Seller shall sell, assign, transfer, convey, set over and deliver to the Buyer, and the Buyer shall purchase, acquire, receive and accept from the Seller, all of the Seller's right, title and interest, in his equity interests [identify entity] (the "Equity Interests"), "AS IS, WHERE IS", free and clear of any and all liens, claims (as such term is defined in Section 101(5) of the Bankruptcy Code), encumbrances, mortgages, pledges, security interests, equity security interests, charges, actions, title defects, taxes (including liens for taxes), equitable interests, restrictions on transfer, options, conditional sale or other title retention devices or restrictions on the creation of any of the foregoing, whether relating to the Seller or the Equity Interests, of any kind or nature, whether or not asserted, known or unknown, whether relating to any property or the right or the income or profits therefrom (collectively, the "Liens"), except to the extent that any Liens or claims are specifically assumed in this Agreement.

    1.2    Consideration and Payment. As full consideration for the sale, assignment, transfer and delivery of the Equity Interests by the Seller to the Buyer, and upon the terms and subject to the conditions contained herein, the Buyer shall pay to the Seller cash in the amount $_____ (the "Purchase Price") as follows: $_____ (the "Deposit"), which has already been paid to Seller's counsel and the remaining $_____ of which shall be paid at the Closing.  The Deposit shall be retained by the Seller (a) at the Closing as a credit against the Purchase Price or (b) if this Agreement is terminated pursuant to a material breach by the Buyer under this Agreement.  The Deposit shall be returned to the Buyer if the Agreement is terminated pursuant to Section 10 (a) or 10 (b)(ii).

    1.3    Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, and subject to entry of an Order Confirming a Chapter 11 Plan in the Debtor's case (a

"**Confirmation Order**"), any transfers of an interest in property pursuant to the Agreement shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, or governmental assessment in the United States (including any state, municipality, or county), and based upon the entry of a Confirmation Order and this Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation of any documents without the payment of any such tax, recordation fee, or governmental assessment. For the avoidance of doubt, the foregoing exemption includes sales and use taxes or any similar government assessment.

## 2. Liabilities.

2.1     Assumed Liabilities. The Buyer agrees, effective at the time of the Closing, to assume, pay, perform, and discharge, promptly when payment or performance is due or required, the following liabilities and obligations of the Seller (the "Assumed Liabilities"):

(a)     All obligations and liabilities relating to or arising from the Equity Interests from and after the Closing Date including without limitation all obligations arising out of any operating agreements appliable to the Equity Interests being purchased hereunder (the "Operating Agreement").

The Seller shall have no obligations on the Closing Date regarding the Equity Interests.

2.2     Excluded Liabilities. Except as set forth in Section 2.1, the Buyer is not assuming any liabilities or obligations of the Seller whatsoever.

## 3. Bankruptcy Matters.

3.1     The parties acknowledge that this Agreement and the transactions contemplated hereby contemplate, in each case, an order (the "Approval Order") by the Bankruptcy Court approving the sale pursuant to the terms of this Agreement.

3.2     The form Approval Order has been provided to and is acceptable to the Buyer.

3.3     If the Bankruptcy Court does not enter the Approval Order by [_____,2022], this Agreement may be terminated in accordance with the provisions of Section 10 hereof, and the Seller and the Buyer will have no further rights against each other under this Agreement, except obligations under this Agreement which expressly survive the Closing or other termination of this Agreement. The parties agree to reasonably cooperate with each other in connection with obtaining the Approval Order.

3.4     The Buyer acknowledges having been advised by the Seller that the sale is being made in accordance with the provisions of Bankruptcy Code section 363 with the Equity Interests to be sold free and clear of all Liens, with Liens, if valid, to attach to the net proceeds of the Purchase Price, if any.

**4. Representations and Warranties of the Seller.** The Seller represents and warrants to the Buyer as of the date hereof and as of the Closing as follows:

4.1    Authorization; Validity of Agreement. Subject to approval by the Bankruptcy Court, and approvals needed pursuant to the Operating Agreement, the Seller has the requisite power and authority to execute, deliver and perform this agreement and each of the other agreements, instruments, documents and certificates to be executed and delivered pursuant to this Agreement (collectively, with this agreement, the "Transaction Documents") to which he is or will be a party and to assume and perform his obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby.

4.2    Title to Acquired Assets. At the Closing, the Buyer will obtain good title to all of the Equity Interests free and clear of all Liens, in accordance with the terms of this Agreement and except to the extent any Liens or claims are specifically assumed in this Agreement.

4.3    Bankruptcy Matters. All pleadings and other orders associated with the procurement of the Approval Order shall be properly filed and served on all parties in interest in accordance with the Bankruptcy Code.

