CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Attorneys for Joseph Klaynberg

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
:
In re: : Chapter 11
:
JOSEPH KLAYNBERG, : Case No. 22-10165 (MG)
:
:
:
Debtor. :
:
---------------------------------------------------------------- x

## OPPOSITION TO MOTION TO APPOINT A CHAPTER 11 TRUSTEE

TO THE HONORABLE MARTIN GLENN, CHIEF UNITED STATES BANKRUPTCY JUDGE:

Joseph Klaynberg (the "Debtor"), debtor and debtor-in-possession in the above-captioned Chapter 11 case, as and for his opposition (the "Opposition") to the Motion (the "Motion") of 2020A Series of Nahla Capital LLC ("Nahla") to appoint an operating trustee (the "Trustee") in the Debtor's case, respectfully alleges as follows:

### PRELIMINARY STATEMENT

Section 1104 of the Bankruptcy Code provides for the appointment of a trustee when a debtor is unable to act in the interests of his creditors. Nahla argues that because the Debtor made certain transfers (including pursuant to a divorce agreement (the "Separation Agreement") that Nahla terms a "sham"), a Trustee is warranted in this case. Although the Debtor disputes Nahla's factual allegations as set forth herein and in the documents submitted in furtherance of this

1

Opposition, something more than the mere allegations of fraudulent transactions is needed for the appointment of a trustee. If the benchmark of a trustee motion were having potential avoidable transactions, nearly all cases would result in an operating trustee.

Even so, in determining this Motion, the Court must ask what would be achieved if it were granted, and here, the answer is absolutely nothing. Why? Because this is *not* a situation where the Debtor is refusing to pursue actions or maximize his estate. **Instead, the Debtor has filed a Plan which cedes to a Plan Administrator the unmitigated power to investigate and pursue, if appropriate, any and all pre-petition transfers of the Debtor (with the exception of the Nahla Preference Action and the Appeals against Nahla).** Appointing a Trustee to do that very same thing would only cost the estate money, money better put into the hands of the creditors.

Nor is a Trustee needed to maximize the value of the Debtor's assets to be paid under his Plan. The Debtor has already monetized his interest in his former residence in Sands Point (the "Sands Point Property") for $1.9 million (a sale which Nahla opposed). He has also filed a motion to sell his equity interests (the "Equity Sale Motion"). The Equity Sale Motion proposes comprehensive procedures (the "Sales Process") designed to ensure the highest possible value recovered for the estate. To the extent that Nahla has an issue with any particular aspect of the Sales Process, the Debtor is (and has always been) willing to consider its comments. But appointing a Trustee to undoubtedly pursue the same process makes no economic sense to the estate. It will only add a layer of cost and commissions that will be borne by the creditors.

The Debtor's case was caused by a pre-petition judgment entered against the Debtor by Nahla after what can only be summarized as Nahla's unabashed conspiracy to appropriate a construction project for itself to the detriment of not only the Debtor, but 23 other investors.

Having achieved that, Nahla then proceeded to attach all of the Debtor's liquid assets, forcing the Debtor into this case. Despite this, the Debtor has done his best to ensure that he emerges from bankruptcy having achieved the maximum value for his creditors. Yet each and every step he takes to achieve that goal has been the subject of objection by Nahla even though these actions have been to the benefit of his estate. In addition, Nahla has feverishly sought to control the pursuit of certain actions which it believes were fraudulent (which the Debtor vehemently denies), has engaged in considerable discovery against the Debtor yet has ignored any evidence which even remotely favors the Debtor.

The Motion is just the latest attempt by Nahla to prevent the Debtor from successfully emerging from chapter 11. It is replete with the same vitriol that has permeated all of the pleadings filed by Nahla in this case. Nahla twists facts and ignores realities. There are no grounds for a Trustee here, especially given the terms of the Plan and the Sale Process already proposed by the Debtor, for the benefit of *all* creditors and parties in interest in this case. The Motion must be denied.

## BACKGROUND

1. On February 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). The Debtor remains a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On July 15, 2022, the Debtor filed a Chapter 11 Plan and Disclosure Statement in this chapter 11 case, subsequently amended by Second Amended Chapter 11 Plan (the "Plan")[1] and Disclosure Statement for Second Amended Chapter 11 Plan, both dated and filed on August 19, 2022. The Debtor's motion to approve the Disclosure Statement is pending *sub judice*.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Plan.

3. The Plan provides for the appointment of a Plan Administrator to investigate and commence, if appropriate, any causes of action based on the Separation Agreement as well as any other pre-petition transfers made by the Debtor. The only exceptions are that the Debtor himself will pursue the Nahla Preference Action (which seeks to avoid the Nahla Judgment entered within the 90 days prior to the Petition Date), and the Appeals against Nahla with respect to the UCC Sale and the Nahla Judgment.

