UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
In re:                                                                      NOT FOR PUBLICATION

        JOSEPH KLAYNBERG,                                  Chapter 11

                                    Debtor.                       Case No. 22-10165 (MG)

------------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR LEAVE TO
FILE COMPLAINT OBJECTING TO DISCHARGABILITY OF CLAIM NO. 15-1**

*A P P E A R A N C E S:*

VENABLE LLP
*Attorneys for Wilmington Trust*
750 E. Pratt Street, Suite 900
Baltimore, Maryland
By:    Brent W. Procida

CULLEN AND DYKMAN LLP
*Attorneys for Joseph Klaynberg*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
By:    Bonnie L. Pollack, Esq.
         Matthew G. Roseman, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

        Pending before the Court is the motion of Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of BANK 2020-BNK29, Commercial Mortgage Pass-Through Certificates, Series 2020-BNK29, by and through Rialto Capital Advisors LLC, solely in its capacity as Special Servicer ("Wilmington"), pursuant to 11 U.S.C. § 523 and Fed. R. Bankr. P. 4007(c) and 9006(b)(1), for leave to file a complaint objecting to dischargeability of Claim No. 15-1 (the "Motion," ECF Doc. # 192). Attached to the Motion are relevant excerpts of the Loan Agreement (Exhibit A); Guaranty of Recourse Obligations of

1

Borrower (Exhibit B); a copy of the assigned Loan to Morgan Stanley Mortgage Capital Holdings, LLC (Exhibit C); the assigned Loan to Wilmington (Exhibit D); copies of the December 9, 2020 notice and subsequent correspondence from Wells Fargo to the Borrower (Exhibit E); and a copy of the October 2, 2020 notice of default (Exhibit F).

On September 7, 2022, the Debtor filed a response to the Motion. ("Debtor's Response," ECF Doc. # 213.) On September 9, 2022, Wilmington filed a reply. ("Wilmington Reply," ECF Doc. # 218.) Attached to the Debtor's Response, as Exhibit A, is a record of communications between Mr. Klaynberg and Wells Fargo concerning the Loan.[1] ("Debtor's Response, Exhibit A," ECF Doc. # 218-1.)

For the reasons explained below, the Court **GRANTS** the Motion.

I. **BACKGROUND**

On February 10, 2022 (the "Petition Date"), Joseph Klaynberg (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Motion ¶ 2.) Since the Petition Date, the Debtor has managed his affairs and remained in possession of his assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. (*Id.*)

On November 2, 2020, one of the Debtor's companies, 114 MS Owner, LLC ("Borrower"), became obligor on a mortgage loan in the original principal amount of $17,300,000 (the "Loan"). (*Id.* ¶ 3.) The Loan is secured by an office building at 114 Mulberry Street, New York, New York in which another of the Debtor's companies, Wonder Works Construction, is the primary tenant. (*Id.* ¶ 4.)

Terms and conditions of the Loan are set forth in a Loan Agreement, dated as of

---

[1] On November 2, 2020, one of the Debtor's companies, 114 MS Owner, LLC ("Borrower"), became obligor on a mortgage loan in the original principal amount of $17,300,000 (the "Loan"). (Motion ¶ 3.)

2

November 2, 2020. (*Id.* ¶ 5.) The Debtor executed the Loan on behalf of the Borrower. (*Id.* ¶ 6.) As further assurance for repayment of the Loan, the Debtor executed a Guaranty of Recourse Obligations of Borrower ("Guarantor"), whereby the Debtor assumed personal liability for certain losses and the entire Loan upon the occurrence of certain trigger events. (*Id.* ¶ 7.)

In the Loan Agreement, the Debtor represented and warranted that:

