Michael S. Weinstein
Moshie Solomon
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330
*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| JOSEPH KLAYNBERG, | : | Case No. 22-10165 (MG) |
| | : | |
| Debtor. | : | |
| | : | |

-----------------------------------------------------------------X

**SUMMARY SHEET FOR APPLICATION OF GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP FOR FIRST INTERIM ALLOWANCE OF COMPENSATION
AS COUNSEL TO JONATHAN L. FLAXER, THE CHAPTER 11 TRUSTEE**

| NAME OF APPLICANT: | | ROLE IN THE CASE: | |
|---|---|---|---|
| **Golenbock Eiseman Assor Bell & Peskoe LLP** | | **Counsel to Jonathan L. Flaxer, Chapter 11 Trustee** | |
| | | | |
| **CURRENT APPLICATION** | | **PREVIOUS APPLICATION** | |
| Fee Period | September 20, 2022 through January 31, 2023 | Fees Previously Requested | $ 0.00 |
| | | Fees Previously Allowed | $ 0.00 |
| | | Expenses Previously Requested | $ 0.00 |
| Fees Incurred | $ 168,810.50 | Expenses Previously Awarded | $ 0.00 |
| Fees Requested (Approval) | $ 168,810.50 | | |
| Fees Requested (Payment) | $ 135,048.50[1] | **PREVIOUS MONTHLY FEE STATEMENTS** | |
| Holdback (20%) | $ 33,762.00 | Fees Previously Requested | $ 88,425.00 |
| | | Fees Previously Paid | $ 70,740.00 |
| | | Holdback (20%) | $ 17,685.00 |
| Expenses Incurred | $ 0.00 | Expenses Previously Requested | $ 0.00 |
| Expenses Requested (Approval and Payment) | $ 0.00 | Expenses Previously Paid | $ 0.00 |

---

[1] In accordance with the Fee Procedures Order (as defined in the Application), Applicant has timely filed monthly fee statements for all fees incurred through November 30, 2022 in the amount of $88,425, and has been paid by the Estate to date 80% of those fees in the aggregate amount of $70,740. Applicant has incurred additional fees in the amount of $80,385.50 for the period of December 1, 2022 through January 31, 2023, but has not filed monthly fee statements for that period nor has been paid any fees from that period. Therefore, by this Application, Applicant is seeking interim allowance of all fees incurred through January 31, 2023 in the amount of $168,810.50, but interim payment only of the balance of 80% of its unpaid fees incurred for the period of December 1, 2022 through January 31, 2023 in the amount of $64,308 (80% of $80,385.50), without prejudice to seek payment of all held back fees in a future final fee application.

|  | Year Admitted | 2022 Hourly Rate/2023 Hourly Rate (if applicable)[2] | Total Hours | Total Amount | Practice Specialty |
|---|---|---|---|---|---|
| **Partners** | | | | | |
| Steven G. Chill | 1982 | 825.00 | 0.50 | $ 412.50 | Trust and Estates |
| Michael S. Devorkin | 1980 | 895.00 (2022) | 12.80 | $ 11,456.00 | Litigation |
|  |  | 950.00 (2023) | 3.40 | $ 3,230.00 |  |
| Steven R. Hochberg | 1987 | 675.00 (2022) | 4.70 | $ 3,172.50 | Real Estate |
|  |  | 775.00 (2023) | 1.70 | $ 1,317.50 |  |
| Michael S. Weinstein | 2009 | 505.00 (2022) | 85.70 | $ 43,278.50 | Bankruptcy |
|  |  | 555.00 (2023) | 39.80 | $ 22,089.00 |  |
| **Associates/Of Counsel** | | | | | |
| Daniel B. Axman | 2011 | 475.00 | 1.90 | $ 902.50 | Tax |
| Ina Dogani | 2021 | 425.00 (2022) | 19.00 | $ 8,075.00 | Litigation |
|  |  | 460.00 (2023) | 13.50 | $ 6,210.00 |  |
| Moshie Solomon | 2002 | 505.00 (2022) | 98.10 | $ 49,540.50 | Bankruptcy |
|  |  | 555.00 (2023) | 11.40 | $ 6,327.00 |  |
| Jackie Thaler | 2002 | 620.00 | 9.00 | $ 5,580.00 | Real Estate |
| Jane Waldman |  | 660.00 | 5.40 | $ 3,564.00 | Real Estate |
| **Paralegals/Paraprofessionals** | | | | | |
| Heather Maxwell | N/A | 230.00 (2022) | 6.80 | $ 1,564.00 | Litigation |
|  |  | 245.00 (2023) | 1.10 | $ 269.50 |  |
| Erin Jengo-Quirk | N/A | 170.00 (2022) | 5.90 | $ 1,003.00 | Litigation |
|  |  | 195.00 (2023) | 4.20 | $ 819.00 |  |
|  |  | TOTAL: | 324.90 | $168,810.50 |  |
| BLENDED RATE FOR ALL PROFESSIONALS: |  |  | $ 519.58 |  |  |
| BLENDED ATTORNEY RATE: |  |  | $ 538.14 |  |  |

---

[2] On January 6, 2023, in accordance with the Order Pursuant to 11 U.S.C. § 327(A) of the Bankruptcy Code and Fed. R. Bankr. P. 2014(A) and 2016 Authorizing the Retention of Golenbock Eiseman Assor Bell & Peskoe LLP as Counsel to the Trustee *Nunc Pro Tunc* to September 20, 2022 [Dkt. No. 258], GEABP duly filed with the Court a Notice of Rate Increase of Golenbock Eiseman Assor Bell & Peskoe LLP as Bankruptcy Counsel for the Chapter 11 Trustee [Dkt No. 286].

Michael S. Weinstein
Moshie Solomon
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re                                                         :    Chapter 11
                                                              :
JOSEPH KLAYNBERG,                                             :    Case No. 22-10165 (MG)
                                                              :
                Debtor.                                :
                                                              :
-------------------------------------------------------------X

**APPLICATION OF GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP FOR
FIRST INTERIM ALLOWANCE OF COMPENSATION AS COUNSEL TO
<u>JONATHAN L. FLAXER, THE CHAPTER 11 TRUSTEE</u>**

        Golenbock Eiseman Assor Bell & Peskoe LLP ("**<u>Applicant</u>**"), as counsel to Jonathan L. Flaxer (the "**<u>Trustee</u>**"), solely in his capacity as chapter 11 trustee of the bankruptcy estate (the "**<u>Estate</u>**") of Joseph Klaynberg (the "**<u>Debtor</u>**"), respectfully represents:

**A.**     **<u>Preliminary Statement</u>**

    1.    Applicant maintains its offices at 711 Third Avenue, New York, New York. Applicant is a general practice law firm with a diversified practice. Applicant has substantial experience and expertise in the representation of chapter 11 trustees.

    2.    Applicant submits this first interim application (the "**<u>Application</u>**"), pursuant to §§ 330 and 331 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**<u>Bankruptcy Code</u>**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**<u>Bankruptcy Rules</u>**"),

Rules 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "**Local Bankruptcy Rules**"), General Order M-447 of the United States Bankruptcy Court for the Southern District of New York (the "**Court Guidelines**"), and the Guidelines of the Office of the United States Trustee for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330, adopted on January 30, 1996 (the "**UST Guidelines**" and collectively with the Court Guidelines, the "**Guidelines**"), and the Court's Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Dkt. No. 45], as modified by the Stipulation and Order Modifying Monthly Compensation Order [Dkt No. 268] (together, the "**Fee Procedures Order**") for (a) interim allowance of compensation for professional services rendered by Applicant on behalf of the Trustee in the amount of $168,810.50 for the period from September 20, 2022, through January 31, 2023 (the "**First Interim Fee Period**"), and (b) interim payment for professional services rendered by Applicant on behalf of the Trustee in the amount of $64,308 for the period of December 1, 2022 through January 31, 2023, which represents 80% of all fees incurred but unpaid during that period.[1] For the remaining $33,762.10 in fees that were incurred but not paid during the First Interim Fee Period, Applicant seeks allowance of such fees in this Application without prejudice to its right to seek payment thereof pursuant to subsequent application.

3. In accordance with the Guidelines and Bankruptcy Rule 2016(a), annexed hereto as **Exhibit A** is the Certification of Michael S. Weinstein dated March 3, 2023 (the

---

[1] In accordance with the Fee Procedures Order, Applicant timely filed monthly fee statements for all fees incurred through November 30, 2022 in the amount of $88,425, and has been paid by the Estate to date 80% of those fees in the aggregate amount of $70,740. Applicant has incurred additional fees in the amount of $80,385.50 for the period of December 1, 2022 through January 31, 2023, but has not filed monthly fee statements for that period nor has been paid any fees from that period. Therefore, by this Application, Applicant is seeking interim allowance of all fees incurred through January 31, 2023 in the amount of $168,810.50, but interim payment only of the balance of 80% of its unpaid fees incurred for the period of December 1, 2022 through January 31, 2023 in the amount of $64,308 (80% of $80,385.50), without prejudice to seek payment of all held back fees in a future final fee application.

2

"**Certification**"), the "Certifying Professional" within the meaning of the Guidelines on behalf of Applicant. Applicant hereby states that all services for which compensation is sought herein were rendered to the Trustee solely in connection with the Debtor's chapter 11 case and not on behalf of any individual creditors and/or other persons, and the Certification confirms the foregoing.

4. Concurrently with the rendition of professional services required by the Trustee, Applicant maintains contemporaneous records of time expended. These records are entered by Applicant's attorneys and/or staff into a computer, and a copy of the computer printouts representing all such entries for the First Interim Fee Period is annexed hereto as **Exhibit B**.

**B.     Background**

5. On February 11, 2022 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under the Bankruptcy Code. Until September 20, 2022, the Debtor was authorized to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On August 17, 2022, Series 2020A of Nahla Capital LLC filed a motion (the "**Trustee Motion**") for the appointment of a chapter 11 trustee [Dkt. No. 189]. In the Trustee Motion, Nahla made several allegations with respect to the Debtor's pre- and post-petition financial affairs that warranted the appointment of a chapter 11 trustee. First, Nahla alleged that the Debtor's uncontested divorce from his ex-wife, Emily Klaynberg, was a sham designed and intended solely to fraudulently transfer the Debtor's assets to his wife and family, thereby shielding those assets from the Debtor's creditors. Second, Nahla alleged that the Debtor perpetuated an asset protection scheme through transfers of cash and securities to family members (including to, among others, a family trust, his sons and a significant other) and

3

affiliated entities for little to no consideration, for the sole purpose of hindering collection efforts by the Debtor's creditors. Third, Nahla alleged that the Debtor transferred certain interests in joint accounts to Emily after the Petition Date. The Debtor has vigorously opposed these allegations.

7. On September 19, 2022, the Court granted the Trustee Motion (the "**Trustee Decision**") directing appointment of a chapter 11 trustee [Dkt. No. 230].

8. On September 20, 2022, the United States Trustee (the "**United States Trustee**") filed a notice appointing Jonathan L. Flaxer as the chapter 11 trustee [Dkt. No. 231] as well as an application to approve the appointment of Jonathan L. Flaxer as the chapter 11 trustee [Dkt. No. 232]. The Court approved the United States Trustee's application by order dated September 23, 2022 [Dkt. No. 233].

9. By Order dated November 7, 2022, the Bankruptcy Court authorized the Trustee to retain Applicant as his general counsel *nunc pro tunc* to September 20, 2022. A copy of such order is annexed hereto as **Exhibit C**.

C. **Professional Services Rendered By Applicant On Behalf of the Trustee During the First Interim Fee Period**

10. Applicant has rendered extensive professional services on behalf of the Trustee and the Estate, and has used its best efforts to assist the Trustee in all matters necessary to the operation of the Estate.

11. The following is a summary of professional services rendered by Applicant, at the direction of the Trustee, from September 20, 2022 through January 31, 2023. Applicant has not attempted to describe each and every item of service rendered on behalf of the Trustee, but rather provides a general description that highlights important services rendered during the First Interim Fee Period. A detailed description of all services rendered on behalf of the Trustee can be found

4

in Applicant's time records annexed hereto. Although there is some inevitable overlap in the categories, Applicant has endeavored to allocate time entries into the appropriate categories.

**(1) Investigation of the Debtor's Financial Affairs**

12. In accordance with his duties, the Trustee immediately commenced his investigation of the financial affairs of the Debtor in order to, *inter alia*, locate, preserve, and protect the assets of the Debtor (including the Debtor's tangled web of equity interests in several buildings and construction projects in Connecticut and New York), and determine what, if any, claims the Estate has against those responsible for any fraud or other misdeeds that may have been perpetrated by or against the Debtor.

13. Applicant and the Trustee had several conversations and meetings with Nahla and Debtor's counsel to understand the full scope of the Debtor's assets and financial affairs, as well as Nahla's allegations against the Debtor. Debtor's counsel and Nahla cooperated with the Trustee's investigation from the start and were willing to voluntarily produce documents, provided that the Trustee agree to join into a non-disclosure and confidentiality stipulation that had previously been signed by the parties. Applicant negotiated and drafted such stipulation, which was approved by the Court and resulted in the voluntary production of thousands of pages of records from Nahla and the Debtor.

14. The Trustee then directed his retained professionals, including Applicant, to conduct a detailed review of all documents and records turned over by Nahla and the Debtor to assist the Trustee in understanding the facts and circumstances of this chapter 11 case. The Trustee and Applicant spent significant time and effort reviewing such documents and learning about the Debtor's assets and the circumstances regarding the transfers made by the Debtor pre-

and post-petition. Applicant drafted several fact memorandums concerning the Trustee's particular areas of concern.

15. Once the Trustee determined that further investigation was warranted, Applicant sought and obtained an order pursuant to Bankruptcy Rule 2004 that gave the Trustee authority to subpoena documents and witnesses in connection with his investigation. Applicant subsequently, on behalf of the Trustee, issued several subpoenas to, inter alia, banking institutions, professionals, and individuals who had both a personal and business relationship with the Debtor. Applicant is in the process of obtaining documents from such parties and anticipates scheduling examinations in the near future.

**(2) Litigation**

16. Prior to the Petition Date, the Debtor and Nahla were embroiled in litigation in New York state court revolving around the alleged default of a loan by an insider entity of the Debtor which the Debtor had personally guaranteed, and the subsequent purchase of the insider entity's equity by Nahla via a UCC sale and Nahla's subsequent judgment against the Debtor for the deficiency balance (the "**Nahla Judgment**"). As of the Petition Date, the litigation was still pending, and the matters were ripe for appeal. Applicant, at the Trustee's direction, continues to review all pleadings and documents related to such pending litigation and has conferred with counsel for both Nahla and the Debtor to understand the nature of the issues involved in the litigation and determine whether it would be in the Estate's interest to intervene in such litigation on behalf of the Estate's creditors.

17. Further, after the Petition Date, the Debtor had commenced an adversary proceeding against Nahla seeking to avoid the lien which attached as a result of the Nahla Judgment (the "**Nahla Judgment Lien**") as a preferential transfer under section 547(b) of the

Bankruptcy Code. The Trustee has since substituted in as the proper party for this proceeding. Applicant has conferred with Nahla with respect to the scheduling orders entered in this case as well as the overall direction of this matter, and is reviewing all related documents related to this proceeding in order to best advise the Trustee on this matter.

### (3) Cash Collateral Stipulation

18. In light of the Nahla Judgment, Nahla and the Trustee negotiated a stipulation with respect to the Trustee's use of Nahla's alleged cash collateral due to the pre-petition attachment of the Nahla Judgment Lien. Applicant conferred with Nahla's counsel and assisted in the drafting of the stipulation, which was approved by the Court on November 30, 2022.

### (4) Retaining Professionals

19. Applicant assisted the Trustee in obtaining approval of the retentions for: (a) Abrams Fensterman LLP as special family law counsel to the Trustee, and (b) Giambalvo, Stalzer & Company, CPAS, P.C. as tax accountants to the Trustee. Applicant is also in the process of assisting the Trustee in retaining Keen-Summit Capital Partners LLC as broker for the Trustee in order to conduct a sale of the Debtor's equity interests in several buildings in Connecticut and New York.

### (5) Chapter 11 Plan and Disclosure Statement

20. During the First Interim Fee Period, Applicant has spent significant time drafting a proposed chapter 11 plan, and has consulted and conferred with the main stakeholders in this case (including the Debtor, Nahla and the United States Trustee) with respect to the contents of such plan. Applicant expects that the plan will be ready to file in the near future.

**D.** **Legal Authority Supporting Application**

21. Section 330(a) of the Bankruptcy Code describes the general standards for determining the amount of compensation. It is to be:

> [R]easonable compensation for actual, necessary services rendered by such . . . professional person, or attorney, . . . and by any paraprofessional persons . . . based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title . . .

11 U.S.C. § 330(a).

22. In considering compensation awards under § 330 of the Bankruptcy Code, courts take into account twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974), *overruled on other grounds, Auer v. Robbins*, 519 U.S. 452 (1997). *See In re Masterwear Corp.*, 233 B.R. 266, 277 (S.D.N.Y. 1999); *In re Cena's Fine Furniture, Inc.*, 109 B.R. 575, 580 (E.D.N.Y. 1990); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y. 1986). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

23. "To facilitate consideration of the relevant factors, courts have adopted the 'lodestar' approach. This involves multiplying the reasonable attorney billing rate by the reasonable number of hours expended." *Masterwear*, 233 B.R. at 277; *Cena's Fine Furniture, Inc.*, 109 B.R. at 581. The "lodestar" approach incorporates most of the Johnson factors through

its application. *Masterwear*, 233 B.R. at 277; *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 566 (1986).

24. The professional services rendered by Applicant to the Trustee have required the expenditure of substantial time and effort. As set forth in **Exhibit B**, during the First Interim Fee Period, Applicant's attorneys expended an aggregate of 306.90 hours in rendering legal services to the Trustee and its paralegals expended 18 hours. The blended hourly rate for attorneys is $538.14 based on all fees incurred by Applicant.

25. Applicant submits that consideration of the relevant *Johnson* factors supports granting of the Application for the fees set forth above.[2] First, very substantial time and labor was required of Applicant. Second, the Applicant encountered several novel and difficult issues, including issues relating to the New York State limited liability company and corporate law, the duties of directors and officers, and the enforceability of the Nahla Judgment. With respect to the third factor, Applicant submits that substantial skill was required to perform these legal services properly.

26. With respect to the sixth and tenth factors, at the outset, although funds from previous recoveries existed, the extent to which these funds were usable by the Estate was in dispute. Moreover, substantial administrative claims had accrued prior to the Trustee's appointment. In this respect, Applicant submits that Applicant undertook risk in taking on this engagement without any assurance of payment of its fees. With respect to the eighth factor, Applicant submits that the results obtained, as described above, have been positive for the Estate. Lastly, with respect to the ninth factor, Applicant submits that the attorneys involved in the case are very experienced in matters of this kind, have good reputations, and possess substantial legal ability

---

[2] Applicant submits that the fourth, fifth, seventh, eleventh and twelfth factors are not relevant.

27. Whenever possible, Applicant saved the Estate unnecessary expense by utilizing bankruptcy paralegals to perform tasks for which they were qualified.

28. In accordance with the Guidelines, a schedule summarizing the time expended during the First Interim Fee Period, which includes the name, hours worked, and hourly rate of each professional and paraprofessional, and the year each professional was admitted, is included with the summary sheet.

**E.** **Conclusion**

29. The Trustee has reviewed this Application prior to its filing and supports it.

30. Applicant has provided notice of the Application to: (a) the Office of the United States Trustee for the Southern District of New York; and (b) counsel for the Debtor; (c) counsel for Nahla; and (d) all parties that have filed a notice of appearance in this case. Applicant submits that, in light of the nature of the relief requested, no other or further notice need be given.

31. No previous application for the relief requested herein has been made to this or any court.

**WHEREFORE**, as a result of the foregoing, Applicant respectfully requests entry of an order, a proposed form of which is annexed hereto as **Exhibit D**, granting: (a) interim allowance of compensation for professional services rendered by Applicant on behalf of the Trustee in the amount of $168,810.50 for the First Interim Fee Period; (b) interim payment for professional services rendered by Applicant on behalf of the Trustee in the amount of $64,308 for the period of December 1, 2022 through January 31, 2023, which represents 80% of all fees incurred but unpaid during that period, and authorizing the Trustee to make such payment; and (c) such other further relief as the Court deems just and proper.

Dated: New York, New York  
      March 3, 2023

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
711 Third Avenue
New York, New York 10022
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

By: /s/ Michael S. Weinstein
     Michael S. Weinstein
     Moshie Solomon

*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee*