Michael S. Weinstein
Moshie Solomon
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
(212) 907-7300

*Counsel to Jonathan L. Flaxer,*
*chapter 11 trustee for Joseph Klaynberg*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                           :
In re:                                      :   Chapter 11
                                           :
JOSEPH KLAYNBERG,                :   Case No. 22-10165 (MG)
                                           :
                                           :
                      Debtor.                :
                                           :
------------------------------------------------------------- x

## CHAPTER 11 TRUSTEE'S FIRST AMENDED CHAPTER 11
## <u>PLAN OF LIQUIDATION FOR JOSEPH KLAYNBERG</u>


       Jonathan L. Flaxer, chapter 11 trustee for Joseph Klaynberg (the "*Trustee*"), hereby

proposes this First Amended Chapter 11 Plan of Liquidation for Joseph Klaynberg pursuant to

section 1121(a) of the Bankruptcy Code.

# TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW** ............................................................1
- A. Rules of Interpretation .................................................................9
- B. Computation of Time ..................................................................10
- C. Governing Law ...........................................................................10
- D. Reference to Monetary Figures...................................................10
- E. Controlling Document ................................................................10

**ARTICLE II. ADMINISTRATIVE CLAIMS, U.S. TRUSTEE FEES, PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS**.....................................10
- A. Administrative Claims .................................................................10
- B. U.S. Trustee Fees .......................................................................11
- C. Professional Fee Claims .............................................................11
- D. Priority Tax Claims.....................................................................12

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS** .............................12
- A. Summary of Classification...........................................................12
- B. Treatment of Claims ...................................................................13
- C. Special Provision Governing Unimpaired Claims ........................16
- D. Elimination of Vacant Classes .....................................................16
- E. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ...............16

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN**.................................16
- A. Overview......................................................................................16
- B. Sale of Interest in Sands Point Property .....................................16
- **C.** Transfer Taxes ...........................................................................16
- D. Sale of Equity Interests ..............................................................17
- E. Appeal ........................................................................................17
- F. Effective Date .............................................................................18
- G. Vesting of Assets .........................................................................18
- H. Operation of Post-Confirmation Estate......................................18
- I. Release and Discharge of Trustee and the Trustee's Professionals .............18
- J. Plan Administrator ......................................................................18
- K. Release of Liens...........................................................................25
- L. Exemption from Certain Taxes and Fees.....................................26
- M. Preservation of Rights of Action.................................................26

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...................................................................................27

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS**...................................27
- A. Use of Opening Cash Balance for Initial Distribution of Assets and Creation of Reserves. ...............................................................27
- B. Timing and Calculation of Amounts to Be Distributed....................28
- C. Distributions on Account of Claims Allowed After the Effective Date ...........28

i

    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ........................29

    E.    Compliance with Tax Requirements/Allocations ..............................................30

    F.    Claims Paid or Payable by Third Parties ..........................................................30

    G.    Interest on Claims ..............................................................................................31

    H.    Final Distribution ..............................................................................................31

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS .................................................32**

    A.    Resolution of Claims Against the Debtor ..........................................................32

    B.    Disallowance of Claims ....................................................................................34

    C.    Amendments to Claims......................................................................................34

**ARTICLE VIII. SETTLEMENT, EXCULPATIONS, INJUNCTIONS, AND RELATED PROVISIONS ..................................................................................34**

    A.    Compromise and Settlement of Claims and Controversies ...............................34

    B.    Discharge ..........................................................................................................35

    C.    Exculpations......................................................................................................35

    D.    Injunction .........................................................................................................35

    E.    Setoffs and Recoupments..................................................................................36

    F.    Provisions as to Governmental Units ................................................................37

**ARTICLE IX. CONDITIONS PRECEDENT ..............................................38**

    A.    Condition Precedent to Confirmation of the Plan .............................................38

    B.    Conditions Precedent to the Effective Date of the Plan....................................38

    C.    Modification of Plan ........................................................................................38

    D.    Effect of Confirmation on Modifications ..........................................................39

    E.    Revocation or Withdrawal of the Plan..............................................................39

**ARTICLE X. RETENTION OF JURISDICTION ......................................39**

**ARTICLE XI. MISCELLANEOUS PROVISIONS......................................41**

    A.    Immediate Binding Effect..................................................................................41

    B.    Additional Documents ......................................................................................42

    C.    Post-Confirmation Reports ...............................................................................42

    D.    Reservation of Rights........................................................................................42

    E.    Successors and Assigns......................................................................................42

    F.    Service of Documents .......................................................................................42

    G.    Term of Injunctions or Stays.............................................................................43

    H.    Entire Agreement ..............................................................................................43

    I.    Nonseverability of Plan Provisions...................................................................43

    J.    Award of Attorneys' Fees and Expenses; Posting a Bond ...............................43

# ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

### Defined Terms

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtor's Estate pursuant to Sections 503(b) or 507(a)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estate incurred after the Petition Date and through the Effective Date excluding Professional Fee Claims.

2.      "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days following the Effective Date of the Plan.

3.      "*Allowed*" means with reference to any Claim, (a) any Claim against the Debtor that has been listed on its Schedules (as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not Disputed or contingent and for which (1) no contrary Proof of Claim has been Filed, (2) no objection to allowance, request for estimation, or other challenge has been or subsequently is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, if any, or (3) no motion to deem the Schedules amended has been Filed, (b)(1) any Proof of Claim that is timely Filed by the applicable Claims Bar Date, as to which no litigation (whether stayed or unstayed) is pending and to which no objection or other challenge has been or subsequently is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, if any, and (2) any Claim that is not subject to any applicable Claims Bar Date, as to which no objection or other challenge has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if any, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to a Final Order or under the Plan, but only to the extent provided therein, (e) any Claim that is not otherwise subject to disallowance under Section 502 of the Bankruptcy Code or that has not been Disallowed, (f) any Claim arising from the recovery of property in accordance with Sections 550 and 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code (unless such Claim is otherwise Disputed), or (g) any Claim allowed by stipulation approved by the Bankruptcy Court.  Except as otherwise provided in the Plan, for purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any Cause of Action that the Debtor may hold against the Holder thereof, to the extent such Cause of Action may be offset pursuant to applicable non-bankruptcy law or subject to recoupment.  Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by a Final Order of the Bankruptcy Court.  For any purpose under the Plan, unless specifically provided for herein, a

Claim that has been Allowed shall not include amounts constituting interest, penalties, or late charges arising from or relating to the period from and after the Petition Date. Any Claim that has been or is hereafter listed in the Schedules as Disputed, contingent, or unliquidated for which no Proof of Claim has been timely Filed and which is not included in subparts (a)-(g) herein, is not considered an Allowed Claim and shall be expunged and Disallowed without further action by the Plan Administrator or the Debtor, and without any further notice to or action, order, or approval of the Bankruptcy Court.

4. *"Appeal"* means the Debtor's appeal of entry of the Nahla Judgment pending in the New York Supreme Court Appellate Division, First Department, Case No. 2021-04386. For the avoidance of doubt, the Appeal does not include any actions or related appeals filed solely by WWML96 DE MEZZ, LLC or any other non-debtor(s).

5. "*Ballot*" means the ballot distributed to each eligible Holder of a Claim in the Voting Classes by the Balloting Agent, on which ballot such Holder of a Claim may, *inter alia*, vote for or against the Plan.

6. "*Ballot Deadline*" means the date and time set forth by the Bankruptcy Court by which the Balloting Agent must receive all Ballots.

7. "*Balloting Agent*" means Golenbock Eiseman Assor Bell & Peskoe LLP.

8. "*Bankruptcy Code*" means the Bankruptcy Reform Act of 1978, as amended and as codified under title 11 of the United States Code, and in effect on the Petition Date.

9. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York, and, to the extent of any withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to Section 151 of title 28 of the United States Code, the United States District Court for Southern District of New York.

10. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under Section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, as may be amended from time to time.

11. *"Business Day"* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

13. "*Cash Collateral Stipulation*" means the stipulation by and between the Trustee and Nahla (i) authorizing the Trustee's use of cash collateral and (ii) proving adequate protection, which was so-ordered by the Bankruptcy Court on November 30, 2022 and filed at Docket No. 272.

14. "*Causes of Action*" means any Claim, cause of action (including avoidance actions), controversy, right of setoff, counterclaim, or recoupment and any claim on contracts or

for breaches of duties imposed by law or in equity, demand, debt, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, Secured or unsecured, assertible directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort (including fraud), in law or in equity, or pursuant to any other theory of law, including violations of state or federal securities laws. Causes of Actions shall specifically include all Causes of Action described in the Disclosure Statement including without limitation (i) the Marital Litigation, (ii) the Nahla Preference Action, (iii) actions for avoidance of transfers to Robert Klaynberg, Daniel Klaynberg, Edward Klaynberg, Alena De Ploti, and other parties who received potentially avoidable transfers, (iv) actions for avoidance of transfers from entities that the Debtor controlled to entities in which his sons and other third parties hold interests, including without limitation avoidance of transfers from WW Spectra Corp to Klaynber Family Group, LLC, (v) actions for avoidance of guaranty obligations incurred in connection with loans to Chabad of Gramercy Park and other borrowers, and (vi) actions for monies owed to the Debtor by (a) Chabad of Gramercy Park, (b) Wonder Works Construction Corp., and (c) Valentina Petchorina.

15.     "*Chapter 11 Case*" means the chapter 11 case commenced by the Debtor, which is currently pending before the Bankruptcy Court.

16.     "*Chase Secured Claim*" means the Claim of JP Morgan Chase Bank in the Filed amount of $1,222,407.10 secured by a mortgage on the Sands Point Property.

17.     "*Citizens Claim*" means the Claim of Citizens Bank, N.A. (transferred to such claimant by Investors Bank) in the Filed amount of $317,419.50, secured against non-Debtor property, but unsecured as against the Debtor.

18.     "*Claim*" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

19.     "*Claims Bar Date*" means April 20, 2022, the deadline by which a Proof of Claim must have been Filed, as established by order of the Bankruptcy Court entered on March 8, 2022 (or August 10, 2022 for Governmental Units).

20.     "*Claims Objection Bar Date*" means the first Business Day that is 180 days after the Effective Date of the Plan or such later date as may be fixed by order of the Bankruptcy Court.

21.     "*Claims Register*" means the official register of Claims.

22.     "*Class*" means a category of Holders of Claims as set forth in Article III of the Plan in accordance with Section 1122(a) of the Bankruptcy Code.

23.     "*Confirmation*" means the entry on the docket of the Confirmation Order.

24.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order (within the meaning of Bankruptcy Rules 5003 and 9021).

25.     *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

26.     *"Confirmation Objection Deadline"* means the deadline for Filing objections to Confirmation of the Plan.

27.     *"Confirmation Order"* means an order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

28.     *"Contingent Guaranty Claims"* means the Claims of any lenders based upon the Debtor's prepetition guaranties of debt owed to such lenders by the respective borrowers under loans made by such lenders, to the extent such claims are contingent or unliquidated.

29.     *"Cure Obligations"* means all (a) amounts required to cure any monetary defaults and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults  (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed and assigned by the Debtor pursuant to Sections 365 or 1123 of the Bankruptcy Code.

30.     *"Debtor"* is defined in the Introduction.

31.     *"Disallowed"* means any Claim that is not or that is no longer Allowed.

32.      *"Disclosure Statement"* means the disclosure statement relating to the Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

33.     *"Disclosure Statement Approval Order"* means the Order approving the Disclosure Statement relating to the Plan and approving certain procedures for solicitation of votes on such Plan and granting related relief.

34.     *"Disputed"* means, with respect to any Claim, any Claim that is not yet Allowed, and shall include any Claim that is designated as disputed pursuant to the Plan.

35.     *"Disputed Claims Reserve"* means the reserve to be created by the Plan Administrator for the benefit of Holders of subsequently Allowed Claims for Distribution according to the procedures set forth in Article VI and Article VII.

36.     *"Distribution"* means each distribution made to the Holders of Allowed Claims on a Distribution Date from the Distribution Fund.

37.     *"Distribution Date"* means the date that is six (6) months from the Effective Date (to the extent sufficient funds are in the Distribution Fund), and each date that is every six (6) months thereafter except more frequent Distributions may be made in the sole discretion of the Plan Administrator.

38.     "*Distribution Fund"* means the funds held by the Plan Administrator consisting of (i) the net proceeds from the sale or liquidation of Estate assets, including without limitation the Equity Interests, (ii) cash distributions on account of the Equity Interests prior to any sale, (iii) recoveries on any Causes of Action, and (iv) any other amounts collected by the Plan Administrator.

39.     "*Effective Date*" means the date that the first Business Day after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in Article IX.B of the Plan have been satisfied or waived.

40.     "*Emily"* means Emily Klaynberg, the Debtor's former spouse.

41.     "*Entity*" shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

42.     "*Equity Interests"* means the equity interests held by the Debtor, directly or indirectly, in any companies, projects or properties including, but not limited to, KS Equities, LLC, JEDR Group, LLC, WW Spectra Corp., JKIG LLC, Klaynberg Family Group LLC, Wonder Works Construction Corp., Durdom, Inc., Mark Paragon, LP, Lighthouse Real Estate Management, International Design Direct, Ltd., 318 Investors A LLC, 114 MS Member LLC, AM Club, LLC, WWIG, LLC, WWIG II, LLC, WWIG III, LLC, WW1834, LLC, WW Eastern, LLC, 5CP LLC, 5CP Development LLC, 114 MS, LLC, WW Greenpoint Partners LLC, and Spectra Development LLC.

43.     "*Estate*" means the estate created for the Debtor on the Petition Date pursuant to Sections 301 and 541 of the Bankruptcy Code, which shall include the estate on and after the Confirmation Date.

44.     "*Exculpated Party*" means the Trustee, any Professional retained by the Trustee, any Professional retained by the Debtor, Nahla, and any professionals retained by Nahla that filed a notice of appearance in the Chapter 11 Case.

45.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

46.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

47.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court.

48.     "*Final Distribution*" means the last distribution to holders of Allowed Claims in accordance with the Plan by the Plan Administrator, which distribution will include all remaining assets in the Distribution Fund.

49.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek

certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

50.     *"General Unsecured Claim"* means any Claim against the Estate that is not: (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) the Nahla Claim; (f) a Contingent Guaranty Claim; (g) a Non-Contingent Guaranty Claim; (h) the Citizens Claim; or (i) a Penalty Claim.

51.     "*Governmental Unit*" shall have the meaning set forth in Section 101(*27*) of the Bankruptcy Code.

52.     "*Guaranty Claims*" mean, collectively, the Contingent Guaranty Claims and the Non-Contingent Guaranty Claims.

53.     "*Holder*" means any Entity holding a Claim.

54.     "*Impaired*" means a Class of Claims that is not Unimpaired.

55.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

56.     "*Lien*" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

57.     "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Bankruptcy Court, as applicable to the Chapter 11 Case, as may be amended, modified, or supplemented from time to time.

58.     *"Marital Action"* means the matrimonial action in the Supreme Court of the State of New York, County of Nassau between the Debtor and Emily, in which the Separation Agreement was entered.

59.     *"Marital Litigation"* means the action to be investigated and/or commenced by the Plan Administrator to avoid the Separation Agreement and/or any transfers or transactions by the Debtor to Emily or with respect to Emily (including without limitation transfers made pursuant to, or allegedly pursuant to the Separation Agreement) based on applicable law or equity.

60.     "*Nahla*" means Series 2020A of Nahla Capital LLC.

61.     *"Nahla Claim"* means the Proof of Claim Filed by Nahla in the Chapter 11 Case on April 17, 2022 in the amount of $13,816,466.19 plus unliquidated amounts asserted by Nahla for post-petition interest, attorneys' fees & expenses.

62.     "*Nahla Claim Reserve*" shall have the meaning set forth in Paragraph III.B.1 of this Plan.

63.     "*Nahla Judgment*" means the judgment entered in favor of Nahla and against the Debtor on November 14, 2021 in the amount of $13,196,612.65.

64.     "*Nahla Judgment Lien*" means Nahla's alleged judgment lien on the Sands Point Property which allegedly attached to the $1,900,273.96 in proceeds from the sale of the Sands Point Property pursuant to the Sands Point Sale Order, which judgment lien is subject to the Nahla Preference Action.

65.     "*Nahla Preference Action*" means the action commenced on March 8, 2022 seeking, inter alia, to avoid the Nahla Judgment Lien as a preference under Section 547 of the Bankruptcy Code.

66.     "*Nahla Secured Claim*" means the portion of the Nahla Claim equal to $1,900,273.96, which is allegedly secured by the Nahla Judgment Lien and related adequate protection liens as set forth in the Cash Collateral Stipulation, but which liens are subject to the Nahla Preference Action.

67.     "*Non-Contingent Guaranty Claims*" means the Claims of any lenders based upon the Debtor's prepetition guaranties of debt owed to such lenders by the respective borrowers under loans made by such lenders, to the extent such claims are determined to be liquidated and noncontingent.

68.     "*Other Priority Claim*" means any Claim against the Estate entitled to priority in right of payment under Section 507 of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

69.     "*Penalty*" means any Claim against the Debtor including without limitation Claims of Taxing Authorities, whether Secured or unsecured, for any fine, penalty, forfeiture, or for multiple, exemplary or punitive damages, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim.

70.     "*Petition Date*" means February 11, 2022.

71.     "*Plan*" means this Chapter 11 Plan of Liquidation, as may be amended, supplemented, or modified from time to time.

72.     "*Plan Administrator*" means Jonathan L. Flaxer.

73.     "*Plan Administrator Expense*" means any reasonable expense of the Plan Administrator incurred in connection with his service as Plan Administrator.

74.     "*Plan Administrator Indemnified Parties*" means the Plan Administrator and his employees, agents, representatives, consultants, attorneys and professionals.

75. "*Plan Administrator Reserve*" means that amount reserved for the payment of the fees and expenses of the Plan Administrator, including professional fees and fees permitted to be paid by the Plan Administrator, which shall initially be the amount of $200,000.

76. "*Post-Confirmation Estate*" means the Estate following the occurrence of the Effective Date of the Plan, and as governed by the Plan.

77. "*Priority Tax Claim*" means any unsecured Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

78. "*Pro Rata*" means (a) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class or (b) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

79. "*Professional*" means an Entity retained in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to Sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code.

80. "*Professional Fee Claim*" means all Claims for accrued fees and expenses for services rendered by a Professional through and including the Effective Date, to the extent such fees and expenses have not been paid pursuant to any order of the Bankruptcy Court or the Local Bankruptcy Rules and regardless of whether a fee application has been Filed for such fees and expenses.

81. "*Professional Fee Claim Bar Date*" means the first Business Day that is thirty (30) days following the Effective Date of the Plan, except as otherwise specifically set forth in the Plan or a Final Order.

82. "*Proof of Claim*" means a proof of Claim Filed against the Estate in the Chapter 11 Case.

83. "*Reviewed Professional*" shall mean any professional retained by the Plan Administrator other than any expert or consultant retained in connection with any action, proceeding, claim, threatened claim or investigation, whether or not such expert or consultant is designated to testify or otherwise offer an expert opinion in connection with such matter.

84. "*Sands Point Property*" means the real property located at 5 Lillian Court, Sands Point, New York.

85. "*Sands Point Sale Order*" means the order of the Bankruptcy Court approving the sale of the Sands Point Property pursuant to section 363 of the Bankruptcy Code, which is Filed at Docket No. 196.

86. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the

Debtor pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

87.     "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

88.     "*Separation Agreement*" means the agreement entered into between the Debtor and Emily dated November 17, 2020, purporting to provide, among other things, a distribution of their marital assets in the Marital Action.

89.     "*Termination Date*" shall mean the date of entry of an order approving a Final Distribution in the Chapter 11 Case and closing this Chapter 11 Case.

90.     "*U.S. Trustee*" means the Office of the United States Trustee.

91.     "*U.S. Trustee Fees*" means all quarterly fees arising under 28 U.S.C. §1930(a)(6) including accrued interest thereon arising under 31 U.S.C. § 3717.

92.     "*Unclaimed Distribution Reserve*" means that amount reserved for unclaimed distributions in accordance with Paragraph VI.D.2 of this Plan

93.     "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

94.     "*Unimpaired*" means, with respect to a Class of Claims, a Claim that is not *impaired* within the meaning of Section 1124 of the Bankruptcy Code.

95.     "*Voting Classes*" means all Classes of the Plan.

96.     "*Voting Deadline*" means _____, 2023 at 5:00 p.m. Eastern Time.

97.     "*Voting Record Date*" means the close of business on the date that the Disclosure Statement Approval Order is entered by the Bankruptcy Court.

A.     Rules of Interpretation

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms

and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

B.     Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

C.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

D.     Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

E.     Controlling Document

In the event of an inconsistency between the Plan or the Disclosure Statement, the terms of the Plan shall control in all respects. The provisions of the Plan, and of the Confirmation Order, shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that if there is determined to be any inconsistency between any provision in the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

# ARTICLE II.
# ADMINISTRATIVE CLAIMS, U.S. TRUSTEE FEES, PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

A.     Administrative Claims

1.      Payment of Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Trustee or the Plan Administrator, each Holder of an Allowed Administrative Claim will receive in exchange for full and final satisfaction, settlement, release, and compromise of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim from the Distribution Fund either:  (1) except as otherwise provided in the Confirmation Order, on the Effective Date or as soon as practicable thereafter; (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than five (5) business days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) if the Allowed Administrative Claim is based on liabilities incurred by the Estate in the ordinary course of his business after the Petition Date, such Allowed Administrative Claims shall be paid pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims and without any further notice to or action, order, or approval of the Bankruptcy Court.

2.      Requests for Payment of Administrative Claims

Except for Professional Fee Claims, requests for payment of Administrative Claims must be Filed and served on the Plan Administrator no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor and the Estate, or any of the property of any of the foregoing, and such Administrative Claims shall be deemed discharged as of the Effective Date.

B.      U.S. Trustee Fees

The Estate shall pay all U.S. Trustee Fees by the Effective Date.  Thereafter, U.S. Trustee Fees shall be paid from the Distribution Fund until entry of a final decree closing the Chapter 11 Case, or order of dismissal or conversion of the Chapter 11 Case.

C.      Professional Fee Claims

1.      Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims shall be Filed no later than thirty (30) days after the Effective Date of the Plan.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Local Bankruptcy Rules and any prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.  The Allowed amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from the Distribution Fund when and to the extent such Claims are Allowed by a Final Order.

2.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Plan Administrator, on behalf of the Post-Confirmation Estate, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court but subject to the terms of the Plan if applicable, may pay the reasonable legal, professional, or other fees and expenses incurred by the Post-Confirmation Estate or Plan Administrator from the Distribution Fund, including the expenses of the Plan Administrator or professionals retained by the Plan Administrator.

D.      Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim shall receive, in exchange for full and final satisfaction, settlement, release, and compromise of such Claim, Cash up to the full amount of such Claim from the Distribution Fund within five (5) days of the Effective Date (or, if not Allowed on the Effective Date, within five (5) days after such claim is Allowed).

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS**

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, U.S. Trustee Fees, Professional Fee Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims set forth in this Article III.

A.      Summary of Classification

All Claims other than Administrative Claims, U.S. Trustee Fees, Professional Fee Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Distributions pursuant hereto and in connection with Sections 1122 and 1123(a)(1) of the Bankruptcy Code. Each Class shall be a Class of Claims in the Chapter 11 Case of the Debtor. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.      Class Identification

The classification of Claims against the Estate pursuant to the Plan is as follows:

| Class | Claims | Status | Voting Rights |
|-------|--------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Not entitled to Vote |
| Class 2 | Nahla Claim | May Be Impaired | Entitled to Vote |
| Class 3 | Contingent Guaranty Claims | May Be Impaired | Entitled to Vote |

| Class | Claims | Status | Voting Rights |
|-------|--------|--------|---------------|
| Class 4 | Non-Contingent Guaranty Claims | May Be Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | May Be Impaired | Entitled to Vote |
| Class 6 | Penalty Claims | May Be Impaired | Entitled to Vote |
| Class 7 | Debtor | May Be Impaired | Entitled to Vote |

B.  Treatment of Claims.

1.  Except to the extent that a Holder of an Allowed Claim agrees to a less favorable treatment, the treatment provided to each Class relating to the Debtor for Distribution purposes and voting rights are specified below:

### Class 1 – Other Priority Claims

(a)  *Classification*:  Class 1 consists of all Other Priority Claims.

(b)  *Treatment*:  Except to the extent that a Holder of an Other Priority Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each and every Other Priority Claim against the Debtor, each Holder of an Other Priority Claim, when, if and to the extent Allowed, shall be paid 100% of their Allowed Other Priority Claim on the Effective Date.

(c)  *Voting*:  Class 1 is Unimpaired, and each Holder of an Allowed Other Priority Claim is not entitled to vote to accept or reject the Plan.

### Class 2 –Nahla Claim

(a)  *Classification*:  Class 2 consists of the Nahla Claim, when, if and to the extent Allowed.

(b)  *Treatment*:  The Nahla Claim is filed in the amount of $13,816,466, plus any Allowed unliquidated amounts, and in part as a Secured Claim.  In the Appeal, the Trustee (as successor to the Debtor) seeks to reverse the entry of the Nahla Judgment underlying the Nahla Claim in its entirety. In the Nahla Preference Action, the Trustee (as successor to the Debtor) seeks to avoid the Nahla Judgment Lien, which would render the entire Nahla Claim unsecured.  To the extent that Nahla's asserted Lien survives the Nahla Preference Action and the Appeal, Nahla shall have the Nahla Secured Claim.  The Nahla Secured Claim, when, if and to the extent Allowed as a Secured Claim, shall be paid up to $1,900,273.96 from the Nahla Claim Reserve.  The remaining unpaid portion of the Nahla Claim (or the entire Nahla Claim if the Nahla Judgment Lien is

avoided), when, if and to the extent Allowed, shall be paid its Pro Rata share of the Distribution Fund on each Distribution Date, *pari passu* with holders of Allowed Claims in Classes 4 and 5 under the Plan.

Until such time at which the Nahla Judgment Lien has been avoided or determined, by court order or agreement, to not be in existence, the Plan Administrator shall maintain a reserve for the potential payment of the Nahla Secured Claim (the "*Nahla Claim Reserve*"). The Nahla Claim Reserve shall be funded on the Effective Date with all Cash in the Distribution Fund following the payments required by Article VI.A.(i)-(iii) of this Plan. Cash received by the Post-Confirmation Estate from liquidation or recoveries of assets, including Causes of Action, in the Distribution Fund shall be deposited into the Nahla Claim Reserve, provided, however, that the Nahla Claim Reserve shall never exceed $1,900,273.96.

Notwithstanding the foregoing, if funds are not otherwise available to the Plan Administrator from the Plan Administrator Reserve or the Distribution Fund, the Plan Administrator is permitted to use funds in the Nahla Claim Reserve to pay for necessary expenses incurred by the Plan Administrator for administering the Post-Confirmation Estate.

(c)     *Voting*: Class 2 may be Impaired, and the Holder of such Claim is entitled to vote to accept or reject the Plan.

## Class 3 – Contingent Guaranty Claims

(a)     *Classification*: Class 3 consists of all Contingent Guaranty Claims, including the Citizens Claim.

(b)     *Treatment*: Contingent Guaranty Claims, when, if and to the extent Allowed, shall be estimated and Allowed in an amount to be determined by the Bankruptcy Court pursuant to section 502(c)(1) of the Bankruptcy Code, which amount, once determined, shall be treated as an Allowed Non-Contingent Guaranty Claim in Class 4 hereunder.

(c)     *Voting*: Class 3 may be Impaired, and the Holders of such Claims are entitled to vote to accept or reject the Plan.

## Class 4 – Non-Contingent Guaranty Claims

(a)     *Classification*: Class 4 consists of Non-Contingent Guaranty Claims.

(b)     *Treatment*: Non-Contingent Guaranty Claims, when, if and to the extent Allowed, shall be paid their Pro Rata share of the Distribution Fund on each Distribution Date, *pari passu* with holders of Allowed Claims in Classes 2 (excluding the Nahla Secured Claim, if any) and 5 hereunder; provided that, notwithstanding anything to the contrary contained in the

underlying guaranty or any other agreement between the Debtor and the Holder of such Claim, the Plan Administrator shall have an immediate right of subrogation with respect to the Holder's claims against the underlying borrower and lien on the underlying collateral, to the extent of amounts distributed on account of such Allowed Non-Contingent Guaranty Claim, and any contractual waiver of subrogation, contribution, exoneration, reimbursement or similar rights between the Debtor and the Holder of such Allowed Non-Contingent Guaranty Claim, whether in the underlying guaranty agreement or any other agreement between the Debtor and the Holder of such Claim, shall be of no force or effect. Notwithstanding the foregoing, such subrogated claim shall be subordinate to such Non-Contingent Guaranty Claim to the extent that such Non-Contingent Guaranty Claim is not paid in full from third party sources.

(c)     *Voting*:  Class 4 may be Impaired, and Holders of such Claims are entitled to vote to accept or reject the Plan.

## Class 5 – General Unsecured Claims

(a)     *Classification*:  Class 5 consists of all General Unsecured Claims.

(b)     *Treatment*:  General Unsecured Claims, when, if and to the extent Allowed, shall be paid their Pro Rata share of the Distribution Fund on each Distribution Date, *pari passu* with holders of Allowed Claims in Classes 2 (excluding the Nahla Secured Claim, if any) and 4 hereunder.

(c)     *Voting*:  Class 5 may be Impaired, and the Holders of such Claims are entitled to vote to accept or reject the Plan.

## Class 6 – Penalty Claims

(a)     *Classification*:  Class 6 consists of all Penalty Claims.

(b)     *Treatment*:  Holders of Penalty Claims, when, if and to the extent Allowed, shall be paid their Pro Rata share of any funds remaining in the Distribution Fund after payment in full of all other Claims in Classes 1, 2, 4, and 5 against the Debtor.

(c)     *Voting*:  Class 6 may be Impaired, and each Holder of an Allowed Penalty Claim is entitled to vote to accept or reject the Plan.

## Class 7 – Debtor Claims

(a)     *Classification*:  Class 7 consists of the Debtor's residual interest in Estate property after the Estate has been fully administered.

(b) *Treatment*:  The Debtor shall retain any assets and property remaining after payment of all other Claims against the Debtor in full.

(c) *Voting*:  Class 7 is Impaired, and the Debtor is entitled to vote to accept or reject the Plan.

C.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing shall affect the rights of the Trustee or the Plan Administrator in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    Elimination of Vacant Classes

Any Class of Claims that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement and Disclosure Statement Approval Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies Section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Trustee shall seek Confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.  The Trustee reserves the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    Overview

The Plan is a Liquidating Plan as all non-exempt assets of the Debtor will be liquidated to pay Allowed Claims against the Estate.  This will be accomplished by both the sale of various assets, and the litigation and monetization of Causes of Action. If any assets that the Debtor asserts are exempt assets are determined to not be exempt, such assets shall be included for Distribution to creditors under the Plan.

B.    Sale of Interest in Sands Point Property

On or about August 26, 2022, the Bankruptcy Court approved the Debtor's motion to sell his 50% interest in the Sands Point Property to Emily under Section 363(b) and (f) of the Bankruptcy Code for the sum of $1,900,273.96 (the "Sands Point Sale"), which sum has been received by the Estate less a reserve of $26,000 being held in escrow by the Trustee's counsel for possible transfer taxes.

C.    Transfer Taxes

There will be no transfer or similar taxes owed on any transaction in connection with or in contemplation of the Plan, including the Sands Point Sale, to the fullest extent permitted by Section 1146 of the Bankruptcy Code. For the avoidance of doubt, the sale of the Debtor's interest in the Sands Point Property shall be deemed a transfer under, pursuant to, in connection with and in furtherance of this Plan, and such sale, transfer and delivery of any and all instruments of transfer, including without limitation, the deed for his interest in such Property in connection therewith shall not be taxed under any transfer tax provisions of law as permitted by Section 1146(a) of the Bankruptcy Code as interpreted by the Supreme Court in Florida Department of Revenue v. Piccadilly Cafeterias, Inc., 128 S.Ct. 2326 (2008). The Debtor shall, however, be liable for any capital gains tax due in connection with the sale of his interest in the Sands Point Property.

The Net Proceeds of the Sands Point Sale shall be deposited into the Distribution Fund and shall be used in accordance with Section VI.A. of the Plan.

D.     Sale of Equity Interests

The Trustee intends to sell the Equity Interests, and in this respect, has made a motion to retain Keen-Summit Capital Partners LLC (the "Equity Interest Broker") as broker to market the Equity Interests for sale. Any such sale shall be free and clear of Liens, claims and encumbrances, with such Liens, claims and encumbrances to attach only to the net proceeds of the sale. All terms of sale and any restrictions or approvals needed in connection with the sale of the Equity Interests will be included in a motion to approve bidding procedures to be filed by the Trustee or Plan Administrator, as applicable, and all creditors and parties in interest will have an opportunity to object to same in connection with that Motion.

There will be no transfer or similar taxes owed on any transaction in connection with or in contemplation of the Plan, including the sale of the Equity Interests, to the fullest extent permitted by Section 1146 of the Bankruptcy Code. For the avoidance of doubt, the sale of the Equity Interests shall be deemed a transfer under, pursuant to, in connection with and in furtherance of this Plan, and such sale, transfer and delivery of any and all instruments of transfer shall not be taxed under any transfer tax provisions of law as permitted by Section 1146(a) of the Bankruptcy Code as interpreted by the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008). The Debtor shall, however, be liable for any capital gains tax due in connection with the sale of the Equity Interests.

The Net Proceeds of the sale of the Equity Interests shall be deposited into the Distribution Fund and shall be used in accordance with the requirements of this Plan.

E.     Appeal

On and after the Confirmation Date, the Plan Administrator shall have the option to either continue the Appeal or not perfect the same. If the Plan Administrator determines to continue the Appeal, the Appeal shall be perfected by no later than thirty (30) days after the earlier of (i) the Effective Date or (ii) the date upon which the stay of the Appeals in vacated. The Nahla Claim shall be considered to be a Disputed Claim until either dismissal or lack of perfection of the Appeal by the Plan Administrator or, in the event that the Appeal shall

continue, entry of a Final Order in the Appeal, or in any ensuing appeal or motion to reconsider or reargue made with respect to the subject matter of the Appeal. Notwithstanding this, the Plan Administrator agrees that Nahla shall not be prohibited from voting on the Plan by reason of the Appeal.

The costs and legal fees associated with the Appeal shall be paid from the Distribution Fund.

F.     **Effective Date.**  The Effective Date is the first Business Day following the date on which all of the conditions contained in Paragraph IX.B of the Plan have occurred or have been waived pursuant to Paragraph IX.B of the Plan.

G.     **Vesting of Assets.**  On the Effective Date, all Property of the Estate, including claims and Causes of Action, whether or not an action or proceeding has been commenced with respect thereto, shall vest in the Post-Confirmation Estate in accordance with section 1141 of the Bankruptcy Code.

H.     **Operation of Post-Confirmation Estate.**  The Post-Confirmation Estate shall be authorized to engage in any lawful activity to the extent and only to the extent that such activities are necessary to wind down and liquidate its assets and liabilities in accordance with the Plan.

I.     **Release and Discharge of Trustee and the Trustee's Professionals.  From and after the Effective Date, the Trustee shall be discharged from his duties and obligations as chapter 11 trustee for the Debtor and released and discharged from any liability with respect thereto.  Notwithstanding the foregoing, and notwithstanding the Effective Date of the Plan, the Trustee shall not be discharged from his duty to timely file a Final Report and Account as required by sections 704(a)(9) and 1106(a)(1) of the Bankruptcy Code, which report shall account for the period from the Trustee's appointment through the Effective Date and shall be filed within a reasonable period after the Effective Date. Additionally, notwithstanding the foregoing, nothing in the Plan or herein shall relieve the Trustee from liability for willful misconduct, gross negligence, *ultra vires* acts, or breaches of fiduciary duty.**

J.     Plan Administrator.

The Plan Administrator shall be appointed as of the Confirmation Date to implement the Plan, including to investigate and litigate or monetize all Causes of Action, Equity Interests, and other non-exempt assets of the Debtor in accordance with this Plan. The Plan Administrator shall execute an acknowledgement that he has read the terms of this Plan and agreement to be bound by such terms in the form annexed hereto as **Exhibit A.**  From and after the Effective Date, the Plan Administrator shall serve in accordance with the terms of this Plan until the earlier to occur of (x) the entry of an order discharging the Plan Administrator, or (y) the appointment of a successor Plan Administrator in accordance herewith.

(a)     **Powers.**

The rights and powers of the Plan Administrator shall include the following:

**(i)**      investing the Cash of the Post-Confirmation Estate in any money market vehicles which are rated no less than "A" or "A1/P1" by Moody's Investors Service and Standard & Poor's and have a maturity of no more than one (1) year or such other investment in accordance with section 345 of the Bankruptcy Code; it being understood that the Plan Administrator shall have no duty or obligation to invest Cash of the Post-Confirmation Estate at interest**;**

**(ii)**      prosecuting, litigating, settling or otherwise disposing of all Claims of any type or nature asserted against the Estate or the Post-Confirmation Estate, including all objections to Claims asserted by the Trustee prior to the Effective Date or objecting to any Claim that is not the subject of an objection prior to the Claims Objection Bar Date;

**(iii)**      prosecuting, litigating, settling or otherwise disposing of any Claim or Cause of Action that has been or could be filed or asserted by the Trustee, the Debtor and/or the Post-Confirmation Estate, including, without limitation actions under chapter 5 of the Bankruptcy Code;

**(iv)**      conducting examinations in accordance with Bankruptcy Rule 2004, including, without limitation, seeking relief compelling the attendance of any person or entity to be examined and the production of documents in accordance therewith**;**

**(v)**      complying with all orders and directives of the Bankruptcy Court;

**(vi)**      reviewing, objecting, settling, and taking any and all other actions that may be necessary with respect to Administrative Claims**;**

**(vii)**      calculating and overseeing the payment of all distributions to be made under the Plan and other orders of the Bankruptcy Court to holders of Allowed Claims;

**(viii)**      entering into joint defense, joint prosecution and other similar agreements, including agreements that permit the Plan Administrator to share the costs and proceeds of litigation with persons or entities that are not parties in interest in the Chapter 11 Case;

**(ix)**      establishing the reserves, maintaining and distributing the proceeds of any litigation or other property, in accordance with the terms of the Plan;

| (x) | replenishing and/or augmenting the reserves with additional Cash as and when needed, in the sole discretion of the Plan Administrator; |

| (xi) | without further order of the Bankruptcy Court, retaining or employing professionals to assist the Plan Administrator in carrying out any of his duties and obligations under the Plan on such terms and for such matters as the Plan Administrator may, in his sole discretion, deem reasonable and appropriate and compensating such professionals on such terms as the Plan Administrator may deem reasonable and appropriate; it being expressly understood that such professionals and the terms of their retention or employment may include (x) Golenbock Eiseman Assor Bell & Peskoe LLP, as counsel, (y) Giambalvo, Stalzer & Company, CPAs, P.C., as accountants, and (z) Traxi LLC, as financial advisor, each retained and paid at their ordinary and customary hourly rates, as the same may be adjusted from time to time, or such lower hourly rates agreed to by the Plan Administrator and such professional; |

| (xii) | paying from the Distribution Fund any Plan Administrator expense as and when such expense is incurred, and being reimbursed for such expense; |

| (xiii) | seeking determination of any tax liability of the Debtor or Post-Confirmation Estate under section 505 of the Bankruptcy Code; |

| (xiv) | preparing and filing tax and informational returns, if any, for the Debtor and Post-Confirmation Estate; |

| (xv) | setting off amounts owed to the Debtor or Post-Confirmation Estate against any and all amounts due to be distributed to the holder of an Allowed Claim to the extent permitted by applicable law; |

| (xvi) | asserting or waiving, in his sole discretion, any privilege belonging to the Debtor, the Post-Confirmation Estate and/or the Trustee; |

| (xvii) | furnishing such information and filing such reports concerning the Estate's administration as may be required by the Plan, the Bankruptcy Court, or the United States Trustee; |

| (xviii) | on the Effective Date, paying all U.S. Trustee Fees due and owing on such date, and thereafter, paying all such fees plus interest, if any, on a quarterly basis; |

**(xix)**  compensating himself and his retained professionals in accordance with the terms of the Plan;

**(xx)**  paying the legal fees and costs of indemnifying the Plan Administrator Indemnified Parties in accordance with the terms of the Plan;

**(xxi)**  obtaining insurance for himself in accordance with the terms of the Plan;

**(xxii)**  seeking an order and final decree closing the Chapter 11 Case, including, but not limited to, filing a final accounting with the Bankruptcy Court on or prior to the Final Distribution which sets forth the amount collected and disbursed and the fees and expenses incurred in administering the Post-Confirmation Estate, and seeking any orders necessary to approve such accounting;

**(xxiii)**  requesting the appointment of a successor designated by the Plan Administrator upon notice to those parties identified in subsection (j) below and entry of an order of the Bankruptcy Court approving such appointment in accordance with the terms of the Plan;

**(xxiv)**  seeking any orders necessary to terminate the duties of the Plan Administrator under the Plan, and discharge the Plan Administrator from any liability under the Plan;

**(xxv)**  interpreting any provisions of the Plan, and/or the Confirmation Order in his sole discretion, unless such interpretation is clearly erroneous**;**

**(xxvi)**  executing, delivering, filing, or recording such contracts, instruments, releases, and other agreements or documents, and taking such actions as may be necessary or appropriate to effectuate the duties and responsibilities of the Plan Administrator under the Plan;

**(xxvii)**  having the authority to comply with all applicable laws;

**(xxviii)**  taking all other actions, if any, which the Plan Administrator may deem necessary or appropriate, in his sole discretion, to comply with the provisions of the Plan and/or the Confirmation Order, to sell, liquidate, distribute or otherwise fully administer any Property of the Estate, the Debtor and/or the Post-Confirmation Estate and to wind down and dissolve the Post-Confirmation Estate**.**

(b)     **Exculpation.**

**The Plan Administrator shall have no liability whatsoever to any holder of a Claim or any party in interest in the Chapter 11 Case or any party who could have filed a Claim in the Chapter 11 Case arising out of or in any way related to the performance (or lack thereof) of his duties under the Plan, other than for his willful misconduct, gross negligence, ultra vires acts, or breaches of fiduciary duty, except that in any case, the Plan Administrator shall have no liability for any act taken or omission made in good faith reliance upon the advice of counsel or other professionals.  No implied covenants or obligations shall be read into the Plan or herein against the Plan Administrator.  No claim may be filed or prosecuted against the Plan Administrator except upon application first being filed in the Bankruptcy Court for authority to bring such claim for good cause shown, and entry of an order of the Bankruptcy Court authorizing the filing of such claim. The Bankruptcy Court reserves exclusive jurisdiction over the Plan Administrator and enjoins the filing of any such claim absent compliance by the proposed plaintiff with the provisions of the Plan.**

(c)     **Indemnification.**

The Post-Confirmation Estate shall, to fullest extent permitted by applicable law, indemnify and hold harmless each of the Plan Administrator Indemnified Parties from and against any and all liabilities, losses, damages, claims, costs and expenses including but not limited to reasonable attorneys' and other professional fees arising out of or due to their actions or omissions with respect to the performance of their respective duties under the Plan provided that such Plan Administrator Indemnified Party acted in good faith.  To the extent that the Post-Confirmation Estate indemnifies and holds harmless a Plan Administrator Indemnified Party as provided above, the legal fees and related costs incurred by counsel to or other professionals for such Plan Administrator Indemnified Party shall be paid by the Plan Administrator from the Distribution Fund as and when incurred.  Prior to obtaining an order closing the Chapter 11 Case and until such time as the Plan Administrator obtains the release and discharge provided in this Plan, the Plan Administrator shall be entitled to retain sufficient Cash, in his sole discretion, to pay in full the estimated legal fees and related costs which may be incurred by counsel to or other professionals for any Plan Administrator Indemnified Party.  This provision shall be available to any successor Plan Administrator or the estate of any decedent of any of the Plan Administrator Indemnified Parties, and shall survive the termination of the duties of the Plan Administrator as provided in the Plan.

(d)     **Insurance.**

The Plan Administrator shall be authorized to obtain, using Cash from the Distribution Fund, such insurance as he may, in his sole discretion, reasonably desire for himself and the Plan Administrator Indemnified Parties with respect to the liabilities, duties and obligations of the Plan Administrator Indemnified Parties which insurance coverage may remain in effect for a reasonable period after the termination of the duties of the Plan Administrator as provided in the Plan.

(e)     **Bond.**

The Plan Administrator shall obtain a bond or surety in such amount as may be required by the United States Trustee or applicable law, unless such requirement is waived by the Bankruptcy Court or the United States Trustee.

**(f)      Compensation**.

The Plan Administrator shall be entitled to be paid for his services at the rate of $845 per hour.  Such compensation shall be paid to the Plan Administrator following the procedures for payment of compensation to Reviewed Professionals set forth in subsection (g)(iii) below.  Subject to such procedures, the Plan Administrator may be paid the compensation set forth in this Plan from Cash or any asset of the Estate, the Debtor or the Post-Confirmation Estate, from the Plan Administrator Reserve, from the Distribution Fund, or in the manner that the Plan Administrator, in his sole discretion, deems reasonably appropriate.  Absent a timely objection, such compensation shall not be subject to approval by the Bankruptcy Court.

**(g)      Professionals Retained by Plan Administrator.**

> **(xxix)**      *Compensation in General*.  Any professionals retained or employed by the Plan Administrator shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable expenses incurred

> **(xxx)**      *Compensation of Professionals other than Reviewed Professionals*.  The fees and reasonable expenses of professionals retained by the Plan Administrator other than Reviewed Professionals shall be paid in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

> **(xxxi)**      *Compensation of Reviewed Professionals*. The Plan Administrator shall provide the United States Trustee and Nahla with ten (10) days' written notice of any proposed payment to any Reviewed Professional.  Within such ten (10) day period, the United States Trustee and Nahla shall have the right to object in writing to any such proposed payment(s) to Reviewed Professionals as unreasonable under the facts and circumstances.  Such written objection shall state the reason therefor and the amount of the proposed payment which is objectionable.  In the absence of a written objection interposed on or prior to the expiration of such ten (10) day period, such payment(s) to such Reviewed Professional(s) shall be made by the Plan Administrator in the ordinary course of business. If a written objection to such payment is interposed on or prior to the expiration of the ten (10) day period, then in such event (x) the balance to which no objection has been raised may be paid in the ordinary course of business by the Plan Administrator as set forth herein, and (y) the objectionable portion of such

payment may be paid upon entry of an order of the Bankruptcy Court authorizing same or as consented to by the United States Trustee. In no event shall the Plan Administrator be liable for all or any portion of the fees or expenses of Reviewed Professionals which the Bankruptcy Court fails to authorize after a timely written objection is raised.

(xxxii) *Fee Disputes*. Any disputes related to any fees or expenses of any person or entity retained by the Plan Administrator shall be brought before the Bankruptcy Court**.**

**(h)** **No Requirement to Disburse Own Funds.**

No provision of the Plan shall require the Plan Administrator to spend his own funds or otherwise incur any financial liability in the performance of his duties hereunder, or in the exercise of any of his rights and powers.

**(i)** **No Audit**.

The Plan Administrator shall have no obligation to provide audited financial statements with respect to any reports required by the Plan, the Bankruptcy Rules, Local Bankruptcy Rules, or the United States Trustee.

**(j)** **Appointment of Successor**.

Upon notice to the United States Trustee and Nahla, and entry of an order of the Bankruptcy Court, the Plan Administrator may appoint a successor, it being understood that there shall exist no period of time in which no person or entity has assumed the rights, and is responsible for performing the duties and obligations, of the Plan Administrator hereunder. The Plan Administrator shall have the right to petition the Bankruptcy Court to appoint a successor Plan Administrator. Any such successor shall have and shall assume all of the rights, duties and obligations of the Plan Administrator as set forth in the Plan, and shall serve in accordance with the terms of the Plan until the earlier to occur of (x) the entry of an order closing the Chapter 11 Case, or (y) the subsequent appointment of a successor who assumes all of the rights, obligations and duties of the Plan Administrator in accordance herewith.

**(k)** Release **and** Discharge.

**Upon the Termination Date, the duties of the Plan Administrator shall be terminated without further action, and the Plan Administrator shall, to the fullest extent permissible under applicable law, be deemed forever released and discharged from all claims, demands, debts, rights, causes of action or liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, then existing or thereafter arising in law or in equity, that are based in whole or in part on any act or omission transaction, event or other occurrence in any way relating to the Debtor, the Chapter 11 Case or the Plan, including the duties and obligations of the Plan Administrator hereunder. Notwithstanding the foregoing, nothing contained in the Plan is intended to relieve the Plan Administrator from liability for willful misconduct, gross**

negligence, ultra vires acts, or breaches of fiduciary duty, if any, except that Plan Administrator shall not have any liability for any act taken or omission made in good faith reliance upon the advice of counsel or other professionals.

### (l)   No Other Duties.

The Plan Administrator shall have no duties or obligations of any kind or nature, including any obligation to commence or prosecute any claim or cause of action, other than those expressly set forth in the Plan and the Confirmation Order.

### (m)   Settlement of Causes of Action.

If the Plan Administrator intends to abandon, settle, or compromise any Cause of Action (i) for which the amount sought by the Post-Confirmation Estate is $250,000 or more, (ii) related to the Marital Litigation or any family member of the Debtor or an entity in which the Debtor held an ownership interest as of the Petition Date, or (iii) related to Chabad of Gramercy Park, the Plan Administrator shall give notice to all Holders at least ten (10) days prior to taking such proposed action advising them of the proposed action. During such ten (10) day period, any such Holder may File and serve an objection to the proposed action on any basis that could have been raised under Bankruptcy Rule 9019 had the proposed action been taken prior to the Effective Date, and have such objection determined by the Bankruptcy Court. If no objection is timely Filed and served on the Plan Administrator (or if an objection is timely Filed and the Bankruptcy Court overrules the objection), then the Plan Administrator may proceed with the proposed action.

### (n)   Reporting

The Plan Administrator shall be available upon reasonable notice to respond to any inquiries of a Holder. Notwithstanding the foregoing, any Holder of an Allowed Claim may request, once per calendar quarter, a written report on cash receipts and disbursements, asset sales or other dispositions, Causes of Action against third parties, fees and expenses incurred by the Plan Administrator or the Post-Confirmation Estate, Claims reconciliation, and anticipated Plan Distributions, to the extent such information is not otherwise set forth in operating reports filed by the Plan Administrator in this Chapter 11 Case. For the avoidance of doubt, nothing herein shall limit any party's right to seek discovery pursuant to Bankruptcy Rule 2004 or otherwise, or any party's right to object to such relief.

### (o)   Reliance on Provisions.

The Plan Administrator has accepted the duties and responsibilities contained in the Plan in specific reliance upon, among other provisions, Paragraph 4.I of the Plan; in the absence of any one of the provisions and protections set forth in the Plan, Jonathan L. Flaxer would not otherwise have agreed to accept the duties and responsibilities of Plan Administrator contained in the Plan.

### K.   Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Estate.

L.      Exemption from Certain Taxes and Fees

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, including the recording of any mortgages or liens or amendments thereto, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

M.      Preservation of Rights of Action

The Trustee or the Plan Administrator, as applicable, shall have the right to seek reduction or disallowance of any Claim based upon the existence of a Cause of Action against the Holder of such Claim.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Administrator will not pursue any and all available Causes of Action against them.  All rights to prosecute any and all Cause of Actions against any Entity, except as otherwise expressly provided in the Plan, are and shall be expressly reserved.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, all Cause of Actions are expressly reserved for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Cause of Actions upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

In addition to the foregoing, any right of any Holder to seek derivative standing to pursue Causes of Action shall be preserved on a post-confirmation basis on behalf of the Post-Confirmation Estate, and the rights of the Debtor, the Plan Administrator and any other party in interest to oppose such relief is hereby preserved; provided, however, that no Holder of a Claim shall seek derivative standing to pursue any Causes of Action unless and until (i) the Plan Administrator has provided notice pursuant to Section 4.I.(m) of this Plan that the Plan Administrator intends to abandon such Cause of Action or (ii) sixty (60) days prior to the second anniversary of the Petition Date; provided, however, if the Plan Administrator has obtained a tolling agreement with respect to any Cause of Action, then thirty (30) days prior to the expiration of such tolling agreement.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     As of the Confirmation Date, but subject to the occurrence of the Effective Date, any prepetition Executory Contracts or Unexpired Leases not previously assumed or rejected shall be deemed rejected under sections 365 and 1123 of the Bankruptcy Code, except (a) any lease of the Debtor for his personal residence shall be deemed abandoned back to the Debtor as of the Confirmation Date (but subject to the occurrence of the Effective Date); (b) any Executory Contract or Unexpired Lease that is the subject of a separate motion to assume, assume and assign or reject filed pursuant to section 365 of the Bankruptcy Code before the entry of the Confirmation Order; or (c) any Executory Contract or Unexpired Lease which shall have expired or terminated pursuant to its terms; provided, however, that rejection pursuant hereto shall not constitute an admission that any such Executory Contracts or Unexpired Leases are in fact Executory Contracts or Unexpired Leases or that the Debtor had any liability thereunder

B.     The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections or assumptions described herein, pursuant to section 365 of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence of the Effective Date.Notwithstanding anything in this Plan to the contrary, no executory contract or unexpired lease shall be deemed assumed or rejected pursuant to the terms of Article V of the Plan if the Effective Date fails to occur for any reason.

D.     Any Claim for damages arising by reason of the rejection of any pre-petition Executory Contract or Unexpired Lease hereunder must be filed on or before thirty (30) days following the Confirmation Date, and upon the failure of any entity to file such claim on or before such date, such entity shall be forever barred from asserting a claim on account of the rejection of such Executory Contract or Unexpired Lease, but shall nevertheless be bound by the provisions of the Plan

E.     Nothing in this Article V(C) will extend any prior Bar Date set by prior order of the Bankruptcy Court.

F.     There shall be no restriction on the rights of the Trustee or Plan Administrator, as applicable, to object to any Claims relating to the rejection of Executory Contracts or Unexpired Leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in the Plan, Disclosure Statement or otherwise.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.     Use of Opening Cash Balance for Initial Distribution of Assets and Creation of Reserves.

On the Effective Date, unless the Bankruptcy Court orders otherwise, the Plan Administrator shall use the initial Distribution Reserve to:

i. pay in Cash in full all (i) U.S. Trustee Fees, (ii) Allowed (and unpaid) Administrative Claims, (iii) Allowed (and unpaid) Priority Claims, and (iv) Allowed (and unpaid) Priority Tax Claims;

ii. establish a reserve with sufficient funds to pay in full all U.S. Trustee Fees, Administrative Claims of the Trustee and Professionals and Priority Claims that are not paid on the Effective Date, including (i) the Trustee's statutory commission, (ii) estimated Professional Fee Claims of Professionals retained by the Trustee and/or the Debtor, (iii) Disputed Administrative Claims, (iv) Disputed Priority Tax Claims, and (v) Disputed Priority Claims;

iii. establish the Plan Administrator Reserve;

iv. establish the Nahla Claim Reserve;

v. distribute a Pro Rata share of Cash from the Distribution Fund, if any, to holders of Allowed Claims in accordance with the Plan; and

vi. retain a Pro Rata share of Cash from the Distribution Fund, if any, required to fund the Disputed Claim Reserve for each holder of a Disputed Claim.

B. Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the Plan, on each Distribution Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Estate shall receive the Distribution to which such Claimant is entitled under the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

C. Distributions on Account of Claims Allowed After the Effective Date

1. Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Trustee or the Plan Administrator, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3.      Disputed Claims Reserve

On each Distribution Date (or as soon thereafter as is reasonably practicable), the Plan Administrator shall deposit in the Disputed Claims Reserve the amount of Cash that would have been Distributed to the Holders of all Disputed Claims as if such Disputed Claims had been Allowed on each Distribution Date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves and for maximum Distribution purposes, to be the lesser of (a) the asserted amount of the Disputed Claim filed with the Bankruptcy Court, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, or (c) amount otherwise agreed by the Plan Administrator and the Holder of such Disputed Claim for reserve purposes.  To the extent the amount of Cash deposited in the Disputed Claims Reserve on account of Disputed Claims exceeds the amount of Disputed Claims (as of the funding of the Disputed Claims Reserve) that later become Allowed, the excess shall be Distributed in accordance with the Plan.

D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.      Delivery of Distributions in General

Except as otherwise provided herein, the Plan Administrator shall make Distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's books and records as of the date of any such Distribution; provided that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.  If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one Distribution will be made with respect to the aggregated Claim.

2.      Undeliverable Distributions and Unclaimed Property

The distribution to any holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or is otherwise unclaimed for ninety (90) days, no further distributions shall be made to such holder unless and until the Plan Administrator is notified in writing of such holder's then-current address.  Undeliverable and unclaimed distributions shall be held in the "Unclaimed Distribution Reserve" for the benefit of all such similarly situated persons until the

earlier to occur of (x) such time as the distribution becomes deliverable or is claimed, or (y) the Termination Date.

Distribution checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the issuance thereof. After such date, the holder of such claim shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim or any interest earned thereon, for an undeliverable or unclaimed distribution against the Post-Confirmation Estate, the Estate, the Plan Administrator or their property. In such case, any Cash or other property held in an Unclaimed Distribution Reserve for distribution on account of such Claim for undeliverable or unclaimed distributions shall become the property of the Post-Confirmation Estate, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary, and shall be distributed in accordance with the terms of the Plan. Nothing contained in the Plan shall require the Plan Administrator to locate any holder of an Allowed Claim whose address has changed as it is the sole responsibility of any holder of a Claim whose address changes to notify the Plan Administrator of such change. Any unclaimed or undeliverable distributions returned after the Final Distribution or checks that are not cashed within nine (90) days of the Final Distribution shall be paid or delivered as the Plan Administrator shall instruct or shall be deposited with the Bankruptcy Court. The Plan Administrator may petition the Bankruptcy Court to alter the procedures contained in this Plan with respect to unclaimed property.

3.      Manner of Payment Pursuant to the Plan

Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Plan Administrator shall determine in its sole discretion.

E.      Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

F.      Claims Paid or Payable by Third Parties

The Plan Administrator shall reduce in full or in part a Claim, and such Claim shall be disallowed or reduced without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full or in part on account of such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not the Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the Distribution to the Post-Confirmation Estate to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Post-Confirmation Estate annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

G.     Interest on Claims

Interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

H.     Final Distribution.

**(a)**     The Plan Administrator shall make the Final Distribution when, in the reasonable judgment of the Plan Administrator, (i) all Property of the Estate has been liquidated and there are no potential sources of additional Cash for distribution, (ii) all U.S. Trustee Fees, Administrative Claims, Other Priority Claims, and Priority Tax Claims have been Allowed and paid in full, disallowed or withdrawn, (iii) there remain no Disputed Claims entitled to receive a Distribution pursuant to this Plan, and (iv) the Plan Administrator is in a position to make the Final Distribution in accordance with applicable law.

**(b)**     Prior to the Final Distribution, the Plan Administrator may seek an order approving the termination and discharge of the Plan Administrator.

**(c)**     On the Termination Date, the Plan Administrator shall:

i.     establish a wind-up reserve which shall include, without limitation, Cash sufficient, in the sole discretion of the Plan Administrator, to pay in full all accrued and unpaid fees and expenses of the Plan Administrator and his professionals, and to pay the estimated legal fees and related costs which may be incurred by counsel to or other professionals for any Plan Administrator Indemnified Party in accordance with this Plan, respectively, until such time as the Plan Administrator obtains the release and discharge provided in this Plan;

ii.     transfer any remaining cash in the reserves to the Distribution Fund; and

iii.     distribute any Cash in the Distribution Fund as specified in the Plan to holders of Allowed Claims in accordance with the Plan.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.     Resolution of Claims Against the Debtor

    1.     Allowance of Claims Against the Debtor

On or after the Effective Date, the Post-Confirmation Estate and the Plan Administrator shall have and shall retain any and all rights and defenses that the Estate and the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

    2.     Prosecution of Objections to Claims

After the Effective Date, except as provided in this paragraph, the Plan Administrator shall have the exclusive authority to File objections to Claims against the Estate, and to settle, compromise, withdraw or litigate to judgment objections to any and all Claims against the Estate, regardless of whether such Claims are in a Class or otherwise. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that the Plan Administrator shall give notice to all Holders at least ten (10) days prior to taking a proposed action with respect to any Claim as provided herein advising them of the proposed action, and during such ten (10) day period, any Holder may File and serve an objection to the proposed action on any basis that could have been raised had the proposed action been taken prior to the Effective Date, and have such objection determined by the Bankruptcy Court. If no objection is timely Filed (or if an objection is timely Filed and the Bankruptcy Court overrules the objection), then the Plan Administrator may proceed with the proposed action on the Claim. Notwithstanding the foregoing, if the Plan Administrator determines not to object to a Claim on or before the date that is thirty (30) days prior to the Claims Objection Bar Date, then any Holder shall be permitted to object to such Claim unless the Plan Administrator has filed a motion to extend the Claims Objection Bar Date and such motion is to be heard prior to the expiration of the then-existing Claims Objection Bar Date. From and after the Effective Date, the Plan Administrator shall have the sole authority to direct the Clerk of the Bankruptcy Court to adjust the Claims Register to reflect any such settlements or compromises of Claims against the Debtor without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Time to File Objections to Claims Against the Debtor

Any objections to Claims against the Debtor and his Estate shall be Filed on or before the Claims Objection Bar Date. For the avoidance of doubt, the continuation of the Appeal shall be deemed an objection to the Nahla Claim without the need for the Debtor, the Estate, the Trustee, or the Plan Administrator to file a separate motion or Claim objection. Notwithstanding this, the Trustee agrees that Nahla shall not be prohibited from voting on the Plan by virtue of the objection to its Claim through the Appeal.

4. Estimation of Claims Against the Debtor

The Plan Administrator may, at any time, and, except as provided in this paragraph, shall have the exclusive authority to, request that the Bankruptcy Court estimate (a) any Disputed Claim against the Estate pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Plan Administrator, or any other party-in-interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim against the Estate, contingent Claim against the Estate or unliquidated Claim against the Estate, including during the litigation concerning any objection to any Claim against the Estate or during the pendency of any appeal relating to any such objection; provided, that any rights of any party in interest right to oppose such relief shall be preserved after the Effective Date; and, provided, further, that if the Plan Administrator determines not to seek estimation of a particular Claim on or before the date that is thirty (30) days prior to the Claims Objection Bar Date, then any Holder shall be permitted to seek estimation of such Claim unless the Plan Administrator has filed a motion to extend the Claims Objection Bar Date and such motion is to be heard prior to the expiration of the then-existing Claims Objection Bar Date . Notwithstanding any provision otherwise in the Plan, a Claim against the Estate that has been expunged from the Claims Register, but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim against the Estate, contingent Claim against the Estate, or unliquidated Claim against the Estate, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Plan Administrator may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

5.      Expungement or Adjustment to Claims Against the Estate Without Objection

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Plan Administrator and any Claim that has been amended may be adjusted thereon by the Plan Administrator in all cases without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  Any Claim filed after any applicable Bar Date shall, unless such Claim amends a Claim filed before the Bar Date or unless the Bankruptcy Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Bankruptcy Court.  Filed or Scheduled Claims may not be amended without prior authorization of the Bankruptcy Court or the Plan Administrator, and any such unauthorized new or amended Claim shall be deemed disallowed and expunged without any further notice to, or action, order or approval of the Bankruptcy Court.

B.      Disallowance of Claims

All Claims against the Estate held by any Entity from which avoidance of any transfer or property is sought by the Trustee or the Plan Administrator under Section 542, 543, 550, or 553 of the Bankruptcy Code or that the Trustee or the Plan Administrator alleges is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Trustee or Plan Administrator, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to pay or turn over any property or monies under any of the aforementioned Sections of the Bankruptcy Code and (2) such Entity or transferee has failed to pay or turn over such property by the date set forth in such agreement or Final Order.

EXCEPT AS PROVIDED FOR UNDER THE PLAN OR OTHERWISE AGREED TO BY THE PLAN ADMINISTRATOR, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE (THAT DO NOT AMEND TIMELY FILED CLAIMS) SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE OF THE PLAN WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

C.      Amendments to Claims

On or after the Effective Date, except as otherwise specifically provided in the Plan, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Plan Administrator, and any such unauthorized new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court.

# ARTICLE VIII.
## SETTLEMENT, EXCULPATIONS, INJUNCTIONS, AND RELATED PROVISIONS

A.      Compromise and Settlement of Claims and Controversies

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, Distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan or relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and is fair, equitable, and reasonable.

B.      Discharge

Pursuant to Section 1141(d) of the Bankruptcy Code, upon completion of Distributions under the Plan, the Debtor will be discharged from any debt that arose before the Confirmation Date and any debt of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code whether or not a proof of Claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, such Claim is Allowed or the Holder of such Claim has accepted the Plan, except to the extent that the Debtor (i) is denied a discharge under Section 1141(d)(3) and 727(a) of the Bankruptcy Code or (ii) is denied the discharge of any particular Claims under Section 1141(d)(2) and 523 of the Bankruptcy Code.

C.      Exculpations

**Effective as of the Effective Date, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for, any conduct occurring on or after the Petition Date based on the negotiation, execution, and implementation of any transactions approved by the Bankruptcy Court in the Chapter 11 Case, including without limitation: in connection with or arising out of the postpetition marketing and sale process with respect to the Sales Point Property; the negotiation and pursuit of the Disclosure Statement and this Plan; the implementation, administration, confirmation, and consummation of the Plan, or the solicitation of votes for, or confirmation of, the Plan; the distribution of property under the Plan; or other actions taken pursuant to orders of the Bankruptcy Court; other than acts or omissions found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to constitute fraud, willful misconduct, gross negligence, *ultra vires* acts, or breach of fiduciary duty, by such person or entity. Nothing in the Plan shall limit the liability of the lawyers to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009). For the avoidance of doubt, except as otherwise provided in an Order authorizing the retention of a Professional, nothing in this paragraph shall limit the ability of any party to object to a Professional Fee Claim for any reason permitted by the Bankruptcy Code.**

D.      Injunction

**Except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities, together with their respective present and former employees, agents, officers, directors, principals and affiliates, in their capacities as such, who have held, hold or may hold Claims against the Debtor that have been discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.C of the Plan, are permanently enjoined, from and after the Effective Date, from (i) pursuing any and all such Claims (other than the rights of such Persons and Entities to enforce the Plan, and such other contracts, instruments, releases and other agreements or documents delivered hereunder, if any, first arising thereunder after the Effective Date), known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any actual or alleged act, omission, transaction, event, or other occurrences taking place on or prior to the Effective Date (collectively, the "Enjoined Claims") against any of the Debtor, the Estate, the Exculpated Parties, the Plan Administrator or the Post-Confirmation Estate, (ii) commencing or continuing in any manner any action or other proceeding of any kind based on any Enjoined Claim against any of the Debtor, the Estate, the Exculpated Parties, the Plan Administrator or the Post-Confirmation Estate, (iii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, decree or other award against any of the Debtor, the Exculpated Parties, the Plan Administrator or the Post-Confirmation Estate, based on any Enjoined Claims (iv) creating, perfecting or enforcing any encumbrance of any kind against any of the Debtor, the Estate, the Exculpated Parties, the Plan Administrator or the Post-Confirmation Estate or against the property or interests in property of any of the foregoing based on any Enjoined Claim, or (v) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due or owing to the Debtor or against the property or interests in property of any of the Debtor, the Estate, or the Post-Confirmation Estate based on any Enjoined Claim; provided, however, that this provision shall not impact or affect the rights and powers of any governmental entity or agency exercising its police or regulatory power; and provided, further, however, solely with respect to any Claims sought to be enforced against the Debtor (and, for the avoidance of doubt, not with respect to (1) any Claims to the extent sought to be enforced against the Estate, the Plan Administrator, or the Post-Confirmation Estate, or (2) any Claims that are subject to exculpation pursuant to Article VIII.C of the Plan) (a) any Claim that been determined by the Bankruptcy Court to be nondischargeable pursuant to Sections 523, 727 or 1141 of the Bankruptcy Code shall not be an Enjoined Claim subject to this injunction, and (b) no Claims against the Debtor shall be enjoined by this paragraph to the extent the Debtor is denied a discharge under any provision of Section 1141 and 727 of the Bankruptcy Code.**

E.     Setoffs and Recoupments

Except as otherwise provided herein, the Trustee or the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off or recoup against any Allowed Claim or the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of

Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Trustee or the Plan Administrator of any such Claims, rights, and Causes of Action that the Debtor or the Estate may possess against such Holder.

F.    Provisions as to Governmental Units

As to any Governmental Unit (as defined in Section 101(27) of the Bankruptcy Code), nothing in the Plan or Confirmation Order shall limit or expand the scope of release or injunction to which the Debtor, the Trustee, or the Plan Administrator is entitled to under the Bankruptcy Code, if any.  The injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, subsequent to the Confirmation Order, pursuing any police or regulatory action.

Notwithstanding anything contained in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall release, impair or otherwise preclude: (1) any liability to any Governmental Unit that is not a "claim" within the meaning of Section 101(5) of the Bankruptcy Code; (2) any Claim of any Governmental Unit arising on or after the Confirmation Date; (3) any valid right of setoff or recoupment of any Governmental Unit against the Debtor; or (4) any liability of the Debtor or the Plan Administrator under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the Confirmation Date.  Nor shall anything in the Confirmation Order or the Plan: (i) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by any Governmental Unit are discharged or otherwise barred by the Confirmation Order, the Plan, or the Bankruptcy Code.

Moreover, nothing in the Confirmation Order or the Plan shall exculpate any non-debtor, including any exculpated party, from any liability to any Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the exculpated parties, nor shall anything in the Confirmation Order or the Plan enjoin any Governmental Unit from bringing any claim, suit, action or other proceeding against any non-debtor for any liability whatsoever.

Nothing contained in the Plan or Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtor, nor shall the Plan or Confirmation Order be deemed to have determined the federal tax treatment of any item, Distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

Nothing herein shall constitute a waiver of the necessity of a Governmental Unit to file a Claim by the Claims Bar Date or Administrative Claims Bar Date, or the rights of any party as a result of failure of a Governmental Unit to do so.

# ARTICLE IX.
# CONDITIONS PRECEDENT

A.      Condition Precedent to Confirmation of the Plan

It shall be a condition precedent to Confirmation of the Plan that the following conditions shall have been satisfied or waived by the Trustee in his sole and absolute discretion:

1.      The Bankruptcy Court shall have entered the Disclosure Statement Approval Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Disclosure Statement Approval Order shall not be stayed and shall be effective immediately upon its entry; and

2.      The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Trustee that provides that no claim may be filed or prosecuted against the Plan Administrator except upon application first being filed in the Bankruptcy Court for authority to bring such claim for good cause shown, and entry of a Final Order of the Bankruptcy Court authorizing the filing of such claim, and such Confirmation Order shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry.

B.      Conditions Precedent to the Effective Date of the Plan

It shall be a condition precedent to the occurrence of the Effective Date of the Plan that the following conditions shall have been satisfied or waived by the Trustee in his sole and absolute discretion:

1.      The Confirmation Date shall have occurred; and

2.      The Confirmation Order shall not be subject to any stay.

The Trustee reserves the right to request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry and shall be a Final Order.  Notwithstanding the foregoing, the Plan may not be consummated, and the Effective Date shall not occur, unless at least fifteen (15) days shall have elapsed since the entry of the Confirmation Order, with the last day of such calculation being a Business Day, and the Confirmation Order shall not be the subject of a stay by a court of competent jurisdiction on such date.

MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

C.      Modification of Plan

Subject to the limitations contained herein, the Trustee reserves the right to modify the Plan as to immaterial terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Trustee expressly reserves the right to alter, amend, or modify materially the Plan one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

D.      Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

E.      Revocation or Withdrawal of the Plan

The Trustee reserves the right to revoke or withdraw the Plan prior to the Confirmation Date or the Effective Date. If the Trustee revokes or withdraws the Plan, or if Confirmation or Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption and assignment or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims; (b) prejudice in any manner the rights of the Debtor, the Estate, the Trustee, the Plan Administrator, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor, the Trustee or any other Entity.

## ARTICLE X.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.      Except as otherwise provided in the Plan, Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. Resolve any matters related to: (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Obligations pursuant to Section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. Adjudicate, decide, or resolve any and all matters related to Causes of Action or any conflicting claims or demands made or asserted with respect to an Allowed Claim;

7. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8. Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. Resolve any case, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation or enforcement of the Plan;

11. Resolve any case, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, injunctions, exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such injunctions and other provisions;

12. Resolve any case, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI;

13.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     Adjudicate any and all disputes arising from or relating to Distributions under the Plan or any transactions contemplated therein;

16.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     Determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

18.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.     Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

20.     Hear and determine matters concerning Section 1145 of the Bankruptcy Code;

21.     Hear and determine all disputes involving the existence, nature, or scope of the exculpations, the indemnifications and the injunctions, as set forth in this Plan;

22.     Hear and determine all matters concerning requests pursuant to Bankruptcy Rule 2004;

23.     Enforce all orders previously entered by the Bankruptcy Court;

24.     Enter an order concluding or closing the Chapter 11 Case; and

25.     Enforce the exculpations, the indemnifications and the injunctions, as set forth in this Plan.

## ARTICLE XI.
## MISCELLANEOUS PROVISIONS

A.     Immediate Binding Effect

Subject to Article IX.B and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon

the Debtor, the Trustee, the Estate, the Plan Administrator, and any and all Holders of Claims against or in the Debtor or the Estate, regardless of whether such Claims are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in such plan, each Entity acquiring property under such plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.  All Claims shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim has voted on the Plan.

B.     Additional Documents

On or before the Effective Date, the Trustee may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All Holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     Post-Confirmation Reports

The Plan Administrator shall file reports on its disbursements with the Bankruptcy Court on a quarterly basis, within fifteen (15) days after the conclusion of each such period until the entry of a final decree closing the Chapter 11 Case.  Any such reports shall be prepared consistent with (both in terms in content and format) the applicable Bankruptcy Court and United States Trustee Guidelines for such matters.

D.     Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order with respect to the Plan.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor, the Trustee or the Plan Administrator with respect to the Plan, the Disclosure Statement, or the Confirmation Order shall be or shall be deemed to be an admission or waiver of any rights of the Debtor, the Trustee, or the Plan Administrator with respect to the Holders of Claims prior to the Effective Date.

E.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.     Service of Documents

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Trustee (and/or the Plan Administrator) shall be served on:

> Jonathan L. Flaxer
> Golenbock Eiseman Assor Bell & Peskoe LLP
> 711 Third Avenue, 17th Floor
> New York, New York 10017
> Email:  jflaxer@golenbock.com

> with copies to:

> Golenbock Eiseman Assor Bell & Peskoe LLP
> Attn: Michael S. Weinstein
> 711 Third Avenue, 17th Floor
> New York, New York 10017
> Email: mweinstein@golenbock.com

G.      Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      Entire Agreement

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. Respectfully submitted, as of the date first set forth above.

J.      Award of Attorneys' Fees and Expenses; Posting a Bond

In the event that (x) the Plan Administrator is forced to defend against a claim raised by the holder of a Claim (whether Disputed or Allowed) or an affiliate of the holder of a Claim, (y) the Plan Administrator prevails, and (z) the assets available for distribution to holders of Allowed Claims under this Plan are diminished thereby, then in such instance, the Bankruptcy Court may award to the Plan Administrator its reasonable attorneys' fees and expenses. At any time after a claim is asserted against the Plan Administrator, the Plan Administrator may (a) request that the Bankruptcy Court require that the holder of such Claim or its affiliate, as the case may be, post a bond to secure the payment of such reasonable attorneys' fees and expenses, and withhold any distribution that would otherwise be made under this Plan to the holder of such Claim if such Claim is or becomes an Allowed Claim.

Dated: New York, New York
      May 30, 2023

Respectfully submitted,

**JONATHAN L. FLAXER, solely in his capacity as chapter 11 trustee for Joseph Klaynberg**

By: /s/ Jonathan L. Flaxer

Dated: New York, New York
      May 30, 2023

GOLENBOCK EISEMAN ASSOR BELL
  & PESKOE LLP
Counsel for Jonathan L. Flaxer, chapter 11 trustee for Joseph Klaynberg
711 Third Avenue
New York, NY 10017
(212) 907-7300

By: /s/ Michael S. Weinstein
     Michael S. Weinstein, Esq.

**EXHIBIT A**

**<u>Acknowledgement and Agreement of Plan Administrator</u>**


(See Article IV.E of the Plan)

**Acknowledgement and Agreement of**

**<u>Plan Administrator</u>**

Reference is made to the Chapter 11 Trustee's Plan of Liquidation for Joseph Klaynberg, dated _____ __, 2023 (as such Plan may be amended, supplemented, modified and in effect from time to time, the "**<u>Plan</u>**"). Capitalized terms used but not defined herein shall have the meaning given in the Plan.

In accordance with Article IV.E of the Plan, Jonathan L. Flaxer hereby (i) acknowledges that he has read the Plan, and (ii) from and after the Effective Date, accepts his appointment as Plan Administrator pursuant to the Plan, and in such capacity, agrees to perform the duties and obligations imposed upon him by the Plan, the Confirmation Order, and any other order entered by the Bankruptcy Court concerning the Plan.

This instrument has been duly executed and delivered by Jonathan L. Flaxer and is the valid and binding obligation of Jonathan L. Flaxer, enforceable against him in accordance with its terms.

Acknowledged and agreed
this ____ day of _____, 2023

_____
Jonathan L. Flaxer