**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Lauren C. Kiss

*Counsel to Emily Klaynberg*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
In re                                     :
                                          :    Chapter 11
JOSEPH KLAYNBERG,                         :
                                          :    Case No. 22-10165 (MG)
                        Debtor.           :
----------------------------------------------------------------x
```

**PRELIMINARY LIMITED OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO THE CHAPTER 11 TRUSTEE'S CHAPTER 11 PLAN OF LIQUIDATION**

**TO THE HONORABLE MARTIN GLENN,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Emily Klaynberg ("Emily"), a potential target of litigation claims (defined as the "Marital Litigation" in the Plan) by the bankruptcy estate (the "Estate") of Joseph Klaynberg, the above-captioned debtor (the "Debtor"), by and through its lawful representative Jonathan L. Flaxer as chapter 11 trustee (the "Trustee"), hereby submits her limited preliminary objection and reservation of rights (the "Limited Objection") to the proposed Chapter 11 Trustee's Chapter 11 Plan of Liquidation for Joseph Klaynberg (the "Plan") [Docket No. 300], and respectfully represents and alleges as follows:

**PRELIMINARY STATEMENT**

Emily has no desire to get in the way of confirmation of the Plan. In fact, Emily is not

currently a creditor of, or direct stakeholder in, the Estate. However, Emily has certain unique issues and concerns for her atypical situation and submits that the Plan should contain clear reservations so that it does not inappropriately impede her ability to defend any Marital Litigation.

## BACKGROUND

1. The Debtor and Emily were married on January 9, 1983, and during their marriage had three children: Edward Klaynberg, born July 21, 1983, Daniel Klaynberg, born April 24, 1986, and Robert Klaynberg, born September 17, 1998. In 2017, after 34 years of marriage, the Debtor and Emily separated.

2. On November 17, 2020, the Debtor and Emily entered into a certain *Separation Agreement Between Emily Klaynberg and Joseph Klaynberg* (the "Separation Agreement"), which divided their marital property in accordance with the equitable distribution laws of the state of New York. Shortly thereafter, the Debtor initiated a divorce proceeding which Emily did not contest, and a judgment of divorce was issued on January 22, 2021 and entered by the court on February 5, 2021 (the "Divorce Judgment").

3. Nine months later, on November 17, 2021, Series 2020A of Nahla Capital LLC ("Nahla") obtained a judgment (the "Nahla Judgment") against the Debtor and his business partner, Eric Brody ("Brody"), for approximately $13 million on account of amounts owed under certain guaranties. Nahla asserted that the Debtor and Emily's separation and divorce was a sham, designed to put the Debtor's assets beyond the reach of the Debtor's creditors.

4. On February 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court.

5. Upon the motion of Nahla, this Court entered a memorandum opinion and order

appointing a trustee (the "Trustee Decision") [Docket No. 230], and by notice dated September 20, 2022 [Docket No. 231], the United States Trustee appointed the Trustee. The Trustee has been serving in that capacity ever since.

6. On March 10, 2023, the Trustee filed the Plan and related proposed disclosure statement (the "Disclosure Statement") [Docket No. 299]. This Court entered an order approving the Disclosure Statement and granting related relief on June 7, 2023 [Docket No. 324].

## THE ALLEGED CLAIMS AGAINST EMILY

### I. Introduction

7. The alleged claims against Emily are defined by the Plan as follows:

*"Marital Litigation"* means the action to be investigated and/or commenced by the Plan Administrator to avoid the Separation Agreement and/or any transfers or transactions by the Debtor to Emily or with respect to Emily (including without limitation transfers made pursuant to, or allegedly pursuant to the Separation Agreement) based on applicable law or equity.

Plan, Article I, ¶59.

8. As repeated numerous times on and off the record of this seventeen-month-old proceeding, Emily vehemently denies any liability in any Marital Litigation and eagerly awaits an audience to address the issues.[1] However, the point of this Limited Objection is not to argue the

---

[1] Emily has not had an opportunity to refute Nahla's scurrilous allegations, obtain or submit evidence, make arguments, testify live before this or any other court, or participate in any meaningful way in the proceedings that led to entry of the 24-page Trustee Decision concluding that the "Debtor and Emily's divorce strongly resembles a sham divorce" (Trustee Decision, p.14), that "the distribution of assets in the Separation Agreement appears to be extremely lopsided in favor or Emily" (*Id.*, p.15), and ultimately that "the divorce appears to clearly serve as a fraudulent means of transferring the Debtor's assets." (*Id.*, p.17).

Emily respectfully believes that many of the findings and conclusions set forth in the Trustee Decision, and especially those most damaging to Emily, would not have been made if the issues were presented in a fair, two-sided process like an adversary proceeding. To be clear, Emily has no issue with the Court's decision to appoint a trustee. However, many findings in the Trustee Decision, such as that "Emily received 23 times the liquid cash and securities received by the Debtor" (*Id.*, p.15) are based entirely on Nahla's unanswered allegations, are mathematically incorrect, and ignore very important considerations. For example, the Court's finding that Emily received 23 times the liquid cash and securities received by the Debtor failed to acknowledge that those assets were received subject to over $5.1 million in secured loans and approximately $670,000 in capital gains tax exposure upon liquidation. Naturally,

3

merits of any Marital Litigation, but to address the unique issues presented here and problems with the Plan. Accordingly, for purposes of this pleading, Emily assumes for a moment that the Trustee could succeed in avoiding the Separation Agreement. If the Trustee successfully avoided the Separation Agreement, the terms of the Plan would inappropriately prejudice Emily's claims to marital property.

**II.     Discussion of the Effect of an Avoidance of the Separation Agreement**

9.      Avoiding a Separation Agreement is unlike almost any other avoidance action. In the case of a typical avoidance action, a bankruptcy trustee seeks the avoidance of a specific transfer of property, quite often cash or cash equivalents. If successful, the trustee recovers the specific property transferred, although the court can fashion an appropriate remedy if the return of the actual property transferred is not possible.[2]

10.     Here, if the Trustee avoided the Separation Agreement, and thereby avoided the split of marital property made pursuant to the Separation Agreement, it would theoretically put the parties in the position that they were in prior to the division of property under the Separation Agreement. Since New York is not a community property state, the property would revert back to how it was titled just prior to entry of the Divorce Judgment. Under such a circumstance, Emily would assert an entitlement to maintenance, a legal right that she waived as consideration for the

---

Nahla's submissions entirely ignored any arguments that Emily would make, or evidence that she would present, were she an active participant in the proceeding leading up to entry of the Trustee Decision.

[2] Section 550(a) of the Bankruptcy Code provides, in relevant part, that to the extent that a transfer is avoided under section 544, 547, 548 of the Bankruptcy Code, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property" from the transferee." 11 U.S.C. § 550(a). "Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *In re Allou Distributors, Inc.*, 446 B.R. 32, 65 (Bankr. E.D.N.Y. 2011) citing *Hirsch v. Gersten (In re Centennial Textiles, Inc.)*, 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998). In cases where the transferred property cannot be returned, courts allow the plaintiff to recover the value of the property. *See In re Colonial Realty Co.*, 226 B.R. 513, 525 (Bankr. D. Conn. 1998).

property split under the Separation Agreement (a "Maintenance Claim").  The pre-petition portion of any Maintenance Claim would be a claim against the Estate entitled to super-priority status over all other priority unsecured claims pursuant to 11 U.S.C. § 507(a)(1)(A).  Emily has not asserted any Maintenance Claim because the Separation Agreement, which Emily asserts is valid, enforceable, and unavoidable, provides for its waiver.

11. Further, it is not clear what the Trustee contemplates in any Marital Litigation as it is defined in broad inclusive language to mean avoidance of "the Separation Agreement and/or any transfers or transactions by the Debtor to Emily or with respect to Emily (including without limitation transfers made pursuant to, or allegedly pursuant to the Separation Agreement) based on applicable law or equity".  Plan, Article I, ¶59.  This broad language opens the door to two different theories of the case:

   a. **Theory 1 – Reversion to Pre-Separation Agreement Status** – Under this theory, the Trustee would assert that the Separation Agreement should be avoided and thereby title to all marital property must return to its title owner prior to the division. This theory appears to be consistent with this Court's conclusion that "the divorce appears to clearly serve as a fraudulent means of transferring the Debtor's assets." Trustee Decision, p.17.  Here, the Trustee and Emily would be entitled to whatever property was titled in the Debtor's and Emily's names, respectively, prior to implementation of the split under the Separation Agreement.

   b. **Theory 2 – Modify Property Division in Separation Agreement** – Under this theory, the Trustee would assert that the divorce was not a "sham" as this Court concluded, and thus, that the couple's divorce is valid and binding, but that the separation of marital property was actually or constructively fraudulent and must

be revisited to provide for what the Trustee would assert to be a more equitable distribution.

12. It is important to recognize that if the property split in the Separation Agreement were revisited (Theory 2), it would not eradicate Emily's right to her equitable portion of marital property.[3] *See* N.Y. Domestic Relations Law § 236(B)(5)(c). To put things into context, the Debtor and Emily were married for 36 years before the Debtor had any relationship with Nahla. Indeed, the origin and accumulation of all marital property occurred long before the Debtor had any debtor-creditor issues. Emily is entitled to her equitable portion of marital assets to be determined pursuant to N.Y. Domestic Relations Law to the extent that the Separation Agreement is avoided.

13. Thus, if the Separation Agreement were avoided but the divorce left intact forcing a re-exploration of the original equitable distribution of marital property (Theory 2), Emily would have a legal interest in all of the Estate's property subject to an adjudicated equitable split of it taking into account all factors relevant to determination under N.Y. Domestic Relations Law[4] (a "Property Claim").

---

[3] Marital property is broadly defined as "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held." N.Y. Domestic Relations Law § 236(B)(1)(c)

[4] As stated by the Appellate Division, First Department:

> Equitable distribution, as a remedy in marital actions, is not designed either to result in a penalty or a windfall. . . . the determination in each case must be individual, based upon the circumstances presented and the considerations of fairness and equity in terms of the several factors enumerated in part B of section 236 of the Domestic Relations Law.

*Cappiello v. Cappiello*, 110 A.D.2d 608, 609, 488 N.Y.S.2d 399 (1st Dep't 1985). Those factors include: "the income and property of each party at the time of marriage, and at the time of commencement of the action", "the duration of the marriage and the age and health of both parties", "any award of maintenance", "the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party" and "any other factor which the court shall expressly find to be just and proper." N.Y. Domestic Relations Law § 236(B)(5)(d). New York law also permits the parties, as happened here, to agree to a division of marital assets. N.Y. Domestic Relations Law § 236(B)(3).

## PROBLEMS PRESENTED BY THE PLAN

14. First, the Plan proposes to pay all Administrative Claims, which are defined as claims for the costs of administration pursuant to 11 U.S.C. §§ 503(b) or 507(a)(1)(B), all Professional Fee Claims, and all Priority Tax Claims, in full upon allowance unless otherwise agreed. Plan, Article II(A-D). The problem is that all of those claims are junior in priority to any potential Maintenance Claim of Emily which could only be asserted and liquidated in the event of avoidance of the Separation Agreement. There should be an appropriate reserve created to protect Emily in the event she is later found to be entitled to a Maintenance Claim by virtue of any avoidance of the Separation Agreement which contains a voluntary waiver of such a claim.

15. Second, the injunction provided for in Article VIII(D) of the Plan would arguably prevent Emily from asserting an interest in property of the Estate in the event that the Trustee successfully pursued Theory 2 above and avoided the property division in the Separation Agreement, which would result in the Debtor's and Emily's property as of the entry of the Divorce Judgment returning to the marital estate subject to a new division of the property under N.Y. Domestic Relations Law. In that case, the Debtor's Estate would assert an interest in the whole of the hypothetical marital estate as would Emily, subject to a new court-approved division either by agreement or judgment. However, the Plan should not be able to maintain the Estate's right to claim an interest in Emily's property, without Emily maintaining a right to assert an interest in the Estate's property to the extent that the Trustee successfully pursues Theory 2.

16. Emily believes that both of her limited issues can be easily resolved with: (i) a clear reservation of her right to later assert a Maintenance Claim if the Trustee successfully avoids the property split provided for in the Separation Agreement and maintaining an appropriate amount of funds on account of that hypothetical claim until the Marital Litigation is resolved (Emily would

7

propose $150,000 as a reasonable reserve for any Maintenance Claim that she may assert from the February 5, 2021 entry of the Divorce Judgment to the September 20, 2022 appointment of the Trustee); and (ii) a clear reservation in the confirmation order or Plan of Emily's right to assert an interest in Estate property in the event that the Trustee avoids the property division in the Separation Agreement.

Dated: New York, New York
July 7, 2023

          **KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
Fred Stevens
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
       lkiss@klestadt.com

*Counsel to Emily Klaynberg*