**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.

*Attorneys for Daniel Klaynberg, Edward Klaynberg and Robert Klaynberg*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| JOSEPH KLAYNBERG, | Case No. 22-10165 (MG) |
| Debtor. | |

-----------------------------------------------------------x

### DANIEL KLAYNBERG'S, EDWARD KLAYNBERG'S AND ROBERT KLAYNBERG'S OBJECTION TO THE CONFIRMATION OF THE AMENDED PLAN AND RESERVATION OF RIGHTS

Daniel Klaynberg ("Daniel"), Edward Klaynberg and Robert Klaynberg (collectively, the "Klaynbergs"), by their attorneys, the Law Offices of Avrum J. Rosen, PLLC, as and for their Objections to the Amended Plan of Reorganization (the "Plan") and their Reservation of Rights, respectfully represent as follows:

1. As proposed, the Plan fails to disclose substantial issues relating to events that have taken place during the case that dramatically impact the potential distributions and substantial administrative claims that Daniel will have in this case. There are also substantial issues that need to be resolved in the near term that require confirmation to be adjourned as well as some procedural issues that need to be addressed.

2. Some of the principal assets of this estate, as alleged by the Plan Proponent are the claims against the Klaynbergs for alleged fraudulent conveyances. Among those claims is the claim against Daniel for receiving a 50% interest in WW Spectra, Corp., which in turn is a managing member or a member in several other entities that own real estate in Connecticut and

other locations. The Plan also lists multiple guarantees that the Debtor gave on millions of dollars of real estate loans on those properties (and others) in Classes 3 & 4 . What is not disclosed in either the Amended Disclosure Statement or the Plan is the fact that the Debtor's filing constituted an event of default in almost all of those loans.

3. In several of the loans, Daniel, over the last year was requested to, and did, become the successor guarantor on multiple loans to avoid those loans going into default. The Operating Trustee, signed off on these events without seeking Court approval of same. In the last set of transfers of the guarantees, the Operating Trustee, expressly reserved his rights to seek to recover these interests as fraudulent conveyances, while accepting Daniel as a substitute guarantor. One of those agreements is annexed hereto as Exhibit "A".

4. There are several issues that arise from these actions or inactions by the Operating Trustee. First, the guarantee by Daniel, for the benefit of the estate, gives him a right of indemnity which is an administrative claim pursuant to 11 U.S.C. § 507. Second, Daniel also has an administrative claim for all of the distributions that have and will flow to the estate from these holdings. Third, if the fraudulent conveyances were successfully recovered, those transfers would spark a new default under those loans, which would destroy, or severely diminish the value of those assets. In addition,the section on "Disallowance of Claims" on page 34 of the Plan must be modified the state that if the Plan Administrator recovers any LLC interest, the Estate will not recover those interests unless and until, he obtains a replacement guarantor acceptable to the respective lenders and indemnifies the defendant from any guaranty claims if that does not occur. Fourth, it is troubling that several of these actions took place after this firm appeared for the Klaynbergs and no notice of these transactions with Daniel was ever provided to the undersigned.

A full reservation of rights on this asserted and the exculpation provisions of the Plan should exclude this issue.

5. Indeed, the undersigned became aware of these transactions when one of the managing members of one of the related companies advised Daniel that distributions were being withheld due to the substantial legal fees incurred negotiating with the various lenders to get approval for Daniel to be the substitute guarantor on the Connecticut properties. , Daniel then brought it to the undersigned's attention

6. Those pending transactions, most of which Daniel has not yet signed guarantees are substantial loans. The Properties and the original loan balances are as follows:

101 PEARL STREET:

1. KeyBank - $12,600,000.00
2. CRDA - $9,420,000.00
3. DECD - $2,400,000.00

111 PEARL STREET:

1. M&T - $8,000,000.00
2. CRDA - $6,060,000.00
3. DECD - $1,600,000.00
4. PNC (historic tax credit investor with a $3,243,240 investment)

100 TRUMBULL STREET a/k/a Spectra Park

1. HUD - loan dates back to prior owner. Principal balance when Spectra purchased the property was approximately $19,650,000.00)
2. CRDA - $960,000.00

5 CONSTITUTION PLAZA

1. AIG - $16,600,000.00

7. Many of these loans are on the verge of default, as it would be folly for Daniel to sign these guarantees at this point in time. In addition, in reviewing the affidavit of service of the Plan and Disclosure Statement, it does not appear that all of these parties were served. [Docket

No. 329]. Indeed, Daniel was not served, even though he has a clear administrative claim and the Administrative Bar Date is contained in the Plan.

8. When the undersigned became aware of the guarantee issues, I reached out to the Operating Trustee and his counsel to try to arrange a global discussion of theses issues and requested an adjournment of the confirmation hearing to obtain an opportunity for a discussion or a mediation to attempt to resolve most if not all of these issues. The request to adjourn was refused and no one has gotten back to set any meeting. Thus, this objection is being filed.

9. A Plan in this case is premature. The secured status of Nahla is being litigated. It may or may not be secured. General unsecured claims, including guaranty claims have been gerrymandered into four (4) classes. Most of those claims are on the verge of default.If Nahla's Secured Claim is disallowed, there may well not be a consenting impaired class, especially if the guaranty claims are anywhere near the amount claimed. The repercussions from the litigation with Daniel and the claims for benefits to the estate are not disclosed anywhere. There are simply too many unanswered questions and variables for this Court to determine the feasibility of this case or for creditors to make a truly informed decision. All confirmation would do would be to limit this Court's oversight of this case and deny creditors and parties in interest a say in fee applications,settlements, and provide exculpation and releases before any of the real work in this case is done.

10. The Confirmation of this case should be delayed until some of these variables are resolved and the Court can be certain of the classification of claims, proper notice is given,[1] and

---

[1] A review of the Docket shows that other than the affidavit of service regarding the Plan and Disclosure Statement, there are no affidavits of service on file for any motion filed by the Operating Trustee. While the undersigned acknowledges that the Southern District does not have a similar rule to the Eastern District's Local Rule 9013-1 requiring at least service of the CM/ECF filing receipt on affected parties to any motion, it does not appear that there was any service at all, including for the motion limiting notice.

there is a resolution of some, if not all, of the guaranty claims, and if confirmation is granted, the changes requested in the Plan should be included in the confirmation order..

| | |
|---|---|
| Dated: July 7, 2023<br>Huntington, New York | Respectfully submitted,<br><br>**Law Offices of**<br>**Avrum J. Rosen, PLLC** |
| By: | */s/ Avrum J. Rosen*<br>Avrum J. Rosen, Esq.<br>38 New Street<br>Huntington, New York 11743<br>(631) 423 8527<br>arosen@ajrlawny.com<br><br>*Attorneys for Daniel Klaynberg,*<br>*Edward Klaynberg and*<br>*Robert Klaynberg* |