WILLIAM K. HARRINGTON
United States Trustee for Region 2
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408
Telephone: (212) 510–0500
By:    Tara Tiantian
       Trial Attorney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                                   Case No. 22-10165 (MG)

Joseph Klaynberg                             Chapter 11

                                   Debtor.

---------------------------------------------------------x

**OBJECTION OF THE UNITED STATES TRUSTEE TO
APPLICATION OF SERIES 2020A OF NAHLA CAPITAL LLC
PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) FOR
ALLOWANCE AND PAYMENT OF COUNSEL FEES AND EXPENSES INCURRED
IN MAKING A SUBSTANTIAL CONTRIBUTION IN THE CHAPTER 11 CASE**

**TO: THE HONORABLE MARTIN GLENN,
     UNITED STATES BANKRUPTCY JUDGE**:

     William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this objection (the "Objection") to *Application (the "Application") of Series 2020A of Nahla Capital LLC ("Nahla") Pursuant to 11 U.S.C. Sections 503(b)(3)(D) and 503(b)(4) for Allowance and Payment of Counsel Fees and Expenses Incurred in Making a Substantial Contribution in the Chapter 11 Case* (ECF No. 330). In support of his Objection, the United States Trustee states as follows:

1

## PREMILINARY STATEMENT

Nahla seeks reimbursement from the estate for the reasonable legal fees it expended in connection with certain motions and objections that it filed in this case. Nahla asserts that the positions that it took in this case were a substantial contribution to this Chapter 11 case and thus, reimbursable as an administrative expense claim, pursuant to Section 503(b)(3)(D) & (4) of the Bankruptcy Code. This request should be denied because Nahla's activities did not result in any measurable monetary benefit to the estate, did not increase the size of the estate, did not fundamentally enhance the administration of the estate, and did not result in an improved distribution for all constituents.

On the other hand, some of the actions and positions taken by Nahla actually resulted in increased costs to the estate. For example, Nahla objected to nearly every single action taken by the Debtor prior to the appointment of a Chapter 11 trustee, even though some of those actions were determined by the Court to be meritorious and of benefit to the estate. It is unquestioned that Nahla participated actively and extensively in this case, pre-trustee appointment. However, that does not go beyond what a sophisticated institutional creditor would and should do to protect its own interest. Any benefit to the estate is indirect and incidental. The statute on substantial contribution is strictly and narrowly construed. Nahla's activities do not meet the legal standards. In short, as discussed in more detail below, Nahla's substantial contribution motion must be denied.

## RELEVANT FACTS

1. On February 22, 2022, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. No official committee was appointed.

2. According to the Rule 1007 Statement, the filing of this case was precipitated by a judgment obtained by Nahla. ECF No. 4.

3. On June 28, 2023, Nahla filed this Application, seeking to have its legal fees paid in connection with the following activities: Derivative standing motion (or STN motion); Avoidance Complaint; Opposition to Debtor's Plan and Disclosure Statement; 2004 Motion; and Trustee Motion. *See* ECF No. 330 Application ¶ 38.

**Nahla's Derivative Standing Motion and Avoidance Complaint**

4. On March 8, 2022, Nahla filed the *Motion of Series 2020A of Nahla Capital LLC for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute, and, If Appropriate, Settle Certain Claims Against Emily Klaynberg and Robert Klaynberg on Behalf of the Debtor's Estate* (the "Derivative Standing Motion"). ECF No. 38.

5. In the Derivative Standing Motion, Nahla sought standing to commence avoidance actions against Emily Klaynberg and Robert Klaynberg ("Defendants") on behalf of the estate, and "has agreed to bear the cost of pursuing the Avoidance Action, subject to the right to seek allowance of a substantial contribution claim pursuant to section 503(b)(3) of the Bankruptcy Code, alleviating the estate from having to front the costs of litigation." ECF No. 38.

6. Nahla attached a draft avoidance complaint to the derivative standing motion, seeking, among other things, setting aside the transfers and compelling Defendants to turn over properties and proceeds to Nahla for the benefit of the estate. *Id.*

7. The Derivative Standing Motion was discussed at several hearings. The Court did not render a decision.

8. On October 18, 2022, after the Chapter 11 trustee was appointed, pursuant to a so-ordered stipulation, Nahla withdrew the Derivative Standing Motion without prejudice. ECF No. 252.

9. No avoidance actions have been commenced by Nahla, and no proceeds thereof have been generated for the benefit of the estate. The avoidance complaint was never put to use.

**Nahla's 2004 Motion**

10. On June 3, 2022, Nahla filed an *ex parte* 2004 motion ("Nahla's 2004 Motion"), seeking document production from the Debtor (Ex. B-1[1]), Emily Klaynberg (Ex. B-2), Daniel Klaynberg (Ex. B-3), Dina M. De Giorgio (Ex. B-4), Charles Schwab (Ex. B-5), Metropolitan Commercial Bank (Ex. B-6), Wonder Works Construction Corp. (Ex. B-7), SPEs (Ex. B-8). ECF No. 91.

11. The Court granted only the requests with respect to Charles Schwab (Ex. B-5) and Metropolitan Commercial Bank (Ex. B-6). *See* ECF Nos. 101, 143.

12. Nahla, in the same 2004 Motion, sought to depose the Debtor, Emily Klaynberg, Daniel Klaynberg, and/or Dina De Giorgio, Esq. ECF No. 91.

13. The Court granted only the deposition the Debtor and Emily Klaynberg. ECF Nos. 145,142.

**Nahla's Objections that were Overruled and Increased Cost to the Estate**

14. On August 10, 2022, Nahla objected to the sale of Debtor's interest in the Sands Point Property. ECF No. 172.

---

[1] Each exhibit here contains the instructions, definitions and requests for production for a different entity from which the documents to be produced.

15. On August 26, 2022, the Court approved the above-mentioned sale and overruled Nahla's objection on merit with prejudice. *See* ECF No. 196 at 3 ¶ 1. ("All objections to the relief sought in the Motion that have not been withdrawn, waived, settled, or otherwise dealt with as expressly provided herein, and all reservation of rights included in such objections, are overruled on the merits with prejudice.").

16. Nahla objected to the fee application of Tsyngauz & Associates, PC, as Special Appellate Counsel for the Debtor, in its entirety. ECF No. 170

17. The Court overruled Nahla's objection and granted Tsyngauz & Associates, PC $4240 out of $5080 fee requested. ECF No. 193.

**Nahla's Trustee Motion**

18. On August 17, 2022, Nahla filed a Motion to Appoint a Chapter 11 Trustee (the "Trustee Motion"). ECF No. 189.

19. On September 19, 2022, the Court issued a memorandum opinion granting Nahla's Trustee Motion. ECF No. 230.

20. A Chapter 11 trustee was appointed on September 23, 2022. ECF No. 233.

**The Debtor's Plan and the Trustee's Plan**

21. On August 8, 2022, the Debtor filed the Amended Chapter 11 Plan of Liquidation (the "Debtor's Plan"). The Debtor's Plan sought to have a Plan Administrator to pursue estate causes of action, including avoidance actions against the Debtor's family members, and to retain a real estate broker to sell the Debtor's real estate interest with court approval. ECF No. 165.

22. Relatedly, the Debtor sought to retain real estate broker, A& G Realty Partners LLC, to sell his interest in certain real estate companies. ECF No. 209. That retention application was withdrawn by the Chapter 11 trustee. ECF No. 274.

23. On May 30, 2023, the Chapter 11 Trustee filed First Amended Chapter 11 Plan of Liquidation (the "Trustee's Plan"), which proposes to have the Trustee or the Plan Administrator sell the Debtor's real estate interest with court approval and pursue estate's causes of action, including avoidance actions against the Debtor's family members. ECF No. 322.

24. The Debtor's Plan and the Trustee's Plan appear to be of similar structure and to be implemented similarly.

## ARGUMENT

### A. Legal Standards

**1. Substantial Contribution Statute is Narrowly Construed and Only Available in Rare and Exceptional Circumstances**

Section 503(b)(3)(D) and (b)(4) allow administrative expense for the actual and necessary expenses incurred by a creditor in making a substantial contribution in a Chapter 11 case, and reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3)(A) through (E), based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant. 11 U.S.C §§ 503(b)(3)(D)- (b)(4).

"The substantial contribution test is intended to promote meaningful creditor participation in the reorganization process, but not to encourage mushrooming administrative expenses." *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008) "Inherent in the term 'substantial' is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Id.* (citing *Lebron v. Mechem Financial Inc.,* 27 F.3d 937, 944 (3d Cir.1994)).

"Creditors face an especially difficult burden in passing the 'substantial contribution' test since they are presumed to act primarily in their own interests." *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr.S.D.N.Y.1989) *aff'd* 1991 WL 67464 (S.D.N.Y.1991). Services calculated primarily to benefit the client do not justify an award even if they also confer an indirect benefit on the estate. *Id.* "In order to avoid the liberal granting of compensation to the many creditors who necessarily must take an active role in bankruptcy proceedings, it is given that extensive participation in a case alone is insufficient to compel compensation." *Id.*

The general rule remains that attorneys must look to their own clients for payment. *In re McLean Industries, Inc.,* 88 B.R. 36, 38 (Bankr.S.D.N.Y.1988). It is a well-settled rule that these statutory provisions are to be narrowly construed. *In re U.S. Lines, Inc.,* 103 B.R. at 429. The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate. *In re Dana Corp.,* 390 B.R. at 108 (citing *In re Best Prod. Co., Inc.,* 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994)). "Thus, compensation under section 503 is reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate." *Id*.

The handful of cases awarding substantial contribution have generally done so in one of two situations: (i) the creditor took an active role in facilitating the negotiation and successful confirmation of the plan; or (ii) the creditor opposed an earlier plan and as a result, the court ultimately confirmed a more favorable plan that resulted in substantially more distribution to all constituencies and that protects public interest. *In re Granite Partners,* 213 B.R. 440, 446-447 (Bankr. S.D.N.Y. 1997) (citing *In re AM Int'l, Inc.*, 203 B.R. 898, 904-05 (D. Del. 1996); *Ex*

*parte Roberts,* 93 B.R. 442, 444–46 (D.S.C.1988); *In re Texaco, Inc.,* 90 B.R. 622, 627-629 (Bankr. S.D.N.Y. 1988)).

Courts have granted substantial contribution awards, without regard to the plan process, where the creditor's activities have led to a concrete, measurable monetary benefit. *Id.* at 447; *In re McLean Industries, Inc.*, 88 B.R. 36, 39 (Bankr. S.D.N.Y. 1998) (creditor's objection to a proposed sale of estate property for $350,000 prompted other objections and an increased bid of $1.5 million).

**2. Activities that Do Not Lead to Measurable Monetary Benefit or Increase Estate Cost Are Not Compensable.**

Insubstantial services include those that do not actually increase the size of the estate. *In re Granite Partners*, 213 B.R. at 446; *see also In re U.S. Lines, Inc.*, 103 B.R. at 429 (services that do not actually increase the size of the estate may be denied compensation.). "A court may also consider whether the applicant's non-compensable activities increased the administrative costs to the estate." *Id*.

"Most importantly, compensation for services which potentially pass the 'substantial contribution' test might nevertheless be found to retard the reorganization process if recovery by creditors is materially diminished." In re U.S. Lines, Inc., 103 B.R. at 429 (Bankr. S.D.N.Y. 1989) (citing *Surface Transit, Inc. v. Saxe* (*In re Estate of Third Avenue Transit Corporation*), 266 F.2d 862, 856 (2d Cir.1959) (economy of administration and the burden the estate can safely bear are factors to consider)); *see also In the Matter of Multiponics Inc.*, 436 F.Supp. 1072, 1074–75 (E.D.La.1977), *aff'd,* 622 F.2d 731 (5th Cir.1980) (funds on hand being able to satisfy only a fraction of the unsecured claims requires court to approve only a fraction of sum sought as a charge against the estate); *In re Richton Int'l Corp.*, 15 B.R. 854, 855-56 (Bankr. S.D.N.Y.

8

1981) (Burden that the estate can safely bear and impairment of other creditors is a factor in the granting of allowances).

### B. Objection

The question of whether an applicant for a substantial contribution administrative expense has made a substantial contribution in a Chapter 11 case is case-specific and fact-intensive. *See Trade Creditor Grp. v. L.J. Hooker Corp. (In re Hooker Invs., Inc.)*, 188 B.R. 117, 120 (S.D.N.Y.1995) (noting that an inquiry into substantial contribution is "at heart" a question of fact). It is viewed "in hindsight" and an "applicant must show a 'causal connection' between the service and the contribution." *In re Granite Partners*, 213 B.R. at 447.

After examining the entire record of this case, Nahla is no more than an active participant who necessarily must take an active role in this case as a large creditor holding an active judgment (as opposed to most of other creditors whose debt is contingent). The filing of this case was precipitated by Nahla's judgment against the Debtor and his business partner. It happens in almost every bankruptcy case that, the creditor whose debt led to the bankruptcy filing participates most actively and extensively. Nothing rare or extraordinary here exists.

Nahla sought to have its legal fees paid on the following categories: Derivative standing motion (or STN motion); Avoidance Complaint; Opposition to Debtor's Plan and Disclosure Statement; the 2004 Motion; and the Trustee Motion. *See* Application ¶ 38.

Nahla's derivative standing motion (or STN motion), which purportedly would bring properties or proceeds back to the estate, was never granted and later withdrawn without prejudice. The avoidance complaint was never put in use. No derivative standing avoidance action has been commenced. This motion has not led to any measurable monetary benefit to the estate. Interestingly, in the derivative standing motion, Nahla said it will only seek payments

from the estate under substantial contribution. The only reasonable interpretation of that would be, Nahla will only get paid by the estate when the derivative actions bring money to the estate. The reality is such derivative standing actions were never commenced and no money was brought to the estate. How could Nahla now claim compensation from the estate for the derivative standing motion against its own premise upon which it is entitled to be paid?

Nahla's 2004 Motion was granted in a substantially more narrowed scope than it was requested: granting two document requests out of eight requested and two depositions out of four requested. The Court held at least two hearings on this discovery motion. This motion may actually cost the estate more than the benefit, if any, it brought.

Nahla's objection to the Disclosure Statement and Plan was mooted by the appointment of the Chapter 11 trustee.[2] The objection to the Plan and Disclosure Statement read substantially the same as the Trustee Motion and the derivative standing motion. To the extent the Court considers granting this Application, a reduction should be imposed for overlapped work.

Nahla's Trustee Motion, although granted, did not fundamentally change the trajectory of the case or lead to substantially more recovery/benefit to all constituents. The Trustee's plan is substantially similar to the one proposed by the Debtor. If there is more recovery or benefit resulting from the Trustee's Plan, that is most likely a result of the Trustee's work, not Nahla's. Nahla has generally stepped back after the Trustee was appointed. There is no evidence showing how Nahla played an integral role in formulating the Trustee's Plan beyond what a creditor would do to protect its own interest.

---

[2] On October 6, 2022, the Court entered an order denying the Debtor's Motion to approve the disclosure statement without prejudice by virtue of the appointment of the chapter 11 trustee. ECF No. 243.

Further, prior to the trustee's appointment, Nahla objected to virtually every single action taken by the Debtor, including the actions that are ordinary and apparently benefit the estate. Nahla objected to the sale of the Sands Point property and the interim fee application of special appellate counsel, both were overruled by the Court on merit. These two objections required briefing, oral argument and court time – resulting in additional unnecessary legal expenses by the estate. All these expenses could have been spent more productively. These objections did not in any way further the estate administration. The UST understands that Nhala is not seeking compensation for the work done in connection with these objections. The Court nevertheless could and should consider the fact that such uncompensable work increased administrative costs for the estate.

It is unquestionable that Nahla has actively participated in this case (mostly pre-Trustee's appointment) and is represented by competent counsel. However, that is what a sophisticated creditor does and should do: Nahla necessarily must actively participate and assert a voice in the reorganization to protect and further its own interest. If there is any benefit to the estate from Nahla's participation, it is incidental and indirect at most.

Also, the estate's resource is finite and limited. The Debtor is an individual in his 70s who has allegedly stopped working, unlike an operating business that is able to continue generating funds to pay back creditors post-confirmation. Here, what is to be sold and pursued under the Trustee's plan is all the estate has. Post-confirmation, the estate will have to continue to shoulder expenses and fees incurred by the Plan Administrator and his professionals before creditors can get any distribution. And so far, no proceeds have been brought from the sale of real estate interest or litigating causes of action, which are to be implemented post-confirmation. The estate simply does not have the ability to absorb another $380,000 as Nahla requested.

11

## CONCLUSION

WHEREFORE, the U.S. Trustee respectfully requests the Court deny Nahla's Application and grant other relief it deems just and proper.

Dated: New York, New York
      July 12, 2023

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Tara Tiantian*
Tara Tiantian
Trial Attorney
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10014