**5. Representations and Warranties of Buyer.** The Buyer represents and warrants to the Seller as of the date hereof and as of the Closing as follows:

5.1    Authorization; Validity of Agreement. The Buyer has the requisite power and authority to execute, deliver and perform this Agreement and each of the other Transaction Documents to which it is or will be a party and to assume and perform its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. Each of this Agreement and the other Transaction Documents has been duly authorized by all necessary corporate action on the part of the Buyer; and has been duly executed and delivered by or on behalf of the Buyer and is a valid and binding obligation of the Buyer, enforceable against the Buyer in accordance with its terms.

**6. Other Agreements of the Seller and the Buyer.**

6.1    Other Actions. Each of the parties hereto shall use all reasonable efforts to (i) take, or cause to be taken, all actions, (ii) do, or cause to be done, all things, and (iii) execute and deliver all such documents, instruments and other papers, as in each case may be necessary, proper or advisable under applicable laws, or reasonably required in order to carry out the terms and provisions of this Agreement and to consummate and make effective the transactions contemplated hereby.

6.2    Bankruptcy Court Filings. From and after the date hereof and until the earlier of the consummation of the transaction contemplated hereby and the termination of this Agreement pursuant to its terms, the Seller and his attorneys and other advisors shall cooperate with the Buyer, and keep the Buyer and its attorneys reasonably apprised of all matters with respect to the Bankruptcy Case, including without limitation, by providing the Buyer and its attorneys with a copy of all substantive motions or other pleadings or filings to be made with the

Bankruptcy Court with respect to, or related to, the transaction contemplated hereby (including without limitation, a reasonable opportunity to review and comment on the same), and reasonable advance notice of any motion to assume or reject any contract.

6.3     At Closing, the Seller shall execute and deliver to the Buyer's counsel a bill of sale with respect to the Equity Interests together with any other documentation which may be necessary to transfer the Equity Interests to the Buyer at Closing.

## 7.     **Conditions Precedent to the Closing.**

7.1     Conditions Precedent to the Buyer's Obligation to Close. The obligation of the Buyer to consummate the transactions contemplated hereby is subject to the satisfaction prior to or on the Closing Date of each of the following conditions; *provided, however,* that the Buyer shall have the right to waive all or any part of each such condition and to close the transactions contemplated hereby:

(a)     The representations and warranties of the Seller contained in Section 4 of this Agreement shall have been true and correct in all material respects when made and shall be true and correct in all material respects as of the Closing Date.

(b)     The Bankruptcy Court shall, by not later than [_____] (or such other date as may be mutually agreed upon by the parties hereto), have entered the Approval Order in form and substance acceptable to the Buyer in the Buyer's reasonable discretion (including a finding that the Buyer is a "good faith" purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and as of the Closing Date the Approval Order shall be in full force and effect and shall not have been vacated or reversed and shall not then be stayed.

(c)     There shall be no order, decree, or injunction of a court of competent jurisdiction or other governmental entity that prevents the consummation of the transactions contemplated by this Agreement or any claim, dispute, demand or cause of action that threatens to prevent such transactions.

7.2     Conditions Precedent to the Seller's Obligation to Close. The obligation of the Seller to consummate the transactions contemplated hereby is subject to the satisfaction prior to or on the Closing Date of each of the following conditions; *provided, however,* that except as specifically stated herein to the contrary, the Seller shall have the right to waive all or any part of each such condition, and to close the transactions contemplated hereby:

(a)     The representations and warranties of the Buyer contained in Section 5 of this Agreement shall have been true and correct in all material respects when made and shall be true and correct in all material respects as of the Closing Date.

(b)     The Bankruptcy Court shall, by not later than [_____] (or such other date as may be mutually agreed upon by the parties hereto), have entered the Approval Order in form and substance acceptable to the Seller in the Seller's reasonable discretion, and as of the Closing Date the Approval Order shall be in full force and effect and shall not have been vacated or reversed and shall not then be stayed.

20332611

(c) There shall be no order, decree, or injunction of a court of competent jurisdiction or other governmental entity that prevents the consummation of the transactions contemplated by this Agreement or any claim, dispute, demand or cause of action that threatens to prevent such transactions.

(d) The Buyer has obtained all approvals needed under the Operating Agreement for the transfer of the Equity Interests to the Buyer. This condition may not be waived.

## 8. Closing.

8.1 <u>Closing</u>. Subject to the satisfaction or waiver of the conditions set forth in this Agreement, the closing (the "<u>Closing</u>") of the transactions contemplated by this Agreement shall take place remotely on or before **[ninety days from entry of Sale Order]**, time is of the essence, or at such other time as may be mutually agreed upon by the parties hereto (the "<u>Closing Date</u>").

8.2 <u>Deliveries of the Seller</u>. At the Closing, the Seller shall deliver or cause to be delivered the following items to the Buyer:

(a) a bill of sale that, among other things, conveys, transfers and sells to the Buyer all right, title and interest in and to the Equity Interests; and

(b) a copy of the Approval Order;

(c) any other documentation that may reasonably be necessary to transfer the Equity Interests to the Buyer at Closing.

8.3 <u>Deliveries of the Buyer</u>. The balance of the Purchase Price.

## 9. **Intentionally Omitted.**

## 10. **Termination.** This Agreement may be terminated by written notice delivered prior to the Closing only upon the following circumstances:

(a) By mutual written consent of the Buyer and the Seller; or

(b) (i) By the Seller if any of the conditions to the Seller's obligation to close as set forth in Section 7.2 are not satisfied on or before [_____] or such other date as may be mutually agreed upon by the parties hereto; or (ii) by the Buyer if any of the conditions to the Buyer's obligation to close as set forth in Section 7.1 are not satisfied on or before [_____], or such other date as may be mutually agreed upon by the parties hereto; provided, however, that the right to terminate this Agreement pursuant to this paragraph (b) shall not be available to any party whose failure to fulfill any obligation under this Agreement shall have been the cause of, or shall have resulted in, the failure of the Closing to occur on or prior to such date.

In the event that this Agreement is terminated pursuant to this Section 10, all further obligations of the parties hereto under this Agreement shall terminate without further liability or obligation

20332611

of either party to the other party hereunder; *provided, however,* that no party shall be released from liability hereunder for any prior material breach of this Agreement by such party.

## 11. Miscellaneous.

11.1    Transaction Fees and Expenses. Except as otherwise expressly provided in this Agreement, each party hereto shall pay its own costs and expenses incurred in connection with or incidental to the preparation and negotiation of this Agreement, the carrying out of the provisions of this Agreement and the consummation of the transactions contemplated hereby (including, without limitation, attorneys' fees and expenses).  Furthermore, the Buyer represents and warrants that there are no brokerage or finder's fees that have been incurred in connection with this transaction and shall indemnify the Seller to the extent that it has incurred any liability for brokerage or finder's fees of the Buyer.

11.2    Amendment. This Agreement may not be modified, amended, altered or supplemented, except by a written agreement executed by each of the parties hereto.

11.3    Entire Agreement. This Agreement and the Transaction Documents contain the entire understanding and agreement of the parties relating to the subject matter hereof and supersede all prior and/or contemporaneous understandings and agreements of any kind and nature (whether written or oral) among the parties with respect to such subject matter, all of which are merged herein.

11.4    Waiver. Any waiver by a party hereto of any breach of or failure to comply with any provision or condition of this Agreement by any other party hereto shall not be construed as, or constitute, a continuing waiver of such provision or condition, or a waiver of any other breach of, or failure to comply with, any other provision or condition of this Agreement, any such waiver to be limited to the specific matter and instance for which it is given.  No waiver of any such breach or failure or of any provision or condition of this Agreement shall be effective unless in a written instrument signed by the party granting the waiver and delivered to the other party hereto in the manner provided for hereunder in Section 11.5.  No failure or delay by either party to enforce or exercise its rights hereunder shall be deemed a waiver hereof, nor shall any single or partial exercise of any such right or any abandonment or discontinuance of steps to enforce such rights, preclude any other or further exercise thereof or the exercise of any other right.

11.5    Notices. All notices, demands, consents, requests, instructions and other communications to be given or delivered or permitted under or by reason of the provisions of this Agreement or in connection with the transactions contemplated hereby shall be in writing and shall be deemed to be delivered and received by the intended recipient as follows:  (a) if personally delivered, on the business day of such delivery (as evidenced by the receipt of the personal delivery service), (b) if mailed certified or registered mail return receipt requested, four (4) business days after being mailed, (c) if delivered by overnight courier (with all charges having been prepaid), on the business day of such delivery (as evidenced by the receipt of the overnight courier service of recognized standing), or (d) if delivered by facsimile transmission or email attachment, on the business day of such delivery if sent by 6:00 p.m. in the time zone of the recipient, or if sent after that time, on the next succeeding business day (as evidenced by the printed confirmation of delivery generated by the sending party's telecopier machine).  If any

20332611

notice, demand, consent, request, instruction or other communication cannot be delivered because of a changed address of which no notice was given (in accordance with this Section 11.5), or the refusal to accept same, the notice, demand, consent, request, instruction or other communication shall be deemed received on the second business day the notice is sent (as evidenced by a sworn affidavit of the sender). All such notices, demands, consents, requests, instructions and other communications will be sent to the following addresses or facsimile numbers as applicable:

If to the Buyer:

with copies to:

If to the Seller:

Joseph Klaynberg
114 Mulberry Street PH-703
New York, NY 10013

with a copy to:

Cullen & Dykman, LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
Attn:   Matthew G. Roseman, Esq.
          Bonnie L. Pollack, Esq.
Facsimile: (516) 357-2575
Email: mroseman@cullenllp.com
          bpollack@cullenllp.com

20332611

or to such other address as any party may specify by notice given to the other party in accordance with this Section 11.5.

11.6     Governing Law.  Except with respect to any matter hereunder pursuant to which the Bankruptcy Code is required to be the governing law, this Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed in that state, without regard to any of its principles of conflicts of laws or other laws which would result in the application of the laws of another jurisdiction. This Agreement shall be construed and interpreted without regard to any presumption against the party causing this Agreement to be drafted.

11.7     Jurisdiction.  The United States Bankruptcy Court shall have sole and exclusive jurisdiction as to all matters arising out of this Agreement and the pertinent provisions of the Bankruptcy Code shall apply.

11.8     Severability.   Should any provision of this Agreement be held to be invalid, illegal or unenforceable by any court of competent jurisdiction, that holding shall be effective only to the extent of such invalidity, illegally or unenforceability without invalidating or rendering illegal or unenforceable the remaining provisions hereof, and any such invalidity, illegally or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  It is the intent of the parties that this Agreement be enforced to the fullest extent permitted by applicable law.

11.9     Assignment, Etc.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective permitted successors and permitted assigns.

11.10    Headings.  The section headings contained in this Agreement are inserted for reference purposes only and shall not affect in any way the meaning, construction or interpretation of this agreement.   Any reference to the masculine, feminine, or neuter gender shall be a reference to such other gender as is appropriate. References to the singular shall include the plural and vice versa.

11.11    Counterparts.   This Agreement may be executed in two (2) or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original, and all of which, when taken together, shall constitute one and the same document.  This Agreement shall become effective when one or more counterparts, taken together, shall have been executed and delivered by all of the parties.

20332611

IN WITNESS WHEREOF, the parties hereto have caused this Asset Purchase Agreement to be duly executed as of the day and year first above written.

**SELLER**

JOSEPH KLAYNBERG

By: _____
Name: Joseph Klaynberg

**BUYER**

_____

By: _____
Name:
Title:

20332611

**Exhibit C**

**Auction Notice**

CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Counsel for Joseph Klaynberg

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                         :
In re:                         :   Chapter 11
                         :
JOSEPH KLAYNBERG,     :   Case No. 22-10165 (MG)
                         :
                         :
            Debtor.          :
                         :
------------------------------------------------------------- x

## <u>NOTICE OF AUCTION AND PROPOSED SALE OF EQUITY INTERESTS</u>

**PLEASE TAKE NOTICE THAT:**

1.       On September 2, 2022, Joseph Klaynberg (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>") filed a motion (the "<u>Motion</u>")[1] seeking entry of an order (the "<u>Bidding Procedures Order</u>") pursuant to sections 105, 363, 365 and 503 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002(a)(2), 6004, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"): (a) approving bidding procedures ("<u>Bidding Procedures</u>"), substantially in the form annexed to the Bidding Procedures Order as <u>Exhibit "1"</u>, related to the sale and proposed auction of Equity Interests pursuant to sections 363(b), (d) (f), and (m) of the Bankruptcy Code;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Motion.

(b) approving the proposed asset purchase agreement (the "Purchase Agreement"), a copy of which is annexed to the Motion as Exhibit "B", solely to the extent of its use as a form which all bidders for Equity Interests must follow; (c) approving proposed bid protections in favor of any potential stalking horse purchasers (a "Stalking Horse Purchaser"), if selected; (d) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to approve the sale of Equity Interests; (e) approving the form and manner of notice (the "Auction Notice") of the Auction and Sale Hearing substantially in the form annexed to the Motion as Exhibit "C".

2.      A copy of the Motion, the Bidding Procedures, and the Bidding Procedures Order may be obtained by: (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov (password required); (ii) going in person to the Office of the Clerk of the Bankruptcy Court at the United States Bankruptcy Court, Southern District of New York, 1 Bowling Green, New York, New York 10004 or (iii) contacting Bonnie L. Pollack, Esq. of Cullen and Dykman LLP, counsel to the Debtor, at 100 Quentin Roosevelt Blvd., Garden City, New York 11530, by telephone at (516) 357-3700 or by email at bpollack@cullenllp.com.

3.      As set forth in the Bidding Procedures, the sale of Equity Interests will be sold to the highest or best offer, subject to Bankruptcy Court approval.

4.      All interested parties are invited to make offers for all or a portion of Equity Interests in accordance with the terms of the Bidding Procedures and Bidding Procedures Order. The deadline to submit bids (the "Bid Deadline") is [_____] at 5:00 p.m. (EST). Pursuant to the Bidding Procedures Order, if multiple Qualified Bids (including any Stalking Horse Agreement) with respect to all or less than all of the Equity Interests are submitted by the Bid Deadline, the Debtor shall conduct an Auction to determine the highest and otherwise best Qualified Bid with respect to such Equity Interests. The Auction will take place at [LOCATION

TBD], not later than [_____], starting at 10:00 a.m. (prevailing Eastern Time), or at such other later date and time or other place, as may be determined by the Debtor at or prior to the Auction.

5.    The Bidding Procedures Order further provides that a Sale Hearing will be held on [_____] before the Honorable Martin Glenn, Chief United States Judge, at the United States Bankruptcy Court, Southern District of New York, 1 Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), which hearing may be adjourned from time to time, including, without limitation, by announcing such adjournment on the record at the Sale Hearing.

6.    At the Sale Hearing, the Debtor will request that the Bankruptcy Court enter an order, among other things, approving the sale of Equity Interests to the Successful Bidder(s) who submitted the highest and best bid(s) for Equity Interests. In addition, the Debtor requests that the Bankruptcy Court provide that the transfer of Equity Interests be free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon.

7.    At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this Chapter 11 Case. Objections, if any, to the Sale Motion must be made in writing, must state with particularity the reasons for the objection or response, and must be filed with the Clerk of the Bankruptcy Court, with copies delivered to the Bankruptcy Court and received by the Chambers of the Honorable Martin Glenn, Chief United States Judge, at the United States Bankruptcy Court, Southern District of New York, 1 Bowling Green, New York, New York 10004, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and basis of the objection and the specific grounds therefore and must be served upon: (a) United States Trustee for Region 2, 201 Varick Street, Room 1006, New York,

New York 10014, Attn: Tara Tiantian, Esq.; and (b) counsel to the Debtor, Cullen and Dykman LLP, 100 Quentin Roosevelt Blvd., Garden City, New York 11530, Attn: Matthew G. Roseman, Esq. and Bonnie L. Pollack, Esq, so as to be actually received by no later than 4:00 p.m. (EST) on [_____], 2022.

8.    Requests for information concerning the sale of Equity Interests should be directed by written or telephonic request to: (i) A&G Realty Partners, LLC, 445 Broadhollow Road, Suite 410 Melville, New York 11747, Attn: Emilio Amendola and Jeffrey L. Hubbard, (631) 420-0044.

**Exhibit D**

**Sale Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                    :
In re:                                              :   Chapter 11
                                                    :
JOSEPH KLAYNBERG,                                   :   Case No. 22-10165 (MG)
                                                    :
                                                    :
                Debtor.                             :
                                                    :
------------------------------------------------------------------x

### ORDER (I) APPROVING SALE OF EQUITY INTERESTS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] filed by Joseph Klaynberg, the above captioned debtor and debtor-in-possession (the "Debtor"), by and through his attorneys, Cullen and Dykman LLP, for entry of an order (this "Sale Order"), pursuant to sections 105, 363, and 503 of chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code"), and Rules 2002, 6004, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), inter alia, approving and authorizing the sale (the "Sale") of Equity Interests, free and clear of any liens, security interests, encumbrances, claims, charges, options and interests thereon, pursuant to the Purchase Agreement (the "Purchase Agreement"), by and among the Debtor and the Successful Bidder; and this Court having reviewed the Motion and the Purchase Agreement and upon this Court's prior order, dated [_____, **2022**], approving certain bidding procedures (the "Bidding Procedures Order") and bid protections, and scheduling a hearing (the "Sale Hearing") on the Motion; and a Sale Hearing having been held on [_____, **2022**]; and due and sufficient notice of the Sale Hearing and the relief

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

sought therein having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, his estate, his creditors and other parties in interest; and upon the entire record of the hearings held on [_____, 2022] and [_____, 2022] and this chapter 11 case including, without limitation, all proffers and other evidence admitted at the Sale Hearing, and after due deliberation thereon and good cause appearing therefore, it is hereby:

**FOUND, CONCLUDED AND DETERMINED THAT:**[2]

      A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      B.    <u>Notice</u>.  Due, sufficient and adequate notice of the Motion and the relief requested therein, the Sale Hearing, and the Sale, as set forth in the Bidding Procedures Order, and the related transactions collectively described in the Purchase Agreement (all such transactions being collectively referred to as the "Sale Transaction"), has been given in accordance with section 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006 and 9007 and in compliance with the Bidding Procedures Order.  Such notice was good and sufficient in light of the circumstances and the nature of the relief requested, and no other or further notice thereof is required.

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate. See FED. R. BANKR. P. 7052.

C.  <u>Opportunity to Object</u>. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

D.  <u>Sale is Appropriate</u>. The sale of the Equity Interests pursuant to the Purchase Agreement is authorized pursuant to section 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(f). The Sale of the Equity Interests outside the ordinary course of business represents the sound business judgment of the Debtor and is appropriate in light of the facts and circumstances surrounding the Sale Transaction and the chapter 11 case.

E.  <u>Corporate Authority</u>. Any Consents or approvals required for the Debtor to consummate the Sale have been obtained.

F.  <u>Best Interests/Business Justification</u>. The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, and approval of the Purchase Agreement and the consummation of the Sale Transaction is in the best interests of the Debtor, his estate, creditors, and other parties in interest. The Debtor has marketed the Equity Interests and conducted the sale process in compliance with the Bidding Procedures Order. The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Equity Interests. The terms and conditions of the Purchase Agreement are fair and reasonable. The Purchase Agreement represents the highest and best offer for the Equity Interests, and the Purchase Price set forth therein is fair and reasonable and constitutes fair consideration and reasonably equivalent value under the Bankruptcy Code and New York law.

G.  <u>Highest or Otherwise Best Bid</u>. The Successful Bidder's bid for the purchase of the Equity Interests, as set forth in the Purchase Agreement, is (i) fair and reasonable and (ii) the highest or otherwise best offer received for the Equity Interests at an auction conducted on

[_____, 2022].  The bid submitted by [_____] was determined by the Debtor to be the Back-Up Bid.

H.    <u>Arm's Length Transaction</u>.  The Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Successful Bidder without collusion, in good faith and from arm's-length bargaining positions. Neither the Debtor nor the Successful Bidder has engaged in any conduct that would cause or permit the Sale Transaction or any part of the transactions contemplated by the Purchase Agreement to be avoidable under section 363(n) of the Bankruptcy Code.  Specifically, the Successful Bidder has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement with unrelated third parties.

I.    <u>Good Faith Purchaser</u>.  The Successful Bidder is a good faith purchaser for value and, as such, is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  The Successful Bidder will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in connection with the transactions contemplated by the Purchase Agreement at any time after the entry of this Sale Order.

J.    <u>Free and Clear</u>. The Debtor has complied with section 363(f) of the Bankruptcy Code because one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied with regard to each such lien, claim, interest, obligation, right, or encumbrance. Those holders of liens, claims, interests, obligations, rights, or encumbrances on or with respect to the Equity Interests who did not file a timely objection, or who withdrew such objections, are deemed to have consented to the sale of the Equity Interests free and clear of those non-Debtor parties' interests in the Equity Interests pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of liens, claims, interests, obligations, rights, or encumbrances

on or with respect to the Equity Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, to the extent such liens, claims, interests, obligations, rights, or encumbrances constitute valid and enforceable liens or other similar interests, are adequately protected by having such liens, claims, interests, obligations, rights, or encumbrances attach to the proceeds of the Sale Transaction ultimately attributable to the property against or in which they assert a lien or other similar interest.

K.      The Successful Bidder would not have entered into the Purchase Agreement and would not consummate the Sale Transaction if (i) the Sale of the Equity Interests were not free and clear of all liens, claims, interests, obligations, rights, or encumbrances, or (ii) the Successful Bidder would, or in the future could, be liable for any such liens, claims, interests, obligations, rights, or encumbrances, including any rights or claims based on, or otherwise arising under, any doctrines of successor or transferee liability. Except as provided in the Purchase Agreement, the transfer of the Equity Interests will be a legal, valid, and effective transfer of the Equity Interests, and will vest the Successful Bidder with all right, title, and interest of the Debtor in and to the Equity Interests, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, free and clear of all liens, claims, interests, obligations, rights, and encumbrances, except as otherwise specifically provided in the Purchase Agreement.

L.      <u>Legal and Factual Bases</u>. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED, to the extent set forth herein.

2.     All objections to entry of this Sale Order or to the relief provided herein and requested in the Motion that have been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

3.     This Sale Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

## Approval of Sale

4.     _Sale Approval_. The Sale, and all of the terms and conditions and transactions contemplated by the Purchase Agreement are hereby authorized and approved pursuant to, _inter alia_, Sections 105(a) and 363(b) of the Bankruptcy Code. Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to consummate the Sale Transaction pursuant to and in accordance with the terms and conditions of the Purchase Agreement. The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and effectuate the provisions of this Sale Order and the transactions approved hereby.

## Transfer of Equity Interests

5.     _Transfer of Equity Interests_. Except as otherwise provided in the Purchase Agreement, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, upon the Closing, the Equity Interests shall be transferred to the Successful Bidder free and clear of all liens, claims or encumbrances, with all such liens, claims or encumbrances to attach to the net proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect which they now have as against the Equity Interests, subject to any claims and defenses, setoffs or rights of recoupment the Debtor may possess with respect thereto. Except as

specifically provided in the Purchase Agreement, all persons and entities (and their respective successors and assigns) including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade, and other creditors, asserting or holding any claims or interests in or with respect to the Debtor or the Equity Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), howsoever arising, hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such claims or interests against the Successful Bidder and/or its affiliates, designees, assignees, successors, properties, or assets. Except as otherwise provided in the Purchase Agreement, effective upon the Closing, the Successful Bidder shall have no liability for any Claims (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor or his estate.

6.    _Transfer Tax Exemption_. Pursuant to section 1146(a) of the Bankruptcy Code, and subject to entry of an Order Confirming a Chapter 11 Plan in the Debtor's case (a "**Confirmation Order**"), any transfers of an interest in property pursuant to the Agreement shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, or governmental assessment in the United States (including any state, municipality, or county), and based upon the entry of a Confirmation Order and this Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation of any documents without the payment of any such tax, recordation fee, or governmental assessment. For the avoidance of doubt, the foregoing exemption includes sales and use taxes or any similar government assessment. Pending entry of a Confirmation Order, the Debtor shall hold in escrow any taxes

that would otherwise be payable as a result of the sale pursuant to the Agreement, and in the event a Confirmation Order is not entered, shall pay such taxes forthwith.

7.   <u>Successor Liability</u>.  Successful Bidder is not a successor corporation or successor entity to the Debtor, the Debtor's estate, or the claims or liabilities of either.

8.   <u>Good Faith Purchaser/No Collusion</u>.  The Successful Bidder is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.  The consideration provided by the Successful Bidder is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

<div align="center"><b><u>Additional Provisions</u></b></div>

9.   <u>Additional Documents</u>.  Prior to or upon the Closing of the Sale Transaction, each of the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release their interests, if any, in the Equity Interests as such interests, liens, claims and/or other encumbrances may have been recorded or may otherwise exist.

10.   <u>Release and Discharge of Liens</u>.  Except as otherwise provided in the Purchase Agreement, this Sale Order shall be effective as a determination that, upon the Closing, all liens existing with respect to the Debtor and/or the Equity Interests prior to the Closing have been unconditionally released, discharged, and terminated as to the Successful Bidder and the Equity Interests, and that the conveyances described herein have been effected.

11.   <u>Financing Statements</u>. If any person or entity that has filed financing statements or other documents or agreements evidencing interests with respect to the Debtor and/or the Equity Interests shall not have delivered to the Debtor prior to the Closing, in proper form for

<div align="center">9</div>

filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtor, the Equity Interests or otherwise, then (a) the Debtor or the Successful Bidder is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Equity Interests and (b) the Successful Bidder and/or the Debtor is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all interests and liens in, against or with respect to the Debtor and/or the Equity Interests. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

12. _Modifications_. The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement is not material.

13. _Automatic Stay_. The automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Court to allow the Successful Bidder to (i) give the Debtor any notice provided for in the Purchase Agreement, and (ii) take any and all actions permitted by the Purchase Agreement and ancillary agreements in accordance with the terms and conditions thereof.

14. _Recording_. Each and every federal, state, and local governmental agency, recording office or department and all other parties, persons or entities is hereby directed to

accept this Sale Order and any and all documents and instruments necessary and appropriate for recordation as conclusive evidence of the free and clear and unencumbered transfer of title to the Equity Interests conveyed to the Successful Bidder.

15. <u>Successors, Assigns</u>. The terms and provisions of the Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, creditors, the Successful Bidder, and any of such parties' respective affiliates, designees, successors, and assigns, and shall be binding in all respects upon all of the Debtor's creditors, all prospective and actual bidders for the Equity Interests, and all persons and entities receiving notice of the Motion, the Auction and/or the Sale Hearing notwithstanding any subsequent appointment of any trustee(s), examiner(s), or receiver(s) under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, its estate, creditors, or any trustee(s), examiner(s), or receiver(s).

16. <u>Non-Severability/Failure to Specify</u>. The provisions of this Sale Order are non-severable and mutually dependent. The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

17. <u>Order Immediately Effective</u>. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7052, 9014 or otherwise, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

18.     Retention of Jurisdiction.  This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Sale Order and the Purchase Agreement.


Dated:_____, 2022
        New York, New York

                                        _____
                                        HONORABLE MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE

# Exhibit E

## Operating Agreement Restrictions

| ENTITY | SUBJECT TO SALE PER MOTION (Unless noted, othe members | MANAGING MEMBERS (with voting percentage if applicable) | CONSENTS REQUIRED |
|---|---|---|---|
| SCP, LLC | Joseph Klaynberg, successor to Wonder Works Construction & Devel. (28.03%); JEDR CORP. (3.65%); KS EQUITIES LLC (1.33%) | Girona Ventures (50%); Hartford CP Management (0%); Joseph Klaynberg, successor to Wonder Works Construction & Development (50%) | Regular interest - consent of managing member required, or may transfer member interest to any other member; to a family member, or any trust for the benefit of a family member without consent. |
| 114 MS MEMBER, LLC | Joseph Klaynberg (3.40%); KS EQUITIES, LLC (2.40%); JEDR through its 20% interest in HSK Mulberry (1.20%) | WWOG (By AM Club LLC); ROF/F LLC | Managing Member Interest - May be transferred[1] to a wholly owned affiliate; (2) involuntarily by operation of law; or (3) with consent of managing members having at least 66% of voting interests. |
| | | | Requires consent of other members and other members have a right of first refusal. |
| 318 INVESTORS A, LLC | 9.52% | AMIRIAN EQUITIES | Consent of managing member required, or may transfer member interest to any other member, to a family member, or any trust for the benefit of a family member without consent. |
| AM CLUB LLC | 50% (other member Eric Brody) | JOSEPH KLAYNBERG (50%); ERIC BRODY (50%) | Consent of other member required. |
| DURDOM INC. | 70% | N/A | None |
| INTERNATIONAL DESIGN DIRECT, LTD | 100% | N/A | None |
| JEDR GROUP LLC | 50% (other members all family members of Debtor) | JOSEPH KLAYNBERG | Unanimous consent of members required but may transfer member interest to any other member; to a spouse, child, brother or sister without consent. |
| JKIG, LLC | 0.5% | JOSEPH KLAYNBERG; DR. TIM CANTY; CORY LIETZAU-MOUHER; DANIEL KLAYNBERG | Requires consent of managing members and other regular members have a right of first refusal. |
| KLAYNBERG FAMILY GROUP LLC | 10% (other member is Joseph Klaynberg 1998 Family Trust) | JOSEPH KLAYNBERG | Consent of other members required. |
| KS EQUITIES LLC | 50% | JOSEPH KLAYNBERG | Unanimous written consent of other members required, except for a transfer to a spouse, child or brother or sister of a member. |
| MARK PARAGON, LP | 2.53% | N/A | None |
| SPECTRA 101, LLC (included solely to show restrictions) | Klaynberg Family Group LLC (24.18%); JKIG, LLC (4.67%); KS Equities (3.74%) | WW SPECTRA CORP (50%); LAZ/LEX SPECTRA 101 MM, LLC (50%) | Regular Interest: Consent of managing member required, or may transfer member interest to any other member, to a family member, or any trust for the benefit of a family member without consent. |
| | | | Managing Member Interest - May be transferred[1] to a wholly owned affiliate; (2) involuntarily by operation of law; or (3) with consent of majority of regular members |
| SPECTRA 111 LLC (included solely to show restrictions) | KLAYNBERG FAMILY GROUP (22.47%); KS EQUITIES (3.43%); JKIG LLC (3.978%) | WW SPECTRA CORP. (50%); LAZ/LEX SPECTRA 101 MM, LLC (50%) | Regular Interest: Consent of managing members required, or may transfer member interest to any other member, to a family member, or any for the benefit of a family member without consent. |
| | | | Managing Member Interest - May be transferred[1] to a wholly owned affiliate; (2) involuntarily by operation of law; or (3) with consent of majority of regular members |

| Entity | Interest | Members/Shareholders | Restrictions |
|---|---|---|---|
| SPECTRA TOP, LLC (included solely to show restrictions) | WW SPECTRA CORP. (2.5%); JEDR through its 20% interest in HSK MULBERRY (1.25%) | WW SPECTRA CORP. (50%); GIRONA VENTURES, LLC (50%) | Regular Interest- Consent of managing member required, or may transfer member interest to any other member, to a family member, or any trust for the benefit of a family member without consent. Managing Member Interest - May be transferred[1] to a wholly owned affiliate, (2) involuntarily by operation of law or (3) with consent of other managing member |
| WONDER WORKS CONSTRUCTION CORP. | JOSEPH KLAYNBERG (42%) | N/A | None |
| WW EASTERN, LLC | 3.556% (Daniel and Robert Klaynberg own 15.111% collectively) | JOSEPH KLAYNBERG (3.556%); EASTERN R, LLC (33.333%); ARK HOLDING INC. (33.333%); DONALD T. SABATINO LLC (11.111%); DANIEL KLAYNBERG (11.111%); ROBERT KLAYNBERG (4.0%); LEONID SKUTELSKY (3.556%) | None |
| WW SPECTRA, CORP. | 50% (other shareholder is Daniel Klaynberg) | JOSEPH KLAYNBERG (50%); DANIEL KLAYNBERG (50%) | None |
| WW1834 MEMBERS, LLC | 1.92% | JOSEPH KLAYNBERG (32%); ERIC BRODY (32%); MICHAEL BELKIN (12%); TAMIR RAZAZ (12%); DANIEL KLAYNBERG (12%) | Regular Interest- Consent of managing members required, or may transfer member interest to any other member, or any trust for the benefit of a family member without consent. Managing Member Interest - May be transferred[1] to a wholly owned affiliate, (2) involuntarily by operation of law or (3) with consent of majority of regular members |
| WWIIG III, LLC | 5.56% (Edward Klaynberg owns .66% and Eric Brody owns 27.78%) | JOSEPH KLAYNBERG; ERIC BRODY | Consent of the other members required, and other members have a right of first refusal. |