4. The Plan Administrator will be selected by the creditors, and report to the Oversight Committee, of which the Debtor is not a part. The Debtor has no control over the actions taken, or not taken, by the Plan Administrator.

5. On September 2, 2022, the Debtor filed the Equity Sale Motion pursuant to which A & G Real Estate Partners will market and sell the Debtor's Equity Interests. Many of the Equity Interests are minority interests and may have transfers restrictions, but the Debtor believes that his involvement in the Sales Process will make members of those entities more comfortable and apt to approve the transfers. In any event, those restrictions exist no matter who sells the interests.

6. Notwithstanding that the Debtor is taking every step necessary to maximize the value of his estate, Nahla has filed the Motion seeking to place that process in the hands of another. The Motion is based on misstated, misunderstood and incomplete "facts" as expressed through Nahla's tainted lens. Those "facts" are addressed in further detail in the Affidavit of the Debtor (the "Klaynberg Affidavit") and the Declaration of Bonnie Pollack, Esq. (the "Pollack Declaration"), submitted simultaneously herewith and incorporated herein by reference. For the reasons therein and in this Opposition, the Motion should be denied.

## STANDARD FOR APPOINTMENT OF A TRSUTEE

7. Pursuant to section 1104(a) of the Bankruptcy Code, a chapter 11 trustee will be appointed either "(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . or (2) if such appointment is in the interests of creditors, any equity security holders and other interests of the estate . . . ." 11 U.S.C. §1104(a).

8. The appointment of a chapter 11 trustee is "an extraordinary remedy." *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007) (*citing In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007)). *See also In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989) ("It is settled that appointment of a trustee should be the exception, rather than the rule.") (citations omitted). "There is a strong presumption that a debtor should remain in possession absent a showing of need for the appointment of a trustee." *The 1031 Tax Grp.*, 374 B.R. at 85 (*citing In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990)). *See also In re YC Atlanta Hotel, LLC*, 630 B.R. 348, 366 (Bankr. N.D. Ga. 2021) (agreeing "that '[t]here is a strong presumption in Chapter 11 cases that the debtor-in-possession should be permitted to remain in control of the corporation absent a showing of the need for the appointment of a trustee'.") (*quoting In re Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000) (brackets in the original). "'It is well settled that the appointment of a trustee should be the exception not the rule'." *YC Atlanta*, 630 B.R. at 366 (citation omitted). This determination is within the discretion of the judge. *See Sharon Steel*, 871 F.2d at 1226; *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006). Courts look to "practical realities and necessities" in considering the appointment of a trustee, particularly under section 1104(a)(2). *In re Ionosphere Clubs, Inc.*, 113

B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (citations omitted). *See also The 1031 Tax Group*, 374 B.R. at 91.

9. There is no real dispute in this case as to the standard for the appointment of an operating trustee. Rather, the Debtor asserts that the facts of this case are distinguishable from those cited by Nahla, and that a chapter 11 trustee is not warranted here.

## A TRUSTEE IS NOT WARRANTED IN THIS CASE

10. First, no "cause" exists here under section 1104(a)(1). The alleged "facts" in Nahla's Motion cannot be taken as sacrosanct, and the Court must give equal consideration to those proffered by the Debtor to determine whether a trustee is *truly* supported here. The facts (many of which Nahla knows yet chose to ignore on the Motion) simply do not support a Trustee.

11. As detailed in the Klaynberg Affidavit and Pollack Declaration, the actual facts when compared to those suggested by Nahla are as follow:

| Nahla Assertion | Debtor Response |
|---|---|
|  |  |
| Retained matrimonial counsel only after October Default Notice | Process began in summer (known to Nahla and ignored) |
| Divorce proceedings began because of October Default Notice | Lack of support during health crises and COVID lockdown solidified desire to divorce after separation for years (known to Nahla and ignored) |
| Debtor and Emily hold selves out in public as still married | This is untrue. The Debtor and Emily have 3 children and are and will continue to be tied to them, but they do not hold themselves out as married (although the Debtor did not advertise his divorce) |
| No negotiation of distribution of assets in divorce | Discussions of iterations of proposals had between Debtor and/or Scott Flynn, and Daniel Klaynberg on behalf of Emily (known to Nahla and ignored) |

6

| | |
|---|---|
| Parties agreed that Emily would retain Sands Point Property | Agreement specifically provided for split of proceeds and for Emily to pay carrying costs while residing there known to Nahla and ignored) |
| Parties agreed that Emily would retain 16th Street Condo | This property was always titled in Emily's name alone (known to Nahla and ignored) |
| Debtor agreed that an early iteration of distribution was "all perfect" but it later changed | Distribution changed based on Daniel's comments to same on behalf of Emily |
| Note on last iteration of distribution that Emily needed liquid assets was not a concern of Emily | It *was* a concern of Daniel and raised by Daniel in discussions |
| Debtor told Emily to sign what he wanted her to sign | Debtor to Emily *where* to sign, assuming that she had read the document or that it was explained to her by Daniel |
| Debtor allowed non-compliance with Separation Agreement by Emily not paying Chase Mortgage form 16th Street Condo proceeds | Emily's advisors suggested that she invest the proceeds and continue to pay the Chase mortgage since the mortgage payments were cheaper than investment potential (known to Nahla and ignored) |
| Debtor did not comply with agreement by failing to take $300,000 from joint accounts | Debtor took more than that- $400,000 to be precise (known to Nahla and ignored) |
| Parties retained joint accounts after divorce | Accounts needed to be maintained because of pledge in favor of M&T (known to Nahla and ignored) |
| Debtor didn't obtain court approval to transfer money from joint account to DIP account | Approval not needed to transfer to a DIP account |
| Debtor improperly transferred nearly $1 million to Emily post-petition | Money was Emily's and not property of estate; account removed from schedules in consultation with UST |
| Debtor purchased plane tickets for Emily and friends post-petition | At the request of business partner, Debtor used mileage of Wonder Works (not Debtor) to purchase tickets |

| Transfers from WW Spectra to Klaynberg Family Trust were made to divert assets from creditors | Estate planning transfers were made and Debtor's interests in Klaynberg Family Trust is an asset of estate |
|---|---|
| Transfer of interest in WW Spectra to son made to divert assets to creditors | Done in contemplation of retirement in 2019 |
| Gifts to sons and girlfriend were improper | Nothing improper about gifts and all listed on schedules |
| Gifts were made following Debtor's exposure on guaranty | Transfers were made months and sometimes years prior to exposure on guaranty |
| Debtor is retaining control over sales process and sales subject to transfer restrictions | Transfer restrictions exist regardless of who sells interests |
| More value to equity interests if not sold | That is not based on any evidence |

12. Thus, most of the supposed "truths" that Nahla relies on are actually false, and strikingly, Nahla is fully aware of that and misrepresented the events and testimony to suit its position. When not looking at this case through the biased lens of Nahla, case law does not support the appointment of a Trustee here.

13. Assuming, *arguendo*, that there are avoidable pre-petition transfers (disputed by the Debtor), the existence of potential avoidable pre-petition transfers is not the benchmark for the appointment of a trustee, particularly where, as here, the Debtor has proposed in his Plan that the independent Plan Administrator investigate and pursue any actions deemed appropriate. Hence, in *In re Daily*, Case No. 309-05337, 2009 WL 3415204 (Bankr. M.D. Tenn. Oct. 19, 2009), the court declined to appoint a trustee even though there were, among other things, allegations of avoidable transfers where the debtor's plan of reorganization was going to transfer any avoidance powers that the debtor had to an independent trust for the benefit of creditors, enabling the trust to purse any alleged fraudulent transfers that may have occurred. *Daily*, 2009 WL 3415204, *4-5. Similarly, in *In re Skytec, Inc.*, 610 B.R. 14 (Bankr. D.P.R. 2019), the court denied a motion to

appoint a trustee even where there were allegations of preferential prepetition transfers where the debtor proposed, as part of a plan, to appoint a plan administrator to investigate the transfers. *Skytec*, 610 B.R. at 23.

14. As in these cases, the proposed Plan Administrator is tasked with investigating these actions, and there is no grounds for a trustee on the basis of the existence of potential avoidance actions, particularly given that the appointment of a trustee is a drastic remedy.

15. The Debtor would further note that the "fraud" allegations of Nahla focus nearly entirely on the alleged sham divorce, not on an ongoing scheme of fraud and mismanagement. This is a far cry from the case where, for instance, the debtor's principal was found guilty of actual fraud and diversion of funds, and a punitive damage award of $2 million was rendered. *See In re Ashley River Consulting, LLC*, No. 14-13406 (MG), No. 14-13407 (MG), 2015 WL 1540941, *10 (Bankr. S.D.N.Y. Mar. 31, 2015). Similarly, it is unlike the debtor in *Tradex Corp. v. Morse*, 339 B.R. 823 (D. Mass. 2006), who did not attend the 341 meeting because he pled his Fifth Amendment rights, failed to attend a 2004 examination and was the subject of a grand jury investigation. *Morse*, 339 B.R. at 824.

16. Moreover, in *nearly every case* cited by Nahla there is a common thread: the debtor concealed facts from the Court and the creditors. In *Ashley River Consulting*, the debtor failed to disclose assets and relationships. *Ashley River Consulting*, 2015 WL 1540941 at *10. In *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518 (Bankr. E.D.N.Y. 1989), the debtor transferred its business and customers to a new company pre-petition, and actively concealed the transfer post-petition. *V. Savino*, 99 B.R. at 523. In *In re Sillerman*, 605 B.R. 631 (Bankr. S.D.N.Y. 2019), the debtor failed to disclose material information as well. *Sillerman*, 605 B.R. at 643-44, 646, 649, 654. Likewise, in *In re McCorhill Publ'g., Inc.*, 73 B.R. 1013 (Bankr. S.D.N.Y. 1987), the debtor

9

failed to maintain accurate financial records and failed to substantiate undocumented transactions. *McCorhill Publ'g.*, 73 B.R. at 1017. Finally, in *In re Jie Xiao*, 608 B.R. 126 (Bankr. D. Conn. 2019), the debtor even concealed the property settlement agreement by not including a reference to it in the divorce decree. *Jie Xiao*, 608 B.R. at 162.

17. In many of the cases in which a trustee is appointed, the Debtor is not complying with their obligations as a debtor-in-possession and is ignoring Court orders. Thus, in *Sillerman*, the debtor retained and paid professionals without court approval, failed to file periodic reports, failed to comply with orders seeking remittance of funds for disbursement, failed to file tax returns, and misdirected tax refunds. *Sillerman*, 605 B.R. at 642-46. In *Ashley River*, the debtor failed to timely file monthly operating reports and pay UST fees, improperly used cash collateral, and took no steps to reorganize, having only filed schedules and responses to motions. *Ashley River Consulting*, 2015 WL 1540941 at *5-11. In *Morse*, the debtor mortgaged its assets to secure a loan to an affiliate post-petition. *Morse*, 339 B.R. at 832-33. In *Sharon Steel*, the debtor took no steps to recover potential avoidance actions. *Sharon Steel*, 871 F.2d at 1220-21.

18. **Nothing could be further from the truth here**, nor does Nahla even suggest that to be the case. The Separation Agreement and the distribution of assets thereunder has been referred to by the Debtor since the beginning of the case, and a copy of the Separation Agreement was provided to the U.S. Trustee ("UST") nearly immediately. It was also included on pleadings filed by the Debtor. The Debtor's initial schedules identified any transfers made by the Debtor within the 2 years prior to the Petition Date, including gifts made to the Debtor's sons and girlfriend. The Debtor has filed all periodic reports required, and has timely filed all monthly operating reports. The Debtor produced tens of thousands of pages of document discovery to Nahla, and willingly attended a deposition. The Debtor's Plan provides for an independent Plan

Administrator to pursue avoidance actions. The Debtor is closing on the sale of his interest in the Sands Point Property and has filed the Equity Sale Motion to effectuate the sale of those assets as well. The Debtor has complied with all orders entered by the Court and all requirements of a debtor-in-possession. None of the concealment permeating the cases in the Motion is present here, weighting against the appointment of a Trustee.

19. Rather, this case is more akin to *YC Atlanta*. There, the Court did not appoint a trustee finding that the pre-petition transfers complained of were "alone insufficient to establish cause", particularly when compared to the more egregious cases of *Ionosphere, V. Savino, Morse and Sharon Streel*. *YC Atlanta*, 630 B.R. at 367-68, 370. In *YC Atlanta*, there was no concealment of assets, the debtor's managers understood their duties and were complying with them, and the debtor articulated the anticipated provisions of its plan. *YC Atlanta*, 630 B.R. at 370. The same is true here, particularly where the Debtor has not only put forth a Plan that cedes to the Plan Administrator all control to investigate and assert causes of action (with certain limited exception), but is actively taking steps to monetize his assets for the benefit of all creditors.

20. In *The 1031 Tax Grp.*, this Court did not initially appoint a trustee, based partly on the fact that the debtor changed governance post-petition and progress was being made toward confirmation in that case. *The 1031 Tax Grp*., 374 B.R. at 91-92. While an individual debtor cannot simply replace management like a corporate entity can, here the Debtor has taken steps to place the investigation and pursuit of the acts complained of by Nahla in the hands of a Plan Administrator, who will be chosen by and will answer to the creditors. And while the Court ultimately appointed a trustee in *1031 Tax Group*, the progress originally seen in that case had ceased and the debtor was unreliable in its deliverables. *In re The 1031 Tax Grp., LLC*, No. 07-11448 (MG) (Bankr. S.D.N.Y. Oct. 23, 2007), ECF No. 812. That is not the case here: the Debtor

has done everything he told the Court he would and more, and the case has been progressing steadily toward confirmation.

21. Nahla assumes, without evidence, that the Debtor is not carrying out his fiduciary duties, and that case law therefore requires that a Trustee be appointed. *See*, Motion, ¶57. It is unclear as to how, exactly, the Debtor has not been fulfilling his duties. He has proceeded to monetize his assets so that creditors can receive distributions, he has agreed to the investigation of all pre-petition transfers, even though he believes that they are not avoidable (except for the Nahla Judgment: that is clearly avoidable). If Nahla were acting in the interests of the estate, it would concede the Preference Action and put itself on even footing with the remaining creditors. Instead, it is just costing those creditors money by their constant barrage of pleadings and objections.

22. Nahla asserts that the Debtor has a "natural instinct to protect his own self-interest," is "hopelessly conflicted with respect to causes of actions against insiders and business interests in which the Debtor's insiders hold interests". Potential conflicts alone do not justify the appointment of a trustee. *See, e.g. In re Royster*, 145 B.R. 88, 90-91 (Bankr. M.D. Fla. 1992). Further, the Debtor has proffered a Plan that puts any causes of action of this nature into the hands of a fully independent Plan Administrator. Even if there were a conflict, it has been resolved.

23. In addition to there not being cause to appoint a trustee, such an appointment is not in the best interest of creditors under section 1104(a)(2). In order to satisfy their burden under this section, Nahla would need to show that the benefits to be derived from the appointment of a trustee clearly outweighs the detriment to the estate and the bankruptcy process. *See, e.g.*, *Adelphia Commc'n*, 336 B.R. at 658 (noting that "the benefits derived by the appointment of a trustee, balanced against the cost of the appointment" is among the factors to consider when determining whether a trustee is warranted under section 1104(a)(2)). In this case, the Debtor is doing (or has

made provision for) everything that a Trustee would be doing. A Trustee would do what a Plan Administrator would- investigate and commence, if appropriate, actions regarding pre-petition transfers. He or she would likewise monetize the Debtor's assets, which the Debtor has proposed to so through the comprehensive Sale Process already before the Court. The difference is that there is no added cost associated with the Debtor's Plan and Sales Process, whereas a Trustee would necessarily add such an additional cost layer. The Debtor is also immediately moving to take these actions, whereas a Trustee would not be able to accomplish these tasks in the same time frame as the Debtor could. The delay associated with a Trustee needing to familiarize themselves with the intricacies of the issues here does not benefit the creditors. As far as creditor confidence, Nahla is the only creditor which is opposing the Debtor's efforts in this case. That is surely telling.

24. For whatever reason, Nahla is intent on objecting to anything and everything the Debtor proposes. The Debtor has provided in his Plan for a Plan Administrator and Oversight Committee to investigate the action that Nahla is suggesting a Trustee should investigate. The Debtor has proposed a comprehensive Sales Process to monetize his assets for his creditors. The Debtor has already liquidated his interest in the Sands Point Property to the benefit of the estate.

25. Nahla has a jaundiced view of the "facts". The Debtor is not the "bad actor" that Nahla suggests, nor is he acting against the estate's interest. The Court in *Ionosphere* noted:

> A debtor-in-possession has all the duties of a trustee in a Chapter 11 case, including the duty to protect and conserve property in its possession for the benefit of creditors. "The job of a debtor-in-possession remains under the Code as that described by Judge Friendly—to get the creditors paid." A debtor-in-possession's fiduciary obligation to its creditors includes refraining from acting in a matter which could damage the estate, or hinder a successful reorganization of the business. When a debtor-in-possession is incapable of performing these duties, a Chapter 11 trustee may be appointed.

*Ionosphere*, 113 B.R. at 169 (internal citations omitted). The Debtor in this case is doing the exact job described by Judge Friendly—he is getting creditors paid. He is not damaging the estate or

13

hindering the chapter 11 process. He is doing everything that a debtor-in-possession is tasked with, all the while fighting Nahla's roadblocks every step of the way. The Court should let him continue to do so. A Trustee should not be appointed in this case.

WHEREFORE, the Debtor requests that the Court deny the Motion, and grant the Debtor such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
September 7, 2022

CULLEN AND DYKMAN LLP

By: s/ Bonnie Pollack
    Matthew G. Roseman, Esq.
    Bonnie L. Pollack, Esq.
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700

Counsel for the Debtor