> **3.1.4 Litigation**. There is no action, suit, arbitration or governmental investigation or proceeding ***pending, filed or, to Borrower's knowledge, threatened*** against Borrower, Borrower Parties, or the Property in any court or by or before any other Governmental Authority which, if determined adversely against Borrower, Borrower Parties, or the Property, would materially and adversely affect (a) the use, operation or value of the Property or Borrower's title to the Property, (b) the enforceability, validity, perfection or priority of the lien of the Security Instrument or the other Loan Documents, (c) the ability of Borrower to perform its obligations under the Security Instrument or the other Loan Documents, ***(d) the ability of Guarantor to perform its obligations under the Loan Documents to which it is a party***, (e) the principal benefit of the security intended to be provided by the Loan Documents or (f) the ability of the Property to generate net cash flow sufficient to service such Loan.
>
> **3.1.40 Guarantor Representations**. Borrower hereby represents and warrants that, as of the date hereof and continuing thereafter for the term of the Loan, the representations and warranties set forth in Subsections 3.1.1 through 3.1.6, 3.1.8, 3.1.10, 3.1.15, 3.1.25, 3.1.26, 3.1.28, 3.1.31 through 3.1.34, 3.1.39(b), 3.1.41 and 3.1.42 herein are true and correct with respect to Guarantor, as the same are applicable to such party. Wherever the term "Borrower" is used in each of the foregoing Subsections it shall be deemed to be "Guarantor" with respect to each such party.

Exhibit A at 30, 43. (*Id.* ¶ 8.)

In section 23 of the Guaranty, the Debtor further represented and covenanted to Lender that:

> (d) There are no pending or, to Guarantor's knowledge, threatened actions, claims, investigations, suits or proceedings before any governmental authority, court or administrative agency which affect the financial condition or operations of Guarantor,

3

>  Borrower and/or the Property…
>
>  (h) Guarantor shall promptly notify Lender in writing of any litigation pending or threatened against Guarantor claiming damages in excess of Fifty Thousand and No/100 Dollars ($50,000.00) and of all pending or threatened litigation against Guarantor if the aggregate damage claims against Guarantor exceed One Hundred Thousand and No/100 Dollars ($100,000.00).

Exhibit B at 7, 8. (*Id.* ¶ 9.)

On November 30, 2020, the original lender, Morgan Stanley, assigned the Loan to Morgan Stanley Mortgage Capital Holdings, LLC which, in turn, immediately assigned the Loan to Wilmington. (*Id.* ¶ 10.)

Article IX and section 11.24 of the Loan Agreement are dedicated to informing the borrower that the Loan may be sold, securitized, and administered by a servicer to be appointed by the Lender. (*Id.* ¶ 11.)

The Loan Agreement specifically addresses notice requirements if the Loan is being administered by a servicer:

> Provided Borrower shall have been given notice of Servicer's address by Lender, Borrower shall deliver to Servicer duplicate originals of all notices and other instruments which Borrower may or shall be required to deliver to Lender pursuant to this Agreement, the Note and the other Loan Documents (and no delivery of such notices or other instruments by Borrower shall be of any force or effect unless delivered to Lender and Servicer as provided above).

Exhibit A at § 11.24(c). (*Id.* ¶ 12.)

At all times since November 30, 2020, Wells Fargo Bank, N.A. ("Wells Fargo") has been the servicer for this Loan. (*Id.* ¶ 13.) On December 9, 2020, the Borrower received a notice informing it that the Loan had been securitized and Wells Fargo would be the servicer from that

4

point forward. (*Id.*) Since that time, Wells Fargo has regularly corresponded with the Borrower and collected the monthly payments. (*Id.*)

On October 2, 2020, less than one month before origination of this Loan, the Debtor received a notice of default from 2020A of Nahla Capital LLC ("Nahla") concerning a loan which the Debtor had "absolutely, irrevocably and unconditionally" guaranteed payment of various sums and which demanded payment by October 9, 2020. (*Id.* ¶ 14.) The October 2, 2020 notice references five prior notices of default issued since January 2020 and itemizes millions of dollars in defaulted liability under the Debtor's guaranty. (*Id.* ¶ 15.) The October 2, 2020 notice ultimately resulted in a $13 million judgment against the Debtor, which, in turn, led directly to this bankruptcy filing. (*Id.* ¶ 16.)

The Debtor's Chapter 11 Petition schedules Morgan Stanley as a creditor, but not Wilmington or Wells Fargo. The Creditors' Matrix lists the service address for the Loan as:

> Morgan Stanley
> 1585 Broadway
> New York, NY 10036

(*Id.* ¶ 17.)

The first meeting of creditors pursuant to 11 U.S.C. 341 was scheduled for March 10, 2022, making May 9, 2022, the last day for filing a complaint seeking a declaration of non-dischargeability under Federal Rule of Bankruptcy Procedure 4007(c)(3). (*Id.* ¶ 18.) Wells Fargo did not receive any notice of this bankruptcy case until June 9, 2022, when Morgan Stanley first informed it of the matter. (*Id.* ¶ 19.) Upon learning of the Debtor's bankruptcy, Wells Fargo transferred servicing of the Loan to Rialto as special servicer. (*Id.* ¶ 20.) Wilmington and Rialto only became aware of a possible non-dischargeability claim in late July when, in the course of researching the litigation between Nahla and the Debtor, it discovered the

5

October 2, 2020 notice attached to a state court pleading. (*Id.* ¶ 20.) Wilmington has now filed claim no. 15-1 in the amount of 420,050,522.82. (*Id.* ¶ 21.) The Motion seeks leave to file a complaint objecting to the dischargeability of Wilmington's claim pursuant to Bankruptcy Rules 4007(c) and 9006(b)(1).

    A.    **Debtor's Response**

First, the Debtor disputes that the representations were materially false. (Debtor's Response ¶ 10.) The Debtor states there is no evidence that either the Debtor or WWML 96 DE Mezz, LLC (the borrower on the Nahla loan) would not have been able to pay the $2,784,195 demanded by Nahla on October 2, 2020 or whether these amounts were validly due at that time. (*Id.*)

Second, the Debtor argues Wilmington cannot establish intent to deceive. (*Id.* ¶ 11.) The Loan Documents were drafted and sent to counsel for the Borrower by Lender's counsel on September 18, 2020, well before the Nahla demand was sent. (*Id.*) The Borrower/Guarantor had very few comments to Loan Documents at that time, and therefore had no reason to review the Loan Documents again prior to execution, which occurred in November 2020. (*Id.*)

Third, the Debtor notes that it is unlikely that the representations were reasonably relied upon by Morgan Stanley in extending the Loan to the Borrower. (*Id.* ¶ 12.)

Finally, the Debtor notes it is unclear as to what Wilmington stands to gain by a prolonged and expensive action because all the Debtor's non-exempt assets are being sold through the Plan. (*Id.* ¶ 13.)

Ultimately, the Debtor notes that it has no objection to Wilmington filing a complaint, but still the Debtor still reserves his right to object to it. (*Id.* ¶¶ 7, 14.). Additionally, the Debtor notes that Wilmington should file the Complaint with caution since the Debtor intends to

pursue recovery of his costs in defending an untenable action (even if a late filed claim is allowed). (*Id.* ¶ 14.)

### B. Wilmington's Reply

Wilmington argues that the Debtor's Response (i) consents to the Motion; (ii) undermines this consent by arguing the Lender should be charged with notice of the bankruptcy; and (iii) attempts to cast doubt on the merits of an action under section 523(a)(2). (Wilmington Reply ¶ 1.)

## II. LEGAL STANDARD

The Bankruptcy Rules provide that a complaint to determine the dischargeability of a debt or a complaint objecting to a debtor's discharge must be filed within sixty days after the first date set for the meeting of creditors under section 341 of the Code. *See* FED. R. BANKR. P. 4007(c) (complaints objecting to dischargeability); *id.* 4004(a) (complaints objecting to discharge). (Motion ¶ 23.)

Bankruptcy Rule 4004(b)(2) allows a party to request permission from the court to file a complaint objecting to a debtor's discharge, even after the original deadline to object, which is 60 days after the date first set for the creditor's 341 meeting, has passed. FED. R. BANKR. P. 4004(b)(2). A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under section 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection. (*Id.*) The motion shall be filed promptly after the movant discovers the facts on which the objection is based. *Id.*

On a motion by a party in interest, the bankruptcy court may extend that time "for cause"; such a motion "shall be filed before the time has expired." FED. R. BANKR. P. 4004(b)(1),

7

4007(c). "The court may enlarge the time for taking action under Rules . . . 4004(a) [and] 4007(c) . . . only to the extent and under the conditions stated in those rules." FED. R. BANKR. P. 9006(b)(3).

Notwithstanding the language of Rule 9006(b)(3), the Second Circuit has held that the 60-day deadline is "not jurisdictional and thus is subject to waiver, estoppel, and equitable tolling." *In re Benedict*, 90 F.3d 50, 54 (2d Cir.1996); *see also Kontrick v. Ryan*, 540 U.S. 443, 456–60 (2004) (finding the Rule 4004(a) time limit concerning objections to discharge was nonjurisdictional and therefore subject to waiver).

The doctrine of equitable tolling "permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir.2011) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). (*Id.* ¶ 26.)

Extraordinary circumstances can include, *inter alia*, a defendant's fraudulent concealment of the facts that would have allowed the plaintiff to discover she had a claim. *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir.2012). Whatever the circumstances, "[r]easonable diligence is a prerequisite to the applicability of equitable tolling." *Koch*, 699 F.3d at 157. (*Id.* ¶ 27.)

Following *Benedict*, bankruptcy courts in the Second Circuit have found that failure to provide timely notice of a bankruptcy to a creditor at the correct address equitably tolls the deadline to file actions under section 523(a). *In re Linzer*, 264 B.R. 243, 250–51 (Bankr. E.D.N.Y. 2001) ("[N]otice of a pending bankruptcy case nine days before the expiration of the

8

deadline to file nondischargeability complaints is inadequate. . . . As a fundamental matter of due process lists or schedules of creditors serve no useful purpose unless they include the addresses last known to the debtor to which notices may be sent."), *citing* 3 COLLIER ON BANKRUPTCY ¶ 523.13, at 523–79 (15th Ed., rev.1999)."); *see also In re Dewalt,* 961 F.2d 848 (9th Cir.1992) (notice to unscheduled creditor seven days before bar date insufficient.). (*Id.* ¶ 28.)

### III. DISCUSSION

The Court finds cause exists to permit the late filing of a nondischargeability complaint because of the failure to provide timely notice of the bankruptcy to the creditor in this case. Wilmington had no knowledge of this bankruptcy case, actual, constructive, imputed or otherwise, until June 9, 2022, more than a month after the filing deadline for nondischargeability actions. (*Id.* ¶ 30.) The Debtor does not refute the notice argument, instead, asserting that the December 9, 2020 notice advising him that the Loan had been securitized was ineffective and that he had no knowledge Wells Fargo was the servicer for the Loan (even though he was copied on correspondence implying otherwise.) (*Id.* ¶¶ 4–6.) The Court finds this unconvincing.

Notice is paramount in dischargeabilty cases. The Court previously addressed this issue in *In re Bressler*, 600 B.R. 739 (Bankr. S.D.N.Y. 2019), where the creditor was given one month's notice of the 341 meeting and three months' notice of the deadline to object to discharge. *Id.* at 742. In *Bressler*, the creditor did not deny receiving this notice, but missed the deadline to object to discharge due to a separate misunderstanding.[2] Since the creditor had

---

[2] The initial date of the 341 Meeting was moved to a later date, but the deadline to object to discharge remained the same. *Id.* Creditors missed the deadline to object to discharge and argued that the deadline ran 60 days from the date the meeting was actually held, rather than from the first date set for the initial meeting of the creditors. *Id.* The Court disagreed and held that the deadline to object to discharge ran from the first date set for the initial meeting of the creditors. *Id.* Therefore, the court found the creditors had notice and denied the creditor's motion to extend time to object to discharge. *Id.* at 741.

9

notice of the filing of the case and of the deadline for filing a dischargeability complaint, the extension to object was denied. (*Id*.)

Similarly, in *In re Bressler*, 601 B.R. 318 (Bankr. S.D.N.Y. 2019)("Bressler II"), the Court rejected an argument to extend the dischargeabilty deadline, in part, because of a personal financial statement obtained by the creditor, which showed the creditor had notice of the alleged fraud before the objection deadline. *Id*. at 339. In *Bressler* II, the creditor failed to meet Rule 4004(b)(2)(B)'s requirement that it did not have knowledge of facts in time to permit an objection. *Id*.

Here, *Bressler* is clearly distinguishable. Wilmington had no knowledge, constructive or otherwise, of this bankruptcy case until more than a month after the filing deadline for nondischargeability actions. (Motion ¶¶ 19, 29.)

## IV. CONCLUSION

In light of Wilmington's diligence upon discovery, the Debtor's prior interaction with Wells Fargo, the lack of prejudice, the potential fraud, and most importantly, Wilmington's lack of notice, this case meets the standard for equitable tolling under *In re Benedict*, 90 F.3d 50, 54 (2d Cir.1996). (*Id.* ¶ 8.) Wilmington makes a sufficient case for equitable tolling. The Court **GRANTS** the Motion.

**IT IS SO ORDERED.**

Dated:   September 19, 2022
         New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge